UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-CR-20255-WPD/HUNT

UNITED STATES OF AMERICA,

vs.

PATRICK BOYD
and CHARLES
BOYD,

_____/

# ORDER DENYING, WITHOUT PREJUDICE, MOTION FOR AUTHORIZATION TO RELEASE MATERIAL SUBJECT TO THE CRIME-FRAUD EXCEPTION

THIS CAUSE is before the Court on the Government's Motion for Authorization to Release Material Subject to the Crime-Fraud Exception (the "Motion") [DE 72] filed herein on June 20, 2025. The Court has reviewed the Motion, Defendants' Response [DE 83], and the Government's Reply [DE 84], both filed on July 7, 2025. The Court has also conducted an *in-camera* review of the Filter Team's *Ex Parte* Supplemental Submission in Support of Motion for Authorization to Release Material Subject to the Crime-Fraud Exception [DE 74], the attached representative sample of email correspondence, and the outstanding materials filed conventionally at [DE 82].[1]  On July 7, 2025, the Court held a hearing on the Government's Motion and has considered the Government and Defendants' arguments [DE 85]. The Court is fully advised.

---

[1] The Court finds that the Government presented sufficient evidence in its Motion for the Court to conclude that an *in camera* review of the emails could yield evidence that the crime-fraud exception applied. *See United States v. Zolin*, 491 U.S. 554, 574–75 (1989) ("We [] hold [] that before a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability.").

1

I.  **BACKGROUND**

The eight-count indictment alleges, *inter alia*, as follows. Defendants Patrick Boyd and Charles Boyd ("Defendants") were the owners of Safe Chain Solutions LLC ("Safe Chain"), a wholesale distributor of pharmaceutical products. Between April 2020 and August 2021, Patrick Boyd, Charles Boyd, and Adam Brosius[2] carried out a nationwide prescription drug diversion scheme by purchasing more than 90 million dollars of heavily discounted and diverted HIV prescription drugs from at least five black-market suppliers. [DE 10]. The Defendants subsequently sold these diverted HIV drugs to pharmacies throughout the country, along with falsified paperwork designed to make it appear as though the drugs had been acquired legitimately. Safe Chain pharmacy customers, in turn, dispensed the diverted HIV drugs to patients and billed health insurers for the diverted and non-reimbursable drugs. On numerous occasions, the bottles of purported HIV medication contained different drugs entirely.

At issue here is whether Defendants' communications with their attorneys made during the time of the alleged conspiracy are subject to the crime-fraud exception to the attorney-client privilege. The Government obtained these communications because prior to this instant criminal action, Gilead Sciences, Inc. ("Gilead") brought a civil action against Safe Chain under the Lanham Act in the Eastern District of New York. As part of that action, in July of 2021, Gilead sought and obtained a seizure order permitting Gilead to search Safe Chain's offices. Gilead conducted the search and later handed over the materials to the Government for the purpose of this instant action.

---

[2] Defendant Adam Brosius pled guilty on April 18, 2025, to Count IV of the indictment, conspiracy to commit wire fraud. [DE 66].

The Government used a "Filter Team" to screen for potentially privileged materials using the Parties' agreed-upon filter protocol. The Filter Team handed over non-privileged records to the Prosecution Team, the Government attorneys responsible for prosecuting the case. The Prosecution Team now moves for a finding that the crime-fraud exception applies to communications Defendants and other Safe Chain personnel had with attorneys at the law firm Frier Levitt during the time of the alleged conspiracy.

The Prosecution Team has not directly reviewed the possibly privileged documents it asks this Court to release. But the Filter Team has filed, under seal, thirteen representative sample communications under seal for this Court's review. [DE 74]. Upon the Court's Order, the Filter team submitted the remaining 1,354 documents via conventional filling. [DE 82]. The Court has had the opportunity to review these documents. Upon careful consideration, the Court finds they are protected by the attorney-client privileged and are not subject to the crime-fraud exception.

## II.   DISCUSSION

"The attorney-client privilege attaches, of course, to confidential communications between an attorney and client for the purposes of securing legal advice or assistance." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334 (11th Cir. 2018) (citation omitted). The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). At the same time, "[t]he attorney-client privilege does not protect communications made in furtherance of a crime or fraud." *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987). The Eleventh Circuit applies a two-part test to determine whether the crime-fraud exception applies to an otherwise privileged communication. *Id.* First, the Government must make a "a prima

facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice." *Id.* Then, the Government must show that the "attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *Id.*

      *a. Whether the Government made prima facie showing that Defendants engaged in fraudulent conduct*

In support of this first prong, the Government relies on the indictment by which the Grand Jury determined probable cause existed to charge Defendants with an eight-count indictment alleging a fraudulent scheme. In response, Defendants argue this fact alone "does not establish the necessary prima facie showing," without citing to any supporting case law. *See* [DE 83] p. 15.

Recently, Chief Judge Altonaga reasoned that "for crime-fraud purposes, an 'indictment provides a reasonable basis to believe that [a defendant] was engaged in criminal or fraudulent activity.'" *United States v. Stein*, No. 21-20321-CR, 2023 WL 2585033, at *4 (S.D. Fla. Mar. 21, 2023) (Altonaga, J.) (quoting *United States v. Gorski*, 807 F.3d 451, 461 (1st Cir. 2015)). The Chief Judge explained this is so because "the grand jury has already been 'satisfied by a showing of evidence that establish[es] the elements of" criminal or fraudulent activity." *United States v. Stein*, No. 21-20321-CR, 2023 WL 2585033, at *4 (S.D. Fla. Mar. 21, 2023) (quoting *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987)). The Court agrees with this reasoning. Furthermore, this standard presents a "low hurdle." *In re Grand Jury Subpoena,* 2 F.4th 1339, 1345, 1350 (11th Cir. 2021). Accordingly, the Court is persuaded that the first prong is met here; the indictment provides sufficient grounds to overcome this "low hurdle" of showing a *prima facie* case.

### b. *Whether Defendants obtained assistance of counsel in furtherance of the criminal or fraudulent activity*

"The second prong is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong." *In re Grand Jury Investigation*, 842 F.2d 1223, 1227 (11th Cir. 1987). While "[c]ourts have enunciated slightly different formulations for the degree of relatedness necessary to meet that standard," the "different formulations share a common purpose-identifying communications that should not be privileged because they were used to further a crime or a fraud." *Id.* The Court's determination on this prong must "take into account that the government does not know precisely what the material will reveal or how useful it will be." *Id.* (citing *Sealed Case I,* 676 F.2d 793, 814 n. 83 (D.C. Cir. 1982)).

In this case, without having seen the materials in question, the Prosecution Team argues, based on Defendants' sworn deposition testimony from preceding civil actions, that "when pressed on the illegal nature of their operations, the Defendants used the attorney-client privilege as a smokescreen to maintain the facial legitimacy of their scheme." Further, "each time the Defendants learned of the illicit nature of the HIV drugs supplied by their black-market suppliers, they contacted counsel and, in essence, used the attorney-client privilege to shield their criminal conduct from disclosure." The Prosecution Team points to several episodes in the deposition testimony during which Patrick and Charles Boyd were questioned about their supplier's (Boulevard's) falsified T3/pedigrees.[3] Each time, Defendants responded with something to the effect of "I believe in all instances we contacted our legal [team], Frier Levitt." Additionally, the Government argues the compliance director stated that Charles Boyd often overruled her objections by claiming Safe Chain was covered by legal counsel.

---

[3] T3s, or pedigrees, are documents required to accompany the wholesale distribution of prescription drugs and consist of transaction information, transaction history, and a transaction statement. *See* Indictment [DE 10] ¶ 2.

Defendants respond that the standard the Government advocates would expand the exception to include any instance in which a defendant, charged with fraud, consulted an attorney. Defendants further urge that there is no evidence that Defendants used counsel as a façade to conceal illegal activity. Defendants also take the position that the motion is untimely, but because the Court resolves this Motion on other grounds, we decline to consider this point.

At the outset, the Court notes that invoking the attorney-client privilege in response to questioning does not itself create a presumption that the conversations with counsel were in furtherance of fraud. Such an application would subvert the intention of the privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (the "purpose of the privilege" is "to encourage clients to make full disclosure to their attorneys.") (citation omitted). As to whether the materials themselves are privileged, neither the Prosecution Team nor the Filter Team (when asked during the July 7, 2025 hearing outside of the presence of the Prosecution Team) directly explain how the specific communications at issue were in furtherance of any crime or fraud. The Court's *in camera* review of the records reveals Defendants consulted their attorneys in the ordinary course: the communications do not appear to be in furtherance of the alleged crime or fraud. The emails reveal that Defendants asked for help drafting email responses to inquiries, sought advice on how to respond to complaints from customers, and cc'ed attorneys where they thought it was important or necessary to do so. The apparent connection between these emails and the alleged illegal activity is the overlap in timing. But that alone is not sufficient to apply the crime-fraud exception. *See Johnson-Nixon v. Brunswick Hous. Auth.*, No. 2:23-CV-84, 2025 WL 896463, at *12 (S.D. Ga. Mar. 24, 2025) (finding that a "blanket request for all documents . . . that involve counsel and that occurred close in time to the conduct underlying Plaintiff's claims" is "not sufficient to support the applicability of the crime-fraud exception.").

While the Court acknowledges that "[t]he privilege is the client's, so it is the client's knowledge and intentions that are of paramount concern to the application of the crime-fraud exception" *D.O.T. Connectors, Inc. v. J.B. Nottingham & Co.*, No. 4:99CV311-WS, 2001 WL 34104927, at *1 (N.D. Fla. Jan. 23, 2001), the documents at issue do not indicate Defendants' intent to use their counsel in furtherance of any alleged illegal activity. Safe Chain employees treated their attorneys the way any business would. There is no indication from the email communications that the attorney-client relationship devolved into a mutual conspiracy in which either or both sides sought to "further" any alleged criminal or fraudulent activity. In addition, while true that "the attorney need know nothing about the client's ongoing or planned illicit activity for the exception to apply," *see id.*, the Court notes that Frier Levitt attorneys behaved as any attorney would, providing advice on drafting email responses to product complaints. Furthermore, the Court notes that Frier-Levitt attorneys were in a continuing relationship with Safe Chain that dated back to 2018, prior to the period of the alleged conspiracy. This factor weighs against applying the crime-fraud exception. *Compare United States v. Cleckler,* 265 F. App'x 850, 854 (11th Cir. 2008) (applying the crime-fraud exception where, *inter-alia,* counsel was obtained *after* defendant received an IRS report stating he owed additional taxes).

Accordingly, the Court finds the crime-fraud exception does not apply to the privileged materials here. To find otherwise would collapse the two prongs of the crime-fraud exception into a single inquiry of whether defendants were engaged in criminal or fraudulent activity and then consulted an attorney during the time of that alleged activity.

    c. *Advice of counsel and good faith defenses*

During the hearing, the Court asked defense counsel whether Defendants intend to raise good faith or reliance on counsel affirmative defenses. Defense counsel stated it could not provide

7

an answer until the privilege log was completed on July 15, the agreed upon date for completing the privilege log. If Defendants decide to raise either of these defenses, it is possible the Court will release materials at issue to the Prosecution Team regardless of this Court's determination as to the crime-fraud exception. *See, e.g.*, *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998)) ("a litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion."). While the advice-of-counsel defense is not one of the defenses that must be raised before trial under rule 12(b)(3) of the Federal Rules of Criminal Procedure, raising these defenses sooner rather than later mitigates the possibility that the Court will need to consider postponing the trial or taking a recess during the trial to allow the Prosecution Team to review the documents at issue.

### III.  CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. At this juncture, the Government's Motion [DE 72] is hereby **DENIED WITHOUT PREJUDICE** to the Government renewing if Defendants raise the defense of good faith or advice of counsel.

2. Unless and until defense counsel notifies the Court of its intent to raise the good faith or advice of counsel defense, the hearing set for July 16, 2025, at 1:15 PM is **CANCELLED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 10th day of July, 2025.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:
Counsel of record