UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 24-cr-205500 Dimitrouleas/Hunt

UNITED STATES OF AMERICA, | Fort Lauderdale, Florida
September 22, 2025
vs.
9:00 AM - 9:25 AM
PATRICK BOYD and CHARLES BOYD, | Volume IV
Defendants. | Pages 1 to 23

---

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE WILLIAM P. DIMITROULEAS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:
Alexander Pogozelski, Esquire
Jacqueline DerOvanesian, Esquire
Assistant United States Attorneys
99 NE 4th Street
Miami, Florida 33132

FOR DEFENDANT PATRICK BOYD:
William Barzee, Esquire
Ivlis Mantilla, Esquire
Barzee Flores
40 NW 3rd Street Ph 1
Miami, Florida 33128

FOR DEFENDANT CHARLES BOYD:
Bruce Zimet, Esquire
633 S. Federal Highway Fl 6
Fort Lauderdale, Florida 33301

STENOGRAPHICALLY REPORTED BY:

PATRICIA BAILEY-ENTIN, RPR, FPR
Official Court Reporter before:
The Honorable William P. Dimitrouleas
United States District Court

(Call to the Order of the Court:)

THE COURT: We're back on the record.

Counsel are present. Both defendants are present.

We had a phone call from Juror Medina this morning saying he was at the hospital and has chest pains. So we can recess for today and see if he's better by Thursday, or we can excuse him.

What's the parties' position?

MR. BARZEE: Your Honor, may we have a moment with our clients?

THE COURT: Sure.

MR. ZIMET: Your Honor, which seat?

THE COURT: Medina. He's Number 14 on the juror list. He's the Uber driver. He also has a court date on October 8th that we have to deal with.

MR. POGOZELSKI: From the Government's perspective, we would ask that the Court excuse him in light of those two conflicts. We have two alternates. Our current witness is an out-of-town witness. Additional witnesses will be out-of-town witnesses, and we'll try and speed things along here today.

THE COURT: Mr. Zimet.

MR. ZIMET: Judge, we want to keep him. We think it's important to keep him. This trial is probably going to go close to November. We only have two alternates. I think, at this point, the safe thing to do is wait until Thursday to see

what his condition is to make a judgment then.

But we want to keep him at this point.

THE COURT: I think I agree. At the pace that this case is going, I think we are going to be in November.

If I lose an alternate now, we may have other jurors that have chest pains as this case drags on and on.

MR. POGOZELSKI: Well, I guess, Your Honor, this morning this witness who is on the stand would then have to stay here. She has been here -- well, she'll have to stay until Thursday. And then, I guess, depending on the cross, she could be here for weeks with kids at home. It really puts this witness in a pretty bad spot.

THE COURT: It does.

Do you want me to excuse him? If we lose two more jurors, then we have to try this thing all over again.

MR. POGOZELSKI: I certainly do not want that to happen, Your Honor. I'm trying to remember if -- we still have two alternates. Have there been indications that any of the other alternates or any of the other jurors -- I mean, obviously, this was an unexpected development. -

THE COURT: Well, Mr. Gray wasn't happy about being here. He's the one who had the fashion show that he wanted to prepare for.

MR. POGOZELSKI: That's true. I think, now, with the court's schedule, there are at least days off that he might be

able to or should be able to work on his project.

THE COURT: But he won't be able to be there during the fashion show.

MR. ZIMET: And, Judge, practically speaking, we do have airplanes from here to Maryland. They can send her home for three days, come back, and go back next weekend.

It seems a resolvable issue. It's not resolvable if we're losing a juror, who should be on the jury. There's not enough information now to excuse him.

MR. POGOZELSKI: I guess the only other issue is that we have -- we do have an important witness who we're planning to call on this Thursday, and that witness has prepaid vacation plans for about three weeks beginning October 1st. And so now, we're concerned we would not even be able to call her if we do not start again today.

THE COURT: Well, I mean, we can always call a witness out of turn. I don't know how long that witness is going to take.

MR. POGOZELSKI: I would expect her direct to be -- how long? -- two hours.

THE COURT: West Palm Beach, Monday the 28th, I'm flying in that morning; so, you know, I have scheduled it from 1:00 to 5:00. That's assuming that the flight doesn't get delayed.

MR. POGOZELSKI: So you're saying there could be a

possibility of a full day on the 29th?

THE COURT: I think we're scheduled to have a full day on the 29th.

THE COURTROOM DEPUTY: We're starting at 1:00.

THE COURT: At 1:00 on the 29th?

That's right. I'm doing the same thing I told the jurors not to do -- is I'm looking at the wrong dates. So Monday the 29th is when I'm flying in.

So if the plane is late, I guess you guys can't start without me.

On the 30th, we have the 9:30 to 5:00.

THE COURTROOM DEPUTY: Correct.

THE COURT: So the only days that we have left is Thursday 10:00 to 5:00. Next Monday 1:00 to 5:00, and next Tuesday 9:30 to 5:00.

MR. POGOZELSKI: Right. And so that does make it difficult for our witness who is leaving. And if we lose this juror -- I guess I would suggest we excuse this juror. But going forward, if this comes up again, then, obviously, we could break or recess on those other days.

There are other days that are off, and so hopefully the situation does not arise on one of the days where we are in trial over the next two weeks.

I just think excusing one juror -- right now, with this witness on the stand and with our other witness traveling puts

the Government in a very difficult spot.

THE COURT: Well, if we recess for today, why couldn't you put your witness on Thursday out of order and then when she's done, then put your witness back on, Ms. Divilio, to resume direct, and she's done on Thursday?

MR. ZIMET: That would make sense, Judge.

MR. BARZEE: We agree with that, as well, Your Honor.

MR. ZIMET: Judge, I will point out the Government knew they had witnesses leaving. They opposed a continuance and said they're ready to go to trial.

THE COURT: You're always going to have problems with out-of-state witnesses no matter when the case gets set for.

MR. ZIMET: Understood.

THE COURT: So what's the Government position on calling your witness that is going to be unavailable October 1st, first thing on Thursday?

MR. POGOZELSKI: We prefer not to. We strongly prefer not to because we would like to call the case agent prior to that witness.

So again, that really disturbs and would impact the traveling witness's expected testimony because the case agent is the one who brings in a lot of evidence of the defendants' own statements and defendants' own emails that are directly relevant to the traveling witness's expected testimony.

So we strongly prefer to excuse this juror, and then if

anything else comes up --

THE COURT: Let me ask you a question: Let's assume I excuse the juror and we lose two more jurors and the defense doesn't agree to go with 11 jurors, am I going to have to retry the case, or are you going to dismiss it?

MR. POGOZELSKI: We certainly wouldn't dismiss the case, Your Honor.

THE COURT: I think I'm going to recess for today.

Anything further before I bring the jury in?

MR. POGOZELSKI: And just to clarify: So if we're calling a witness out of order, then we would -- first on Thursday, we would call our case agent and then the traveling witness?

THE COURT: I don't know how long your case agent is going to take. I don't know what their cross is going to be. It's your case. I'm trying to facilitate your out-of-state witness, but if it turns out that the case agent takes a long time and you don't get finished with your out-of-state witness before she's going to leave, then she has to stay or I have to strike her testimony.

MR. POGOZELSKI: Understood, Your Honor.

THE COURT: Let's see if we have all the rest of the jurors.

(Jury enters.)

THE COURT: Does counsel concede the presence of the

the jury and waive its polling?

MR. ZIMET: Yes, Your Honor.

MR. POGOZELSKI: Yes, sir.

MR. BARZEE: Yes, Your Honor.

THE COURT: Did everyone follow my admonition not to discuss the case or allow it to be discussed in your presence?

Mr. Medina called in sick this morning. And I talked it over with the lawyers, and I don't think I'm comfortable excusing Mr. Medina, moving up an alternate, and only having one alternate left for the rest of this case; so the alternative is to recess for today.

We're off tomorrow and Wednesday. Hopefully, he's feeling fine on Thursday, and we can resume with all 14 jurors.

So have a nice couple of days off, and I will ask you to come back at 10:00 on Thursday.

(Jury out.)

THE COURT: Have defense counsel seen the Government's motion to exclude cross-examination?

MR. ZIMET: We got it, I think, Saturday, yes, Judge.

THE COURT: What's the defense's position on it?

MR. ZIMET: We oppose it, Judge.

THE COURT: I'm sorry?

MR. ZIMET: We oppose the motion.

We're not even sure what statement they're talking about. They haven't identified what they're saying should not

come in and the circumstances of it.

I assume it's from the witness who told them that a statement was made. If that's the case, I think it's Brady and they should disclose it to us.

THE COURT: What's the Government's position?

MR. POGOZELSKI: The motion has to do with the cross-examination of Ms. Divilio about any statements that either defendant, Charles Boyd or Patrick Boyd, if he was on the call, on these two conference calls, any statements that they may have made to these two attorneys, John Marone, who has passed away, and Martha Rumore, who is still alive.

And because Ms. Divilio is not on these calls, we are moving the Court to preclude questioning along the lines of: Isn't it possible that John Marone said that all of this was completely legal and they didn't have to get any more documentation? Or you weren't on the call, so isn't it possible that Charles Boyd told these lawyers everything that had happened, despite not -- a lot of those details being omitted from his initial email to the attorneys?

This witness, Ms. Divilio, was not on the initial email. There's no indication she was on the October 14th calls, especially because there's a message where Charles Boyd says, "I will fill you in on them."

And so it would be improper, inadmissible, and it would be leaving the jury with some impression that the defendant or

the defendants and the lawyers said things on a call and she was not on those calls and would have no personal knowledge about them.

THE COURT: But it's going to come out that Charles Boyd had a phone call with a lawyer, but you just don't want her to say what was said?

MR. POGOZELSKI: Well, Ms. Divilio was not on that phone call.

THE COURT: Right.

But is it going to come out that there was a phone call between Charles Boyd and a lawyer?

MR. POGOZELSKI: I would imagine when the other lawyer is on the stand, that would come out, yes. But for this witness, that type of cross-examination is improper.

THE COURT: Let me ask you: Why can't one of the defense attorneys ask her whether or not, when she talked to Charles Boyd, he said that he had had a phone conversation with a lawyer?

MR. POGOZELSKI: Well, that's in a document, you know. So that's not -- we're not disputing that.

We just don't want -- and we think it's totally inappropriate -- any questioning to suggest what Charles Boyd may or may not have said on that call or what a lawyer may or may not have said on that call because she was not on it and has no personal knowledge of the call or what was said.

THE COURT: So what you're afraid of is her saying on cross-examination that "Charles Boyd told me that this was the substance of the phone call with a lawyer"?

MR. POGOZELSKI: No. I'm afraid of the questions being phrased in a certain way to suggest that the attorneys approved the conduct or that Charles Boyd disclosed everything that had happened with Boulevard and King Kimchi.

I'm more concerned with the question trying to leave the jury with the impression that things were said where there was no proof that they were said, especially when she was not on the phone calls.

THE COURT: If you were to ask her, "What did Charles Boyd say about his conversation with the lawyer?" what would her answer be?

MR. POGOZELSKI: I have not asked her that specific question about that phone call. She has said in the past, at least based on the emails that were forwarded to her, that Charles Boyd did not provide complete, accurate information to the lawyers. And she's expected to testify about that when we introduce the email that was forwarded to her about a month later, which is based on Charles Boyd's statements in the email.

THE COURT: I'm not comfortable excluding it in a vacuum. So when they ask the questions, you can object, and I will rule on it.

MR. POGOZELSKI: Okay, Your Honor.

THE COURT: Your motion in limine is denied without prejudice.

Anything else we need to discuss?

MR. POGOZELSKI: Yes. There's one other issue that my colleague, Ms. DerOvanesian, wanted to address.

MS. DEROVANESIAN: Yes, Your Honor.

Just as we are preparing for upcoming witnesses in the coming weeks, there's one issue that relates to two witnesses who are the attorneys who previously represented the defendants.

They were the subject of the Court's ruling on the subject matter waiver with respect to all his privileged documents. There's one remaining issue, however, because these witnesses have told the Government that there was a post- -- one or more post-indictment conversations that they had with defense counsel.

And although we haven't gone into the substance of those conversations, in case there is some sort of privilege issue, we did want to, kind of, nail down whether defense counsel intends to waive any sort of privilege that might exist over those conversations or, alternatively, rule out any questioning or reference to those conversations at trial.

In our view, it should be one or the other. But, of course, we want to know if the substance of those conversations

will be raised at trial or will be permitted to be raised at trial so that we can ask and prepare and know what happened in those conversations as well.

THE COURT: So you don't plan on asking, but you want to know if they're going to ask?

MS. DEROVANESIAN: Yes, Your Honor. Because if they plan to ask on cross-examination, we would like to speak to these witnesses about those conversations before they testify because, of course, if it just comes up for the first time on cross-examination, we don't have an opportunity to speak to the witnesses about those conversations at that point.

THE COURT: Mr. Zimet.

MR. ZIMET: I don't plan on asking them, Judge. I know what I spoke to them about, and I plan to ask questions. But I don't plan to say, "Oh, when we spoke two weeks ago," or whatever time it was, "didn't you say this or that?"

MS. DEROVANESIAN: Your Honor, if they intend to refer to the facts that this conversation happened at all or make any suggestion as to what they were about or what that should imply that those conversations happened --

THE COURT: I didn't hear Mr. Zimet say that.

I heard him say that he knows what he talked about but he doesn't plan on bringing it up.

Did I hear wrong, Mr. Zimet?

MR. ZIMET: I didn't plan on bringing it up. We had a

conversation. The subject matter I'm going to bring up, but that's --

(Reporter clarification.)

MR. ZIMET: I'm sorry.

The subject matter -- obviously, I asked questions about their representation. But I'm not going to say -- if they give me a contrary answer, all right, I'm not going to say, "Didn't you say something else when we had this conversation three weeks ago?"

THE COURT: So you're going to bring up some of the conversations you had with the former lawyers, but you don't want them to be able to talk about it?

MR. ZIMET: No, I'm not bringing up the conversation.

THE COURT: You're going to bring up the fact that there was a conversation?

MR. ZIMET: No. We talked about things that happened during their representation.

I'm going to ask questions in cross-examination about their representation up until the end of this conspiracy.

I'm not going to ask them, "Didn't you and I talk about this issue three weeks ago?"

THE COURT: So what you're saying is if they say something different on the stand than what they've told you, you want to be able to impeach them with the fact that they told you something different?

MR. ZIMET: I don't plan on doing that.

THE COURT: How would you do that as an attorney in the case?

MR. ZIMET: How would I do...

THE COURT: I mean, do you plan on testifying if they say something different?

MR. ZIMET: I will make a judgment call whether I want to try to impeach them with that or other evidence. I will make a judgment call as to that.

If I think I want to try to go to that conversation, I will inform the Court that I intend to do that. That's not my plan to do it.

THE COURT: Okay. So the disadvantage is they can't talk to their lawyers ahead of time.

Mr. ZIMET: It's a balancing, Judge, what I'm giving up and --

THE COURT: I think it is a balancing, and given the fact that they'll proffer outside the presence of the jury any impeachment that he wants to do, I think that's the way we're going to go.

He doesn't plan on asking questions about it. If something happens and they say something different, then he's going to proffer it outside the presence of the jury, and then I will decide whether I'm going to allow it.

MS. DEROVANESIAN: Your Honor, understanding this is

purely a hypothetical at this point, if that were to happen, that some part of that conversation is used for impeachment purposes, at that point, would the Court consider that the privilege has been waived and the Government is free to inquire on the stand, at least, about the rest of that conversation and the context of it?

THE COURT: I will cross that bridge when we get to it, if we get to it.

MR. POGOZELSKI: Just one final point.

I understand the Court's ruling. I think the way this is likely to come up is based upon, at least, the interviews that we have done of these attorneys and when they learned of things they were not told or informed of by these defendants during the conspiracy period, they had different reactions in our meetings.

And so I'm sure what they said on phone calls with defense counsel and/or the defendants was different than what they said when they learned and were interviewed by us and shown documents and shown information that they were not made aware of at the relevant time that they provided the advice.

So I just see that it's inevitable that this is going to be used for impeachment evidence, and it's similar to the privilege issues we were dealing with back in the early summer.

THE COURT: Well, they told you certain things that you think is incriminating to the Boyds, and you think that they

must have said something different to Mr. Zimet?

MR. POGOZELSKI: Yes. Because those conversations with Mr. Zimet were prior to the privilege waiver, prior to us meeting with the lawyers, prior to us showing them documents and information that was not disclosed to them.

THE COURT: I think you're speculating that what they told Mr. Zimet is going to be different from what they told your investigators.

MR. POGOZELSKI: I think it's a very strong likelihood, based on the shock that they had when we interviewed them.

MR. ZIMET: Judge, can I just say something for a second?

This is just a back-door attempt to get into all sorts of things they shouldn't be able to get into.

It's very easy. On direct examination, "Up until whatever date it was, did you believe X, Y and Z?" That's probably what they told me, is my guess.

"After reviewing certain documents, did you change your mind?"

"Yes."

That's the same thing. That's all that's going to come out.

THE COURT: Again, I think it's hard to rule in a vacuum, and I'll stick with my prior indication that I will deny this request without prejudice to an objection being made

during the trial.

Anything else we need to discuss?

MR. POGOZELSKI: Nothing from the Government, Your Honor. Thank you.

MR. ZIMET: No, sir.

MR. BARZEE: No, Your Honor.

THE COURT: All right. See everybody back 10 o'clock on Thursday.

(Trial adjourned at 9:25 AM.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

DATE: 9/23/25

/s/Patricia Bailey-Entin
PATRICIA BAILEY-ENTIN, FPR, RPR
Official Court Reporter
United States District Court
Southern District of Florida
U.S. Federal Courthouse
299 East Broward Boulevard
Fort Lauderdale, Florida 33301

## /

**/s/Patricia** [1] - 19:16

## 1

**1** [2] - 1:8, 1:19
**10** [1] - 19:7
**10:00** [2] - 6:14, 9:15
**11** [1] - 8:4
**14** [2] - 3:13, 9:13
**14th** [1] - 10:21
**1:00** [4] - 5:23, 6:4, 6:5, 6:14
**1st** [2] - 5:13, 7:16

## 2

**2025** [1] - 1:5
**22** [1] - 1:5
**24-cr-205500** [1] - 1:2
**28th** [1] - 5:21
**299** [1] - 19:19
**29th** [4] - 6:1, 6:3, 6:5, 6:8

## 3

**30th** [1] - 6:11
**33128** [1] - 1:19
**33132** [1] - 1:16
**33301** [2] - 1:22, 19:20
**3rd** [1] - 1:19

## 4

**40** [1] - 1:19
**4th** [1] - 1:15

## 5

**5:00** [5] - 5:23, 6:11, 6:14, 6:15

## 6

**6** [1] - 1:22
**633** [1] - 1:22

## 8

**8th** [1] - 3:14

## 9

**9/23/25** [1] - 19:16
**99** [1] - 1:15
**9:00** [1] - 1:6
**9:25** [2] - 1:6, 19:9
**9:30** [2] - 6:11, 6:15

## A

**able** [7] - 5:1, 5:2, 5:14, 15:12, 15:24, 18:14
**above-entitled** [1] - 19:14
**accurate** [2] - 12:18, 19:13
**additional** [1] - 3:19
**address** [1] - 13:6
**adjourned** [1] - 19:9
**admonition** [1] - 9:5
**advice** [1] - 17:20
**afraid** [2] - 12:1, 12:4
**agent** [5] - 7:18, 7:21, 8:12, 8:14, 8:17
**ago** [3] - 14:15, 15:9, 15:21
**agree** [3] - 4:3, 7:7, 8:4
**ahead** [1] - 16:14
**airplanes** [1] - 5:5
**Alexander** [1] - 1:13
**alive** [1] - 10:11
**allow** [2] - 9:6, 16:24
**alternate** [3] - 4:5, 9:9, 9:10
**alternates** [4] - 3:18, 3:24, 4:18, 4:19
**alternative** [1] - 9:11
**alternatively** [1] - 13:22
**AM** [3] - 1:6, 19:9
**AMERICA** [1] - 1:4
**answer** [2] - 12:14, 15:7
**APPEARANCES** [1] - 1:11
**approved** [1] - 12:5
**arise** [1] - 6:22
**Assistant** [1] - 1:14
**assume** [2] - 8:2, 10:2
**assuming** [1] - 5:23
**attempt** [1] - 18:13
**attorney** [1] - 16:2
**Attorneys** [1] - 1:15
**attorneys** [6] - 10:10, 10:19, 11:16, 12:5, 13:10, 17:12
**aware** [1] - 17:20

## B

**back-door** [1] - 18:13
**bad** [1] - 4:12
**Bailey** [1] - 19:16
**BAILEY** [2] - 2:2, 19:17
**Bailey-Entin** [1] - 19:16
**BAILEY-ENTIN** [2] - 2:2, 19:17
**balancing** [2] - 16:15, 16:17
**BARZEE** [4] - 3:9, 7:7, 9:4, 19:6
**Barzee** [2] - 1:17, 1:18
**based** [4] - 12:17, 12:21, 17:11, 18:10
**Beach** [1] - 5:21
**BEFORE** [1] - 1:10
**beginning** [1] - 5:13
**better** [1] - 3:6
**between** [1] - 11:11
**Boulevard** [2] - 12:7, 19:19
**Boyd** [12] - 10:8, 10:17, 10:22, 11:5, 11:11, 11:17, 11:22, 12:2, 12:6, 12:13, 12:18
**BOYD** [4] - 1:7, 1:17, 1:21
**Boyd's** [1] - 12:21
**Boyds** [1] - 17:25
**Brady** [1] - 10:3
**break** [1] - 6:20
**bridge** [1] - 17:7
**bring** [4] - 8:9, 15:1, 15:10, 15:14
**bringing** [3] - 14:23, 14:25, 15:13
**brings** [1] - 7:22
**Broward** [1] - 19:19
**Bruce** [1] - 1:21
**BY** [1] - 2:1

## C

**case** [16] - 4:4, 4:6, 7:12, 7:18, 7:21, 8:5, 8:7, 8:12, 8:14, 8:16, 8:17, 9:6, 9:10, 10:3, 13:19, 16:3
**CASE** [1] - 1:2
**certain** [3] - 12:5, 17:24, 18:18
**certainly** [2] - 4:16, 8:6
**certify** [1] - 19:12
**change** [1] - 18:18
**Charles** [12] - 10:8, 10:17, 10:22, 11:5, 11:11, 11:17, 11:22, 12:2, 12:6, 12:12, 12:18, 12:21
**CHARLES** [2] - 1:7, 1:21
**chest** [2] - 3:5, 4:6
**circumstances** [1] - 10:1
**clarification** [1] - 15:3
**clarify** [1] - 8:10
**clients** [1] - 3:10
**close** [1] - 3:24
**colleague** [1] - 13:6
**comfortable** [2] - 9:8, 12:23
**coming** [1] - 13:9
**complete** [1] - 12:18
**completely** [1] - 10:15
**concede** [1] - 8:25
**concerned** [2] - 5:14, 12:8
**condition** [1] - 4:1
**conduct** [1] - 12:6
**conference** [1] - 10:9
**conflicts** [1] - 3:18
**consider** [1] - 17:3
**conspiracy** [2] - 15:19, 17:14
**context** [1] - 17:6
**continuance** [1] - 7:9
**contrary** [1] - 15:7
**conversation** [10] - 11:17, 12:13, 14:18, 15:1, 15:9, 15:13, 15:15, 16:10, 17:2, 17:5
**conversations** [11] - 13:16, 13:19, 13:22, 13:23, 13:25, 14:3, 14:8, 14:11, 14:20, 15:11, 18:2
**correct** [1] - 6:12
**counsel** [6] - 3:3, 8:25, 9:17, 13:17, 13:21, 17:17
**couple** [1] - 9:14
**course** [2] - 13:25, 14:9
**COURT** [49] - 1:1, 3:2, 3:11, 3:13, 3:21, 4:3, 4:13, 4:21, 5:2, 5:16, 5:21, 6:2, 6:5, 6:13, 7:2, 7:11, 7:14, 8:2, 8:8, 8:14, 8:22, 8:25, 9:5, 9:17, 9:20, 9:22, 10:5, 11:4, 11:9, 11:15, 12:1, 12:12, 12:23, 13:2, 14:4, 14:12, 14:21, 15:10, 15:14, 15:22, 16:2, 16:5, 16:13, 16:17, 17:7, 17:24, 18:6, 18:23, 19:7
**Court** [9] - 2:3, 2:4, 3:1, 3:17, 10:13, 16:11, 17:3, 19:17, 19:18
**court** [1] - 3:14
**Court's** [2] - 13:12, 17:10
**court's** [1] - 4:25
**Courthouse** [1] - 19:19
**COURTROOM** [2] - 6:4, 6:12
**cross** [10] - 4:10, 8:15, 9:18, 10:7, 11:14, 12:2, 14:7, 14:10, 15:18, 17:7
**cross-examination** [7] - 9:18, 10:7, 11:14, 12:2, 14:7, 14:10, 15:18
**current** [1] - 3:18

## D

**DATE** [1] - 19:16
**date** [2] - 3:14, 18:16
**dates** [1] - 6:7
**days** [7] - 4:25, 5:6, 6:13, 6:20, 6:21, 6:22, 9:14
**deal** [1] - 3:15
**dealing** [1] - 17:23
**decide** [1] - 16:24
**DEFENDANT** [2] - 1:17, 1:21
**defendant** [2] - 10:8, 10:25
**defendants** [5] - 3:3, 11:1, 13:11, 17:13, 17:17
**Defendants** [1] - 1:8
**defendants'** [2] - 7:22, 7:23
**defense** [6] - 8:3, 9:17, 11:16, 13:17, 13:20, 17:17
**defense's** [1] - 9:20
**delayed** [1] - 5:24
**denied** [1] - 13:2
**deny** [1] - 18:25
**DEPUTY** [2] - 6:4, 6:12
**DEROVANESIAN** [4] - 13:7, 14:6, 14:17, 16:25
**DerOvanesian** [2] - 1:13, 13:6
**despite** [1] - 10:18
**details** [1] - 10:18
**development** [1] - 4:20
**different** [8] - 15:23, 15:25, 16:6, 16:22, 17:14, 17:17, 18:1,

18:7
**difficult** [2] - 6:17, 7:1
**DIMITROULEAS** [1] - 1:10
**Dimitrouleas** [1] - 2:3
**Dimitrouleas/Hunt** [1] - 1:2
**direct** [3] - 5:19, 7:5, 18:15
**directly** [1] - 7:23
**disadvantage** [1] - 16:13
**disclose** [1] - 10:4
**disclosed** [2] - 12:6, 18:5
**discuss** [3] - 9:6, 13:4, 19:2
**discussed** [1] - 9:6
**dismiss** [2] - 8:5, 8:6
**disputing** [1] - 11:20
**DISTRICT** [3] - 1:1, 1:1, 1:10
**District** [3] - 2:4, 19:18, 19:18
**disturbs** [1] - 7:20
**Divilio** [5] - 7:4, 10:7, 10:12, 10:20, 11:7
**DIVISION** [1] - 1:2
**do..** [1] - 16:4
**document** [1] - 11:19
**documentation** [1] - 10:16
**documents** [4] - 13:14, 17:19, 18:4, 18:18
**done** [3] - 7:4, 7:5, 17:12
**door** [1] - 18:13
**down** [1] - 13:20
**drags** [1] - 4:6
**driver** [1] - 3:14
**during** [4] - 5:2, 15:17, 17:14, 19:1

**E**

**early** [1] - 17:23
**East** [1] - 19:19
**easy** [1] - 18:15
**either** [1] - 10:8
**email** [4] - 10:19, 10:21, 12:20, 12:22
**emails** [2] - 7:23, 12:17
**end** [1] - 15:19
**enters** [1] - 8:24
**ENTIN** [2] - 2:2, 19:17
**Entin** [1] - 19:16
**entitled** [1] - 19:14
**especially** [2] - 10:22, 12:10
**Esquire** [5] - 1:13, 1:14, 1:17, 1:18, 1:21
**evidence** [3] - 7:22, 16:8, 17:22
**examination** [8] - 9:18, 10:7, 11:14, 12:2, 14:7, 14:10, 15:18, 18:15
**exclude** [1] - 9:18
**excluding** [1] - 12:23
**excuse** [7] - 3:7, 3:17, 4:14, 5:9, 6:18, 7:25, 8:3
**excusing** [2] - 6:24, 9:9
**exist** [1] - 13:21
**expect** [1] - 5:19
**expected** [3] - 7:21, 7:24, 12:19

**F**

**facilitate** [1] - 8:16
**fact** [3] - 15:14, 15:24, 16:18
**facts** [1] - 14:18
**fashion** [2] - 4:22, 5:3
**Federal** [2] - 1:22, 19:19
**fill** [1] - 10:23
**final** [1] - 17:9
**fine** [1] - 9:13
**finished** [1] - 8:18
**first** [3] - 7:16, 8:11, 14:9
**Fl** [1] - 1:22
**flight** [1] - 5:23
**Flores** [1] - 1:18
**FLORIDA** [1] - 1:1
**Florida** [6] - 1:4, 1:16, 1:19, 1:22, 19:18, 19:20
**flying** [2] - 5:22, 6:8
**follow** [1] - 9:5
**FOR** [3] - 1:13, 1:17, 1:21
**foregoing** [1] - 19:12
**former** [1] - 15:11
**FORT** [1] - 1:2
**Fort** [3] - 1:4, 1:22, 19:20
**forward** [1] - 6:19
**forwarded** [2] - 12:17, 12:20
**FPR** [2] - 2:2, 19:17
**free** [1] - 17:4
**full** [2] - 6:1, 6:2

**G**

**given** [1] - 16:17
**Government** [6] - 7:1, 7:8, 7:14, 13:15, 17:4, 19:3
**GOVERNMENT** [1] - 1:13
**Government's** [3] - 3:16, 9:17, 10:5
**gray** [1] - 4:21
**guess** [6] - 4:7, 4:10, 5:10, 6:9, 6:18, 18:17
**guys** [1] - 6:9

**H**

**happy** [1] - 4:21
**hard** [1] - 18:23
**hear** [2] - 14:21, 14:24
**heard** [1] - 14:22
**hereby** [1] - 19:12
**Highway** [1] - 1:22
**home** [2] - 4:11, 5:5
**Honor** [16] - 3:9, 3:12, 4:7, 4:17, 7:7, 8:7, 8:21, 9:2, 9:4, 13:1, 13:7, 14:6, 14:17, 16:25, 19:4, 19:6
**HONORABLE** [1] - 1:10
**Honorable** [1] - 2:3
**hopefully** [2] - 6:21, 9:12
**hospital** [1] - 3:5
**hours** [1] - 5:20
**hypothetical** [1] - 17:1

**I**

**identified** [1] - 9:25
**imagine** [1] - 11:12
**impact** [1] - 7:20
**impeach** [2] - 15:24, 16:8
**impeachment** [3] - 16:19, 17:2, 17:22
**imply** [1] - 14:19
**important** [2] - 3:23, 5:11
**impression** [2] - 10:25, 12:9
**improper** [2] - 10:24, 11:14
**inadmissible** [1] - 10:24
**inappropriate** [1] - 11:22
**incriminating** [1] - 17:25
**indication** [2] - 10:21, 18:24
**indications** [1] - 4:18
**indictment** [1] - 13:16
**inevitable** [1] - 17:21
**inform** [1] - 16:11
**information** [4] - 5:9, 12:18, 17:19, 18:5
**informed** [1] - 17:13
**initial** [2] - 10:19, 10:20
**inquire** [1] - 17:4
**intend** [2] - 14:17, 16:11
**intends** [1] - 13:21
**interviewed** [2] - 17:18, 18:10
**interviews** [1] - 17:11
**introduce** [1] - 12:20
**investigators** [1] - 18:8
**issue** [7] - 5:7, 5:10, 13:5, 13:9, 13:14, 13:20, 15:21
**issues** [1] - 17:23
**IV** [1] - 1:7
**Ivlis** [1] - 1:18

**J**

**Jacqueline** [1] - 1:13
**John** [2] - 10:10, 10:14
**Judge** [6] - 5:4, 7:6, 9:19, 9:21, 14:13, 16:15
**JUDGE** [1] - 1:10
**judge** [3] - 3:22, 7:8, 18:11
**judgment** [3] - 4:1, 16:7, 16:9
**Juror** [1] - 3:4
**juror** [7] - 3:13, 5:8, 6:18, 6:24, 7:25, 8:3
**jurors** [8] - 4:5, 4:15, 4:19, 6:7, 8:3, 8:4, 8:23, 9:13
**Jury** [1] - 8:24
**jury** [8] - 5:8, 8:9, 9:1, 9:16, 10:25, 12:9, 16:18, 16:23
**JURY** [1] - 1:9

**K**

**keep** [3] - 3:22, 3:23, 4:2
**kids** [1] - 4:11
**Kimchi** [1] - 12:7
**kind** [1] - 13:20
**King** [1] - 12:7
**knowledge** [2] - 11:2, 11:25
**knows** [1] - 14:22

**L**

**late** [1] - 6:9
**LAUDERDALE** [1] - 1:2
**Lauderdale** [3] - 1:4, 1:22, 19:20
**lawyer** [7] - 11:5, 11:11, 11:12, 11:18, 11:23, 12:3, 12:13
**lawyers** [7] - 9:8, 10:17, 11:1, 12:19, 15:11, 16:14, 18:4
**learned** [2] - 17:12, 17:18
**least** [4] - 4:25, 12:17, 17:5, 17:11
**leave** [2] - 8:19, 12:8
**leaving** [3] - 6:17, 7:9, 10:25
**left** [2] - 6:13, 9:10
**legal** [1] - 10:15
**light** [1] - 3:17
**likelihood** [1] - 18:9
**likely** [1] - 17:11
**limine** [1] - 13:2
**lines** [1] - 10:13
**list** [1] - 3:13
**looking** [1] - 6:7
**lose** [4] - 4:5, 4:14, 6:17, 8:3
**losing** [1] - 5:8

**M**

**Mantilla** [1] - 1:18
**Marone** [2] - 10:10, 10:14
**Martha** [1] - 10:11
**Maryland** [1] - 5:5
**matter** [5] - 7:12, 13:13, 15:1, 15:5, 19:14
**mean** [3] - 4:19, 5:16, 16:5
**Medina** [4] - 3:4, 3:13, 9:7, 9:9
**meeting** [1] - 18:4
**meetings** [1] - 17:15
**message** [1] - 10:22
**Miami** [2] - 1:16, 1:19
**might** [2] - 4:25, 13:21
**mind** [1] - 18:19
**moment** [1] - 3:9

**Monday** [3] - 5:21, 6:8, 6:14
**month** [1] - 12:20
**morning** [4] - 3:4, 4:8, 5:22, 9:7
**motion** [4] - 9:18, 9:23, 10:6, 13:2
**moving** [2] - 9:9, 10:13
**MR** [49] - 3:9, 3:12, 3:16, 3:22, 4:7, 4:16, 4:24, 5:4, 5:10, 5:19, 5:25, 6:16, 7:6, 7:7, 7:8, 7:13, 7:17, 8:6, 8:10, 8:21, 9:2, 9:3, 9:4, 9:19, 9:21, 9:23, 10:6, 11:7, 11:12, 11:19, 12:4, 12:15, 13:1, 13:5, 14:13, 14:25, 15:4, 15:13, 15:16, 16:1, 16:4, 16:7, 17:9, 18:2, 18:9, 18:11, 19:3, 19:5, 19:6
**MS** [4] - 13:7, 14:6, 14:17, 16:25
**must** [1] - 18:1

## N

**nail** [1] - 13:20
**NE** [1] - 1:15
**need** [2] - 13:4, 19:2
**next** [4] - 5:6, 6:14, 6:23
**nice** [1] - 9:14
**NO** [1] - 1:2
**nothing** [1] - 19:3
**November** [2] - 3:24, 4:4
**Number** [1] - 3:13
**NW** [1] - 1:19

## O

**o'clock** [1] - 19:7
**object** [1] - 12:24
**objection** [1] - 18:25
**obviously** [3] - 4:20, 6:19, 15:5
**October** [4] - 3:14, 5:13, 7:16, 10:21
**OF** [3] - 1:1, 1:4, 1:9
**Official** [2] - 2:3, 19:17
**omitted** [1] - 10:19
**one** [12] - 4:22, 6:22, 6:24, 7:22, 9:10, 11:15, 13:5, 13:9, 13:14, 13:16, 13:24, 17:9
**opportunity** [1] - 14:10
**oppose** [2] - 9:21, 9:23
**opposed** [1] - 7:9
**Order** [1] - 3:1
**order** [2] - 7:3, 8:11
**out-of-state** [3] - 7:12, 8:16, 8:18
**out-of-town** [2] - 3:19
**outside** [2] - 16:18, 16:23
**own** [2] - 7:23

## P

**pace** [1] - 4:3
**Pages** [1] - 1:8
**pains** [2] - 3:5, 4:6
**Palm** [1] - 5:21
**part** [1] - 17:2
**parties'** [1] - 3:8
**passed** [1] - 10:11
**past** [1] - 12:16
**PATRICIA** [2] - 2:2, 19:17
**PATRICK** [2] - 1:7, 1:17
**Patrick** [1] - 10:8
**period** [1] - 17:14
**permitted** [1] - 14:1
**personal** [2] - 11:2, 11:25
**perspective** [1] - 3:16
**Ph** [1] - 1:19
**phone** [9] - 3:4, 11:5, 11:8, 11:10, 11:17, 12:3, 12:11, 12:16, 17:16
**phrased** [1] - 12:5
**plan** [11] - 14:4, 14:7, 14:13, 14:14, 14:15, 14:23, 14:25, 16:1, 16:5, 16:12, 16:21
**plane** [1] - 6:9
**planning** [1] - 5:11
**plans** [1] - 5:13
**POGOZELSKI** [25] - 3:16, 4:7, 4:16, 4:24, 5:10, 5:19, 5:25, 6:16, 7:17, 8:6, 8:10, 8:21, 9:3, 10:6, 11:7, 11:12, 11:19, 12:4, 12:15, 13:1, 13:5, 17:9, 18:2, 18:9, 19:3
**Pogozelski** [1] - 1:13
**point** [7] - 3:25, 4:2, 7:8, 14:11, 17:1, 17:3, 17:9
**polling** [1] - 9:1
**position** [4] - 3:8, 7:14, 9:20, 10:5
**possibility** [1] - 6:1
**possible** [2] - 10:14, 10:17
**post** [2] - 13:15, 13:16
**post-indictment** [1] - 13:16
**practically** [1] - 5:4
**preclude** [1] - 10:13
**prefer** [3] - 7:17, 7:25
**prejudice** [2] - 13:3, 18:25
**prepaid** [1] - 5:12
**prepare** [2] - 4:23, 14:2
**preparing** [1] - 13:8
**presence** [4] - 8:25, 9:6, 16:18, 16:23
**present** [2] - 3:3
**pretty** [1] - 4:12
**previously** [1] - 13:10
**privilege** [5] - 13:19, 13:21, 17:4, 17:23, 18:3
**privileged** [1] - 13:13
**problems** [1] - 7:11
**proceedings** [1] - 19:13
**proffer** [2] - 16:18, 16:23
**project** [1] - 5:1
**proof** [1] - 12:10
**provide** [1] - 12:18
**provided** [1] - 17:20
**purely** [1] - 17:1
**purposes** [1] - 17:3
**put** [2] - 7:3, 7:4
**puts** [2] - 4:11, 6:25

## Q

**questioning** [3] - 10:13, 11:22, 13:23
**questions** [6] - 12:4, 12:24, 14:14, 15:5, 15:18, 16:21

## R

**raised** [2] - 14:1
**reactions** [1] - 17:14
**ready** [1] - 7:10
**really** [2] - 4:11, 7:20
**recess** [5] - 3:6, 6:20, 7:2, 8:8, 9:11
**record** [1] - 3:2
**refer** [1] - 14:17
**reference** [1] - 13:23
**relates** [1] - 13:9
**relevant** [2] - 7:24, 17:20
**remaining** [1] - 13:14
**remember** [1] - 4:17
**REPORTED** [1] - 2:1
**Reporter** [3] - 2:3, 15:3, 19:17
**representation** [3] - 15:6, 15:17, 15:19
**represented** [1] - 13:10
**request** [1] - 18:25
**resolvable** [2] - 5:7
**respect** [1] - 13:13
**rest** [3] - 8:22, 9:10, 17:5
**resume** [2] - 7:5, 9:13
**retry** [1] - 8:4
**reviewing** [1] - 18:18
**RPR** [2] - 2:2, 19:17
**rule** [3] - 12:25, 13:22, 18:23
**ruling** [2] - 13:12, 17:10
**Rumore** [1] - 10:11

## S

**safe** [1] - 3:25
**Saturday** [1] - 9:19
**schedule** [1] - 4:25
**scheduled** [2] - 5:22, 6:2
**seat** [1] - 3:12
**second** [1] - 18:12
**see** [5] - 3:6, 3:25, 8:22, 17:21, 19:7
**send** [1] - 5:5
**sense** [1] - 7:6
**September** [1] - 1:5
**set** [1] - 7:12
**shock** [1] - 18:10
**show** [2] - 4:22, 5:3
**showing** [1] - 18:4
**shown** [2] - 17:19
**sick** [1] - 9:7
**similar** [1] - 17:22
**situation** [1] - 6:22
**sorry** [2] - 9:22, 15:4
**sort** [2] - 13:19, 13:21
**sorts** [1] - 18:13
**SOUTHERN** [1] - 1:1
**Southern** [1] - 19:18
**speaking** [1] - 5:4
**specific** [1] - 12:15
**speculating** [1] - 18:6
**speed** [1] - 3:20
**spot** [2] - 4:12, 7:1
**stand** [5] - 4:8, 6:25, 11:13, 15:23, 17:5
**start** [2] - 5:15, 6:9
**starting** [1] - 6:4
**state** [3] - 7:12, 8:16, 8:18
**statement** [2] - 9:24, 10:3
**statements** [4] - 7:23, 10:7, 10:9, 12:21
**STATES** [3] - 1:1, 1:4, 1:10
**States** [3] - 1:14, 2:4, 19:18
**stay** [3] - 4:9, 8:19
**STENOGRAPHICALLY** [1] - 2:1
**stick** [1] - 18:24
**still** [2] - 4:17, 10:11
**Street** [2] - 1:15, 1:19
**strike** [1] - 8:20
**strong** [1] - 18:9
**strongly** [2] - 7:17, 7:25
**subject** [4] - 13:12, 13:13, 15:1, 15:5
**substance** [3] - 12:3, 13:18, 13:25
**suggest** [3] - 6:18, 11:22, 12:5
**suggestion** [1] - 14:19
**summer** [1] - 17:23

## T

**testify** [2] - 12:19, 14:8
**testifying** [1] - 16:5
**testimony** [3] - 7:21, 7:24, 8:20
**THE** [52] - 1:10, 1:13, 3:2, 3:11, 3:13, 3:21, 4:3, 4:13, 4:21, 5:2, 5:16, 5:21, 6:2, 6:4, 6:5, 6:12, 6:13, 7:2, 7:11, 7:14, 8:2, 8:8, 8:14, 8:22, 8:25, 9:5, 9:17, 9:20, 9:22, 10:5, 11:4, 11:9, 11:15, 12:1, 12:12, 12:23, 13:2, 14:4, 14:12, 14:21, 15:10, 15:14, 15:22, 16:2, 16:5, 16:13, 16:17, 17:7, 17:24, 18:6, 18:23, 19:7
**they've** [1] - 15:23
**three** [4] - 5:6, 5:13, 15:9, 15:21
**Thursday** [12] - 3:6, 3:25, 4:10, 5:12,

6:14, 7:3, 7:5, 7:16, 8:12, 9:13, 9:15, 19:8
**today** [6] - 3:6, 3:20, 5:15, 7:2, 8:8, 9:11
**tomorrow** [1] - 9:12
**totally** [1] - 11:21
**town** [2] - 3:19
**TRANSCRIPT** [1] - 1:9
**transcription** [1] - 19:13
**traveling** [4] - 6:25, 7:21, 7:24, 8:12
**TRIAL** [1] - 1:9
**trial** [7] - 3:23, 6:23, 7:10, 13:23, 14:1, 14:2, 19:1
**Trial** [1] - 19:9
**true** [1] - 4:24
**try** [4] - 3:20, 4:15, 16:8, 16:10
**trying** [3] - 4:17, 8:16, 12:8
**Tuesday** [1] - 6:15
**turn** [1] - 5:17
**turns** [1] - 8:17
**two** [12] - 3:17, 3:18, 3:24, 4:14, 4:18, 5:20, 6:23, 8:3, 10:9, 10:10, 13:9, 14:15
**type** [1] - 11:14

## U

**U.S** [1] - 19:19
**Uber** [1] - 3:14
**unavailable** [1] - 7:15
**understood** [2] - 7:13, 8:21
**unexpected** [1] - 4:20
**UNITED** [3] - 1:1, 1:4, 1:10
**United** [3] - 1:14, 2:4, 19:18
**Up** [1] - 18:15
**up** [13] - 6:19, 8:1, 9:9, 14:9, 14:23, 14:25, 15:1, 15:10, 15:13, 15:14, 15:19, 16:15, 17:11
**upcoming** [1] - 13:8

## V

**vacation** [1] - 5:12
**vacuum** [2] - 12:24, 18:24
**view** [1] - 13:24
**Volume** [1] - 1:7
**vs** [1] - 1:5

## W

**wait** [1] - 3:25
**waive** [2] - 9:1, 13:21
**waived** [1] - 17:4
**waiver** [2] - 13:13, 18:3
**wants** [1] - 16:19
**Wednesday** [1] - 9:12
**weekend** [1] - 5:6
**weeks** [7] - 4:11, 5:13, 6:23, 13:9, 14:15, 15:9, 15:21
**West** [1] - 5:21
**WILLIAM** [1] - 1:10
**William** [2] - 1:17, 2:3
**witness** [22] - 3:18, 3:19, 4:8, 4:12, 5:11, 5:12, 5:16, 5:17, 6:17, 6:25, 7:3, 7:4, 7:15, 7:19, 8:11, 8:13, 8:17, 8:18, 10:2, 10:20, 11:14
**witness's** [2] - 7:21, 7:24
**witnesses** [9] - 3:19, 3:20, 7:9, 7:12, 13:8, 13:9, 13:15, 14:8, 14:11

## Z

**Zimet** [8] - 1:21, 3:21, 14:12, 14:21, 14:24, 18:1, 18:3, 18:7
**ZIMET** [21] - 3:12, 3:22, 5:4, 7:6, 7:8, 7:13, 9:2, 9:19, 9:21, 9:23, 14:13, 14:25, 15:4, 15:13, 15:16, 16:1, 16:4, 16:7, 16:15, 18:11, 19:5