UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 24-cr-205500 Dimitrouleas/Hunt

UNITED STATES OF AMERICA, Fort Lauderdale, Florida

October 6, 2025

vs.

9:02 AM - 4:59 PM

PATRICK BOYD and CHARLES BOYD, Volume VIII

Defendants. Pages 1 to 331

---

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE WILLIAM P. DIMITROULEAS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: Alexander Pogozelski, Esquire
Jacqueline DerOvanesian, Esquire
Assistant United States Attorneys
99 NE 4th Street
Miami, Florida 33132

FOR DEFENDANT PATRICK BOYD: William Barzee, Esquire
Ivlis Mantilla, Esquire
Barzee Flores
40 NW 3rd Street Ph 1
Miami, Florida 33128

FOR DEFENDANT CHARLES BOYD: Bruce Zimet, Esquire
633 S. Federal Highway Fl 6
Fort Lauderdale, Florida 33301

STENOGRAPHICALLY REPORTED BY:

PATRICIA BAILEY-ENTIN, RPR, FPR
Official Court Reporter before:
The Honorable William P. Dimitrouleas
United States District Court

# I N D E X


| WITNESS: | PAGE: |
|---|---|
| EDDIE CALIENES | |
| DIRECT EXAMINATION BY MR. POGOZELSKI: | 14 |
| VOIR DIRE EXAMINATION BY MR. ZIMET: | 42 |
| DIRECT EXAMINATION (con't) BY MR. POGOZELSKI: | 42 |
| VOIR DIRE EXAMINATION BY MR. ZIMET: | 159 |
| DIRECT EXAMINATION (CON'T) BY MR. POGOZELSKI: | 160 |
| CROSS-EXAMINATION BY MR. BARZEE: | 172 |
| CROSS-EXAMINATION BY MR. ZIMET: | 224 |


\- - -

# E X H I B I T S

\- - -


| Number | Description | Page |
|---|---|---|
| Government's No. 2 | Text Messages | 59 |
| Government's No. 4 | Text Messages | 48 |
| Government's No. 13 | Email | 140 |
| Government's No. 14 | Email | 141 |
| Government's No. 15 | Pedigree | 142 |
| Government's No. 16 | Email | 144 |
| Government's No. 17 | Email | 145 |
| Government's No. 18 | Pedigree | 146 |
| Government's No. 20 | Email | 103 |
| Government's No. 21 | Email | 147 |
| Government's No. 41 | Summary | 78 |
| Government's No. 41A through 41E | Summary Charts | 90 |
| Government's No. 70 | Excerpt of Charles Boyd's Deposition | 16 |

| | | |
|---|---|---|
| Government's No. 71 | Excerpt of Patrick Boyd's Deposition | 45 |
| Government's No. 72 | Excerpt of Patrick Boyd's Deposition | 40 |
| Government's No. 73 | Excerpt of Patrick Boyd's Deposition | 23 |
| Government's No. 74 | Excerpt of Charles Boyd's Deposition | 169 |
| Government's No. 80 | Excerpt of Charles Boyd's Deposition | 168 |
| Government's No. 81 | Excerpt of Charles Boyd's deposition | 53 |
| Government's No. 83 | Excerpt of Charles Boyd's deposition | 53 |
| Government's No. 90 | Pedigrees | 151 |
| Government's No. 91 | Pedigree | 151 |
| Government's No. 92 | Pedigree | 152 |
| Government's No. 93 | Pedigree | 153 |
| Government's No. 94 | Pedigree | 153 |
| Government's No. 95 | Pedigree | 154 |
| Government's No. 96 | Pedigree | 154 |
| Government's No. 98 | Pedigree | 157 |
| Government's No. 102 | Email | 42 |
| Government's No. 103 | Emails | 46 |
| Government's No. 104 | Email | 169 |
| Government's No. 108 | Email | 35 |
| Government's No. 109 | Email | 44 |

| | | |
|---|---|---|
| Government's No. 115, 123, 141, 149, 161, 162, 200, 217, 247, 265, 339, 405, 445, 446, 484, 535, 665, 422 | Documents | 125 |
| Government's No. 125 | Email | 61 |
| Government's No. 126 | Emails | 62 |
| Government's No. 128 | Email | 63 |
| Government's No. 129 | Email | 65 |
| Government's No. 130 | Email | 64 |
| Government's No. 131 | Email | 66 |
| Government's No. 132 | Email | 66 |
| Government's No. 135 | Email | 69 |
| Government's No. 135 A | Excel Spreadsheet | 70 |
| Government's No. 179 | Email | 94 |
| Government's No. 190 | Email | 102 |
| Government's No. 192 | Email | 171 |
| Government's No. 272 | Email | 136 |
| Government's No. 277 | Email | 170 |
| Government's No. 279 | Email | 162 |
| Government's No. 295 and 295A | Emails | 138 |
| Government's No. 307 | Email | 140 |
| Government's No. 308 | Email | 139 |
| Government's No. 343 | Email | 17 |
| Government's No. 344 | Email | 105 |

| | | |
|---|---|---|
| Government's No. 347 | Document | 117 |
| Government's No. 349 | Email | 20 |
| Government's No. 350 | Email | 161 |
| Government's No. 350A | Spreadsheet | 161 |
| Government's No. 351 | Email | 76 |
| Government's No. 353 | Email | 160 |
| Government's No. 404 | Teams Messages | 128 |
| Government's No. 406 | Teams Messages | 127 |
| Government's No. 408 | Text Messages | 58 |
| Government's No. 410 | Text Messages | 60 |
| Government's No. 412 | Text Messages | 56 |
| Government's No. 414 | Text Messages | 50 |
| Government's No. 427 | Teams Messages | 132 |
| Government's No. 432 | Messages | 86 |
| Government's No. 447 | Teams Message | 162 |
| Government's No. 458 | Text Messages | 108 |
| Government's No. 473 | Teams Messages | 39 |
| Government's No. 475 | Teams Messages | 121 |
| Government's No. 479 | Email | 118 |
| Government's No. 480 | Teams Messages | 119 |
| Government's No. 481 | Teams Messages | 122 |
| Government's No. 482 | Email | 105 |
| Government's No. 507 | Text Messages | 54 |
| Government's No. 509 | Text Messages | 75 |
| Government's No. 524 | Text Messages | 133 |

| | | |
|---|---|---|
| Government's No. 527 | 4/8/2021 Text PB JW News on HIV Suppliers | 113 |
| Government's No. 529 | 5/12/2021 Text AB PB re: Wouldn't report them | 115 |
| Government's No. 537 | Text Messages | 107 |
| Government's No. 538 | Text Messages | 135 |
| Government's No. 612 | Meeting Notes | 129 |
| Government's No. 613 | Meeting Notes | 131 |
| Government's No. 617 | Drug Notification | 164 |
| Government's No. 621 | SOPs | 156 |
| Government's No. 623 | SOPs | 156 |
| Government's No. 630 | Meeting Notes | 155 |
| Government's No. 645 | Teams Messages | 24 |
| Government's No. 646 | Article | 25 |
| Government's No. 653 | Charles Boyd Resume | 36 |
| Government's No. 666 | Return Authorization | 158 |

(Call to the Order of the Court:)

THE COURT: Back on the record.

Counsel are present. Both defendants are present.

We have notes from the jury.

We talked about three of them last week. One lady wants to be excused during times that we're already going to be not in session anyway; so I don't think that's a problem.

We have another juror, Jacqueline Batlle. She's got a previously scheduled medical exam on October 22nd at 9:00 that's expected to end at 11:00, but it's in West Palm Beach. So given traffic, she needs an hour. So I would propose -- or changing our schedule on the 22nd from 9:00 to 5:00 to 12:00 to 5:00.

And we've got a note from Fabian Diaz, saying that he needs to be excused -- or he needs for the sessions on Monday and Tuesday, the 20th and 21st, to conclude at 3:00 so he can go to rehearsals for some singing he's doing in the choral. So I would propose changing our schedule on Monday and Tuesday the 20th and 21st from 9:00 to 5:00 to 9:00 to 3:00.

And then the other problem is a juror from last week who wants to be excused during fashion week. And he also mentions that he's going to be in Colombia November 6th for surgery and won't return until the end of December. Let me hand out his note to everybody.

Any objection to accommodating Ms. Batlle and

accommodating Mr. Diaz?

MR. POGOZELSKI: No objection from the Government, Your Honor.

MR. BARZEE: No, Your Honor.

MR. ZIMET: No objection.

THE COURT: Crystal, who is the juror who wants to go to fashion week?

THE COURTROOM DEPUTY: Mr. Gray.

THE COURT: What are we going to do with Mr. Gray?

MR. POGOZELSKI: Your Honor, I may be misremembering. I thought we might be addressing that a little bit later in the week, to see how far we get with the Government's witnesses this week.

THE COURT: Well, he wants to be off the whole week of the 20th through the 26th, which would mean we would have to break for two weeks for the trial to accommodate him, if you read his letter, and what I was suggesting last week is let's wait and see how we're doing and if we're doing good, then maybe we can excuse him at the end of this week or maybe we could offer to give him just one day off. I don't think the one day off is going to make a difference to him.

MR. POGOZELSKI: Agreed, Your Honor. I do agree with your approach about having him sit this week and again, perhaps assessing how quickly or slowly we're going, then we could also, maybe after court one day, ask him some questions about

if there are specific days or a day where he is presenting his line of fashion or, you know, what the schedule is, just to get a little more information to see if there's any way that he could be accommodated that wouldn't require the full week off because then we would be out of session for two full weeks, and then, obviously, risk losing additional jurors as we continue on, and hopefully conclude the first week of November, no later than that.

THE COURT: Mr. Zimet.

MR. ZIMET: Judge, I'm more concerned with the first paragraph that he's losing business right now by serving on the jury. He said he's losing clients.

If he's worried about business, then I would assume that affects his ability to concentrate and listen to what's happening in the courtroom. So I'm concerned about that aspect of it, Judge.

THE COURT: What is your recommendation?

MR. ZIMET: I think there's a basis to excuse him. I think it's more discretionary on the Court's part whether to do it or not.

THE COURT: Mr. Barzee.

MR. BARZEE: May I have a moment, Your Honor?

THE COURT: Okay.

MR. POGOZELSKI: I guess while they're conferring, my take from the few times I have seen Mr. Gray is that he has

been rather attentive throughout the trial. So I would -- you know, my view of his demeanor is not exactly the same.

I understand the concerns raised here but at least his demeanor and paying attention to the witnesses suggest that he has been -- he has been focused on the trial.

THE COURT: Mr. Barzee.

MR. BARZEE: I have nothing to add, Your Honor.

THE COURT: All right. Well, I think I'll tell the jury that we have accommodated the two jurors that have asked for some time off on specific days and we'll get back to Mr. Gray on Wednesday.

MR. POGOZELSKI: That make sense, Your Honor.

I guess the only thing that might inform, you know, decision-making going forward with regard to Mr. Gray might be if there's been any changes to the defense's intention in terms of how long their case would last. I believe it was one week at the start of trial.

THE COURT: I mean, we can't ask them to commit to that.

I mean, one or both of the defendants may testify, they may not testify. That makes a big difference. And how are they going to know now whether they're going to testify or not? Maybe they know whether they're going to call additional witnesses but...

MR. POGOZELSKI: That was the only point that I was

getting at -- is if the one-week estimate has changed from the beginning and not -- putting aside the defendants testifying or not.

MR. ZIMET: And, Judge, that is the affected by who the Government does and does not call; so we just can't provide any information at this point.

THE COURT: All right. So let's bring the jury in. Where are we at now?

MR. POGOZELSKI: We are calling Special Agent Eddie Calienes.

THE COURT: Okay.

(Jury comes in.)

THE COURT: Does counsel concede the presence of the jury and waive its polling?

MR. POGOZELSKI: Yes, Your Honor.

MR. ZIMET: Yes, sir.

MR. BARZEE: Yes, Your Honor.

THE COURT: And did everyone follow my admonition not to discuss the case or allow it to be discussed in your presence?

All right. I've got some notes from you on scheduling, and I'm going to try to accommodate everybody's conflicts.

Ms. Batlle, based on what you're saying on the 22nd, we'll start at noon instead of 9:00.

Mr. Diaz, based on your request, we'll stop at 3:00 on

the 20th and the 21st.

Ms. Musial, I don't think your request is inconsistent with our previous schedule. On the 23rd, you need to leave by 4:00; so we'll break at 4:00 on the 23rd.

And, Mr. Gray, your request is a lot more difficult. We're going to get back to you on Wednesday on that and see what, if anything, we can do to accommodate your situation. And we'll give you a new calendar with those different times on it later on this morning.

The Government may call its next witness.

MR. POGOZELSKI: Thank you, Your Honor. The Government calls Special Agent Eddie Calienes.

Thereupon,

EDDIE CALIENES,

having been first duly sworn or affirmed, was examined and testified as follows:

THE WITNESS: I do.

THE COURTROOM DEPUTY: You may be seated.

Please state your name for the record and spell it for the court reporter.

THE WITNESS: Good morning. My name is Eddie Calienes, E-D-D-I-E, C-A-L-I-E-N-E-S.

MR. POGOZELSKI: May I proceed, Your Honor?

THE COURT: Yes.

MR. POGOZELSKI: Thank you.

DIRECT EXAMINATION

BY MR. POGOZELSKI:

Q. Good morning.

A. Good morning, sir.

Q. Special Agent Calienes, where do you work?

A. I work at the Department of Health and Human Services Office of Inspector General.

Q. And I think my first question implied it, but what is your title?

A. I'm a special agent.

Q. And what are your job responsibilities as a special agent?

A. I'm a criminal investigator. I investigate violations of several different types of federal laws.

Q. And can you give all of us a brief overview of your work history prior to becoming a Special Agent with the Department of Health and Human Services Office of Inspector General?

A. Yes. Prior to my current position, I was a special agent with the United States Secret Service for approximately six and a half years.

Q. And generally, what kind of work or job responsibilities did you have at the Secret Service?

A. So there, we had two primary missions. One was protection of heads of state and foreign heads of state that were visiting, and I also investigated -- I also participated in criminal investigations involving financial crimes.

Q. Okay. And what about your educational background?
A. I have an undergraduate degree from Vanderbilt University. I also have a graduate degree from Vanderbilt University.
I attended the criminal investigator training program at the Federal Law Enforcement Training Center.
I also graduated from the Secret Service Academy, the special agent training program, and I also graduated from my current agency, HHS OIG, from their special agent training program.
Q. Thank you. Special Agent Calienes, have you ever testified at a criminal trial before?
A. Yes, I have.
Q. And have you been involved in trials where a federal agent testified for the simple purpose of introducing documents into evidence?
A. Yes, I have.
Q. And is that what you're doing here today?
A. Yes. I'm testifying to introduce documents into evidence.
Q. Okay. And in other words, you're not familiar with all the facts of this case?
A. That is correct.
Q. Okay.
MR. POGOZELSKI: Your Honor, may I approach the witness and hand him a few CDs?
THE COURT: Okay.

MR. POGOZELSKI: Thank you.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, I think the first CD I handed you -- have you reviewed the content of that CD?
A. Yes, I have.
Q. And is that Government's Exhibit 70?
A. Yes.
Q. And is that an excerpt of the video deposition of Charles Boyd?
A. Yes.
MR. POGOZELSKI: All right. At this time, the Government moves to admit Government's Exhibit 70.
MR. ZIMET: Judge, subject to your prior rulings, no objection.
MR. BARZEE: Same.
THE COURT: 70 will be received.
(Government's No. 70, Excerpt of Charles Boyd's Deposition, was received in Evidence.)
MR. POGOZELSKI: All right. If we could go ahead and start playing Government's Exhibit 70, and publish that for the jury, please.
(Exhibit published.)
MR. POGOZELSKI: And if we can pull up, just for the witness -- it's marked as Government's Exhibit 343.
BY MR. POGOZELSKI:

Q. Special Agent Calienes, is this an email that was sent by Charles Boyd on August 10th of 2020?
A. Yes.
MR. POGOZELSKI: All right. Government moves into evidence Government's Exhibit 343.
MR. ZIMET: No objection, Judge.
MR. BARZEE: No objection.
THE COURT: 343 will be received.
(Government's No. 343, Email, was received in Evidence.)
MR. POGOZELSKI: All right. Permission to publish?
THE COURT: Okay.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, what is the -- so who sent this email?
A. Charles Boyd.
Q. And in the cc or copy line, what email address is listed?
A. Consulting012345@Gmail.com.
Q. Okay. And then below "Hi, Sameer," can you read us that first sentence that Charles Boyd writes copying Consulting012345@Gmail.com?
A. "I would like to introduce you to Peter who owns Boulevard Wholesale."
MR. POGOZELSKI: Okay. And then if we could pull up Government's Exhibit 136, which is already in evidence, and have that published for the jury. If we could scroll down --

BY MR. POGOZELSKI:
Q. Do you see a response there on August 10th to Charles Boyd?
MR. POGOZELSKI: I guess, if we go all the way down, we can see the first email.
BY MR. POGOZELSKI:
Q. Is that the email that we were just looking at?
A. Yes.
MR. POGOZELSKI: All right. If we could go up.
BY MR. POGOZELSKI:
Q. Who responds to Charles Boyd's email introducing Consulting012345@Gmail.com as Peter who owns Boulevard?
A. King Kimchi.
Q. And what does King Kimchi write there?
A. "Can I have all lot numbers of products with date of purchase? Thank you."
MR. POGOZELSKI: Okay. Now, if we could pull up, what's already in evidence, Government's Exhibit 503. I'll try to use the ELMO for this part.
That's not the right one, actually. I apologize.
All right. We'll go back to the screen.
BY MR. POGOZELSKI:
Q. All right. Special Agent Calienes, are these text messages that are already in evidence? Are these between Peter Boulevard and Charles Boyd?
A. Yes.

Q. And do you know -- the number there, it says "Hacksaw Boyd," but do you know that to be Charles Boyd?
A. Yes.
Q. Okay. How?
A. Records that were produced and reviewed. Subscriber information for that particular phone number goes back to Charles Boyd.
Q. The Verizon call records?
A. Yes, that's correct.
Q. All right.
MR. POGOZELSKI: If we could go ahead and scroll to page 35.
BY MR. POGOZELSKI:
Q. Do you see here? What does Charles Boyd write to Peter Boulevard here on August 27, 2020?
A. "Hey, Peter. All of the T3s have our Utah address on them, and they need our Maryland address. Can you please fix?"
Q. And what does Peter say in response? Peter Boulevard?
A. "Send me your address."
Q. All right.
MR. POGOZELSKI: And then if we could show just the witness Government's Exhibit 349.
BY MR. POGOZELSKI:
Q. All right. Is this an email sent from Charles Boyd on August 27, 2020?

A. Yes.
Q. All right.
MR. POGOZELSKI: The Government would move this exhibit into evidence. It should be marked as 349.
MR. ZIMET: No objection, Judge.
MR. BARZEE: No objection.
THE COURT: 349 will be received.
(Government's No. 349, Email, was received in Evidence.)
MR. POGOZELSKI: All right. And if we could publish that to the jury, please.
BY MR. POGOZELSKI:
Q. Is this an email that Charles Boyd sent on August 27, 2020?
A. Yes.
Q. And is that the same day as the text message we were just looking at, where he was texting Peter about the Utah address?
A. May I see the text message again?
Q. All right. We'll go back to that.
MR. POGOZELSKI: But let's go to the bottom here.
BY MR. POGOZELSKI:
Q. Is that -- who is writing in that bottom email?
A. KingKimchiConsulting012345@Gmail.com.
Q. And what's the date?
A. August 27, 2020.
MR. POGOZELSKI: All right. Let's go back to the top.
///

BY MR. POGOZELSKI:
Q. And what does Charles Boyd write here in this email on August 27, 2020?
A. "Yes. I'm not sure why our UT facility is on there but will tell him to fix it."
Q. Okay. And was it King Kimchi at the bottom of the email that we're looking at?
A. Yes, it was.
MR. POGOZELSKI: If we can go back to the Charles Boyd/Peter texts.
BY MR. POGOZELSKI:
Q. All right. What's the date here where Charles Boyd asks about the T3s with the Utah address?
A. August 27, 2020.
Q. All right. Is that the same date as the emails that we were just looking at?
A. Yes.
Q. Okay. Do all these texts --
MR. POGOZELSKI: Actually, let's go to page 46 of this exhibit.
BY MR. POGOZELSKI:
Q. All right. What does Charles Boyd ask there at the bottom?
A. "What's your email?"
MR. POGOZELSKI: All right. If we could go down a little bit.

BY MR. POGOZELSKI:
Q. And what email does Peter Boulevard provide?
A. Consulting012345@Gmail.
Q. All right. Do these texts and emails that we have been looking at, do they contradict Charles Boyd's statement in his deposition that we listened to?
A. Yes.
MR. POGOZELSKI: All right. If we could continue playing the remainder of Government's Exhibit 70.
(Exhibit published.)
MR. POGOZELSKI: All right. Now if we could --
BY MR. POGOZELSKI:
Q. I think, Special Agent Calienes, you have a CD in front of you marked Government's Exhibit 73?
A. Yes.
Q. Does that -- have you reviewed the content of that CD?
A. Yes.
Q. And does it contain Government's Exhibit 73?
A. Yes.
Q. Is that an excerpt of the deposition, the video deposition of Patrick Boyd?
A. Yes.
MR. POGOZELSKI: All right. At this time, the Government moves to admit Government's Exhibit 73.
MR. BARZEE: No objection.

MR. ZIMET: Based on the previous ruling, Judge, no objection.

THE COURT: 73 will be received.

(Government's No. 73, Excerpt of Patrick Boyd's Deposition, was received in Evidence.)

MR. POGOZELSKI: All right. Go ahead and play Government's Exhibit 73 for the jury, please.

(Exhibit published.)

BY MR. POGOZELSKI:

Q. All right. Special Agent Calienes, have you reviewed the indictment in this case?

A. Yes.

Q. And does the indictment allege that the defendants here carried out a prescription drug diversion scheme?

A. Yes.

MR. POGOZELSKI: If we could show just the witness Government's Exhibit 645.

We might need to zoom in a little bit for everyone's sake here.

BY MR. POGOZELSKI:

Q. Are these Teams messages between Charles and Patrick Boyd on September 29th of 2020?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 645.

MR. ZIMET: No objection, Judge.

MR. BARZEE: No objection.

THE COURT: 645 will be received.

(Government's No. 645, Teams Messages, was received in Evidence.)

MR. POGOZELSKI: Thank you, Your Honor.

If we could publish that for the jury.

BY MR. POGOZELSKI:

Q. All right. Special Agent Calienes, can you just walk us through at least the first four messages there between Charles and Patrick Boyd?

A. Yes. Charles Boyd sends Patrick Boyd a message that states: "I think we may need to cut off Boulevard again. Lots of issues here."

Charles Boyd's next message states: "And read this."

The third message: Charles Boyd sends a link to an article, queenseagle.com, with a title of "Shady Pharmacies Target Low-Income People with HIV in Disturbing Scheme."

And the fourth message Pat Boyd replies: "Ugh."

Q. All right. And as far as you can see on these messages, is Abbie Divilio on these messages?

A. No.

MR. POGOZELSKI: And now if we could show for just the witness -- actually, let me back up.

BY MR. POGOZELSKI:

Q. Is there a marking that this was an exhibit during Patrick Boyd's deposition on the document?

A. If you exit out of the enlarged image, there does appear to be a marking at the top.

MR. POGOZELSKI: All right. If we can show just the witness what's marked as Government's Exhibit 646.

BY MR. POGOZELSKI:

Q. Is this the article from the link that Charles Boyd sent to Patrick Boyd in those messages on September 29th of 2020?

A. Yes.

Q. Is it also marked as an exhibit during -- appear to be marked as an exhibit during Patrick Boyd's deposition?

A. Yes.

MR. POGOZELSKI: At this time, the Government moves to admit Government's Exhibit 646.

MR. ZIMET: No objection, Judge.

THE COURT: Any objection, Mr. Barzee?

MR. BARZEE: There was a prior objection to this exhibit, Your Honor. I'll just renew that objection.

THE COURT: All right. 646 will be received.

(Government's No. 646, Article, was received in Evidence.)

MR. POGOZELSKI: If we could publish that for the jury. Thank you.

BY MR. POGOZELSKI:

Q. Now, what is the name -- what is the title of this particular, I guess, newspaper?
A. Queens Daily Eagle.
Q. And what's the title of the article?
A. "Shady Pharmacies Target Low-Income People with HIV in Disturbing Scheme."
Q. And have you had a chance to review this article prior to coming here today?
A. Yes.
Q. And just, generally speaking, does this article describe -- does this article that Charles Boyd sent to Patrick Boyd describe diversion schemes similar to the one alleged in the indictment?
A. Yes.
Q. And does it describe HIV drug diversion schemes in New York City?
A. Yes, it does.
Q. And was Boulevard 9229 LLC located in New York City?
A. Yes.
Q. Okay.
MR. POGOZELSKI: Now, if we could go to the next page.
BY MR. POGOZELSKI:
Q. Do you see the second paragraph under "A Deeply Damaging Operation"?
Do you see that?

A. Yes.
Q. What does that say?
A. "The schemes hurt individuals with HIV, cost taxpayers millions of dollars, and drive up the viral load in communities exposing others to the illness and spoiling the city and state's mission to drive the number of new HIV diagnoses to zero."
Q. And what does it actually say above it as well?
A. "James called the scheme disturbing and deeply damaging to our society. The pharmacists, she said, exploit our most vulnerable patients to steal millions of dollars reserved to provide New Yorkers with essential health care."
Q. Okay.
MR. POGOZELSKI: We can zoom out on that.
BY MR. POGOZELSKI:
Q. And then do you see that paragraph at the bottom of this page. "Understand the pull for patients"?
A. Yes.
Q. Can you go ahead and read that?
A. "I understand the pull for patients -- it's completely understandable, Piotevien said. What shocked me is that pharmacies are engaged in this business."
MR. POGOZELSKI: All right. If we could go to the next page.
BY MR. POGOZELSKI:

Q. Do you see the first and second paragraphs there under the image?
A. Yes.
Q. All right. Could you read those two paragraphs?
A. Starting with "They're taking advantage of us, or the one beneath it?
Q. "They're taking advantage of us."
A. "They're advantage of us, M said. The medications are worth thousands of dollars. Indeed, a single tablet of Atripla, Stribild, and Triumeq, three of most common antiretroviral treatments, cost between $92 and $104, according to the New York State Department of Health List of Medicaid Reimbursable Drugs.
"Each pill delivers a suite of medications in one capsule, a huge upgrade from the days when people with HIV had to take a handful of pills, often with damaging side effects every day."
MR. POGOZELSKI: Okay. Now, if we could go back to Government's Exhibit 645, with the link to this article.
BY MR. POGOZELSKI:
Q. Did Charles Boyd send Patrick Boyd the link to this article in the context of discussing Boulevard?
A. Yes. The first message states, "I think we may need to cut off Boulevard again."
Q. And what does the second message say?
A. "And read this."

Q. Okay. And what's the date of these messages?
A. September 29, 2020.
Q. All right.
MR. POGOZELSKI: If we could pull up what's already in evidence as Government's Exhibit 173.
BY MR. POGOZELSKI:
Q. Now, were those messages we were just looking at the same date, September 29, 2020, as these emails?
A. Yes.
MR. POGOZELSKI: And if we could --
BY MR. POGOZELSKI:
Q. Do you see the email from Abbie Divilio to Pat Boyd and Charles Boyd?
A. Yes. The one on the bottom.
Q. Yeah. Could you go ahead and just read that email for us.
A. "Hello. I have been attempting to verify the T3s which have been provided by Boulevard."
MR. BARZEE: Your Honor, I'm going to object to him reading this entire email that's already in evidence.
THE COURT: He can publish it.
Overruled.
A. "I have been attempting to verify the T3s which have been provided by Boulevard and I have not been successful. I began with the listed wholesaler BNR Wholesaler. When I googled this company, nothing came up. I was eventually able to google the

address and found a BNR Wholesale, and I called the number. The number listed on the screenshot is not in service. After some digging, I found a PIC associated with this wholesaler, Jenny Seeram, and called a left a voicemail.

"I attempted to verify Stain RX and Attain RX. I could not find anything by these names on Google, but then googled the address and came up with Local RX (Attain) and Stanley RX (Stain RX.)

"I found a phone number for Stanley, and it rang continuously. (718) 872-7665. I spoke to someone at Local RX (Called at 11:40, phone number (718) 275-5300), and he stated that they do not sell anything to other pharmacies or wholesalers."

Q. Can you stop there for a moment.

He said he did not -- they do not sell anything to other pharmacies or wholesalers. So what is the next sentence right after that?

A. "He said that they returned their products back to the vendor for credit."

Q. All right. And you may continue.

A. "He also said he was not familiar with Attain RX and the pharmacy has never gone by that name, has always been Local RX. I also tried searching these pharmacy names on the NYSED.gov website and was not able to find any licenses associated with these pharmacy names.

"Lastly, I reached out to IPC, Independent Pharmacy Cooperative, and spoke with Cassandra. I asked her to verify a few drugs by lot number. I asked for her to try NDC's 61958-2501-01, (Lot 19 BIC041A) and 61958-1101-01, (Lot 019427), 61958-1901-01, (Lot 19 GV022UA.)

"The highlighted lot is the only lot she was able to verify and confirm that they have sold that lot. When I asked about pharmacies Stain Rx and Attain RX, she was not able to find either of these as customers in their system. She's going to dig a bit more and see if she can find any additional information in their system."

MR. POGOZELSKI: If we could zoom back out.

BY MR. POGOZELSKI:

Q. What is Abbie Divilio's title there on the email?

A. Director of compliance for Safe Chain Solutions.

MR. POGOZELSKI: Okay. And if we could go to page 3.

BY MR. POGOZELSKI:

Q. All right. Attain RX, Inc. -- what is the address listed there for Attain RX, Inc.?

A. 9516 Queens Boulevard, Rego Park, New York 11374.

Q. What about the address listed for Boulevard 9229 LLC on this Safe Chain Boulevard T3 for Biktarvy?

A. 9229 Queens Boulevard, Suite 11, Rego Park, New York 11374.

MR. POGOZELSKI: Now, if we could go back up to the top page.

BY MR. POGOZELSKI:
Q. What does Patrick Boyd write to Adam Brosius here on September 29th of 2020?
A. "I'm not on this Acumatica call, but we need to get with Boulevard soon. We've had two bad returns with open bottles and broken pills the last two days and the below sounds pretty bad."
Q. All right. That email is September 29, 2020. Is that the same day as the Teams messages with the link to the article?
A. Yes.
Q. Okay.
MR. POGOZELSKI: Now, if we could show for the witness -- or actually show what's already in evidence, Government's Exhibit 107.
BY MR. POGOZELSKI:
Q. And what's the date of this email that was sent to Charles Boyd and Patrick Boyd by Katie Eberspacher?
A. July 5th, 2018.
Q. Okay. Now, if we could go to page 3.
And do you see the paragraph where it starts "fast-forward to 2012"?
A. Yes.
Q. All right. If you would indulge us and start reading that paragraph there.
A. "Fast-forward to 2012, when two federal prescription drug

diversion investigations totaling more than $1 billion in fraud were announced.

"In July 2012, federal criminal charges were filed."

MR. BARZEE: Your Honor, objection. Relevance.

This has nothing to do with this case. This is talking about a criminal investigation involving something completely unrelated to this case.

THE COURT: It's in evidence.

MR. BARZEE: It's misleading.

THE COURT: It's in evidence. He can publish it. Overruled.

A. "In July 2012, federal criminal charges were filed against 48 individuals involved in the diversion of drugs that were originally dispensed to Medicaid patients and later resold back to pharmacies through corrupt wholesalers, resulting in over $500 million in fraudulent Medicaid reimbursements."

Q. And you can stop there.

MR. POGOZELSKI: And then if we can zoom out.

BY MR. POGOZELSKI:

Q. Do you see the part that says "according" -- let me make sure I have this where I can see it right as well.

This part says, "According to the Department of Justice's press release from 2007 until 2011" -- can you read, starting with the "according to the Department of Justice press release?

A. "According to the Department of Justice press release, from

2007 until 2011, the defendants supplied diverted drugs to chain and independent pharmacies all over the country. None of the drugs these diverters sold originated from authorized distributors as was claimed on the pedigrees.

"Assistant U.S. Attorney Rosa Emilia Rodriguez-Velez commented, 'Pharmacies received drugs of unknown quality and origin whose false pedigrees made it practically impossible to trace or determine the true source of the drugs."

MR. BARZEE: Your Honor, I'm going to renew my objection and request an instruction to the jury that the defendants mentioned in this article, in this exhibit are not Patrick Boyd or Charlie Boyd and that they are completely and totally unrelated to the case that is being described here.

THE COURT: It's obvious they're not the defendants. Okay. Let's --

MR. POGOZELSKI: Okay.

MR. BARZEE: Renew a motion as well, Your Honor.

THE COURT: All right.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, do these paragraphs, these paragraphs that we just read, do they describe prescription drug diversion schemes similar to the one alleged in the indictment here?

MR. ZIMET: Objection, Judge.

THE COURT: Overruled.

A. Yes, they do.
BY MR. POGOZELSKI:
Q. And according to these paragraphs, do these schemes described here involve wholesale distributors?
A. Yes.
Q. And is Safe Chain Solutions a wholesale distributor of prescription drugs?
A. Yes.
MR. POGOZELSKI: Okay. If we can show for just the witness Government's Exhibit 108.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, is this Patrick Boyd forwarding that same article to a Tonyb@Safechain.Com?
A. Yes.
MR. POGOZELSKI: At this time, the Government moves into evidence Government's Exhibit 108.
MR. BARZEE: No objection.
MR. ZIMET: Other than the previous objection, Judge, no objection.
THE COURT: 108 will be received.
(Government's No. 108, Email, was received in Evidence.)
MR. POGOZELSKI: Thank you, Your Honor.
BY MR. POGOZELSKI:
Q. And is Patrick -- or Pat Boyd here on the emails, is he forwarding the article, the attachment the same day that it was

sent by Katie Eberspacher to Charles Boyd and Patrick Boyd?
A. Yes. July 5th, 2018.
Q. Okay.
MR. POGOZELSKI: Now, if we could show just the witness Government's Exhibit 653.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, is this a document that was provided by the defense in this case?
A. Yes.
Q. And just at a high level, what is this document?
A. It's a resume for Charles Boyd.
MR. POGOZELSKI: Government moves into evidence Government's Exhibit 653.
MR. ZIMET: No objection, Judge.
MR. BARZEE: No objection.
THE COURT: 653 will be received.
(Government's No. 653, Charles Boyd Resume, was received in Evidence.)
BY MR. POGOZELSKI:
Q. All right. Now, prior to Safe Chain Solutions on this --
MR. POGOZELSKI: And if we could publish. I'm sure it is already, but just -- okay. Thank you.
BY MR. POGOZELSKI:
Q. Prior to Safe Chain, do you see under "Premium RX national," the part about managing? The third bullet point

there?
A. Yes.
Q. What does that third bullet point on Charles Boyd's resume say?
A. "Managed all state and federal licensing and pedigree compliance requirements including the FDA and DEA."
MR. POGOZELSKI: All right. And then if we could look at the bullet point below that, where it says "developed."
BY MR. POGOZELSKI:
Q. What does it say below that part about pedigree compliance requirements?
A. "Developed overall SOPs and shipping operations system."
MR. POGOZELSKI: All right. If we could zoom out.
BY MR. POGOZELSKI:
Q. Was that prior to Safe Chain Solutions?
A. Yes.
Q. All right. And then under Global Pharmaceutical Sourcing, do you see the last bullet point there?
A. Yes.
Q. What does that last bullet point say?
A. "In charge of keeping company compliant with all state and federal licensing regulations including the FDA and DEA."
Q. Okay. And then the third bullet point there, what does that say?
A. "Developed overall SOPs and shipping operations system."

MR. POGOZELSKI: All right. If we could back up -- back out.

BY MR. POGOZELSKI:

Q. Is that also prior to Safe Chain Solutions?

A. Yes.

Q. Is that from 2006 to 2011? Those two positions at Global Pharmaceutical Sourcing and Premium Rx National?

A. Yes.

MR. POGOZELSKI: Okay. Now if we could pull up what's already in evidence Government's Exhibit 116.

BY MR. POGOZELSKI:

Q. What is the date of this email sent to Charles Boyd?

A. June 30, 2020.

MR. POGOZELSKI: And then if we could scroll to page 3.

BY MR. POGOZELSKI:

Q. Do you see who the manufacturer of this drug is, on this bottle?

A. Yes. ViiV Healthcare.

Q. Okay.

MR. POGOZELSKI: Go to page 5, and then actually, let's go all the way back up to the top.

BY MR. POGOZELSKI:

Q. Is Abbie Divilio on this top line email?

A. No.

Q. Okay.

MR. POGOZELSKI: If we could show just the witness Government's Exhibit 473.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, are these Teams messages between Charles Boyd, Adam Brosius, and a Garrett on February 25th, 2021?

A. Yes.

MR. POGOZELSKI: Government moves into evidence Government's Exhibit 473.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 473 will be received.

(Government's No. 473, Teams Messages, was received in Evidence.)

MR. POGOZELSKI: All right. If we could publish and go to the second page. And if we could zoom in on the top message there.

BY MR. POGOZELSKI:

Q. What does Garrett write to Charles Boyd and Adam Brosius on February 25th of 2021?

A. "Good morning, guys. I just got a call from Danny, the rep for Bellevue Pharmacy. They said the health department was in the pharmacy and one of the Descovy bottles had pain pills in it. He asked for all invoices and copies of our license. Let me know how to proceed."

MR. POGOZELSKI: Okay. If we could back out --

BY MR. POGOZELSKI:

Q. And what does Charles Boyd say in response there?

A. "Have Bellevue send a formal request to compliance at Safe Chain."

MR. POGOZELSKI: Okay. Now, if we could --

BY MR. POGOZELSKI:

Q. I think there's also a CD in front of you marked Government's Exhibit 72.

A. Yes.

Q. Have you reviewed the contents of that CD?

A. Yes, I have.

Q. Is that an excerpt of the video deposition of Patrick Boyd?

A. Yes, it is.

MR. POGOZELSKI: At this time, the Government moves to admit Government's Exhibit 72.

MR. ZIMET: Subject to previous rulings, Judge.

MR. BARZEE: Same.

THE COURT: 72 will be received.

(Government's No. 72, Excerpt of Patrick Boyd's Deposition, was received in Evidence.)

MR. POGOZELSKI: Thank you, Your Honor.

And if we could go ahead and play Government's Exhibit 72 for the jury.

(Exhibit published.)

MR. POGOZELSKI: Now, if we could pull up what's already in evidence, Government's Exhibit 420.

BY MR. POGOZELSKI:

Q. What's the date of these messages here, Special Agent Calienes?

A. August 31st, 2020.

MR. POGOZELSKI: All right. And then if we go to the next page.

BY MR. POGOZELSKI:

Q. Do you see a part -- do you see Jonathan Nicholls' message there?

A. Yes.

Q. What does Jonathan Nicholls write on August 31st of 2020?

A. "Pat Boyd, are they able to get pedigrees now? That is a big thing with a lot of mine that Boulevard didn't have before."

Q. And what does Patrick Boyd say there?

A. "Yes."

MR. POGOZELSKI: All right. Now, if we could pull up for just the witness, Government's Exhibit 102.

Oh, boy. I'll fix that later.

BY MR. POGOZELSKI:

Q. Is this an email sent to -- or copying Patrick Boyd and Charles Boyd with an attachment pedigree.docx?

A. Yes.

MR. POGOZELSKI: The Government at this time would move into evidence Government's Exhibit 102.

MR. ZIMET: May I ask one voir dire question, Judge?

THE COURT: Yes.

VOIR DIRE EXAMINATION

BY MR. ZIMET:

Q. What year is this, sir? This email?

A. September 29, 2015.

Q. So that would be five years before any allegations in this case?

THE COURT: Is that a question for the witness?

MR. ZIMET: Yes. I'm sorry. Two questions.

A. I would have to review the indictment to see the exact time frame.

MR. ZIMET: We would object as to relevance, Judge.

THE COURT: Mr. Barzee?

MR. BARZEE: Same objection.

THE COURT: Overruled. 102 will be received.

(Government's No. 102, Email, was received in Evidence.)

MR. POGOZELSKI: All right. If we could publish this for the jury.

And if we could go to page 4.

DIRECT EXAMINATION (con't)

BY MR. POGOZELSKI:

Q. What does it say under "Pedigree Program," right under the

Safe Chain Solutions logo?
A. "To remain compliant with the Drug Supply Chain Security Act, Safe Chain Solutions' data specialists complete pedigrees for products daily. Copies of the completed pedigrees are forwarded to the client who purchased the product and kept on file at Safe Chain for six years."
Q. Thank you.
MR. POGOZELSKI: And if you go back up to the top.
BY MR. POGOZELSKI:
Q. What was date of that email that the lawyer for Defendant Charles Boyd was asking you?
A. September 29, 2015.
MR. POGOZELSKI: All right. If we could show for just the witness Government's Exhibit 109.
BY MR. POGOZELSKI:
Q. Is this an email sent to Charles Boyd on October 5th of 2018?
A. Yes.
Q. Okay.
MR. POGOZELSKI: At this time, the Government moves into evidence Government's Exhibit 10 -- well, actually, if we go to the -- page 2.
BY MR. POGOZELSKI:
Q. Does this document discuss the Drug Supply Chain Security Act at the -- in the second from the bottom bullet point?

A. Yes.

MR. POGOZELSKI: At this time, the Government moves into evidence Government's Exhibit 109.

MR. ZIMET: No objection, Judge.

MR. BARZEE: No objection.

THE COURT: 109 will be received.

(Government's No. 109, Email, was received in Evidence.)

MR. POGOZELSKI: If we could publish for the jury and just go back up.

BY MR. POGOZELSKI:

Q. What is the date, again, on this email to Charles Boyd?

A. October 5, 2018.

Q. What's the subject line?

A. "Trade show talk points."

MR. POGOZELSKI: And then if we can go back to page 2.

BY MR. POGOZELSKI:

Q. And what does it say in that second from the bottom bullet point?

A. "We are also DSCSA, Drug Supply Chain Security Act, compliant through our proprietary Track and Trace portal. All T3s, pedigrees, can be accessed online within 24 hours of shipping."

Q. Okay.

MR. POGOZELSKI: And we can scroll back up to the top.

BY MR. POGOZELSKI:

Q. What date was this sent to Charles Boyd?
A. October 5, 2018.
Q. All right.
MR. POGOZELSKI: We can take that down.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, I think you should have a CD in front of you marked as Government's Exhibit 71.
A. Yes.
Q. Did you review the contents?
A. Yes.
Q. Did it contain an excerpt of the video deposition of Patrick Boyd?
A. Yes.
MR. POGOZELSKI: At this time, the Government moves to admit Government's Exhibit 71.
MR. ZIMET: Subject to previous ruling, Judge.
MR. BARZEE: Same.
THE COURT: Government's Exhibit 71 will be received.
(Government's No. 71, Excerpt of Patrick Boyd's Deposition, was received in Evidence.)
MR. POGOZELSKI: Thank you, Your Honor.
And then if we could go ahead and play that for the jury.
(Exhibit published.)
MR. POGOZELSKI: All right. Now if we could show just

the witness Government's Exhibit 103.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, are these emails involving Patrick Boyd and Charles Boyd back in 2016 regarding WAC?

A. Yes.

MR. POGOZELSKI: At this time, the Government would move into evidence Government's Exhibit 103.

MR. ZIMET: Subject to previous ruling and reserve a motion.

MR. BARZEE: Same.

THE COURT: 103 will be received.

(Government's No. 103, Emails, was received in Evidence.)

MR. POGOZELSKI: Permission to publish.

THE COURT: Okay.

MR. POGOZELSKI: Thank you.

BY MR. POGOZELSKI:

Q. All right. Special Agent Calienes, in that second email there, what does Patrick Boyd write, copying Charles Boyd?

A. "All, these are some specialty products I can get for under WAC that are great for hospitals and retail and/or specialty pharmacies. I need to know ASAP if it's stuff we can move or I have to get past the opp to another distributor who will likely be our direct competition."

Q. And what is the date of this email Patrick Boyd sent?

A. January 5th, 2016.

Q. Okay. And in the top-line email, what is the subject line there in the email copying Charles Boyd?
A. "Discounted Products, HIV Drugs."
Q. Okay.
MR. POGOZELSKI: And then if we could go to page 3 and then if we can enlarge that table there.
BY MR. POGOZELSKI:
Q. Does one of these columns list "WAC?"
A. Yes. The third column from the right.
Q. Okay. And was this the attachment to the email? The subject line "Discounted HIV Drugs?"
A. Yes.
Q. All right. And I don't want to make you do math so maybe we'll just pick the easiest one here where it's just "quantity of one." Maybe I'll use the pointer again if I can undo it.
Is the SCS cost there for that drug there under WAC?
A. Yes.
MR. POGOZELSKI: Okay. Now, if we could go back to the first page. All right.
BY MR. POGOZELSKI:
Q. And are these emails in January of 2016?
A. Yes.
Q. And then if we could just -- unless you remember the date of the Patrick Boyd deposition.
A. It was 2023.

Q. Okay. Not long after these emails about WAC?
A. Yes.
Q. Okay.

MR. POGOZELSKI: If we could show just the witness Government's Exhibit 4.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, are these text messages between a Charles Boyd and someone listed as "Brother" on August 14th of 2020?
A. Yes.

MR. POGOZELSKI: At this time, the Government moves into evidence Government's Exhibit 4.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 4 will be received.

(Government's No. 4, Text Messages, was received in Evidence.)

BY MR. POGOZELSKI:

Q. All right. What -- can you walk us through these messages between Charles Boyd and Brother on August 14th of 2020?
A. Yes. The first message at the top written by Charles Boyd states, "We need to talk tomorrow about HIV."

Brother responds, "At skywrs wedding. What happened?"

Charles Boyd replies, "I know. Not good. We need to plan how to move forward."

Brother replies, "From both of them or just Boulevard?"

Charles Boyd responds, "Both and worse than we could have thought."

Brother replies, "Come on?"

Charles Boyd responds, "Patient opened a bottle and it was -- "and it was different medication."

Brother replies expletive.

Q. If we can go to the next page.

A. Brother sends the message that states, "Gentek has to be okay, though. They were legit sealed?"

Charles Boyd replies, "It was from Gentek and sealed."

Brother responds, "Wow. Maybe we go on the offensive."

Charles Boyd replies, "We have to. It was replaced with bipolar med."

Q. And then what does Patrick Boyd -- or sorry, what is what was listed here as "Brother" write in response?

A. "I think we file a lawsuit or anything we can to get the money. Does Tony know and could it have been random?"

"No. I just found out at 6:00 from Garrett."

Q. Okay. At least in these text messages here, do Charles Boyd and Brother express any concerns about patient safety?

A. No.

Q. What do they write about here, in at least these text messages?

A. "I think we file a lawsuit or anything we can to get the money."

Q. Okay.

MR. POGOZELSKI: If we can show -- and actually, Your Honor, may I approach the witness and provide him a copy of the indictment?

THE COURT: Okay.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, are these messages listed as overt acts in the indictment for Count I? If we go to the first page.

A. Yes.

MR. POGOZELSKI: If we can take that down and pull up for just the witness Government's Exhibit 414.

BY MR. POGOZELSKI:

Q. Are these messages between Pat Boyd and a Michael Landy from Safe Chain with a Safe Chain email address on July 17, 2020?

A. Yes.

MR. POGOZELSKI: All right. Government moves into evidence Government's Exhibit 414.

MR. BARZEE: No objection.

MR. ZIMET: No objection, Judge.

THE COURT: 414 will be received.

(Government's No. 414, Text Messages, was received in

Evidence.)

MR. POGOZELSKI: If we can go to the next page.

BY MR. POGOZELSKI:

Q. Do you see where it says -- we might need to go to page 3.

Do you see at the top, what does Patrick Boyd write there to Michael Landy at the top on July 17th of 2020?

A. "Boulevard is still good."

Q. And what does Michael Landy ask Patrick Boyd?

A. "Boulevard comes in sealed bottles."

Q. And what does Patrick Boyd say right in response?

A. "Yes."

Q. Okay.

MR. POGOZELSKI: Now, if we could show -- or actually pull up Government's Exhibit, I think it should be 501 in evidence.

These should be text messages with Garrett Mellott.

MR. POGOZELSKI: If we can go to the next page here, and then scroll down a little bit.

BY MR. POGOZELSKI:

Q. Are these photos that Garrett Mellott sent to Charles Boyd here?

A. Yes.

MR. POGOZELSKI: If we could open the third photo there with the bottle and the pills next to it. All right.

Maybe that will not work then. Then let's go to

page 3. We'll just keep moving. Keep going down.

BY MR. POGOZELSKI:

Q. What does Garrett Mellott write to Charles Boyd here?

A. "Bipolar medication."

Q. And what's the date there?

A. August 14th, 2020.

MR. POGOZELSKI: And then if we could scroll to page 9 and go down.

BY MR. POGOZELSKI:

Q. What does Garrett Mellott write to Charles Boyd here?

A. "My pharmacist said the patient opened the Biktarvy and there was generic Excedrin in it."

Q. All right.

MR. POGOZELSKI: If we could scroll down and see what the date is of that message. Keep going.

A. August 18, 2020.

BY MR. POGOZELSKI:

Q. Okay. Do you have a CD in front of you marked Government's Exhibit 81?

A. Yes, I do.

Q. All right. Have you reviewed the contents?

A. Yes.

Q. Is that an excerpt of the deposition of Charles Boyd?

A. Yes.

MR. POGOZELSKI: All right. The Government moves to

admit Government's Exhibit 81.

MR. ZIMET: No objection, Judge.

MR. BARZEE: No objection.

THE COURT: 81 will be received.

(Government's No. 81, Excerpt of Charles Boyd's deposition, was received in Evidence.)

MR. POGOZELSKI: Thank you. We'll go ahead and play Government's Exhibit 81.

(Exhibit published.)

BY MR. POGOZELSKI:

Q. All right. Special Agent Calienes, do you also have in front of you a CD marked Government's Exhibit 83?

A. Yes.

Q. Have you reviewed the contents of that?

A. Yes, I have.

Q. Is that an excerpt of Charles Boyd's deposition?

A. Yes.

MR. POGOZELSKI: Okay. At this time, the Government would move to admit Government's Exhibit 83.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 83 will be received.

(Government's No. 83, Excerpt of Charles Boyd's deposition, was received in Evidence.)

MR. POGOZELSKI: All right. If we could play for the

jury Government's Exhibit 83.

(Exhibit published.)

MR. POGOZELSKI: All right. Now, let's show the witness Government's Exhibit 507.

BY MR. POGOZELSKI:

Q. Are these text messages between Patrick Boyd and Amanda Richardson July 13, 2020?

A. Yes.

MR. POGOZELSKI: At this time, the Government moves into evidence Government's Exhibit 507.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 507 will be received.

(Government's No. 507, Text Messages, was received in Evidence.)

MR. POGOZELSKI: All right. Thank you.

BY MR. POGOZELSKI:

Q. So you can't see the photos here on the first page, but I think if we scroll to pages 13 and 14, you can see the photos that are sent by Amanda Richardson. It should be on 12.

Is this an indictment in New Jersey where Adam Brosius is listed as a defendant?

A. Yes.

Q. And in Count I, what is the allegation against Adam Brosius and others?

A. Conspiracy to commit healthcare fraud.
Q. All right.
MR. POGOZELSKI: Now, if we could go back up to the bottom of page 1, top of page 2 -- actually, keep going down.
BY MR. POGOZELSKI:
Q. What does Amanda Richardson write here at the bottom in this text message?
A. "It's one thing if it's a random state suit or something small, but an actual DOJ indictment is trouble for everyone connected."
Q. All right. If we go to the next page.
What does Patrick Boyd write there in the 9:54 text message? The third one from the top?
A. "He doesn't know yet, I don't think."
Q. Above that.
A. Oh.
"We out all these people under us. They know us now, and Adam can step into the shadows and handle what he needs to."
Q. All right. And what does Amanda Richardson write to Patrick Boyd down at the bottom?
A. "This stuff just worries me so much mainly because we've dealt with so many people who have been indicted and it's scary."
Q. All right. If we go to the next page.
What does Amanda Richardson say right there in that message

under "I was about to bring that up"?
A. "Also all of these, quotation marks,'brokers,' we need names."
Q. What does Patrick Boyd write in response?
A. "Yes. I know the HIV guys pretty well."
Q. All right.
MR. POGOZELSKI: And if we go to page 6.
BY MR. POGOZELSKI:
Q. Do you see where it says, "If it comes", where Patrick Boyd writes, "Yeah."
What does Patrick Boyd write to Amanda Richardson there?
A. "If it comes up anywhere tomorrow, I'd just say that was a different life and he's been dealing with it for six years."
MR. POGOZELSKI: We can take that down and show just the witness Government's Exhibit 412.
BY MR. POGOZELSKI:
Q. Are these messages between Adam Brosius and Pat Boyd on July 16, 2020?
A. Yes.
MR. POGOZELSKI: At this time, the Government moves into evidence Government's Exhibit 412.
MR. ZIMET: No objection, Judge.
MR. BARZEE: No objection.
THE COURT: 412 will be received.
(Government's No. 412, Text Messages, was received in

Evidence.)
BY MR. POGOZELSKI:
Q. All right. Is this, I think, three days after those messages that we just looked at?
A. Yes.
MR. POGOZELSKI: All right. Then if we go to the next page.
BY MR. POGOZELSKI:
Q. What does Patrick Boyd write to Adam Brosius here? I'll keep using the pointer now that I know how to get rid it.
What does Patrick Boyd write to Adam Brosius there?
A. "Hey, Buddy. I know you're off today. When you check back in, I just wanted you to review this for internal communications to managers so they can address any questions with people in their department.
"Happy to make any changes to be more consistent with whatever your messaging has been."
Q. Okay. Now, let's switch topics for a moment.
MR. POGOZELSKI: If we show the witness Government's Exhibit 408.
BY MR. POGOZELSKI:
Q. Are these messages between Charles Boyd and a Kenzie Nalley at Safe Chain addendum?
A. Yes.
MR. POGOZELSKI: Government moves into evidence

Government's Exhibit 408.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 408 will be received.

(Government's No. 408, Text Messages, was received in Evidence.)

MR. POGOZELSKI: All right. And then if we go to the next page.

BY MR. POGOZELSKI:

Q. What's the date of these messages?

A. May 29, 2020.

Q. All right. And what does Charles Boyd write there in the third message from the top to Kenzie Nalley?

A. "Do you have a vendor intake form for Boulevard 9229 LLC?"

Q. And then do you see where Kenzie Nalley asked a question there, by the dot?

A. Yes.

Q. What does she ask Charles Boyd?

A. "Something sketchy with him?"

Q. And what does he respond?

A. "I'm just looking at a few things."

Q. And after that?

A. "Want to make sure we're all good."

Q. And what does Kenzie Nalley write back to Charles Boyd on May 29th of 2020?

A. "'Cause I know they have three," quotation marks, 'contacts there,' and I finally called the one guy and made him explain to me who was who."
Q. Okay.
MR. POGOZELSKI: And then if we go to the next page.
BY MR. POGOZELSKI:
Q. What does Charles Boyd write under "thanks"?
A. "Where can I find the vendor intake form?"
Q. And does it appear that Kenzie Nalley attached the Boulevard vendor intake form here?
A. Yes. It looks like it was originally attached.
Q. Okay.
MR. POGOZELSKI: Now, if we could show just the witness Government's Exhibit 2.
BY MR. POGOZELSKI:
Q. Is this a message between Pat Boyd and Adam Brosius, July 8th of 2020?
A. Yes.
MR. POGOZELSKI: At this time, the Government moves into evidence Government's Exhibit 2.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 2 will be received.
(Government's No. 2, Text Messages, was received in Evidence.)

BY MR. POGOZELSKI:
Q. All right. What does Pat Boyd write to Adam Brosius on July 8th of 2020?
A. "Spent two hours counting HIV woth [sic] the crew. That "expletive's" a mess."
Q. All right. And what's the date here?
A. July 8, 2020.
Q. All right.
MR. POGOZELSKI: Now, if we could show just the witness Government's Exhibit 410.
BY MR. POGOZELSKI:
Q. Are these messages between Pat Boyd and someone -- TylerT@SafeChain.com?
A. Yes.
MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 410.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 410 will be received.
(Government's No. 410, Text Messages, was received in Evidence.)
MR. POGOZELSKI: All right. If we can go to the next page.
BY MR. POGOZELSKI:
Q. What does Patrick Boyd write here, next to the dot?

A. "Definitely not, but it's obnoxious the way it comes in."
Q. And actually, what's the date of these messages?
A. July 8, 2020.
Q. And was that the same date as the one we just looked at with Adam Brosius, as far as you remember?
A. Yes.
Q. And what does Patrick Boyd write above that, actually?
A. "I spent two hours in the warehouse yesterday helping check 'expletive' in."
Q. And right above that?
A. "Yeah, 'expletive' has been piling up with this HIV."
MR. POGOZELSKI: Okay. We can take that down.
And then if we could show the witness, just the witness, Government's Exhibit 125.
BY MR. POGOZELSKI:
Q. Is this an email sent from compliance at Safe Chain to Charles Boyd, Adam Brosius, and others on July 10th of 2020?
A. Yes.
MR. POGOZELSKI: All right. The Government moves into evidence Government's Exhibit 125.
MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: 125 will be received.
(Government's No. 125, Email, was received in Evidence.)
MR. POGOZELSKI: Then if we could scroll down.

BY MR. POGOZELSKI:
Q. What does Abbie Divilio write here in that July 9th of 2020 email?
A. "Hey, guys, I need this T3 info ASAP. I have a customer who would like to know where these medications are coming from before they decide if they will purchase them, and Boulevard has not provided any T3 info showing where these are being purchased from. Who can I reach out to for this information?"
MR. POGOZELSKI: All right. And we can go back up. And we will move on from this exhibit.
If we could show just the witness Government's Exhibit 126.
BY MR. POGOZELSKI:
Q. Are these emails involving Patrick Boyd and someone named JonWeed@Safe Chain.com on July 13, 2020?
A. Yes.
MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 126.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 126 will be received.
(Government's No. 126, Emails, was received in Evidence.)
MR. POGOZELSKI: All right. If we can pull up for the witness Government's Exhibit 128.
BY MR. POGOZELSKI:

Q. Is this --

MR. POGOZELSKI: Just the witness.

BY MR. POGOZELSKI:

Q. Is this an email from Adam Brosius to Charles Boyd and others on August 5th of 2020?

A. Yes.

MR. POGOZELSKI: At this time, the Government moves into evidence Government's Exhibit 128.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 128 will be received.

(Government's No. 128, Email, was received in Evidence.)

BY MR. POGOZELSKI:

Q. All right. And what does Adam Brosius write in this email?

A. "Please see attached, super simple to fill out. Let's get someone on it ASAP. Need product from Boulevard."

MR. POGOZELSKI: Okay. We can take that down.

And then we show just the witness Government's Exhibit 130.

BY MR. POGOZELSKI:

Q. Is this an email from Adam Brosius, copying Charles Boyd, on August 6th of 2020?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 130.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 130 will be received.

(Government's No. 130, Email, was received in Evidence.)

MR. POGOZELSKI: If we could publish this one for the jury and go to page 2.

BY MR. POGOZELSKI:

Q. What is written in this -- what appears to be a screenshot?

A. "Good morning, Adam. Will this info work? LPM Pharmacy, 7537 Main Street, Flushing, New York 11376."

MR. POGOZELSKI: All right. And then if we go back up.

BY MR. POGOZELSKI:

Q. What does Adam Brosius write in his top-line email?

A. "Thanks. I think Dhruv and Charlie spoke and came up with a solution. T3s are a bit more involved than just an address. They are working through it. Thanks."

Q. All right.

MR. POGOZELSKI: Now if we could show just the witness Government's Exhibit 129.

BY MR. POGOZELSKI:

Q. Is this an email from Adam Brosius to Charles Boyd, Dhruv Ralhan and then a WW Open Orders on August 6, 2020?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 129.

MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: 129 will be received.
(Government's No. 129, Email, was received in Evidence.)
BY MR. POGOZELSKI:
Q. All right. Who sent this email to Charles Boyd?
A. Adam Brosius.
Q. All right. And then could you just read us what a Danny Dhruv writes below that on August 6th of 2020?
A. "Good afternoon. Bay Pharmacy 19 d/b/a Health First Pharmacy has been requesting someone from compliance call due to him having questions over pedigrees and the lack of info that is on there. He is very concerned and has requested multiple time [sic] for me to have someone call him to answer his questions.
"I was told yesterday that he would receive a call -- be at the end of the day, which did not happen. Also was told he would receive a call today and that did not happen. So I need to know who I need to reach out to to get this resolved, so my customer can feel comfortable ordering from us moving forward. Thanks for you [sic] time and please let me know if there's anything that you need from me."
Q. All right.
MR. POGOZELSKI: Now, if we could show just the witness Government's Exhibit 131.

BY MR. POGOZELSKI:
Q. Is this an email from Charles Boyd to Adam Brosius copying Dhruv Ralhan in August of 2020?
A. Yes.
MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 131.
MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: 131 will be received.
(Government's No. 131, Email, was received in Evidence.)
BY MR. POGOZELSKI:
Q. All right.
MR. POGOZELSKI: Let's show just the witness Government's Exhibit 132.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, this is an email on August 7, 2020, sent by Charles Boyd to Adam Brosius and Dhruv Ralhan.
You can see the signature line?
A. Yes.
MR. POGOZELSKI: The Government at this time will move into evidence Government's Exhibit 132.
MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: Government's Exhibit 132 will be received.
(Government's No. 132, Email, was received in Evidence.)

MR. POGOZELSKI: All right. If we could take that down and then we could show just the witness Government's Exhibit 133.

BY MR. POGOZELSKI:

Q. Is this an email from Charles Boyd to Adam Brosius, Dhruv Ralhan regarding pedigrees on August 8th of 2020?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 133.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: I think that's already in evidence.

MR. POGOZELSKI: Okay. Great.

BY MR. POGOZELSKI:

Q. What is the subject line of this email?

A. "Pedigrees."

Q. And what does Charles Boyd write right under the first sentence under "Morning, guys."

A. "I spoke to Peter yesterday, and he said he can get all the documents we need to have the data entry completed."

MR. POGOZELSKI: And then if we scroll -- you see that second email? Actually, we can probably just skip that. If we go to page 3.

BY MR. POGOZELSKI:

Q. Is this, in your understanding, a Safe Chain Solutions' T3

or pedigree that was attached to the email?
A. Yes.
Q. And are there highlights on this page?
A. Yes.
Q. And are there highlighted words next to each of these "sold to" boxes on this Safe Chain Solutions T3?
A. Yes.
Q. All right. What are the highlighted words?
If you start with the first one, McKesson, what are the highlighted words there?
A. "McKenzie Corp., authorized distributor."
Q. And then the next one.
A. "Buckeye Pharmacy, your supplier."
Q. Next one?
A. "W-A-S-A-T-C-H. You."
Q. And then finally?
A. "Safe Chain Solutions LLC, your customer."
Q. All right.
MR. POGOZELSKI: Then we go back up to the top.
BY MR. POGOZELSKI:
Q. This attachment that was -- the highlighted attachment, this is in the context of Charles Boyd writing he spoke to Peter yesterday?
A. Yes.
Q. Okay.

MR. POGOZELSKI: Now if we could show just the witness Government's Exhibit 135.

BY MR. POGOZELSKI:

Q. Is this an email from Charles Boyd to King Kimchi on August 10th of 2020?

A. Yes.

Q. And is there an attachment, an Excel attachment?

A. Yes. "Boulevard ROG.XLS."

MR. POGOZELSKI: Government moves into evidence Government's Exhibit 135.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 135 will be received.

(Government's No. 135, Email, was received in Evidence.)

BY MR. POGOZELSKI:

Q. What does King Kimchi or Peter write to Charles Boyd here in that second email?

A. "Can I have all lot numbers of products with date of purchase? Thank you."

Q. All right.

MR. POGOZELSKI: And then is there an attachment here that we could pull up?

Just so there's no confusion, we would like to move into evidence the Excel spreadsheet attachment.

THE COURT: Is that already part of 135.

MR. POGOZELSKI: Yes, it's part of 135. It's labeled as 135A, just to be clear.

THE COURT: Any objection?

MR. BARZEE: No objection.

THE COURT: 135A will be received.

(Government's No. 135 A, Excel Spreadsheet, was received in Evidence.)

MR. POGOZELSKI: All right. If we could scroll up here, all the way to the top and then over to the right.

So this is the attachment that Charles Boyd sent to King Kimchi, and then if you could expand Column G.

BY MR. POGOZELSKI:

Q. Are there -- at least as you understand it, we looked at a bottle of Selzentry. Is this a listing of various drugs here?

A. Yes.

Q. Okay. And then with various received dates by Safe Chain Solutions?

A. Yes, in Column H.

Q. And was this the attachment that Charles Boyd sent to King Kimchi on August 10th of 2020?

A. Yes.

MR. POGOZELSKI: All right. We can take that down and show just the witness --

THE COURT: Before you do that, is this a good spot to take a break?

MR. POGOZELSKI: Yes, Your Honor. That works.

THE COURT: Members of the jury, we'll take a 15-minute recess.

Remember my admonition not to discuss the case or allow it to be discussed in your presence. We'll see you back in the jury room in about 15 minutes.

THE COURT SECURITY OFFICER: All rise.

(Jury exits.)

THE COURT: Agent, during the break in your testimony, you're not allowed to discuss your testimony with anyone. Do you understand?

THE WITNESS: Yes, sir.

THE COURT: And we'll see you back in about 15 minutes.

THE WITNESS: Thank you, sir.

(Witness exits.)

THE COURT: And did you have a motion that you had reserved?

MR. ZIMET: I had one, Judge, yes.

MR. BARZEE: You go first.

MR. ZIMET: Judge, this relates to the video of Patrick Boyd saying he didn't know anything about T3s.

MR. POGOZELSKI: You mean "WAC"?

MR. ZIMET: WAC, rather. I'm sorry. I apologize. WAC.

And there is video of Charles Boyd, next day deposition

explaining WAC, his understanding of WAC, et cetera, et cetera. And the motion -- we objected to the introduction, made a motion for severance based on that.

I made the motion when that was played just so I preserved that issue. I understand the Court's previous ruling.

THE COURT: Well, I mean do you want to play the next day's deposition where he explains what WAC is?

MR. ZIMET: I think the Government should, Judge.

THE COURT: If you ask them to, maybe they will, but if you're not asking under the rule of completeness, I don't know that they have to do that.

MR. ZIMET: Well, I would, under the rule of completeness, ask them to play that before his direct examination is completed.

MR. POGOZELSKI: Just to be clear: That is a different deposition of a different defendant.

We played Patrick Boyd's deposition excerpt about WAC. So there's -- and now he's --

THE COURT: So I don't think it is the rule of completeness. It's a different deposition. I didn't realize that there were two different depositions on two different days.

MR. ZIMET: Well, it had to be, Judge, because the presentation in court was is that Charles Boyd was asked the

same question and gave a complete answer as far as WAC goes. The inference was, okay, that both of them -- because Pat Boyd said he didn't know anything about it, all right, that that's part of Charles Boyd's denying responsibility. And we have evidence that it's just the opposite.

MR. POGOZELSKI: The deposition was just of Patrick Boyd. We didn't talk about Charles Boyd's deposition. It was just Patrick Boyd's deposition. It had nothing to do with Charles Boyd's deposition.

MR. ZIMET: Right. But it's been used in Charles Boyd's trial. That's the point.

It's evidence in Charles Boyd's trial that is being introduced by Patrick Boyd's statement used against Charles Boyd.

THE COURT: And the statement was that he didn't know what WAC was.

MR. ZIMET: Correct.

THE COURT: How does that implicate Charles Boyd?

MR. ZIMET: They're brothers/coconspirators. Okay, in fact, Charles Boyd does know. And if the claim is a false exculpatory statement on Patrick Boyd's part, that's imputed to Charles Boyd.

THE COURT: I don't think it is. Motion is denied.

You have a motion, Mr. Barzee?

MR. BARZEE: I did, Your Honor. I was moving for a

mistrial based on 403 and the misleading nature of the articles that the Government introduced, discussing an unrelated crime with defendants from 2017.

THE COURT: Yeah, I think it's relevant.

I think the probative value is outweighed by any prejudice. I think it goes to the knowledge or state of mind. We'll take about a ten-minute recess.

(Off the record from 10:40 AM to 10:54 PM, after which the following proceedings were had:)

THE COURT: We're back on the record. Counsel are present. Both defendants are present.

Agent, you understand that you're still under oath?

THE WITNESS: Yes, sir.

THE COURT: Anything to come before the Court before we bring the jury in?

MR. POGOZELSKI: No, Your Honor.

MR. ZIMET: No, sir.

THE COURT: All right. If we have all the jurors, let's bring them in.

THE COURT SECURITY OFFICER: All rise.

(Jury enters.)

THE COURT: Does counsel concede the presence of the jury and waive its polling?

MR. POGOZELSKI: Yes, Your Honor.

MR. ZIMET: Yes, sir.

MR. BARZEE: Yes, Your Honor.

THE COURT: And did everyone follow my admonition not to discuss the case or allow it to be discussed in your presence?

All right. You may continue.

MR. POGOZELSKI: Thank you, Your Honor.

If we can pull up for just the witness, Government's Exhibit 509.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, are these text messages between Pat Boyd and Amanda Richardson in August of 2020?

A. Yes.

MR. POGOZELSKI: At this time the Government moves to admit Government's Exhibit 509.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 509 will be received.

(Government's No. 509, Text Messages, was received in Evidence.)

MR. POGOZELSKI: All right. If we could scroll to page 4.

BY MR. POGOZELSKI:

Q. And do you see that second message that Amanda Richardson -- or that message that Amanda Richardson writes to Pat Boyd on August 11, 2020? Second from the top?

A. Yes.
Q. What did she write there?
A. "The one that bought a lot of HIV and got pissed about pedigrees is Healthfirst."
Q. Okay.
MR. POGOZELSKI: We can take that down and show just the witness Government's Exhibit 351.
BY MR. POGOZELSKI:
Q. Is this a Charles Boyd response to King Kimchi on August 12th of 2020?
A. Yes.
MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 351.
MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: 351 will be received.
(Government's No. 351, Email, was received in Evidence.)
MR. POGOZELSKI: Okay. If we could publish this for the jury.
BY MR. POGOZELSKI:
Q. Is there someone that's bcc'd on this email?
A. Yes. Adam Brosius is bcc'd.
Q. Okay. And what does Charles Boyd write here on August 12, 2020, to King Kimchi?
A. "Good morning. Thank you for sending this back.

Unfortunately, this only goes back to your supplier and as required by the FDA, needs to go back to the authorized distributor. Below is a link to more information on the Drug Supply Chain Security Act, (DSCSA.) Please let me know if you have any questions. Thanks."

MR. POGOZELSKI: All right. And if we could take that down and show just the witness Government's Exhibit 41.

And then if we could just show the witness each page here.

All right. And then going back up to the first page.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, does this exhibit contain summaries of Charles Boyd's Verizon call records?

A. Yes, it does.

Q. And does this summary fairly and accurately reflect the information in Charles Boyd's Verizon call records?

A. Yes, it does.

Q. And would it take a long time to go through those call records page by page in front of this jury?

A. Yes, it would.

Q. And did you validate the accuracy of these summary exhibits?

A. Yes, I did.

Q. What did you do?

A. I "Control F" searched each one of these calls to ensure

that the date and time were correct for the calls that took place.

Q. Got it.

MR. POGOZELSKI: The Government at this time moves to admit Government's Exhibit 41.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 41 will be received.

(Government's No. 41, Summary, was received in Evidence.)

BY MR. POGOZELSKI:

Q. All right. At a high level, Special Agent Calienes, what does this summary here on the first page show?

A. A summary of calls between Charles Boyd and Peter Khaim.

Q. And how many calls were there made, according to the call records, between Charles Boyd and Peter Khaim?

A. In this summary chart, there's 21.

Q. And what about the total duration?

A. 100 minutes.

Q. What was the first -- the date of the first call?

A. August 7, 2020.

Q. And how about the last call?

A. March 30, 2021.

Q. And how long was that first call between Charles Boyd and Peter?

A. 18 minutes.

Q. Okay. According to the call records, was there a call between Charles Boyd and Peter on August 25th of 2020?
A. Yes.
Q. All right. And that's an Row 4 there?
A. Yes, Row 4.
Q. And what's the time stamp in Eastern for that?
A. 5:26 p.m.
Q. And how long was that call?
A. Seven minutes.
Q. All right.
MR. POGOZELSKI: If we could go back to the Charles Boyd and Peter text messages, page 11.
BY MR. POGOZELSKI:
Q. The call we were looking at, was that on August 25th of 2020, the seven-minute call?
A. Yes.
MR. POGOZELSKI: All right. And if we could scroll down here.
BY MR. POGOZELSKI:
Q. Do you see there's an image --
MR. POGOZELSKI: Sorry. Scroll up a little bit.
BY MR. POGOZELSKI:
Q. Do you see there's an image sent from Peter Boulevard to Charles Boyd on August 25th of 2020?
A. Yes.

Q. All right. And what is the time stamp there for when Peter sends this image?
A. August 25th, 2020, 5:29 p.m.
Q. All right.
MR. POGOZELSKI: And if we could pull up the summary chart side-by-side or just go back to the summary chart, if that's is easier.
BY MR. POGOZELSKI:
Q. August 25th, 5:26, p.m. -- and how long was that call?
A. Seven minutes.
Q. Okay. And then the image we just looked at, the timestamp there was 5:29 p.m., as far as you remember?
A. Correct.
MR. POGOZELSKI: And if we could go back to those text messages and open the image.
MR. ZIMET: Excuse me. What exhibit is this?
MR. POGOZELSKI: This one is 503, which is in evidence.
MR. ZIMET: Thank you.
MR. POGOZELSKI: If we could open up --
BY MR. POGOZELSKI:
Q. Does it appear that this image was sent by Peter to Charles Boyd during that phone call, according to the call records?
A. Yes. Because the call was seven minutes long, and this would have been sent approximately three minutes into the call.

Q. All right.
MR. POGOZELSKI: And then if we could open up that image.
BY MR. POGOZELSKI:
Q. Does this look like a photograph of a Safe Chain Solutions T3 or pedigree?
A. Yes.
Q. All right. Who's listed as the first entity here in this image that Peter Boulevard sends to Charles Boyd, the first entity that's buying from Gilead?
A. LMP Pharmacy in Flushing, New York.
Q. And what about below that?
A. BNR Wholesaler in Brooklyn, New York.
Q. And then who?
A. Boulevard 9229 LLC, in Rego Park, New York.
Q. And then finally to who?
A. Safe Chain Solutions LLC in Cambridge, Maryland.
MR. POGOZELSKI: And then if we could close that image and then scroll down.
BY MR. POGOZELSKI:
Q. Is there a PDF file sent a bit later by Peter Boulevard to Charles Boyd?
A. Yes, at 5:58 p.m.
Q. All right.
MR. POGOZELSKI: If we can go ahead and open up that

image -- sorry, the PDF file. I don't think that's going to work, though.

Oh, there we go. All right. If we can zoom out.

BY MR. POGOZELSKI:

Q. Is there a new entity listed here as the "sold to entity" from Gilead?

A. Yes. Independent Pharmacy Cooperative in Sun Prairie.

Q. And then the ones below that, as far as you recall, LMP Pharmacy, BNR Wholesaler, Boulevard, Safe Chain, as far as you recall, were those the same as the photographic image that Peter Boulevard sent during that phone call?

A. Yes.

Q. And was this document sent by Peter Boulevard after that phone call?

A. Based on the timestamp, yes.

Q. Right. And there's a new entity added to this PDF T3 pedigree from Peter Boulevard?

A. There is. And I believe they also added date purchased to these that were not previously -- in previous documents.

MR. POGOZELSKI: If we can go back to the text thread and go to page 6.

BY MR. POGOZELSKI:

Q. This is also on August 25th. Can you read that longer text message from Charles Boyd to Peter Boulevard on August 25, 2020?

A. "Hey, Peter. I'm on calls until about 4:00 today, but Adam mentioned you got the AD's info, which is great. So the only info we need added to your spreadsheet is McKesson's "bill to" and "ship to" addresses and a reference number, parentheses, invoice or PO number. I spoke with Sameer, and if we have that, they will get all the data entry done ASAP. Hope this helps."

MR. POGOZELSKI: All right. And then if we can scroll down.

BY MR. POGOZELSKI:

Q. What does Peter Boulevard King Kimchi respond?

A. "I done [sic] have any McKesson bills."

MR. POGOZELSKI: And then if we could go to page 21 of these text messages.

BY MR. POGOZELSKI:

Q. What does -- so this is August 27, 2020. What does Charles Boyd write to Peter Boulevard here at the top?

A. "Tomorrow is the last day of the month and an extremely busy day. Anything I can get today will be a huge help."

Q. And what does Peter Boulevard write in response?

A. "After I will send. When you receive, I need an Excel spread 'expletive' of lot numbers so I can do paperwork."

MR. POGOZELSKI: Can we go to page 33.

BY MR. POGOZELSKI:

Q. August 22nd, 2020, what does Peter Boulevard write here at

the top?
A. "Sending package."
MR. POGOZELSKI: And then scroll down.
BY MR. POGOZELSKI:
Q. Does it appear that Peter Boulevard/King Kimchi sends a tracking or shipping label, just based on the thumbprint of the image?
A. Yes.
Q. And what's the date of text messages from Peter Boulevard to Charles Boyd?
A. August 27, 2020.
Q. Okay.
MR. POGOZELSKI: If we could show what's already in evidence, Government's Exhibit 152. And go to page 2 --
BY MR. POGOZELSKI:
Q. Actually, what's the date here at the top?
A. August 28, 2020.
Q. All right. Is that a day after the messages we just looked at with Peter Boulevard saying he was sending a package?
A. Yes.
MR. POGOZELSKI: Go to the second page.
BY MR. POGOZELSKI:
Q. What does Adam Brosius write there at the bottom?
A. "I understand that Boulevard is less expensive, but this is silly and causes a ton of more work."

Q. All right.

MR. POGOZELSKI: If we can go back to the text between Peter and Charles Boyd and go to page 44, and -- actually, scroll down before we do that. Just go down a little bit here. Keep going.

BY MR. POGOZELSKI:

Q. What does Charles Boyd write here the day before that email that we just looked at?

A. "Thanks. Just one box?"

Q. And what does Peter say below that?

A. "Yes. All in there."

Q. Okay.

MR. POGOZELSKI: Now let's go to page 44 of these texts.

BY MR. POGOZELSKI:

Q. All right. What does Peter write here at the top?

A. "Did you send?"

Q. And what's the date here?

A. September 10, 2020.

Q. All right. And then what was Charles Boyd's response there?

A. "Hey, Peter. I just got out of a meeting and checked with accounting. They are sending 200K tomorrow because they missed the wire cutoff today. Sorry."

Q. All right.

MR. POGOZELSKI: If we could keep scrolling down a little bit. Keep going.
BY MR. POGOZELSKI:
Q. What does Peter write there at the top?
A. "I have access to a lot of stuff."
Q. And below that?
A. "You guys need to start. Do this fast."
Q. All right. And then what is Charles Boyd's response?
A. "We're planning on it."
MR. POGOZELSKI: All right. We can take that down.
If we can show just the witness Government's Exhibit 432.
BY MR. POGOZELSKI:
Q. All right. Are these messages between Adam Brosius and Charles Boyd on September 29, 2020?
A. Yes.
MR. POGOZELSKI: All right. The Government moves into evidence Government's Exhibit 432.
MR. ZIMET: No objection, Judge.
MR. BARZEE: No objection.
THE COURT: 432 will be received.
(Government's No. 432, Messages, was received in Evidence.)
MR. POGOZELSKI: Thank you, Your Honor.
If we could publish that for the jury, and then go to

the next page.
BY MR. POGOZELSKI:
Q. What does Adam Brosius write to Charles Boyd there on September 29, 2020?
A. "GM. Peter at Boulevard looking for $$."
Q. What is Charles Boyd's response?
A. "He's got 200K coming today."
Q. All right. And then can you read through at least a few of those other messages there?
A. Adam replies: "Okay. He's looking for more. Told me he was expecting $$ yesterday, but I didn't talk to him about that. He's been shipping us a lot of product."
Then Charles Boyd replies: "We're having some serious issue with Boulevard product."
Adam responds: "Okay. What's up? Can you call me?"
Q. And then if we can go at the bottom, do you see where Charles Boyd says "Yo," and then to the next page?
A. Yes.
Q. What does Charles Boyd write there?
A. "Ready to get on Peter. I just missed a call from him."
Q. Okay.
MR. POGOZELSKI: Now if we could pull up Government's Exhibit 432 -- sorry. Government's Exhibit 174, which is already in evidence. All right.
BY MR. POGOZELSKI:

Q. Do you see on September 29th an email from Cassandra Kozak to Abbie Divilio?
A. Yes.
Q. All right. Do you see where it says -- can you read this sentence right here where that arrow is?
A. "I called and left a voicemail message a few minutes ago. I realize you are gone for the day, but I wanted to follow up this way as well."
Q. Do you see where it says, "We can confirm"?
A. "We can confirm that based on the provided documents (thank you for those, they really helped), we have no record of either transaction."
Q. And then what is the date that Abbie Divilio forwards this email to Charles and Patrick Boyd?
A. September 30, 2020.
Q. All right.
MR. POGOZELSKI: And then if we can pull up what's already in evidence Government's Exhibit 505, which should be a text thread with Charles Boyd, Peter and Adam Brosius.
BY MR. POGOZELSKI:
Q. All right. I think I already said this.
I'll just ask you this question: Is Abbie Divilio on this thread, text thread as far as you can see?
A. No.
Q. If we can go to page 3.

What's the date? Do you see where it says, "Peter, hey, good morning, guys."
What's the date of that message?
A. September 30, 2020.
Q. Was that the same date that Abbie Divilio forwarded that email to Charles and Patrick Boyd?
A. Yes.
Q. All right. If we can keep going down.
What does Adam Brosius write there on this group thread?
A. "GM, Peter. Charlie and I will give you a ring this morning."
Q. All right. If we can keep going.
And then what does Adam Brosius write there?
A. "Peter, are you free at 11:15?"
Q. All right.
MR. POGOZELSKI: And if we go to Government's Exhibit 41B, which was the summary chart of the calls.
THE COURT: Are you admitting 41A, B, C, D, and E?
MR. POGOZELSKI: I believe so. I don't believe there was any objection to that because 40 was the whole exhibit and then we had the sub-exhibits but...
MR. ZIMET: No objection, Judge.
MR. BARZEE: No objection.
THE COURT: So 41A through E will be received.
MR. POGOZELSKI: Thank you, Your Honor.

(Government's No. 41A through 41E, Summary Charts, were received in Evidence.)

BY MR. POGOZELSKI:

Q. On this page, does there appear to be -- at least there are about three calls between Charles Boyd and Adam Brosius on September 30th of 2020?

A. Yes. Three calls on September 30, 2020.

Q. All right. And do they -- we can go back to the text messages, but do they appear to be around the time period when Adam was asking if Peter was free?

A. Yes. If I recall, he asked him if he was free at 11:15. These calls took place at 11:26 a.m., 11:32 a.m. and 11:44 a.m.

Q. Okay.

MR. POGOZELSKI: Now, we can go back to that group text thread between Charles Boyd, Peter, and Adam Brosius and go to page 6.

All right.

BY MR. POGOZELSKI:

Q. Do you see there on October 1st, 2020, there's a file that Peter sends?

A. Yes. Cdgxka.pdf.

Q. And is this date, October 1st, 2020 -- is that after those phone calls that we looked at?

A. Yes.

Q. And is it after that email that Abbie Divilio forwarded

from IPC to the defendants?
A. Yes.
Q. All right.
MR. POGOZELSKI: If we can open up that PDF file that Peter sent on October 1st. Okay. If we can zoom out. Are there -- and zoom a little bit in.
BY MR. POGOZELSKI:
Q. Are there new entities listed in the "sold to" columns here that I'm pointing out on this T3 pedigree that Peter Boulevard sent to Charles Boyd and Adam Brosius on October 1st of 2020?
A. Compared to the previous document that we viewed?
Q. Yes, sir.
A. Yes.
Q. All right. Did the previous one, as far as you recall, have Independent Pharmacy Cooperative at the top?
A. Yes. In Sun Prairie, Wisconsin.
Q. Right.
And what's the entity listed there now?
A. Rochester Drug Coop, Inc. in Fairfield, New Jersey.
Q. Did the prior ones that we looked at have other pharmacies not InstaCare Pharmacy on them?
A. Yes. It had a different pharmacy, if I recall correctly.
Q. Okay. This new T3 is sent by Peter after the email that Abbie forwarded regarding the IPC with no record of transactions to Charles and Patrick Boyd?

A. Yes.
Q. Just a couple days after, give or take?
A. Yes.
Q. All right.
MR. POGOZELSKI: We can take that down and go back to the texts.
BY MR. POGOZELSKI:
Q. What does Peter Boulevard write below that text where he sends that revised, new T3 pedigree?
A. "That more better one."
Q. Okay. And then what does he say?
A. "Let's get this going, guys."
Q. All right. And what's the date of these text messages?
A. October 1st, 2020.
Q. All right.
MR. POGOZELSKI: I think we have Government's Exhibit 176 already in evidence; so if we could pull that up, and then if we go to the second page.
BY MR. POGOZELSKI:
Q. On October 1st, 2020, what does Abbie Divilio write to King Kimchi and Charles Boyd?
A. "Hello. I'm not able to verify these transactions on this T3. InstaCare Pharmacy is no longer at the address you have listed on the T3. Do you have a board of pharmacy license on file you can share with us? This will help me verify this

pharmacy. I have also been in touch with Rochester Drug and am awaiting more information from them to verify the original transaction.

"When I looked up InstaCare Pharmacy, I attempted to call the number which rang continuously until it disconnected with what sounded like a fax. I called the location next to door to this address and was told this pharmacy has moved and has not been at this location for three to four months.

"This would also explain why I cannot locate any information about them from the NYBOP web page. We will need additional information to support these transactions. Also, we need the additional T3s from Monday since we received 551 pieces of inventory and you have only provided one T3 for one NDC.

Q. All right. And if we scroll back up.

What does Charles Boyd write in that October 2020 email?

A. "FYI. Doesn't look great right now but waiting to hear back. Rochester Drug filed for bankruptcy in March as well and I'm pretty sure they're not currently operating, CB."

Q. And then what does Adam Brosius write to Charles Boyd at the top?

A. "WTF. Just fill in whatever info you want, LOLOL."

Q. Is Abbie Divilio on that top-level email?

A. No, she is not.

Q. But Adam Brosius and Charles Boyd are?

A. Yes.
Q. Okay.
MR. POGOZELSKI: If we can show just the witness Government's Exhibit 179.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, is this an email from an Olympia Plaza that copies Patrick Boyd among others?
A. Yes.
Q. Is it dated October 1st, 2020?
A. Yes.
MR. POGOZELSKI: All right. The Government moves into evidence Government's Exhibit 179.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 179 will be received.
(Government's No. 179, Email, was received in Evidence.)
MR. POGOZELSKI: Thank you, Your Honor. If we could publish this one for the jury.
BY MR. POGOZELSKI:
Q. What is the title listed for the individual who sent this email from Olympia Plaza?
A. Emil, Emily, Borokhovich, pharmacy manager.
Q. And what's the subject line?
A. "Olympia Plaza Pharmacy product return."
Q. Is there an attachment there next to that dot?

A. Yes.
Q. What is that?
A. There's an attachment, "Safe Chain order pedigree, September 2020. Safe Chain order return 9/2020 and a third PDF 20209/11 INV."
Q. All right.
MR. POGOZELSKI: If we can go to page 7.
BY MR. POGOZELSKI:
Q. What entity is listed on this Safe Chain T3 pedigree that was sent by Olympia Plaza at the top here?
A. Independent Pharmacy Cooperative.
Q. All right. And then what about below it?
A. Stain RX.
Q. And then below that?
A. BNR Wholesaler.
Q. All right. Is this T3 pedigree that was sent by Olympia Plaza on October 1st, 2020, different than the one we were looking at in the text messages?
A. Yes.
Q. Did that one have Rochester Drug instead of Independent Pharmacy Cooperative, as far as you remember?
A. I believe so.
Q. Okay.
MR. POGOZELSKI: And then we can go to Government's Exhibit 438, which is in evidence. And then go to the next

page.

BY MR. POGOZELSKI:

Q. October 2nd, 2020: As far as you recall, is that the next day after that email we just looked at attaching the T3s?

A. Yes.

Q. Okay. What does Charles Boyd write here?

A. "Yeah, he seems off, but we need to take the return."

Q. And then what does he say after that?

A. "Because we know the T3 is not what it needs to be from Boulevard."

Q. And then what is Charles Boyd -- right here next to that dot?

A. "Yeah, we don't need him going to the CA BOP."

Q. As far as you know, does that stand for the California Board of Pharmacy?

A. Yes.

Q. And are these messages one day after that last email from Olympia?

A. Yes.

MR. POGOZELSKI: Okay. Now, if we could go back to Government's Exhibit 505, and go to page 8. All right. So these are the -- this should be the group thread. And if we go to page 8 here.

BY MR. POGOZELSKI:

Q. What's the date of these messages?

A. October 1st, 2020.

MR. POGOZELSKI: All right. And then keep going down.

BY MR. POGOZELSKI:

Q. What does Peter Boulevard write to Charles Boyd and Adam Brosius here on October 2nd, 2020?

A. "Hey, guys, good morning. I sent all the stuff to compliance, that the only thinks [sic] we have, I don't know what else to do. Let me know if we can go forward. Thank you so much."

MR. POGOZELSKI: Now, if we go back to Government's Exhibit 41A, the summary of calls between Charles Boyd and Peter Boulevard.

BY MR. POGOZELSKI:

Q. Was there a call on October 2nd, the same date as those text messages or that text message we just looked at from Peter?

A. Yes. Line Item 14.

Q. All right. And who's that call from?

A. From Charles Boyd to Peter Khaim.

Q. And how long was that call?

A. Five minutes.

MR. POGOZELSKI: Now, go back to the text thread on the top of page 9. Go to the top of page 9.

BY MR. POGOZELSKI:

Q. All right. Is there an image sent there?

A. Yes.
Q. All right. And is that a few days -- what is the date there?
A. October 6, 2020.
MR. POGOZELSKI: All right. If we could open that image -- we'll go ahead and skip that image then.
Let's go to page 10 or keep going down. What is -- sorry. Go back up.
BY MR. POGOZELSKI:
Q. What does Charles Boyd write after the image, if you keep going?
A. "Compliance said getting an invoice like this that matches your T3 -- that we are good."
Q. All right.
MR. POGOZELSKI: And we'll keep going.
BY MR. POGOZELSKI:
Q. What does Peter say in response?
A. "Let's go forward."
Q. Okay.
MR. POGOZELSKI: Keep going.
BY MR. POGOZELSKI:
Q. What does Charles Boyd write there?
A. "You can provide these?"
Q. And what is Peter's response?
A. "Not on all.

"When can we start?"
Q. All right.
MR. POGOZELSKI: Keep going.
BY MR. POGOZELSKI:
Q. What does Charles Boyd write there?
A. "We need these for all future orders. Can you do that?"
Q. All right. And then what does Peter say there?
A. "We'll try, do [sic] the best."
MR. POGOZELSKI: Keep going.
A. "Just place the order tomorrow, and we'll do the best [sic]."
BY MR. POGOZELSKI:
Q. And then what does Charles Boyd write in response?
A. "This is not about doing your best. This is a requirement by law. We need these or other -- something similar, and they need to be able to get verified. I don't make the rules."
Q. All right. And are these text messages after the prior emails and texts with the different versions of the Peter Boulevard T3s with IPC and Rochester?
A. Yes.
Q. And are these emails -- sorry, these text messages -- were they after that email where Charles Boyd sent a list of all the drugs in that spreadsheet?
A. Yes.
Q. Okay.

MR. POGOZELSKI: Now, if we could pull up what's already in evidence Government's Exhibit 187.

BY MR. POGOZELSKI:

Q. What does the person from Gilead on October 9, 2020, write to Abbie Divilio there?

A. "Dear Abbie, this matter has been referred to my team. The information contained in the pedigree/transaction history document is inconsistent with our records. If this pedigree documentation is associated with Gilead product in your possession or control, we therefore believe it should be treated as illegitimate product and quarantined and should be reported to the FDA via a Form FDA 3911. Please share with me a copy of any 3911 form involving Gilead products that you submit to the FDA."

Q. All right.

MR. POGOZELSKI: If we can take a quick look at the next page.

BY MR. POGOZELSKI:

Q. And what does Abbie Divilio write there in that email before the Gilead response?

A. "Good afternoon, Clifford. We are attempting to verify the T3 attached. If you are able to verify the first transaction from Gilead to Rochester Drug, it would be greatly appreciated. Thank you in advance."

Q. Was Rochester Drug the entity listed after the IPC email

confirming the transaction didn't take place?
A. Yes.
MR. POGOZELSKI: If we can scroll back up.
BY MR. POGOZELSKI:
Q. What does Abbie write here to Charles Boyd and Patrick Boyd on October 12th of 2020?
A. "Good morning. This is a note regarding Biktarvy lot CDGXKA."
Q. And let me know stop you there.
Do you remember, as far as you recall, was that the name of the file that Peter Boulevard sent in those text messages?
A. Yes.
Q. Okay. You can continue.
A. "Gilead believes this to be a counterfeit drug, which we should report to the FDA. I think we should review more of the lots we have received. Let me know how we should proceed."
Q. All right.
MR. POGOZELSKI: Now if we can pull up Government's Exhibit 88, which is already in evidence.
BY MR. POGOZELSKI:
Q. All right. Special Agent Calienes, does this Safe Chain Solutions T3 or pedigree look different than the prior versions we looked at?
A. Yes, it does.
Q. Okay. Are there new entities listed here in these "sold

to" columns by the blue dots?
A. Yes.
Q. Okay.
MR. POGOZELSKI: Now, if we could show just the witness Government's Exhibit 190.
BY MR. POGOZELSKI:
Q. All right. Is this an email from King Kimchi to compliance, copying Abbie Divilio and Charles Boyd on October 13, 2020?
A. Yes.
MR. POGOZELSKI: The Government moves into evidence Government's Exhibit were 190.
MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: 190 will be received.
(Government's No. 190, Email, was received in Evidence.)
MR. POGOZELSKI: All right. And then if we could publish that. Thank you.
BY MR. POGOZELSKI:
Q. What does this Dakota Flowers, compliance support specialist, write here in response to what appears to be a King Kimchi email below that?
A. "Good afternoon. Do you have any additional information or documents that supports these purchases, invoices, or pedigrees from AmerisourceBergen or Amsterdam Wellness Pharmacy? I'm

unable to get in contact or confirm with these facilities."
Q. What does Mr. King Kimchi write in response?
A. "No, I do not, but it's 100 percent NP."
Q. And who is copied on that email?
A. Abbie Divilio and Charles Boyd.
Q. All right.
MR. POGOZELSKI: Now, if we could show just the witness Government's Exhibit 20.
BY MR. POGOZELSKI:
Q. Are these -- is this a message from Adam Brosius to Patrick Boyd and Charles Boyd on October 30th of 2020?
A. Yes, it is.
MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 20.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 20 will be received.
(Government's No. 20, Email, was received in Evidence.)
MR. POGOZELSKI: Thank you, Your Honor.
And if we could -- it looks like it's published.
BY MR. POGOZELSKI:
Q. What does Adam Brosius write to Pat Boyd and Charles Boyd here on October 30, 2020, a few weeks after these other emails that we looked at:
A. "I just sent this to my people."

Q. And below that?
A. Adam Brosius, 5:54 p.m.: "Great month. Between the two locations, we sold about 12.5 million. That is 150 million a year. With Boulevard back in play, hopefully, we can continue the momentum. November will be a shortened business month with us losing at least 1.5 to 3 days to holidays and people closing down, about 19 full business days. Have a great weekend. Monday we start back at zero."
Q. All right. And if you still have the indictment in front of you, Special Agent Calienes, does this message correspond to the Count VII, charging wire fraud on October 30th of 2020?
A. Yes.
Q. And have you reviewed Adam Brosius's driver's license?
A. Yes, I have.
Q. Do you know where he lived at the time of this email or during the alleged conspiracy period?
A. He lived in Florida.
Q. Okay. And where was Safe Chain Solutions located?
A. Maryland.
Q. All right.
MR. POGOZELSKI: Now, if we could also pull up for just the witness Government's Exhibit 482.
BY MR. POGOZELSKI:
Q. All right. Are these messages between Adam Brosius and Pat Boyd on October 29, 2020?

A. Yes.

MR. POGOZELSKI: All right. The Government would move into evidence Government's Exhibit 482.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 482 will be received.

(Government's No. 482, Email, was received in Evidence.)

MR. POGOZELSKI: All right. We can take that down and show just the witness Government's Exhibit 344.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, is this an email from Charles Boyd to others on December 14, 2020?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 344.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 344 will be received.

(Government's No. 344, Email, was received in Evidence.)

MR. POGOZELSKI: All right. Thank you.

BY MR. POGOZELSKI:

Q. And what's the date of this email from Charles Boyd to managers?

A. December 14, 2020.

Q. All right. And do you know generally what a SWAT -- well,

we don't even have to ask that question.

MR. POGOZELSKI: If we can go to page 4.

BY MR. POGOZELSKI:

Q. All right. In this SWAT analysis that Charles Boyd sent, under "Weaknesses," what does it say next to .1?

A. "Sales diversity, too many eggs in HIV basket."

Q. What does it say under .5?

A. "SOPs not followed. Costly errors from not following processes."

Q. And then if we go under "Threats," what does it say next to .6?

A. "Trading partner integrity."

Q. All right.

MR. POGOZELSKI: And if we go back up to the very top of the email thread.

BY MR. POGOZELSKI:

Q. Is this email sent approximately a couple months after those October 2020 emails with Abbie Divilio and Gilead?

A. Yes.

Q. Okay.

MR. POGOZELSKI: We can take that down and show just the witness Government's Exhibit 537.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, is this an excerpt of text messages between Charles Boyd and Brother?

A. Yes.

Q. With a start date there of March 30th of 2021?

A. Yes.

MR. POGOZELSKI: At this time, the Government moves into evidence Government's Exhibit 537.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 537 will be received.

(Government's No. 537, Text Messages, was received in Evidence.)

MR. POGOZELSKI: All right. If we can go to page 9.

BY MR. POGOZELSKI:

Q. What does Brother say there on March 30th of 2021 to Charles Boyd?

A. "We were adamant about it. We were still selling Boulevard today."

Q. All right. And what's the date of that?

A. March 30, 2021.

Q. Okay.

MR. POGOZELSKI: If we could take that down and show just the witness Government's Exhibit 458.

BY MR. POGOZELSKI:

Q. Are these messages between Adam Brosius, Pat Boyd, Charles Boyd and someone named Garrett in May of 2021?

A. Yes.

MR. POGOZELSKI: All right. The Government moves into evidence Government's Exhibit 458.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 458 will be received.

(Government's No. 458, Text Messages, was received in Evidence.)

MR. POGOZELSKI: Thank you, Your Honor.

BY MR. POGOZELSKI:

Q. And then if we go to the next page, do you see where -- well, just walk us through these text messages without, obviously, repeating some of the expletives.

A. Where would you like me to begin?

Q. There's not many, start at the top.

A. "Garrett says, good news/bad news. I'm expecting inventory lists from both Cintex and Synergy today. The bad news is they will both be landing on Friday."

Garrett adds, "Call in the troops."

Charles Boyd responds, "Nice," and an expletive, "LOL. Why always Friday?"

Garrett replies, "I have been pushing them both all week. They don't get their inventory until Wednesday and can't churn it the same day."

Charles Boyd responds, "Gotcha. We know how that goes. We'll do it the best we can, as always. Good thing we're still

sitting on Boulevard cash."

Garrett replies, "You might have to get your hands dirty, ROFL."

Charles Boyd responds, "I'm good with a tape gun."

MR. POGOZELSKI: All right. We can take that down and go -- we can show what's already in evidence, Government's Exhibit 243.

BY MR. POGOZELSKI:

Q. What does Abbie Divilio write here to Pat Boyd on March 10, 2021?

A. The subject is T3 Verification Issue. "

Good morning, Pat. We were attempting to verify the T3 information provided to us from the new vendor Synergy, and this is the response we received."

"Hello, Dakota. I apologize for the delay. I missed this email when it first came in. These products were not purchased from us. We did employ someone named Jefferey Anderson; however, he is no longer with the company. We have no existing relationship with Synergy Group Wholesalers; so any transaction history that they give you with our information is incorrect. We appreciate you bringing this to our attention and will submit a report with the FDA."

Q. All right. And what's the date of this email?

A. March 10, 2021.

Q. And as far as you recall, those messages we were just

looking at just before this, were those in May of 2021?
A. Yes.
Q. All right.
MR. POGOZELSKI: And if we could scroll to page 6.
BY MR. POGOZELSKI:
Q. This is a little difficult to see here, but if you look at -- do you see where it says, "DMS" -- well, at the top, what is the company name listed at the top?
A. Synergy Group Wholesalers.
Q. All right. And then what is the company listed here as buying from Janssen?
A. DMS Pharmaceutical Group, Inc.
Q. All right.
A. In Park Ridge, Illinois.
Q. And then for the email address for this, do you see where it says, "To authenticate a subsequent transaction, contact" -- you see that part?
A. Yes.
Q. What is the email address listed for the person who is supposed to be contacted to authenticate a transaction?
A. JeffereyAndersonDms@gmail.com.
Q. And other than in the first part of the email, is the second part after the "@," is there anything about DMS or pharmaceutical group in there?
A. No.

Q. It's just a Gmail address?
A. Yes.
Q. Okay. For someone who is supposed to authenticate a transaction?
A. Yes.
MR. POGOZELSKI: Go back up to page 1.
BY MR. POGOZELSKI:
Q. What does Patrick Boyd write to Adam Brosius here after getting the email from Abbie Divilio?
A. "Possible problem."
Q. All right.
MR. POGOZELSKI: Now, if we could go -- what's the date? March 10th. All right.
We'll show what's already in evidence Government's Exhibit 463. All right.
BY MR. POGOZELSKI:
Q. Let's read this through these messages, Special Agent Calienes, if you'll indulge me.
A. Yes.
Adam Brosius sent this message to Charles Boyd on April 7, 2021. "Synergy is asking if we are cutting a PO. They sent the updated application back to Abbie today. Want to know if we are moving forward."
Pat Boyd replies to Adam Brosius and Charles Boyd, "I can call them tomorrow if Abbie can tell me the exact issues. I

know we had that initial hiccup but was -- but wasn't sure about anything else."

Charles Boyd writes, "The T3 didn't go back to an AD but to a ghetto PR distributor."

Charles Boyd writes, "Between that and lying the first time, we just need to be careful."

Pat Boyd replies, "Okay. Got it."

Q. All right. At least on these messages that you just read through, is Abbie Divilio on these messages?

A. None of them.

Q. And the date here, April 7, 2021, is that nearly a month after that March email that we looked at from Abbie to Pat Boyd?

A. Yes.

Q. Okay.

MR. POGOZELSKI: If we could show just the witness Government's Exhibit 527.

BY MR. POGOZELSKI:

Q. Are these text messages involving Patrick Boyd and a Jon Weed on April 8th of 2021?

A. Yes.

MR. POGOZELSKI: All right. The Government would move into evidence Government's Exhibit 527.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 527 will be received.

(Government's No. 527, 4/8/2021 Text PB JW News on HIV Suppliers, was received in Evidence.)

BY MR. POGOZELSKI:

Q. All right. Special Agent Calienes, as far as you recall, is this -- are these texts one day after those messages, those Teams messages we just looked at about Synergy?

A. Yes.

Q. And what does -- what does -- just walk us through the first two messages here.

A. Jon Weed writes a message that says, "Any good news on the HIV brand suppliers?"

Patrick Boyd replies, "No shipping news. I'm making progress with paperwork."

Q. That's all right.

And then what does Patrick Boyd say right here next to the blue dot?

A. "Yeah, I'm on a rampage with compliance to get some stuff rolling."

Q. All right. And then going back up here, what does he say he's making progress on?

A. Paperwork.

Q. And is this -- this was a day after those prior messages we just looked at?

A. Yes. Those messages were on April 7th, and now these text

messages are on April 8th.

MR. POGOZELSKI: Okay. If we could show or pull up Government's Exhibit 268, which is in evidence. All right.

BY MR. POGOZELSKI:

Q. This top email between -- who is it between?

A. Pat Boyd and Charles Boyd.

Q. And is that a day after those text messages we were just looking at?

A. Yes. This email is dated April 9, 2021.

Q. All right. And what does Abbie Divilio write to Charles and Patrick Boyd here below that email?

A. "Good morning. I'm a little leery of this information as well. Cesar Castillo is a 3PL provider; so I would expect to see a transaction between Gilead and Cesar Castillo. I can't imagine Gilead, quotation marks, 'sold' anything to Cesar Castillo.

"Also, on the 3PL web page, I can see that the proper company name is Cesar Castillo LLC, not Inc., as listed on this pedigree.

"Also, the email is incorrect. From the company web page, their emails end with CesarCastillo.com, not the CesarCastilloInc.com as listed on the pedigree. Not sure I can point the finger and say this is a fraudulent, but it does seem to be incomplete."

Q. All right. And what does Patrick Boyd write to Charles

Boyd above that?
A. "She has ever [sic] reason to [sic] sceptical, but we need to not use words like 'I can't imagine.' That wouldn't cover us whether it's good or bad."
Q. All right.
MR. POGOZELSKI: If we could show just the witness Government's Exhibit 483.
BY MR. POGOZELSKI:
Q. Are these Teams messages between --
MR. POGOZELSKI: Hold on. I have that wrong. Let's move on to Government's Exhibit 529, then.
BY MR. POGOZELSKI:
Q. All right. Are these text messages between Patrick Boyd and Adam Brosius in May of 2021?
A. Yes.
MR. POGOZELSKI: The Government moves to admit Government's Exhibit 529.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 529 will be received.
(Government's No. 529, 5/12/2021 Text AB PB re: Wouldn't report them, was received in Evidence.)
MR. POGOZELSKI: Okay. And if we could publish that. Thank you very much.
BY MR. POGOZELSKI:

Q. Can you just walk us through these text messages from Pat Boyd to Adam Brosius.

A. Patrick Boyd sent first message and wrote, "Cintex was pretty tiny, too. If I can help with Invicta in any way, let, me know."

Adam Brosius responds, "I have been pushing them. They are scared about the paperwork."

Pat Boyd replies, "I can help with that off the record if they have some questions. We wouldn't report them in any fashion, regardless."

Adam Brosius responds -- oh, he liked -- he liked Patrick Boyd's message of "I can help with that off the record if they have some questions. We wouldn't report them in any fashion, regardless."

Pat Boyd writes, "Let's see where Jon goes from here."

And Adam Brosius likes that message.

Q. Okay.

MR. POGOZELSKI: We can take that down.

BY MR. POGOZELSKI:

Q. And was there a reference to Invicta in there, as far as you remember?

A. Yes.

MR. POGOZELSKI: If we can show just the witness Government's Exhibit 347.

BY MR. POGOZELSKI:

Q. This is an email from Pat Boyd to Charles Boyd regarding Invicta April 19, 2021?
A. Yes.
MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 347.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 347 will be received.
(Government's No. 347, Document, was received in Evidence.)
BY MR. POGOZELSKI:
Q. All right. Thank you.
What does compliance, Abbie Divilio, write to Charles and Patrick Boyd with the subject line "Invicta vendor app"?
A. "Hi. I have been attempting to verify Invicta. It is nice that they have multiple licenses, all of which are valid, which is a plus. It's a little odd that they don't have any kind of social media presence on Facebook or even LinkedIn. I also called the person George who is listed as the contact. I explained who I was and what I was I was trying to verify. He told me he was very busy and in the middle of something. Then hung up on me.
"Garrett has asked for a redacted invoice. So when that comes through, I'll see what I am able to verify on it."
Q. And then does she write something to conclude that message?

A. "All in all, it was rather strange."
Q. And then what does Patrick Boyd write to just Charles Boyd at the top?
A. "It [sic] not for her to worry about their social media presence."
Q. All right.
MR. POGOZELSKI: Let's take that down and move on to Government's Exhibit -- just for the witness -- Government's Exhibit 479.
BY MR. POGOZELSKI:
Q. Are these messages the same day between Pat and Charles Boyd?
A. Yes.
MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 479.
MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: 479 will be received.
(Government's No. 479, Email, was received in Evidence.)
MR. POGOZELSKI: Thank you.
And then if we go to the next page.
BY MR. POGOZELSKI:
Q. All right. What does Patrick Boyd write here?
A. "I don't think we want Abbie doing anything like researching social media presence. We were okay with them

being on the T3 last week after looking eye on to them [sic]. I'd assume with an ad we would be okay with them as direct seller with an Utah license instead of a pickup."

Q. And what about that?

A. "Did the FDA ever ask for it? Any vendor we give them, they'll say inconsistent; so it's worthless."

Q. All right.

MR. POGOZELSKI: Now, if we could show just the witness Government's Exhibit 480.

BY MR. POGOZELSKI:

Q. Are these messages between Pay Boyd, Charles Boyd, and a Jesse Hammett in May of 2021?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 480.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 480 will be received.

(Government's No. 480, Teams Messages, was received in Evidence.)

MR. POGOZELSKI: All right. If we go to the next page.

BY MR. POGOZELSKI:

Q. What does Charles Boyd write here at the top?

A. "We really need an MVE for April equals honesty."

Q. And Jesse Hammett's response?

A. "Honesty is a tough one."
Q. And then what does Charles Boyd write below those to -- below -- in the two messages below that response?
A. "Yeah, but who isn't a, quotation marks, yes-man."
Q. And then if you look down at the bottom, right by the dot, what does Jesse Hammett say?
A. "I feel like Abbie is pretty honest."
Q. And then does he mention someone else as well?
A. "John Atkinson, although I don't have any examples for either."
Q. All right. And what is the date of these Teams messages?
A. May 10, 2021.
Q. All right.
MR. POGOZELSKI: Let's pull up, for just the witness, Government's Exhibit 475. And we're going to go a little bit back in time.
BY MR. POGOZELSKI:
Q. Are these messages between Patrick Boyd and a Marc Smith in July of 2020?
A. Yes.
Q. All right.
MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 475.
MR. BARZEE: No objection.
MR. POGOZELSKI: Okay.

THE COURT: 475 will be received.

MR. POGOZELSKI: Thank you, Your Honor.

(Government's No. 475, Teams Messages, was received in Evidence.)

MR. POGOZELSKI: All right. Let's go to page 2.

BY MR. POGOZELSKI:

Q. What does Patrick Boyd write here?

A. "Just respond to Dakota, since she's, quotation marks, BTW, pedigrees are not called pedigrees anymore. It's changed to T3s."

Q. All right.

MR. POGOZELSKI: Next page.

A. "She's still training so we can get her out of that fast."

BY MR. POGOZELSKI:

Q. All right. Is that from Patrick Boyd?

A. Yes.

MR. POGOZELSKI: The next page.

BY MR. POGOZELSKI:

Q. What does Patrick Boyd write here to Marc Smith in July of 2020?

A. "Abbie may be a lost cause."

Q. And the next page?

A. "Okay. Cool. I'll tell her now."

Q. All right. Keep going.

What does Patrick Boyd write here to Marc Smith?

A. "I want to get her as far from Abbie's habits as possible."

MR. POGOZELSKI: All right. We can take that down, and show just the witness Government's Exhibit 481.

BY MR. POGOZELSKI:

Q. Are these Teams messages between Adam Brosius, Patrick Boyd, Charles Boyd, and a Garrett in July of 2021?

A. Yes.

MR. POGOZELSKI: All right. The Government moves into evidence Government's Exhibit 481.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 481 will be received.

(Government's No. 481, Teams Messages, was received in Evidence.)

MR. POGOZELSKI: Thank you, Your Honor.

If we go to the next page, if we could zoom in here on the messages from where that dot is down to the bottom.

BY MR. POGOZELSKI:

Q. What does Adam Brosius write here to Pat and Charles Boyd?

A. "I think we need to add into any settlement that info stays with Gilead, meaning that they can't share with other manufacturers."

Q. And then what are the responses there?

A. Patrick Boyd responds, "Absolutely. 100 percent."

Q. And then what does Adam Brosius write?

A. "We don't want them calling ViiV and Pfizer, et cetera."

Q. And then what do the Boyd brothers write in response to Adam Brosius's statement about not having Gilead call these other manufacturers?

A. Patrick Boyd responds, "Right," and Charles Boyd responds, "Yep."

MR. POGOZELSKI: All right. This would be a logical break.

THE COURT: All right. Members of the jury, we're going to go ahead and recess for lunch. Remember my admonition not to discuss the case or allow it to be discussed in your presence. I'm going to ask you to come back at 1:15. So have a nice lunch, and we'll see you back at 1:15.

THE COURT SECURITY OFFICER: All rise.

(Jury exits.)

THE COURT: Agent, remember my admonition about not discussing anything, and we'll see you back at 1:15.

THE WITNESS: Thank you, Your Honor.

(Witness exits.)

THE COURT: And if there's nothing else to come before the Court, we'll be in recess until 1:15.

(Off the record from 12:02 PM to 1:15 PM, after which the following proceedings were had:)

THE COURT: Back on the record. Counsel is present. Both defendants are present.

Agent Calienes, do you understand you're still under oath?

THE WITNESS: Yes, sir.

THE COURT: Anything to come before the Court before we bring the jury in?

MR. POGOZELSKI: Yes, Your Honor.

We have reached a stipulation with the defense as to the admissibility of a number of exhibits.

THE COURT: Okay.

MR. POGOZELSKI: So I can just go through them right now, that we want to move into evidence, without going through each one with the agent.

THE COURT: Okay.

MR. POGOZELSKI: Government's Exhibit 115. Government's Exhibit 123. Government's Exhibit -- and let me know if I should slow down -- 141.

THE COURT: Okay.

MR. POGOZELSKI: Government's Exhibit 149.

THE COURT: Okay.

MR. POGOZELSKI: Government's Exhibit 161.

THE COURT: Okay.

MR. POGOZELSKI: Government's Exhibit 162.

THE COURT: Okay.

MR. POGOZELSKI: Government's Exhibit 200.

THE COURT: Okay.

MR. POGOZELSKI: Government's Exhibit 217.
THE COURT: Okay.
MR. POGOZELSKI: Government's Exhibit 247.
THE COURT: Okay.
MR. POGOZELSKI: Government's Exhibit 265.
THE COURT: Okay.
MR. POGOZELSKI: Government's Exhibit 339.
THE COURT: Okay.
MR. POGOZELSKI: Government's Exhibit 405.
THE COURT: Okay.
MR. POGOZELSKI: Government's Exhibit 445.
THE COURT: Okay.
MR. POGOZELSKI: Government's Exhibit 446.
THE COURT: Okay.
MR. POGOZELSKI: Government's Exhibit 484.
THE COURT: Okay.
MR. POGOZELSKI: Government's Exhibit 535.
THE COURT: Okay.
MR. POGOZELSKI: Government's Exhibit 665.
THE COURT: Okay.
MR. POGOZELSKI: And Government's Exhibit 422.
THE COURT: Okay. Those exhibits are admitted.
(Government's No. 115, 123, 141, 149, 161, 162, 200, 217, 247, 265, 339, 405, 445, 446, 484, 535, 665, 422, Documents, was received in Evidence.)

THE COURT: If we have all the jurors, let's bring them in.

THE COURT SECURITY OFFICER: All rise.

(Jury in.)

THE COURT: Does counsel concede the presence of the jury and waive its polling?

MR. POGOZELSKI: Yes, Your Honor.

MR. ZIMET: Yes, sir.

MR. BARZEE: Yes, Your Honor.

THE COURT: And did everyone follow my admonition not to discuss the case or allow it to be discussed in your presence?

All right. We may proceed.

MR. POGOZELSKI: Thank you, Your Honor.

If we could pull up for just the witness Government's Exhibit 406.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, are these messages between Adam Brosius and Charles Boyd in May of 2020?

A. Yes.

MR. POGOZELSKI: Government moves into evidence Government's Exhibit 406.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 406 will be received.

(Government's No. 406, Teams Messages, was received in Evidence.)

MR. POGOZELSKI: If we can go to the next page.

BY MR. POGOZELSKI:

Q. Do you see --

MR. POGOZELSKI: And if we go to the next page. Actually, sorry, go back one more.

BY MR. POGOZELSKI:

Q. All right. Do you see where Adam Brosius says on here -- by the blue dots and the arrow, what does Adam Brosius write there on May 22nd of 2020 to Charles Boyd?

A. "Our numbers are going to be one million-plus on HIV."

Q. All right.

MR. POGOZELSKI: And then if we go to the next page.

BY MR. POGOZELSKI:

Q. And what does Adam Brosius write there, next to that arrow?

A. "We did 500K today."

Q. And does he send a GIF there as well as a message to Charles Boyd?

A. "Boom," and it's a photo of an explosion.

MR. POGOZELSKI: And then the next page.

BY MR. POGOZELSKI:

Q. And then I know on the top it's kind of cut off. What does Charles Boyd write at the top?

A. "We have 750K pending, depending on BO and hold."

Q. And then what does Adam Brosius write there?
A. "Double boom."
MR. POGOZELSKI: And let's take that down and show just the witness Government's Exhibit 404.
BY MR. POGOZELSKI:
Q. Are these messages now between Patrick Boyd and Adam Brosius in May of 2020?
A. Yes.
MR. POGOZELSKI: Government moves into evidence Government's Exhibit 404.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 404 will be received.
(Government's No. 404, Teams Messages, was received in Evidence.)
MR. POGOZELSKI: And if we can scroll -- I believe it's at the top of page 3.
BY MR. POGOZELSKI:
Q. What does Adam Brosius write here to Patrick Boyd, next to the dot, on May 13th of 2020?
A. "This HIV stuff can be very profitable, not by percentage but by dollar volume."
Q. And what is the date of that message?
A. May 13, 2020.
MR. POGOZELSKI: Now, if we could pull up for just the

witness -- take that down -- Government's Exhibit 612.

Do you see that on your screen? You may need a little bit of zooming.

If we can zoom on just the top part there.

BY MR. POGOZELSKI:

Q. Are these meeting notes from August of 2020?

A. Yes.

Q. All right.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 612.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 612 will be received.

(Government's No. 612, Meeting Notes, was received in Evidence.)

BY MR. POGOZELSKI:

Q. What's the date listed up there at the top?

A. August 2nd, 2020.

Q. And what is written in the second bullet point there?

A. "July was a historic revenue month for company. $14,441,600.37 in revenue. Amazing job by -- "

Q. Okay. And then if we scroll down, zoom out and scroll down under "compliance."

What does it say under compliance for these August 2020 meeting notes? The first bullet point?

A. "Boulevard peds to get started this week."
Q. Okay. And if we zoom out, is this August 2nd or 3rd of 2020 for these meeting notes?
A. I believe at the top it's August 2nd, and then it says "correct," and then it says, "meeting notes August 3rd."
Q. Okay. And then in those emails we were looking at earlier and text messages between Peter and Charles Boyd with the images and the PDFs of various T3s, were they after this? A few week after this or so, as far as you recall?
A. I believe so.
MR. POGOZELSKI: We can show just the witness Government's Exhibit 613.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, are these meeting notes also from August of 2020?
A. Yes. The date at the top, August 9, 2020, and the meeting notes are dated for an August 10th meeting.
Q. Okay.
MR. POGOZELSKI: We can zoom out there.
The Government moves to admit Government's Exhibit 612.
MR. ZIMET: This is 613.
MR. POGOZELSKI: Oh, 613. Thank you, Bruce.
MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: 613 will be received.

(Government's No. 613, Meeting Notes, was received in Evidence.)

BY MR. POGOZELSKI:

Q. So what is written here on the second bullet point under General Announcements in August -- around August 10th of 2020?

MR. POGOZELSKI: If we could zoom in on that.

A. "Pat is going to get into the numbers more during Wednesday's meeting, but we need to drastically work on their sales diversity. HIV has saved us from having some dreadful months as a business, and I hate having 75 percent of our eggs there. We should all be thinking of ways to drive more sales diversity."

MR. POGOZELSKI: If we can zoom out, and then go under "compliance" and zoom into the compliance part.

BY MR. POGOZELSKI:

Q. What does it say in that first bullet point?

A. "Boulevard peds supporting documents coming from Peter/Borat."

MR. POGOZELSKI: All right. If we can zoom out.

BY MR. POGOZELSKI:

Q. All right. Are these meeting notes August 9th or 10th of 2020?

A. Yes.

MR. POGOZELSKI: If we could show just the witness Government's Exhibit 427.

BY MR. POGOZELSKI:
Q. Are these Teams messages between Charles Boyd and Adam Brosius in September of 2020?
A. Yes.
MR. POGOZELSKI: All right. The Government moves to admit Government's Exhibit 427.
MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: 427 will be received.
(Government's No. 427, Teams Messages, was received in Evidence.)
MR. POGOZELSKI: Thank you, Your Honor.
If we could scroll to page 3.
BY MR. POGOZELSKI:
Q. All right. So what does Charles Boyd write here on September 11th of 2020? Actually, let me go up one more. Now you have the arrow with the dot.
A. "He isn't selling 'expletive' right now. 1200 in commission last month. Not the guy I want on staff."
Q. Okay. And what does Charles Boyd say below that?
A. "Big day."
Q. And then after that?
A. "About 1.5 invoiced."
Q. And can you continue reading through the rest of these messages.

A. Adam responds, "Nice. That's all HIV. Sorry. A lot of HIV."

Charles Boyd responds, "Love the HIV."

Q. And what's the date of these messages?

A. September 11 of 2020.

Q. Okay.

MR. POGOZELSKI: If we could show just the witness Government's Exhibit 524.

BY MR. POGOZELSKI:

Q. Are these text messages between Pat Boyd and Nicole Sawyer in January of 2021?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 524.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 524 will be received.

(Government's No. 524, Text Messages, was received in Evidence.)

MR. POGOZELSKI: If we could go to page 2. Page 2.

BY MR. POGOZELSKI:

Q. What is written next to those blue dots by Nicole Sawyer to Pat Boyd on January 25th of 2021?

A. "Ugh, help. How would you handle the customer who returned Boulevard product and told her I'd get her Gentek. I asked

Garrett this morning on Gentek shipment update, and he said next week. So I emailed my customer -- customer the update, and she said no problem, she'd stocked for the month but will take the product when it comes in. Now I have to tell her no Gentek."

Q. What does Patrick Boyd respond?

A. "Just say that our supplier is being audited by the manufacturers and said that they aren't shipping until next month at this point. Play the victim like it's killing your numbers too. I'm hoping we have a new, quotation marks 'G'-like source soon."

Q. All right. And what does Nicole Sawyer write there?

A. "Okay, cool. I still shouldn't offer her Boulevard; right? Like is it an option to check product for cosmetic defects before it ships out or no?"

Q. And what does Patrick Boyd write in response?

A. "It's tough. But if I was picking it, I could help. Maybe ask Meg if it's possible for this one order based on the history."

Q. And then if we go to the next page. What does Nicole Sawyer write here next to the arrow?

A. "Okay. Meg said she just checked all the Prezista bottles, and they all look good. Do I even need to tell the customer this is going to be Boulevard product again and not Gentek?"

Q. All right. And what is at Boyd's response to that question?

A. "I just send it and pray."
Q. And Nicole Sawyer's response to that?
A. She likes the message, "I'd just send it and pray."
Q. Okay.
MR. POGOZELSKI: Let's take that down and show just the witness Government's Exhibit 538.
BY MR. POGOZELSKI:
Q. Are these text messages again between Patrick Boyd and Nicole Sawyer?
A. Yes.
Q. Are these March of 2021, a couple of months later?
A. Yes.
MR. POGOZELSKI: The Government moves to admit Government's Exhibit 538.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 538 will be received.
(Government's No. 538, Text Messages, was received in Evidence.)
BY MR. POGOZELSKI:
Q. Okay. Special Agent Calienes, can you walk us through these text messages here between Nicole Sawyer and Patrick Boyd about a couple of months after the prior ones?
A. Yes. Nicole Sawyer texts, "We still can't sell GNDCs, right? I have a customer who wants Genvoya, and what does it

mean when he says he wants Genvoya and Asentra's 400, parentheses, (in stock with sticks attached to the bottles.) Does Boulevard have stickers?"

Q. Okay. Next page, please.

What does Patrick Boyd write in those next two responses in March -- on March 22nd of 2021?

A. He replies, "We will be able to sell G tomorrow or at least SG. I'll get details tonight. Boulevard almost never has the stickers."

Q. What does Nicole Sawyer write?

A. "Okay. Thanks."

Q. Okay.

MR. POGOZELSKI: Now we can take that down and show just the witness Government's Exhibit 272. All right.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, is this an email from Adam Brosius to Patrick Boyd and Garrett in April of 2021?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 272.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 272 will be received.

(Government's No. 272, Email, was received in Evidence.)

///

BY MR. POGOZELSKI:
Q. Special Agent Calienes, does there appear to be an attachment to Adam Brosius's email to Patrick Boyd and Garrett?
A. Yes. The attachment is titled "Biktarvy2.PDF."
Q. And then below that, who is that underlying email from?
A. The email is from CMPharma@yahoo.com.
Q. And if we can go to the next page, do you see this document in front of you? What is listed as the first sold to entity from Gilead?
A. Invicta Wholesale Supply.
Q. And then after that?
A. CM Pharmaceutical LLC.
Q. And then after that?
A. Safe Chain Solutions.
Q. All right. Now if we go up back up to the top page, the attachment name, is that Biktarvy?
A. Yes.
Q. What does Adam Brosius write to Patrick Boyd and Garrett Mellott?
A. "Take a look. Let's chat about these privately."
Q. Is Abbie Divilio on these emails?
A. No.
Q. As far as you can see?
A. No.
Q. Okay.

MR. POGOZELSKI: We'll take that down and show just the witness Government's Exhibit 295.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, is this an email from an Amanda Biggart to Charles Boyd and pat Boyd in June of 2021?

A. Yes.

Q. And are there various attachments there that relate to profit and loss and trend reports?

A. Yes.

MR. POGOZELSKI: All right. The Government would move into evidence Government's Exhibit 295 and 295A.

MR. BARZEE: No objection.

MR. ZIMET: No objection, Judge.

THE COURT: 295 and 295A will be received.

MR. POGOZELSKI: Thank you, Your Honor.

(Government's No. 295 and 295A, Emails, was received in Evidence.)

MR. POGOZELSKI: We can take this down. If we can show just the witness Government's Exhibit 308.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, is this an email from a Katelyn Miller to Exec@SafeChain.com in March of 2021?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 308.

MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 308 will be received.
(Government's No. 308, Email, was received in Evidence.)
BY MR. POGOZELSKI:
Q. All right. What does KatelynMiller@PharmaSales.com write at the top of this email here?
A. "Good afternoon, and happy Friday. VLS Pharmacy 27-NY0160 would like to return the HIV products listed below due to damage/dirty labels. I have attached images of the damaged products to this email as well as the corresponding invoices. If approved, can you please send over RMA and return label? Return information listed below."
And then there's four invoices she references.
Q. Okay.
MR. POGOZELSKI: If we could take this down and show just the witness Government's Exhibit 307.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, is this an email from Charles Boyd responding to that other email we just looked at?
A. Yes.
MR. POGOZELSKI: The Government would move into evidence Government's Exhibit 307.
MR. ZIMET: No objection.
MR. BARZEE: No objection.

THE COURT: 307 will be received.

(Government's No. 307, Email, was received in Evidence.)

BY MR. POGOZELSKI:

Q. I know it's kind of hard to see, but what does Charles Boyd write in response there at the top?

A. "Pat is on a plane, but this is approved. Thanks."

Q. Okay.

MR. POGOZELSKI: Now, let's turn to, for just the witness, Government's Exhibit 13.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, is this an email from accounting@SafeChain.com to a Blackstone@SafeChain.com attaching a Safe Chain Solutions' invoice?

A. Yes.

Q. Is it in January of 2021?

A. Yes.

Q. And does it relate to a customer there?

A. Yes. 14-FL0195 Modern Pharmacy LLC.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 13.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 13 will be received.

(Government's No. 13, Email, was received in Evidence.)

///

BY MR. POGOZELSKI:
Q. So if we could go to the second page, who is the pharmacy customer listed under "bill to" here?
A. Modern Pharmacy LLC in Miami Beach, Florida.
Q. Does this invoice include Biktarvy?
A. Yes.
Q. And I think you still have the indictment in front of you, but does this invoice relate to the shipment of Biktarvy in Count II of the indictment?
A. Yes, on January 21st, 2021.
MR. POGOZELSKI: All right. We can take that down and show just the witness Government's Exhibit 14.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, is this an email from info@SafeChain.com and to Blackstone@SafeChain.com with a shipping confirmation to a pharmacy customer?
A. Yes.
MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 14.
MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: 14 will be received.
(Government's No. 14, Email, was received in Evidence.)
BY MR. POGOZELSKI:
Q. All right. Does this shipping confirmation relate to the

shipment of Biktarvy in Count II of the indictment?
A. Yes.
Q. And where is the pharmacy located again?
A. In Miami Beach, Florida.
Q. Where is Safe Chain Solutions located?
A. In Maryland.
Q. Okay.
MR. POGOZELSKI: If we could take that down and pull up for just the witness Government's Exhibit 15.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, is this a Safe Chain Solutions T3 or pedigree?
A. Yes.
MR. POGOZELSKI: The Government would move to admit Government's Exhibit 15.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 15 will be received.
(Government's No. 15, Pedigree, was received in Evidence.)
BY MR. POGOZELSKI:
Q. Special Agent Calienes, which entity is listed as buying this Biktarvy directly from Gilead Sciences here?
A. Boulevard 9229 LLC in Rego Park, New York.
Q. And then is there a date purchased and reference number

there?
A. No. That information is not listed on this document.
Q. And is there any manufacturer information listed under Gilead Sciences?
A. No. That information was left blank.
Q. And then from Boulevard, what's the next entity sold to?
A. Safe Chain Solutions in Cambridge, Maryland.
Q. And what's the date purchased and referenced there on this T3 or pedigree?
A. January 1st -- sorry, January 21st, 2021.
Q. All right. And then the next "sold to" entity, who Safe Chain sold it to, according to this T3 pedigree?
A. Modern Pharmacy in Miami Beach, Florida.
Q. What's the date that Modern Pharmacy purchased -- you know, listed the next date purchased and referenced there?
A. January 21st, 2021.
Q. All right. And is -- does this T3 -- does this Safe Chain Solutions' Boulevard T3 or pedigree relate to the shipment of Biktarvy in Count II of the indictment?
A. Yes.
MR. POGOZELSKI: We can take that down and pull up for just the witness Government's Exhibit 16.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, is this an email from accounting@Safe Chain.com to Blackstone regarding an invoice

for another pharmacy customer?

A. Yes. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 16.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 16 will be received.

(Government's No. 16, Email, was received in Evidence.)

MR. POGOZELSKI: And if we go to the second page.

BY MR. POGOZELSKI:

Q. Where's Pharmaquick, LLC, located?

A. Miami Beach, Florida.

Q. And what is the city and state listed at the top there for Safe Chain Solutions?

A. Cambridge, Maryland.

Q. And the invoice date?

A. February 23rd, 2021.

Q. Does this invoice include Biktarvy?

A. Yes, it does.

Q. Does this invoice relate to the shipment of Biktarvy in Count III of the indictment?

A. Yes, it does.

Q. Okay.

MR. POGOZELSKI: We can take this down and show just the witness Government's Exhibit 17.

BY MR. POGOZELSKI:
Q. Special Agent Calienes, similar to the other ones, is this an email from info@Safe Chain.com again to Blackstone@SafeChain.com with a shipping confirmation?
A. Yes.
MR. POGOZELSKI: The Government moves to admit Government's Exhibit 17.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 17 will be received.
(Government's No. 17, Email, was received in Evidence.)
BY MR. POGOZELSKI:
Q. Does this shipping confirmation relate to the shipment of Biktarvy in Count III of the indictment?
A. Yes.
Q. Okay. And Pharmaquick is located where?
A. Miami Beach, Florida.
Q. Okay.
MR. POGOZELSKI: Now, we can take that down and pull up Government's Exhibit 18 for just the witness.
BY MR. POGOZELSKI:
Q. Is this a Safe Chain-Boulevard T3 pedigree document?
A. Yes.
MR. POGOZELSKI: The Government moves to admit Government's Exhibit 18.

MR. ZIMET: No objection.
MR. BARZEE: No objection.
THE COURT: 18 will be received.
(Government's No. 18, Pedigree, was received in Evidence.)
BY MR. POGOZELSKI:
Q. Okay. And, Special Agent Calienes, is this T3 we're looking at here different than the one that we just looked at for Count II?
A. Yes, it is.
Q. Okay. And what's the drug listed here?
A. Biktarvy.
Q. All right. And who did Gilead Sciences sell that Biktarvy to, according to this T3?
A. AmerisourceBergen Drug CP.
Q. And then to who?
A. Amsterdam Wellness Pharmacy.
Q. And then to?
A. Boulevard 9229 LLC.
Q. And then to who?
A. Safe Chain Solutions.
Q. And then to who?
A. Pharmaquick.
Q. Okay. And what is the -- is there a date purchased and referenced next to this Boulevard sold to?

A. No. There's no information next to the date purchase and ref.

Q. And then what about the date purchased and ref for Safe Chain Solutions?

A. Yes. February 22nd, 2021.

Q. And then what about for Pharmaquick?

A. February 23rd, 2021.

Q. All right. Does this Safe Chain Solutions, Boulevard T3 relate to the shipment of Biktarvy in Count III of the indictment?

A. Yes.

MR. POGOZELSKI: If we can pull up for just the witness Government's Exhibit 21.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, is this an email from customerservice@SafeChain.com to a mrosen0571@AOL.com with a subject line that includes Modern Pharmacy LLC?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 21.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 21 will be received.

(Government's No. 21, Email, was received in Evidence.)

///

BY MR. POGOZELSKI:
Q. Okay. So what is the subject line listed here, Special Agent Calienes?
A. T3: 14-FL0195- Modern Pharmacy LLC.
Q. Okay. And who is it from? What's the from email address?
A. Customerservice@SafeChain.com.
Q. Okay. And do you know whether or not SafeChain.com, that domain was hosted by Microsoft?
A. Yes.
Q. And then AOL.com, as far as you know, is that owned by a different company? A company other than Microsoft?
A. Yes.
Q. Okay. And these attachments that are listed there --
MR. POGOZELSKI: If we go to page 2 and 3.
BY MR. POGOZELSKI:
Q. -- are these a number of T3s or pedigrees?
A. Yes.
MR. POGOZELSKI: And if we go to page 5.
BY MR. POGOZELSKI:
Q. What drug is this?
MR. POGOZELSKI: Actually, let's keep going. Let's to go to page 6.
BY MR. POGOZELSKI:
Q. What's the drug listed here at the top?
A. Juluca.

Q. And who's the manufacturer of that drug, according to this T3?
A. ViiV Healthcare.
Q. Who did ViiV Healthcare sell directly the Juluca to, according to this T3 that was sent?
A. Boulevard 9229 LLC.
Q. And then to who?
A. Safe Chain Solutions.
Q. And then to who?
A. Modern Pharmacy.
Q. Okay. And Modern Pharmacy, Miami Beach. And what's Safe Chain's address there?
A. 822 Chesapeake Drive, Cambridge, Maryland.
Q. Is this the email that's listed in Count VIII of the indictment charging wire fraud?
A. Yes.
MR. POGOZELSKI: Okay. And then if we can zoom in on the bottom there where it says "transaction statement."
BY MR. POGOZELSKI:
Q. Do you see where it says, under F there? What does it say under F in terms of "This company complied with each applicable subsection of the FDCA"?
A. "Did not knowingly provide false transaction information."
Q. And then what does it say under D?
A. "Did not knowingly ship a suspect or illegitimate product."

MR. POGOZELSKI: Okay. And then if we back up here and zoom out.

BY MR. POGOZELSKI:

Q. What is the company listed at the top?

A. The manufacturer?

Q. Sorry. No, at the very top.

A. Safe Chain Solutions.

Q. All right. And what is the reference date listed here?

A. March 30, 2021.

Q. And is that -- does that match the date purchased and referenced for Modern Pharmacy in Miami Beach here on this T3 or pedigree?

A. Yes.

Q. Okay.

MR. POGOZELSKI: We can take that down. If we could show just the witness Government's Exhibit 90.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, are these more T3 pedigrees with Safe Chain Solutions listed at the top?

A. Yes.

MR. POGOZELSKI: The Government would move to admit Government's Exhibit 90.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 90 will be received.

(Government's No. 90, Pedigrees, was received in Evidence.)

BY MR. POGOZELSKI:

Q. All right.

MR. POGOZELSKI: We can take that down and show just the witness Government's Exhibit 91.

BY MR. POGOZELSKI:

Q. Same question here, Special Agent Calienes: Is this another Safe Chain Solutions T3 or pedigree listing Boulevard at the top?

A. Yes.

MR. POGOZELSKI: All right. The Government would move into evidence Government's Exhibit 91.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 91 will be received.

(Government's No. 91, Pedigree, was received in Evidence.)

MR. POGOZELSKI: Thank you, Your Honor. We can take that down and show just the witness Government's Exhibit 92.

BY MR. POGOZELSKI:

Q. Again, is this a Safe Chain Solutions T3 or pedigree, Special Agent Calienes?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence

Government's Exhibit 92.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 92 will be received.

(Government's No. 92, Pedigree, was received in Evidence.)

MR. POGOZELSKI: Okay.

BY MR. POGOZELSKI:

Q. And on this particular one, what is the entity listed as the entity buying directly from Gilead Sciences here in March of 2021?

A. Wholesalers Group, Inc.

Q. Where is that located?

A. In Carolina, Puerto Rico.

Q. And then who, according to this T3, who bought the Biktarvy here from Wholesalers Group Incorporated in Puerto Rico?

A. Synergy Group Wholesalers.

Q. And then Synergy sold it to who?

A. Safe Chain Solutions.

Q. Okay.

MR. POGOZELSKI: We can take that down and show just the witness Government's Exhibit 93.

BY MR. POGOZELSKI:

Q. Is this another Safe Chain Solutions T3 or pedigree?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 93.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 93 will be received.

(Government's No. 93, Pedigree, was received in Evidence.)

BY MR. POGOZELSKI:

Q. All right.

MR. POGOZELSKI: Let's go ahead and move on to Government's Exhibit for just the witness 94.

BY MR. POGOZELSKI:

Q. Again, another Safe Chain Solutions T3 or pedigree, Special Agent Calienes?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 94.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 94 will be received.

(Government's No. 94, Pedigree, was received in Evidence.)

MR. POGOZELSKI: All right. And then if we will take this down and go to Government's Exhibit 95 for just the witness.

BY MR. POGOZELSKI:

Q. Is this a T3 or pedigree from a Mr. Unlimited that ultimately lists Safe Chain down towards the bottom?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 95.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 95 will be received.

(Government's No. 95, Pedigree, was received in Evidence.)

MR. POGOZELSKI: Okay. And we'll show just the witness Government's Exhibit 96.

BY MR. POGOZELSKI:

Q. Again, Safe Chain Solutions' T3, Pedigree for Boulevard on your screen, Special Agent?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 96.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 96 will be received.

(Government's No. 96, Pedigree, was received in Evidence.)

MR. POGOZELSKI: Okay. All right. Let's take that

down and show just the witness Government's Exhibit 630.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, are these meeting notes from June 21st of 2021?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 630.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 630 will be received.

(Government's No. 630, Meeting Notes, was received in Evidence.)

BY MR. POGOZELSKI:

Q. All right. And is there some handwriting on this document, Special Agent Calienes?

A. Yes, there is.

Q. Before we get to that, can you see what it says at the bottom, where --

A. "Weekly managers meeting notes, page 1."

Q. All right. And what's the date here at the very top?

A. June 21st, 2021.

Q. And what is handwritten here next to Omom?

A. "Still complete cluster, expletive."

Q. All right.

MR. POGOZELSKI: We can take that down. And can we

show just the witness Government's Exhibit 621.

BY MR. POGOZELSKI:

Q. Are these -- Special Agent Calienes, are these standard operating procedures for suspect and illegitimate product for Safe Chain Solutions with a reissue date of March 15th 2021?

A. Yes.

MR. POGOZELSKI: The Government moves into evidence Government's Exhibit 621.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 621 will be received.

(Government's No. 621, SOPs, was received in Evidence.)

MR. POGOZELSKI: All right. And we can take that down. Pull up just for the witness Government's Exhibit 623.

BY MR. POGOZELSKI:

Q. Similar to the last one, Special Agent Calienes, are these SOPs for vendor and transaction history authentication for Safe Chain with the reissue date of March 15, 2021?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 623.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 623 will be received.

(Government's No. 623, SOPs, was received in Evidence.)

MR. POGOZELSKI: If we could pull up Government's Exhibit 98.

BY MR. POGOZELSKI:

Q. Is this another Safe Chain Solutions T3 or pedigree in June of 2020?

A. Yes.

MR. POGOZELSKI: All right. The Government moves into evidence Government's Exhibit 98.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 98 will be received.

(Government's No. 98, Pedigree, was received in Evidence.)

BY MR. POGOZELSKI:

Q. And --

THE COURT: What was the number again?

MR. POGOZELSKI: This is 98, Your Honor.

THE COURT: 98, okay.

Go ahead.

BY MR. POGOZELSKI:

Q. What is the drug listed at the top here?

A. Selzentry.

Q. And do you remember much earlier on, we were looking at an email around this time, June 2020, with a photo of a Selzentry bottle?

A. Yes.
Q. Okay. Who is the entity listed as buying the Selzentry from ViiV or ViiV Healthcare?
A. Boulevard 9229.
MR. POGOZELSKI: Okay. We can take that down and show just the witness the, unfortunately, named Government's Exhibit 666.
BY MR. POGOZELSKI:
Q. Special Agent Calienes, is this a Safe Chain Solutions return authorization?
A. Yes, it is.
MR. POGOZELSKI: Government moves into evidence, Government's Exhibit 666.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 666 will be received.
(Government's No. 666, Return Authorization, was received in Evidence.)
BY MR. POGOZELSKI:
Q. All right. And what's the return authorization date there?
A. June 30, 2020.
Q. And the drug listed?
A. Selzentry.
MR. POGOZELSKI: If we could pull up Government's Exhibit 353 for just the witness.

BY MR. POGOZELSKI:
Q. Special Agent Calienes, is this an email sent from Garrett to Adam Brosius?
A. Yes.
MR. POGOZELSKI: The Government would move into evidence Government's Exhibit 353.
MR. ZIMET: May I voir dire, Judge?
THE COURT: Okay.
VOIR DIRE EXAMINATION
BY MR. ZIMET:
Q. Did Charles Boyd ever see this email?
A. I don't know.
Q. Do you have any proof that he did?
A. I'm not sure.
MR. ZIMET: Judge, this is hearsay at this point.
MR. POGOZELSKI: And may I respond briefly, Your Honor?
THE COURT: Yes.
MR. POGOZELSKI: We would just move to admit this provisionally under a -- as a coconspirator statement, subject to tying it up with a witness later down the road?
MR. ZIMET: Are they saying that Garrett is a coconspirator?
MR. POGOZELSKI: We're saying that Adam Brosius is a coconspirator as well as Garrett.
THE COURT: Okay. I'll provisionally admit it, subject

to a motion to strike if it's not tied up.

MR. POGOZELSKI: Okay.

(Government's No. 353, Email, was received in Evidence.)

MR. POGOZELSKI: Can we scroll down to the very bottom, or to the -- there should be photos attached here. And then go to the next one.

And actually, the next one might be easier to see.

DIRECT EXAMINATION (CON'T)

BY MR. POGOZELSKI:

Q. What is -- can you read what's made out on the seal or the foil there?

A. It appears to say, "Albuterol sulfate inhalation."

MR. POGOZELSKI: And if we go back up. One page up. Keep going up.

BY MR. POGOZELSKI:

Q. And is this -- what's the manufacturer of this drug here?

A. ViiV Healthcare.

MR. POGOZELSKI: If we keep going up.

What -- down here at the bottom.

BY MR. POGOZELSKI:

Q. What does Adam Brosius write to Amine@PharmaSales.com?

A. "Amine, was this open or did the client open it? Distributor is asking."

Q. And what does Amine respond, next to that?

A. "Worst case is the fact that the foil on top says

'albuterol.' None of the other ones say that."
Q. What's the date of that email?
A. May 29th, 2020.
Q. And then what does Garrett write to Adam Brosius at the top here, on June 10th of 2020?
A. "We should be sending the -- a bottle of Triumeq at no charge. Boulevard did send us one for free. Confirm, and I will have it sent."
MR. POGOZELSKI: Okay. We can take that down.
If we could show just the witness Government's Exhibit 350.
BY MR. POGOZELSKI:
Q. Is this an email from Mr. King Kimchi August 12th to Charles Boyd, August 12, 2020?
A. Yes.
Q. And is there an attachment, a spreadsheet attachment?
A. Yes. It's titled "Updated Boulevard 9229.xlsx."
MR. POGOZELSKI: The Government would move to admit Government's Exhibit 350 and 350A, the attachment.
MR. ZIMET: No objection, Judge.
MR. BARZEE: No objection.
THE COURT: 350 and 350A will be received.
(Government's No. 350, Email, was received in Evidence.)
(Government's No. 350A, Spreadsheet, was received in Evidence.)

MR. POGOZELSKI: Can we show just the witness Government's Exhibit 279.

BY MR. POGOZELSKI:

Q. Is this an email from Garrett@PharmaSales to Charles Boyd and Patrick Boyd and Adam Brosius in May of 2021?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 279.

MR. ZIMET: No objection, Judge.

MR. BARZEE: No objection.

THE COURT: 279 will be received.

(Government's No. 279, Email, was received in Evidence.)

MR. POGOZELSKI: All right. If we show just the witness Government's Exhibit 447.

BY MR. POGOZELSKI:

Q. Are these Teams messages between Pat Boyd and Marc Smith January of 2021?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 447.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 447 will be received.

(Government's No. 447, Teams Message, was received in Evidence.)

MR. POGOZELSKI: If we can scroll to the next page, and then, I think, the next page, and then keep going.

BY MR. POGOZELSKI:

Q. What does Marc Smith ask Patrick Boyd here in January 27, 2021?

A. "We do business with a King Kimchi? Sound like an Asia mafia name."

Q. What is Patrick Boyd's response?

A. "LOL. Kimchi is what all these Asian guys I know used to call 'expletive.'"

Q. All right.

MR. POGOZELSKI: If we can show -- if we can take that down and show just the witness Government's Exhibit 617.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, is this a drug notification form with an initial date of notification of October 13th, 2020?

A. Yes.

Q. All right. And does it reference Safe Chain in the -- Box 17?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 617.

MR. BARZEE: No objection.

MR. ZIMET: No objection.

THE COURT: 617 will be received.

(Government's No. 617, Drug Notification, was received in Evidence.)

BY MR. POGOZELSKI:

Q. Okay. Special Agent Calienes, was this document retrieved from a shred bin at Safe Chain?

A. Yes.

Q. And how do you know that?

A. I was shown the metadata for this particular document.

Q. And did the metadata show that it was retrieved from the purchasing shred bin?

A. Yes.

Q. Okay. And what's the date listed here of the initial notification to FDA?

A. October 13, 2020.

Q. Okay. And then what's the date listed -- the date company determined product was illegitimate?

A. October 9, 2020.

Q. Do these dates -- are they roughly around the time that we looked at that email from Gilead to Abbie Divilio?

A. Yes.

MR. POGOZELSKI: And then we also have some physical exhibits, if we could pull those. And while we're doing that -- it takes a second. And we're just looking for -- I think it's --

THE COURT: Let me interrupt you.

At this point, we're going to go ahead and take a ten-minute recess. Remember my admonition not to discuss the case or allow it to be discussed in your presence. We'll see you back in the jury room in about ten minutes.

THE COURT SECURITY OFFICER: All rise.

(Jury exits.)

THE COURT: Apparently, one of the jurors had to go to the bathroom; so we'll be in recess for ten minutes.

THE COURT SECURITY OFFICER: All rise.

(Off the record from 2:03 PM to 2:10 PM, after which the following proceedings were had:)

THE COURT SECURITY OFFICER: All rise.

THE COURT: Please be seated. We're back on the record. Counsel are present. Both defendants are presented.

We have another note from Mr. Gray.

MR. ZIMET: May I talk to Mr. Barzee for a second?

THE COURT: Okay. In this note, Mr. Gray is talking about his mental health.

What's the parties' position on Mr. Gray?

MR. POGOZELSKI: Obviously, this puts us in a difficult spot with no alternates. You know, I think we'd still like to ask him a few questions about the schedule, but now he's saying he's got a mental breakdown. I can't tell if -- you know, he did look mad to be here, but I don't know.

I guess I would defer to the Court.

THE COURT: Apparently, he's giving the court security officer a tough time in the jury room, too.

MR. POGOZELSKI: I did overhear that, but I would defer to the Court, Your Honor. It puts us in a difficult spot if we have no alternates.

THE COURT: Mr. Zimet.

MR. ZIMET: Judge, I think we should excuse him. The big danger now is -- now, he's put this in writing -- is infecting the jurors with an attitude and all sorts of other potential things. So I think we -- if we didn't have an alternate issue, we would bounce him in a heartbeat. And I just think at this point, it's wise to get rid of him so it's not infecting the rest of the jury.

THE COURT: Mr. Barzee.

MR. BARZEE: No position.

THE COURT: All right. He doesn't want to be here, and he's not going to make it to the end. He's going to do whatever he can to get out of this.

So let's ask Mr. Gray to come out.

(Juror Gray enters.)

THE COURT: Mr. Gray, did you leave anything in the jury room?

THE JUROR: Yes.

THE COURT: Could you go get whatever you left in the jury room and come back?

THE JUROR: Oh, it's here.

THE COURT: So you don't have any property in the jury room?

THE JUROR: No.

THE COURT: If you could give your badge and, I guess, the book to the marshal on the way out, I'll go ahead and excuse you.

THE JUROR: Thank you so much.

THE COURT: Mr. Gray will have to go out the front door, not through the jury.

(Juror exits.)

THE COURT: If we can bring in the jury.

THE COURT SECURITY OFFICER: All rise.

(Jury in.)

THE COURT: Does counsel concede the presence of the jury and waive its polling?

MR. POGOZELSKI: Yes, Your Honor.

MR. ZIMET: Yes, sir.

MR. BARZEE: Yes, Your Honor.

THE COURT: And did everyone follow my admonition not to discuss the case or allow it to be discussed in your presence?

I had to excuse Mr. Gray.

So, Mr. Olson, you're now on the jury, and we have no alternates left. So everybody stay healthy, please.

Mr Pogozelski, you may continue.

THE COURTROOM DEPUTY: Wait. Hold on.

THE COURT: Oh, we're missing one person.

MR. POGOZELSKI: In the meantime, may I approach the witness to give him two more CDs?

THE COURT: Sure.

All the jurors are back.

Everyone may proceed.

MR. POGOZELSKI: Thank you, Your Honor.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, do you have a CD marked in front of you -- a CD in front of you that's marked as Government's Exhibit 80?

A. Yes.

Q. And is that an excerpt of the video deposition of Charles Boyd?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 80 subject to the prior ruling.

MR. BARZEE: Same.

THE COURT: 80 will be received.

(Government's No. 80, Excerpt of Charles Boyd's Deposition, was received in Evidence.)

BY MR. POGOZELSKI:

Q. All right. Do you also have a CD marked as Government's

Exhibit 74?

A. Yes.

Q. Is that also an excerpt of Charles Boyd's deposition?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 74.

MR. ZIMET: Subject to the Court's ruling.

MR. BARZEE: Same.

THE COURT: 74 will be received.

(Government's No. 74, Excerpt of Charles Boyd's Deposition, was received in Evidence.)

MR. POGOZELSKI: Okay. If we could pull up for just the witness, Government's Exhibit 104.

BY MR. POGOZELSKI:

Q. Special Agent Calienes, is this an email sent from Patrick Boyd in 2016 referencing HIV?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 104.

MR. BARZEE: No objection.

MR. ZIMET: No objection, Judge.

THE COURT: 104 will be received.

(Government's No. 104, Email, was received in Evidence.)

MR. POGOZELSKI: If we could just publish that.

///

BY MR. POGOZELSKI:
Q. What's the subject line in this email that Patrick Boyd sends in March of 2016?
A. "HIV prices."
Q. And is the attachment's name?
A. "HIV master list. Do not send."
MR. POGOZELSKI: If we could now take that down and pull up just for witness Government's Exhibit 277.
BY MR. POGOZELSKI:
Q. Is this an email sent from Adam Brosius to Charles and Patrick Boyd in May of 2021?
A. Yes.
MR. POGOZELSKI: The Government moves to admit Government's Exhibit 277.
MR. BARZEE: No objection.
MR. ZIMET: No objection.
THE COURT: 277 will be received.
(Government's No. 277, Email, was received in Evidence.)
BY MR. POGOZELSKI:
Q. So what does -- what's written in this email below Adam Brosius's email to Charles and Patrick Boyd?
A. "Hi, Adam. I just spoke to the owner of Legend Drug, and he wants to talk to you directly as there is a possibility of a lawsuit because one of his patients got Biktarvy, which he ordered from Safe Chain, but there was Seroquel XR tablets

inside it. He already got a call from Gilead, and he wanted to discuss further with you. Attached is his contact number. Thanks."

Q. Go to the next page.

What's the name of the person here for -- associated with Legend with that complaint?

A. I'm not sure how to pronounce that, so I will try my best.

Q. Thank you.

A. Vipulbhai, V-I-P-U-L-B-H-A-I. Parekh. P-A-R-E-K-H.

Q. Parekh?

A. Parekh.

Q. Okay.

MR. POGOZELSKI: If we could now show just the witness Government's Exhibit 192, I believe it is, yes.

BY MR. POGOZELSKI:

Q. Is this an email from Abbie Divilio to Charles Boyd on October -- in October 2020?

A. Yes.

MR. POGOZELSKI: The Government moves to admit Government's Exhibit 192.

MR. ZIMET: No objection.

MR. BARZEE: No objection.

THE COURT: 192 will be received.

(Government's No. 192, Email, was received in Evidence.)

///

BY MR. POGOZELSKI:
Q. What is the date of this email from Abbie, the director of compliance, to Charles Boyd?
A. October 14, 2020.
Q. If you recall, is that one day after that drug notification form found in the shredding bin?
A. Yes, I believe that's correct.
Q. What does Abbie Divilio write to Charles Boyd that next day, October 14, 2020?
A. "Charlie, I called and spoke with Sekar. He will be returning the product. He would like to be included on any communications with Gilead about the quality assurance issues. He was pretty concerned because the patient did take one of the pills. He also said he has been buying Biktarvy from McKesson and Cardinal and has never had an issue before. He is worried he will be sued by the patient for an error. Maybe we can chat about the best way to proceed once we get the medication back."
Q. All right.
MR. POGOZELSKI: No further questions, Your Honor.
THE COURT: Cross-examination.

CROSS-EXAMINATION

BY MR. BARZEE:
Q. Good afternoon.
A. Good afternoon, sir.
Q. So I just want to talk to you about a couple of things in

general before we get into some specifics. Is that okay?
A. Yes.
Q. And the first is, there were a couple of documents that referred to something called WAC, W-A-C.
Are you familiar with WAC?
A. A little bit.
Q. That's a wholesale acquisition cost; correct?
A. Correct.
Q. And would you agree with me that the wholesale acquisition cost is just a made-up number made up by the manufacturer?
A. I don't know.
Q. The manufacturer can sell their medicines for whatever price they want to sell them for; right?
A. I do not know that, sir.
Q. Well, is there some government regulation that you're aware of that says a manufacturer can only charge a certain amount for the medications that they sell on the open market?
A. Not that I'm aware of. But I only testified for the purpose of introducing records into evidence.
Q. I'm sorry. Say that again?
A. I said that I testified for the purpose of introducing records into evidence.
Q. All right. So that means you don't -- do you know anything about this case?
A. I do know some about this case, sir, yes.

Q. All right. So you know that one of the arguments that the prosecution is making is the fact that Safe Chain sold medicine for under WAC was evidence of them knowing that there was something wrong?

MR. POGOZELSKI: Objection, Your Honor. What the --

THE COURT: Sustained.

BY MR. BARZEE:

Q. You know something about a company called Safe Chain?

A. Yes.

Q. At and you know that Safe Chain was a company that employed 40. 50 different people?

A. I don't know the exact number of employees they had.

Q. Is that a fair estimate?

A. Yes.

Q. All right. And they had different departments.

It was a big corporation; right? Or at least a mid-size corporation?

A. Perhaps a mid-size.

Q. All right. And you know that they were wholesalers?

A. Yes.

Q. And that means that they had a separate license to wholesale pharmaceutical medications in 46 or 47 different states in the United States; correct?

A. I don't know in how many states but in several states, yes.

Q. It was more than several. It was almost every state.

Maybe --

MR. POGOZELSKI: Objection. Asked and answered.

THE COURT: Sustained.

BY MR. BARZEE:

Q. As part of the work that you did on this case, are you aware of either you or any other agent checking all of those licenses to see if they were valid wholesale licenses in those 46 or 47 different states?

A. I did not personally check those licenses.

Q. Do you know if someone else did?

A. I'm not sure.

Q. You worked on this case?

A. I assisted with document review for this case.

Q. All right. So you had a narrow focus, then? Is that fair to say?

A. Yes.

Q. So then you're not responsible for everything else that happened in the case?

A. Typically, all investigations that we conduct are carried out by a team of agents where sometimes we are more of a support role and just reviewing documents, where other individuals have other responsibilities in the investigation.

Q. Right.

And so my question was you're not responsible for everything else that happened in the case.

You're only responsible for the tasks that you were given; correct?
A. Yes.
Q. All right. And that's how organizations generally work; isn't it? Not -- everyone is not responsible for everybody's job', right? Everyone has a role to play.
MR. POGOZELSKI: Objection, Your Honor.
THE COURT: Overruled.
A. Typically, an organization -- every organization is set up differently, though.
BY MR. BARZEE:
Q. Yeah.
A. And there can be oversight by specific individuals, in particular the owners of a company, as to what's going on in every single part of their company.
Q. And is an owner legally obligated to know what everyone in the corporation is doing all of the time?
MR. POGOZELSKI: Objection. Calls for a legal conclusion.
THE COURT: Overruled.
A. Is an owner --
BY MR. BARZEE:
Q. Yeah.
A. Sorry. Can you repeat the question?
Q. Yeah.

Is an owner criminally responsible for the acts of all of their employees no matter what it is that they're doing, whether or not the owner is aware of it or not?

MR. POGOZELSKI: Objection, Your Honor. Again, calls for a legal conclusion about what he is criminally responsible for.

THE COURT: Overruled.

A. An owner can be responsible if something is going on and they're the ones who own the company.

BY MR. BARZEE:

Q. Are they always? Is that what the law says?

A. If they are aware of what's going on, if they have knowledge it was.

Q. If they're aware and if they have knowledge?

A. Yes, sir.

Q. Well, so the Government had you come up here and introduce a bunch of emails and a bunch of text messages and a bunch of different documents that did not have Patrick Boyd's name on them.

Do you agree with me on that?

A. Say --

Q. I mean, I can go through a list with you if you need to.

A. Several of the documents did include communications involving Mr. Patrick Boyd.

Q. A lot of them didn't. Did not; correct?

They were conversations between other people.
A. Yes. There were also conversations between other individuals.
Q. There were emails involving other people other than Patrick Boyd; correct?
A. Yes, that's correct.
Q. Text messages that you introduced with people other than Patrick Boyd; correct?
A. Yes, that's correct.
Q. Summary exhibits that had nothing to do with Patrick Boyd; correct?
A. Yes. There were summary exhibits as well.
Q. Let me ask you then: Was Patrick Boyd aware of the context of those text messages?
A. Of some of those, yes, because they were in communications involved and sometimes a reference in some of those other documents.
Q. I'm talking about the ones that his name wasn't on.
You introduced at least a half dozen. We can go through them now, or we can look at them later, but you would agree with me that you introduced at least a half dozen emails, text messages, summary reports, none of which has Patrick Boyd's name anywhere on them.
Would you agree with me?
A. Yes.

Q. All right. Was Patrick Boyd aware of the contents of those documents?

MR. POGOZELSKI: Objection. Requires speculation.

THE COURT: Sustained.

BY MR. BARZEE:

Q. Do you know whether or not Patrick Boyd had any knowledge of those documents that his name was not on?

A. I do not know.

Q. You showed some email where Patrick Boyd was cc'd on it and it had attachments, and the Government asked you a question about page 6 of the attachments of an email that Patrick Boyd was cc'd on.

Do you know if Patrick Boyd ever saw that attachment?

MR. POGOZELSKI: Objection. It calls for speculation.

THE COURT: Overruled.

A. I do not know.

BY MR. BARZEE:

Q. There are tools that the federal government has to check computers to see whether or not someone has opened an email; correct?

A. Yes.

Q. Do you know whether or not Patrick Boyd even opened those emails that he was cc'd on?

A. I did not receive information. I don't work in a department where I would be able to find out if he opened an

email.

Q. So you're the witness called by the Government to introduce those exhibits, but you can't tell this jury that Patrick Boyd knew anything about them?

MR. POGOZELSKI: Objection, Your Honor.

THE COURT: Overruled.

A. I'm sorry. Can you repeat the question, please.

BY MR. BARZEE:

Q. You can't tell this jury that Patrick Boyd had any knowledge of those?

A. Of the records where he is not included?

Q. Yes.

A. That is correct.

Q. Or even the emails that he was cc'd on because you don't know whether or not the Government used those forensic tools to check the computer to see whether or not he had ever accessed them; correct?

A. Correct. Unless he referenced one of them in one of his text messages.

Q. Well, he did reference some of them. Let's look at a couple of things that he did reference.

MR. BARZEE: Can we pull up Government's Exhibit 645, for example.

It's going to take us a little longer, Your Honor. I apologize.

Can you zoom in a little bit. That's fine.

BY MR. BARZEE:

Q. So this is just one of the exhibits that you introduced, and it's a conversation between Pat Boyd and Charles Boyd. And Charles is saying, "I think we may need to cut off Boulevard again. Lots of issues here"; correct?

A. Yes.

Q. And then Charlie says, "And read this." And then there's a link to an article; correct?

A. Yes.

Q. All right.

MR. BARZEE: And can we go to that link, Jessica? Can you bring us to that? It was a newspaper article.

BY MR. BARZEE:

Q. So this is an article about "Shadow Pharmacies Targeting Low-Income People with HIV in a Disturbing Scheme"; right?

A. Yes.

Q. And you know that Pat Boyd and Charlie Boyd were just beginning to get -- well, had in the past, but were now getting more involved in the HIV market; correct?

A. Correct.

Q. And if you scroll down -- did you read this article before you introduced it to the jury?

A. I did read it one time.

Q. And you would agree with me that the article is basically

about shady pharmacy owners who are double and triple billing Medicare and Medicaid for medicine that was sometimes never really prescribed; correct?
A. That's correct.
Q. All right. And there's no allegation here that Patrick Boyd or Charles Boyd billed Medicaid or was charging Medicaid or Medicare for any of medications that they bought or sold, is there?
A. Are you referring to this specific article?
Q. No. I'm referring to the indictment that the Department of Justice filed against Charlie and Pat.
Is there any allegation that they were bilking Medicare or Medicaid or that they were double or triple billing, like this article is about?
A. I don't believe so.
Q. Was your answer "I don't believe so"?
A. Yes, sir.
Q. And let's go back to the text messages, if we can, or the chat or whatever that was.
And after receiving the article -- you see the article was sent at 11:47; correct?
A. Yes.
Q. You see that time?
And then at 12:00, there's a response from Pat, and the response is "Ugh"; correct?

A. Correct.
Q. That's kind of a universal disgust; right? "Ugh?"
Would you agree with me that that's like -- universally means Ugh? Horrible? Terrible? Yucky? Not good? Disgusting?
A. Yes, not good. That's how I would characterize it.
Q. And then Pat said immediately, "Let's get Adam on a call"; correct?
A. Yes.
Q. And Pat says, "I think Adam can put him on serious notice that he needs to find the root of the problem," correct?
A. Yes.
Q. And when Pat says, "We got to find the root of the problem," you had also introduced something where Pat said, "Look, there's a problem with Boulevard. We've had a couple complaints. We've got broken pills in bottles. We've got to get to the bottom of this"; right?
A. Yes.
Q. So Pat was, obviously, concerned about something going on with Boulevard; right?
MR. POGOZELSKI: Objection, Your Honor. It requires speculation about what he's thinking.
THE COURT: Sustained.
BY MR. BARZEE:
Q. Well, his words were "We've got to get to the bottom of

this"; right? We have to find root cause? The root problem?
A. He says, "I think Adam can put him on serious notice that he needs to find the root of problem."
Q. And Adam, in this case, is a guy named Adam Brosius; right?
MR. BARZEE: You can take that down, Jessica.
A. Yes.
BY MR. BARZEE:
Q. All right. Let's talk for just a second about who all these different people are, if we may.
You know that Charlie Boyd is the founder, the CEO of Safe Chain; correct?
A. Yes.
Q. And then we have somebody named Abbie Divilio or Devilio [as pronounced], and she was the head of compliance; correct?
A. Yes.
Q. And Pat, you said, was part owner of Safe Chain; correct?
A. Yes.
Q. How many owners were there of Safe Chain?
A. Three, I believe.
Q. There was four; right?
A. Four, yes.
Q. Right? Not three, four; right?
A. Yes.
Q. Do you remember who they are?
A. I believe the third owner was Adam Brosius.

Q. Yeah.
A. And I don't recall the fourth one.
Q. Tony Berger; right?
A. Yes.
Q. How long have you been working on this case?
A. I've only assisted for approximately a little over a year, and it was in the capacity of document review.
Q. Okay. Did you review any documents that indicated that Tony Berger was one of the four partners?
A. I don't recall.
Q. Do you recall the fact that Tony Berger wasn't indicted? He hasn't been charged?
A. I don't know that information.
Q. You don't know who was indicted and who wasn't indicted?
A. I have the indictment here. So I know of the individuals listed in this --
Q. Well, is Tony Berger in this indictment?
A. He's not.
Q. Has he been charged in any other indictment that you're aware of?
MR. POGOZELSKI: Objection, Your Honor. Asked and answered. Argumentative.
THE COURT: If you know.
A. I don't know.
BY MR. BARZEE:

Q. So you don't know if the fourth owner of Safe Chain was indicted?

MR. POGOZELSKI: Objection, Your Honor. Asked and answered.

THE COURT: Sustained.

BY MR. BARZEE:

Q. Let's talk about Adam Brosius.

Who was Adam Brosius?

A. He was one of their partners in Safe Chain.

Q. And he was more than just a partner; right?

A. He also owned Worldwide Pharma Sales.

Q. That's right. He owned a bunch of different sales companies; right?

A. I'm not sure how many sales companies he owned.

Q. At least half of dozen; right?

MR. POGOZELSKI: Objection, Your Honor. Asked and answered.

THE COURT: Sustained.

BY MR. BARZEE:

Q. Well, do you know if it was more than two or three?

A. Sir, I don't know. I primarily was doing document review for this case.

Q. Okay. Do you know that Adam Brosius is the one that brought each and every vendor of HIV medicine to Charlie and to Pat?

A. I don't know that information.
Q. Did you know that Adam Brosius was the go-between between Safe Chain and these vendors?
MR. POGOZELSKI: Objection. It requires speculation.
THE COURT: If he knows.
A. I don't know.
BY MR. BARZEE:
Q. Do you know how much money Adam Brosius was making?
A. No, sir.
Q. Let me ask you a question: You were trained by the Secret Service; right?
A. Yes.
Q. Criminal investigations? Financial stuff; right?
A. Yes, sir.
Q. You were trained by Homeland Security Criminal Investigations, Office of Inspector General?
A. Not Homeland Security, sir.
Q. I'm sorry.
A. The Department of Health and Human Services.
Q. I'm sorry. I should have known that. Health and Human Services.
And you also received other federal law enforcement training; correct?
A. Yes.
Q. All right. And all of that training, a lot of it had to do

with financial-type crimes; right?
A. Yes.
Q. Have you ever heard the term "follow the money?"
A. Yes.
Q. What does that mean to you?
A. That's one tool in an investigation where you can see where the money ends up, to try to determine who is receiving the fraud proceeds.
Q. Right. Because in every federal investigation, there's a lot of different tools that federal investigators can use in order to find out the truth as to what happened in the case; correct?
A. Yes.
Q. And you would agree with me that in financial cases, one of the greatest tools is "follow the money"; right?
A. That is one of the tools, yes.
Q. So let's talk about that in this case.
Who on your team -- and by the way, it looks like you have -- how many different agents are in the courtroom right now --
MR. POGOZELSKI: Objection, Your Honor.
Q. -- that worked on this case?
MR. POGOZELSKI: Relevance.
(Reporter requests one speaker at a time.)
THE COURT: Overruled.

BY MR. BARZEE:

Q. How many different agents are -- the government's shut down. How many different agents are working on this case right now that are sitting here in the courtroom all day long, watching?

A. I see three agents.

Q. How about everybody else with the badges on their lapels? Who are they?

A. There's a couple analysts and some other employees.

Q. All of those analysts and employees and agents who have been sitting here all day, and you, who was in charge of following the money in this case and figuring out who profited from all of this?

A. I don't know who performed the financial analysis, sir. I was responsible for assisting with document review.

Q. You're aware of the fact that the sales of the HIV medicines in this case was roughly around $111 million; correct?

A. I'm not aware of the exact amount because I was not involved in the financial analysis of this investigation.

Q. Well, let me ask you this: Maybe you don't know the details, but are you aware of the fact that after you follow the money, it turns out that Safe Chain's profit -- not revenue but profit -- was probably about 1 percent of that entire total?

A. I'm not sure because I didn't perform the financial analysis in this investigation.
Q. There's a difference between revenue and profit; is there not?
A. Yes.
Q. Can you explain to the jury what a revenue determination is?
MR. POGOZELSKI: Objection. Outside the scope of his direct.
THE COURT: Sustained.
BY MR. BARZEE:
Q. Are you aware of the fact that Adam Brosius walked off with around 7 or $8 million?
MR. POGOZELSKI: Objection. Assumes facts not in evidence.
THE COURT: If he knows.
What the lawyers say isn't evidence, it's only the answers.
A. I don't know how much money he made.
BY MR. BARZEE:
Q. Well, do you know that he was paid $3.3 million in broker fees?
MR. POGOZELSKI: Objection. Same reasons.
THE COURT: If he knows.
A. I don't know.

BY MR. BARZEE:
Q. Are you aware that the fact that he made 3.6 million in commissions?
A. I did not perform the financial analysis in this case. I do not know.
Q. So you're not aware of the fact that the Boyds ended up -- that Safe Chain ended up with less than a million as a result of these sales?
MR. POGOZELSKI: Objection. Asked and answered. Outside the scope.
THE COURT: Sustained.
BY MR. BARZEE:
Q. Did you pull Patrick Boyd's tax returns?
A. I personally was not involved if they were pulled.
Q. Well, did one of these other agents or analysts in the courtroom pull his tax returns?
A. I don't know because my role was document review.
Q. Well, would you agree with me that pulling the tax returns of the defendants in a criminal investigation involving finances is one of the number one tools on your checklist?
A. I disagree. I don't think we do that often in many of our investigations.
Q. Do you know if anybody pulled Adam Brosius's tax returns?
A. I do not know.
Q. You showed a couple of videos of Patrick Boyd at a

deposition. Do you remember that?
A. Yes.
Q. Any reason to believe that Patrick Boyd's answers in those excerpts that you showed weren't 100 percent completely truthful?
A. Well, I introduced several other documents that contradicted --
Q. Contradicted what?
A. May I finish?
Q. Please.
A. That contradicted information provided in those depositions.
Q. What information did Patrick Boyd give in that deposition that was contradicted by a different document? I want to see it right now.
A. If the prosecutor can refresh my recollection with some of the documents that you would bring up --
Q. Come on.
A. -- after we saw the videos.
Q. Come on.
A. Some records -- we had some records that indicated one thing, and it would be the opposite of what you see in this deposition.
Q. Like what? Tell the jury what you're talking about. Because I don't know what you're talking about.

MR. POGOZELSKI: Objection. Argumentative.
THE COURT: Overruled.
BY MR. BARZEE:
Q. You just said that he contradicted himself where he said something that wasn't true.
Look the jury in the eyes and tell them specifically what Pat Boyd said that wasn't true.
A. For example, with respect to not knowing what WAC was in 2023, when he has emails dating back as far as 2015 or 2016 where he's discussing WAC --
Q. Right.
A. -- with others.
Q. And that's -- again, you're talking about WAC. That's a wholesale acquisition cost; right?
A. Yes, sir.
Q. And a lot of people refer to WAC in different ways and mean different things when they talk about WAC, don't they?
A. Who are you referring to specifically, sir?
Q. Well, people in the industry.
A. Is that your belief?
Q. No, I'm asking you. Isn't that what you know from your investigation?
A. I do not know that. I primarily assist with document review.
Q. Well, you know that Gilead claims that the wholesale

acquisition cost is the only price that the medicine can be sold for on the market; right?
You know that; don't you?
MR. POGOZELSKI: Objection. Hearsay. Speculation.
THE COURT: If he knows. Overruled.
A. I don't know that Gilead claims that.
BY MR. BARZEE:
Q. So you've never heard that before?
A. I do not know that Gilead claims that.
Q. Okay. But you -- so that means you have heard that, that Gilead claims?
A. I do not know that.
Q. You don't know?
A. No, sir.
Q. You know for a fact that McKesson, for example, one of their authorized distributors, purchases medicine from Gilead way under WAC; right?
MR. POGOZELSKI: Objection, Your Honor. Outside the scope. Speculation.
THE COURT: If he knows.
Overruled.
A. I do not know what McKesson purchases, what they pay when they purchase medications from Gilead.
BY MR. BARZEE:
Q. Well, have you reviewed the discovery in the case that you

have been on for a year?
A. Sir, I assisted at times with document review. There's hundreds of thousands of documents in this case. I only reviewed some of the documents.
Q. Did you review any documents related to McKesson or their invoices that showed McKesson purchasing all of these medications from Gilead at prices significantly below the wholesale acquisition cost?
A. I did not review any of those documents, no.
Q. You showed -- let me ask you a question.
You heard about some document here about a bottle of Biktarvy that had the wrong pills in the bottle.
Do you recall that?
A. Yes.
Q. And the wrong pills in the bottle were Seroquel.
Do you remember that?
A. Yes.
Q. Okay. Now you're aware of the fact that we have already had testimony in this courtroom about those issues; correct?
A. I was not aware of any other testimony that's taken place in this courtroom.
Q. Well, let me ask you this: Are you aware of the fact that McKesson, an authorized distributor of Gilead, had the exact same problem with Seroquel showing up in bottles of Biktarvy that it had purchased from Gilead?

MR. POGOZELSKI: Objection. Assumes facts not in evidence.

THE COURT: What the lawyer says -- the question is not evidence; the answer is evidence.

Overruled.

A. I apologize. Can you please repeat the question?

BY MR. BARZEE:

Q. Yeah.

Have you come across -- did you see the document -- and it's in several different places in the discovery -- where McKesson, the authorized distributor from Gilead, had a problem with Seroquel tablets showing up in Biktarvy bottles?

A. I did not see that document, no.

Q. Did you see reports of witnesses in the case?

A. No, I did not.

Q. So you don't know what any of the witnesses in this matter are testifying to when they come into court?

A. No, sir.

Q. In your investigation, in the work that you did with the document review that you did, did you come across instances where Gilead had problems, manufacturing problems with wrong medicine in wrong bottles?

A. No, sir.

Q. Are you aware of any evidence in the case whatsoever, whatsoever that suggest that Safe Chain had anything to do with

removing foil caps from bottles of medicine?
A. Certainly, the pictures that were sent about the issues of medications they were distributing, the pedigrees that were modified again and again and again to provide them to customers -- all that, to me, suggests they were aware of this taking place.
Q. That's fine. And we'll talk about that, but that's not my question. I want you to answer my question first before you testify to something else.
My question is do you have any evidence? Are you aware of anything that would suggest that anyone at Safe Chain had anything to do with removing foil from a bottle?
A. I'm only familiar with the documents that I reviewed.
Q. Did you review any document that at all pointed to the idea that someone at Safe Chain had anything to do with changing foil on a bottle? Yes or no?
A. I personally did not review any of those documents.
Q. Did you review any document that suggested in any way whatsoever that someone at Safe Chain was putting Seroquel tablets into Biktarvy bottles?
A. Not in the documents that I reviewed.
Q. There was a document that you introduced having to do with a return to a pharmacy called Olympia.
Do you recall that?
A. Yes.

Q. And Olympia wanted to return -- it was about $300,000 worth of product, I think.
Do you remember that?
A. I don't recall the specific amount.
Q. And do you remember that the reason Olympia wanted to return it was because they thought that some of the bottles were dirty?
A. Yes.
Q. All right. And Safe Chain refunded all that money, didn't they?
A. I believe so.
Q. You showed a document where Patrick Boyd was quoted in it, and I think you even read it out loud, about going on the offensive.
Do you remember that?
A. I would need to refresh my recollection, please.
Q. I think it was Government's Exhibit 4, maybe.
There was some problem with one of vendors. Gentek had a problem with one of their bottles and somebody wanted it returned.
Does that refresh your memory?
A. I would have to see the document, sir.
Q. Let's see if we can find it.
So you introduced this, Government's Exhibit 4. And let's just start at the top. It's from Charles Boyd, and he says,

"We need to talk about HIV.

And Brother -- and we're all assuming that's Pat Boyd; right?

A. Yes.

Q. And he says, "I'm at Skywrs wedding. What happened?"

And Charles Boyd said, "I know. Not good. We need a plan on how to move forward."

Brother says, "Both or just Boulevard?"

And Charles Boyd says, "Both and worse than we thought. Patient opened a bottle, and it was different medication."

And Brother's response is what?

A. 'Expletive.'

Q. An 'expletive'; right?

And this expletive reminds me a little bit of the "Ugh" in the other -- in the other document that we saw.

MR. POGOZELSKI: Objection. He's testifying at this point.

THE COURT: I'm assuming he's going to get to a question.

MR. BARZEE: I am.

BY MR. BARZEE:

Q. Pat Boyd is expressing disgust at these problems that are being presented to him; correct?

MR. POGOZELSKI: Objection as to what is in his mind.

THE COURT: Sustained.

BY MR. BARZEE:
Q. Charles Boyd answers "Yes."
Go on, go further down.
"It was from Gentek and sealed."
Do you see that?
A. Yes.
Q. And the significance of it being sealed is what?
You're looking over at the Government? Why are you looking at Alex before answering the question?
MR. POGOZELSKI: Objection. Argumentative.
THE COURT: Sustained.
BY MR. BARZEE:
Q. What is the significance of the fact that the bottle that came from Gilead was sealed?
A. The document speaks for itself. It says it was from Gentek, and it was sealed.
Q. Right.
What is the significance of that?
A. I'm not sure, sir. The bottle is sealed.
Q. Well, if the bottle is sealed and there's a wrong medicine in it, the problem is, obviously, from the manufacturer; right?
MR. POGOZELSKI: Objection, Your Honor.
A. Not necessarily.
THE COURT: Overruled.
BY MR. BARZEE:

Q. Not necessarily?
So how do you explain it?
A. Because if they're aware the bottles are being repackaged, then it doesn't matter if it's sealed because they're aware the drugs are being --
Q. Repackaged? By whom? Who is repackaging the drugs?
A. The individuals that are involved in the drug diversion scheme that purchased the drugs and then resell them.
Q. What evidence do you have of that?
A. I'm --
Q. Any?
A. I'm familiar with documents that I reviewed, sir.
Q. But you can't make things up.
MR. POGOZELSKI: Objection.
BY MR. BARZEE:
Q. What evidence do you have that somebody took the seal off of a bottle, switched pills, resealed it, and then sold it to Safe Chain? What evidence do you have of that?
MR. POGOZELSKI: Asked and answered.
THE COURT: Sustained.
BY MR. BARZEE:
Q. Have you seen anything like that anywhere in this case?
MR. POGOZELSKI: Asked and answered.
THE COURT: Sustained.
BY MR. BARZEE:

Q. When Patrick Boyd says, "Maybe we should go on the offensive," he's talking about a lawsuit against Gilead, isn't he?

MR. POGOZELSKI: Objection. Speculation.

THE COURT: Sustained.

BY MR. BARZEE:

Q. Well, do you know what he means when he says, "We should go on the offensive"?

MR. POGOZELSKI: Same objection.

THE COURT: Overruled.

A. I don't know what he meant when he said that.

BY MR. BARZEE:

Q. You put up a bunch of different documents where Adam Brosius is talking about we're going to have $150 million year, we're doing 12.5 million this month.

Do you remember all those documents?

A. Yes.

Q. And again, do you know how much of that money trickled down to Patrick Boyd's bank account?

MR. POGOZELSKI: Objection. Asked and answered.

THE COURT: Sustained.

BY MR. BARZEE:

Q. We spoke earlier about some of the tools that you have when you do these investigations.

Do you recall that?

A. Yes.
Q. And we talked about the fact that these agents that are in the courtroom, these analysts, they have -- one of the tools they have is they can check on a computer to see if somebody has opened up an email in order to view it; correct?
A. Yes.
Q. So in other words, if somebody is getting, let's say, 30, 40, 50 emails a day, we know that the person received the emails, but we have no way of knowing whether or not they clicked on it and opened it in order to read it; correct --
MR. POGOZELSKI: Objection. Outside the scope.
THE COURT: Overruled.
BY MR. BARZEE:
Q. -- without that tool?
A. I did not participate in that capacity.
Q. Correct.
A. So I don't know.
Q. Well, you know from your training that that's the issue; right? That's why you have this computer program that can tell you, "Oh, yes, Patrick Boyd sat at his desk on this particular date at this particular time and he definitely opened this email"; correct?
You know that tool exists; correct?
A. Yes.
Q. That tool was not utilized in this case, was it?

A. I do not know.
Q. Well, in all of the discovery that you have reviewed in over a year, did you see any notation that any of these agents or analysts in the courtroom or anywhere else used that tool in order to determine whether or not Patrick Boyd even looked at these emails?
A. Not in the documents that I reviewed.
Q. And you introduced, it looked like, chats between Adam Brosius and Charles Boyd or Adam Brosius and Peter Boulevard? Text messages and stuff like that, back and forth; correct?
A. Yes.
Q. Did any of these analysts or FBI agents check those phones to see if something had been deleted before it had been turned over to the Government?
A. I don't know if somebody else did that. I only reviewed certain documents in this investigation.
Q. You would agree with me that that's a tool at your disposal? That you can check not only phones but also computers to see if people have deleted things in the past; right?
A. Yes. But a lot of times it can tell you if items were deleted, but it won't tell you what the item was.
Q. Okay. That's fine.
Do we know what was deleted from Adam Brosius' phone?
A. I personally do not know.

Q. Do we know what was deleted from Peter Boulevard's phone?
A. I personally do not know.
Q. Or computers?
A. I personally do not know.
Q. Do you know if anyone else in the case knows?
A. I'm not sure.
Q. Did you see any evidence in the case of the use of encrypted devices?
A. Not in the capacity -- not to the extent which I participated in this investigation. I primarily reviewed documents that were assigned to me for review.
Q. Encrypted devices are like a phone or a text or even computers, where there's a program that keeps everything private and secret; right?
A. Yes.
Q. And in these big financial cases that the federal government investigates, you often find individuals using encrypted devices so that they can keep their communication secret; correct?
MR. POGOZELSKI: Objection. Outside the scope.
THE COURT: Overruled.
A. Sometimes you do; sometimes you don't. I wouldn't say it's as often as you're making it out to be.
BY MR. BARZEE:
Q. It's often enough, isn't it?

A. In 17 years of doing this, I haven't come across it too often, to be honest.
Q. Have you heard of things like -- I don't even know what they're called -- WhatsApp or Snapchat? These different ways of communicating where the messages disappear immediately?
A. Yes. If you employ that setting in WhatsApp, you can make them disappear.
Q. It's not just WhatsApp, but there's a bunch of them out there?
A. I don't know, sir. I don't use them.
Q. No, because you're not trying to hide documents; right? But criminals use them all the time, don't they?
A. I suppose so, yes.
Q. Yeah, of course.
You don't know if -- Pat Boyd wasn't using them, was he?
A. I don't know.
Q. You don't have any evidence to suggest that he was, do you?
A. I personally don't. I primarily assisted with document review.
Q. How many documents did you review in this case?
A. A few thousand.
Q. And how many documents are there all together in the case?
A. Hundreds of thousands.
Q. Maybe even more than that. Maybe over one million; right?
A. Perhaps.

Q. And you mentioned one document that was in a shredder?
A. Yes.
Q. Out of one million?
A. Yes.
Q. One of the other tools that investigators use is search warrants; correct?
A. Yes.
Q. Where did all of the documents that you reviewed -- where did they come from? Do you know?
A. They were all assigned to me. I believe they were all obtained via subpoena.
Q. Whose subpoena?
A. The Government's subpoena.
Q. And who did the Government subpoena all of those records from?
A. I don't have a list. I don't know how many entities were subpoenaed for records.
Q. They all came from Gilead? From the Gilead civil lawsuits, didn't they?
MR. POGOZELSKI: Objection. Asked and answered.
THE COURT: If he knows.
A. I think also subpoenas were issued to telephone companies and other companies --
BY MR. BARZEE:
Q. Yeah, I'm talking about all the emails and all the text

messages and all the chats. Those were all handed to the Government by Gilead attorneys; correct?
A. Pursuant to a subpoena.
Q. Pursuant to a subpoena, handed to the Government by Gilead attorneys; correct?
MR. POGOZELSKI: Objection, Your Honor. He's throwing his documents on my desk.
MR. BARZEE: I'm sorry.
MR. POGOZELSKI: Argumentative. Inappropriate.
MR. BARZEE: I'm sorry.
BY MR. BARZEE:
Q. Am I right, or am I wrong?
A. You're right. Whenever we subpoena somebody, they're required to produce documents.
Q. Right.
A. So in this case, a subpoena was issued, and they were required to produce documents.
Q. And did you go to Safe Chain directly to get documents?
A. I personally did not, sir.
Q. Do you know if any of these agents or analysts ever went to Safe Chain and searched Safe Chain and looked around for foil or pill presses or any evidence that they were involved in changing the contents of any of these medicine bottles?
A. I do not know.
Q. Did you or one of these other agents or analysts go and try

to get the surveillance records from Safe Chain of the warehouse to show the workers bringing the medicines in and putting them on the shelves?

A. I personally did not.

Q. Are you aware of any evidence anywhere in the case, in over one million documents that the Government received via subpoenas, are you aware of any document anywhere that suggests that anyone at Safe Chain had something like a pill press or a machine to put foil on bottles or was in possession of Seroquel?

MR. POGOZELSKI: Objection. Compound question.

THE COURT: Sustained.

BY MR. BARZEE:

Q. Do you know if anyone at Safe Chain was ever in possession of Seroquel?

A. I personally do not know.

Q. Do you know if there was any suggestion that anyone at Safe Chain had an aluminum foil machine that would reseal bottles?

A. I personally do not know.

Q. One of the other things that you can do is search people's houses; right?

A. Yes.

Q. And you search people's houses, looking for things like secret ledgers or cash in shoeboxes? Evidence of a crime; right?

A. Yes. You can search a house to look for evidence of a crime.
Q. Right.
And did you or any of those agents in the courtroom or analysts in the courtroom or prosecutors in the courtroom -- did anyone bother to issue a subpoena to search Patrick Boyd's or Charlie house?
A. Well, a subpoena and a search warrant are different things.
Q. Whatever words you want to use. Search warrant, let's say.
A. It's very difficult to obtain a search warrant for somebody's house.
Q. Did you ask?
A. I personally was not involved in any search warrant applications in this investigation.
Q. You're saying it's so difficult. You're suggesting that's why it wasn't done.
Do you know why the Government decided not to bother searching?
MR. POGOZELSKI: Objection, Your Honor. Argumentative.
THE COURT: Sustained.
BY MR. BARZEE:
Q. Do you know if any cash was seized at Safe Chain or Patrick Boyd's house or Charles Boyd's house?
A. I personally do not know.
Q. Gold bars?

A. I personally do not know.
Q. Secret ledgers?
MR. POGOZELSKI: Objection. Asked and answered.
THE COURT: Sustained.
BY MR. BARZEE:
Q. One of the other investigative tools is the use of wires; correct?
A. The use of wires?
Q. Wires, yeah. We'll talk about what it means, but you know what it means?
A. Okay.
Q. Do you agree with me that that's an investigative tool?
A. Yes. Sometimes we use those in investigations.
Q. A wire is where you can go to a judge, and you say, "Judge, we want a wiretap on this person's phone so we can listen in on the phone conversations"; correct?
A. Yes, that's what that says.
Q. That is blockbuster evidence when you get in a case because you actually have the people talking on the phone about what's going on and you can record it; right?
A. Yes.
Q. And did you bother doing that with Patrick Boyd's phone?
MR. POGOZELSKI: Objection. He's already testified. It's outside the scope of his direct.
THE COURT: Sustained.

BY MR. BARZEE:
Q. Do you know if that was done?
MR. POGOZELSKI: Asked and answered.
THE COURT: Sustained.
BY MR. BARZEE:
Q. In addition to wires, there's also controlled calls. There's another law enforcement technique; correct?
A. Yes.
Q. And that's when you get, like, a cooperating witness, a witness in the case who's working with you, and you call the person on the telephone while you're listening in or you're recording it; right?
A. Yes.
Q. Do you know if anybody did any controlled calls with Patrick Boyd?
MR. POGOZELSKI: Objection, Your Honor. Asked and answered. Outside the scope.
THE COURT: Sustained.
BY MR. BARZEE:
Q. You know Abbie Divilio was the head of compliance at Safe Chain; right?
A. Yes. Because her title was in some of the documents that I reviewed.
Q. And you know that it was her job -- was to do the vendor applications when they came in; correct? To handle the vendor

applications?
A. I don't know what all her responsibilities were at the company.
Q. Well, you also introduced standard operating procedures; right?
A. Correct. I introduced documents and read from them.
Q. And you reviewed the standard operating procedures before you introduced them into evidence; correct?
A. Yes.
Q. And the standard operating procedures make it clear that it's the compliance department's job to screen all of the vendor applications as they come in; correct?
A. Can you please refresh my recollection and show me the document?
Q. Sure.
MR. BARZEE: Anyone have a copy of the standard operating procedures?
BY MR. BARZEE:
Q. While we look for it, do you have any reason to believe -- here we go.
Sir, this is the standard operating procedures --
MR. BARZEE: Go back up to the top.
BY MR. BARZEE:
Q. Standard operating procedures for vendor and transaction history authentication.

I'm not sure if that's right way to pronounce it.

By the way, standard operating procedures, these are manuals; right?

A. They can be. They're standard operating procedures; yes?

Q. Right. And like corporations use these regularly; right?

A. Yes.

Q. And they're directives to employees as to how to do their jobs; right?

A. Yes.

Q. And so Safe Chain had standard operating procedures that were in effect from May 9th of 2015, and then reissued as recently as -- I'm sorry -- as recently as March 15, 2021; correct?

A. Yes.

Q. All right.

MR. BARZEE: And go ahead and scroll down. Let's see if we can find -- all right. Let's just stop there.

BY MR. BARZEE:

Q. So the guidelines -- the rules at Safe Chain is that all products received at a distribution center from wholesale distributors have to include a transaction history; right?

A. Yes.

Q. And then you go down, and you see all of these different guidelines -- one, two, three, four, five, six -- go ahead to the next page.

And then you see "procedures."

It tells you exactly how to handle all of these different items; correct?

A. Yes.

Q. And then you see things are underlined about T3s. It says that the product came directly from the manufacturer. Safe Chain will verify the transaction information; correct?

A. Yes.

Q. Go down to the next page.

FDA guidelines.

Go to the next page.

And as far as you know, Safe Chain -- Pat, Charlie, Tony Berger, Adam Brosius -- these documents are for the employees at Safe Chain to follow; correct?

A. As well as themselves.

Q. As well as themselves, correct.

It's for every employee, everybody who works at Safe Chain. It's sort of like their Bible, and it says this is what we're going to do. This is what we're going to follow; correct?

A. Yes.

Q. And Abbie Divilio was the head of compliance; correct?

A. In the communications, the documents I reviewed, yes, she was listed as the head of compliance.

Q. And you saw the documents where she's attempting to verify T3s, and she's talking about things like vendor applications;

correct?
A. Yes.
Q. And it was kind of clear from a couple of emails that Patrick Boyd was growing increasingly impatient with Abbie; correct?
A. I would have to see the specific communications that you're referring to.
Q. We'll get to them, but first, let's look at it from high above first.
You're aware of the fact that Abbie Divilio approved the vendor application license for Boulevard; correct?
MR. POGOZELSKI: Objection. It requires speculation.
THE COURT: If he knows.
A. I don't personally know.
BY MR. BARZEE:
Q. You saw that in documents, though; right?
You weren't personally there when she did it, but you personally worked on the case for over a year; right?
A. I would have to see the document that you're referring to.
Q. I'm not going to go through that.
As you sit here right now, you don't have any knowledge of the fact that Abbie is the one who approved the Boulevard application in about 15 minutes?
A. I personally do not know that, no.
Q. And are you aware of the fact that she missed the fact that

Boulevard had lied on the application and had presented a fake license saying that they were a wholesaler when they were not?
A. I personally do not know that.
MR. BARZEE: Let's bring up 268.
BY MR. BARZEE:
Q. Government's Exhibit 268 was one of the documents that you introduced into evidence that Patrick was on.
MR. BARZEE: Let's scroll down so we can see the email from Abbie.
BY MR. BARZEE:
Q. So Abbie is talking about -- she says -- go ahead and read it for me.
A. "Good morning. I'm a little leery of this information as well. Cesar Castillo is a 3PL provider; so I would expect to see a transaction between Gilead and Cesar Castillo. I can't imagine Gilead sold anything to Cesar Castillo."
Q. All right. So it's clear from you that what she's doing here is she's sending Charlie Boyd an email, as director of compliance, saying, "Hey, I'm doing this work, and I have a problem here with the emails"; right?
A. She sends it to both Charlie Boyd and Pat Boyd.
Q. Right. And she's saying, "There's a problem with the emails"; correct?
A. Yes. She's identifying issues with Cesar Castillo.
Q. And she also says, "I can't imagine that Gilead sold

anything to Cesar Castillo"; correct?
A. Yes.
Q. Let's scroll up and see what Pat's response was to this.
And Pat says, "She has every reason to be sceptical"; right?
A. Yes. That's what it says there.
Q. Right.
Because apparently, the email was wrong, and Patrick is saying, "Yes, she has every reason to be sceptical."
So he's validating her concerns, and then he says, "But we need not to use words like, quote, 'I can't imagine,'" unquote.
Do you see that?
A. Yes.
Q. And he says, "That wouldn't cover us whether it's good or bad."
Do you see that?
A. Yes.
Q. And what Patrick Boyd is doing here is asking for her to not give her just opinion on what she can and can't imagine but to tell us specifically yes or no, we can do it; we can't do it? Right?
MR. POGOZELSKI: Objection. The document speaks for itself.
THE COURT: Sustained.

MR. BARZEE: Let's go to Government's Exhibit 347.
BY MR. BARZEE:
Q. And here's one where -- you introduced this document; correct?
A. Yes.
Q. This is one of the documents that you reviewed; correct?
A. Yes.
Q. And it's another one of these messages from Abbie to Charlie Boyd and Patrick Boyd; correct?
A. Yes.
Q. And she says she's attempting to verify Invicta; right?
A. Yes.
Q. So we know that she's the one who does the verification of these vendors; right?
A. Yes.
Q. Yeah. Because that's what the job of the compliance office is; correct?
A. I don't know all of the responsibilities --
Q. Okay.
A. -- at the company.
Q. And she's talking about the fact that they have multiple licenses, which are valid, which is a plus, but they don't have any social media presence on Facebook or even LinkedIn; correct?
A. Yes.

MR. BARZEE: And then go up. Let's look at what Pat's response is.

BY MR. BARZEE:

Q. Can you read that?

A. "It not for her to worry about their social presence."

Q. Right. Because her job is to check if they have a license? If it's a legitimate company; right?

A. I don't know her specific responsibilities at the company.

Q. Well, we know that the compliance officer's job isn't to just sort of give her opinion on whether or not they have a social media presence or not?

MR. POGOZELSKI: Objection. Asked and answered.

THE COURT: Sustained.

BY MR. BARZEE:

Q. You spent a lot of time talking about Peter Boulevard and King Kimchi; correct?

A. King Kimchi, yes.

Q. Kimchi.

And, in fact, you even introduced a text message from Pat Boyd that was making fun of one of the names; correct?

A. I believe so.

Q. And he did that in what I would determine to be an offensive, racist way; correct?

A. Can you --

Q. Yeah, it was racist.

Remember, he referred to it being an Asian, and that's what Asians call a body part or something like that?
A. Yes, perhaps.
Q. But the truth is you have no evidence that Pat Boyd ever communicated with Peter Boulevard or King Kimchi, do you?
A. I personally do not know.
Q. Well, in the over million dollars -- over a million documents in the case, and you reviewed over a thousand yourself, did you ever see a shred of evidence in this case that Patrick Boyd had any connection whatsoever with Peter Boulevard or King Kimchi?
A. In the documents that I personally reviewed, no.
MR. BARZEE: Thank you, Your Honor.
THE COURT: All right.
Members of the jury, we'll take a ten-minute recess. Remember my admonition not to discuss the case or allow it to be discussed in your presence.
We'll see you back in the jury room in about ten minutes.
THE COURT SECURITY OFFICER: All rise for the jury.
(Jury exits.)
THE COURT: If there's nothing else to come before the Court, we will be in recess for ten minutes.
(Off the record from 3:18 PM to 3:27 PM, after which the following proceedings were had:)

THE COURT: We're back on the record.

Counsel are present. Both defendants are present. Another juror wants to go on a cruise now.

MR. ZIMET: Is that before or after Mr. Barzee's cross-examination?

I knew I could make you smile sometime in this trial.

THE COURT: I smile all the time.

I can't remember whether he mentioned the cruise during jury selection. Aguerrevere something.

THE COURTROOM DEPUTY: Aguerrevere. He's Number 1. He sits right over there, the last seat.

MR. ZIMET: We have 10:00 to 1:00 or something on Friday?

THE COURT: That's all we have on Friday -- is 10:00 to 1:00.

MR. POGOZELSKI: I'm sorry. It says he's leaving Thursday "nine." I don't know if that's a "night."

THE COURTROOM DEPUTY: We're already out on the 9th.

THE COURT: This Thursday, I have a judge's meeting in West Palm.

MR. POGOZELSKI: Oh, I see. Okay.

THE COURT: So I don't think we're in session anyway on Thursday. We lose three hours on Friday.

MR. ZIMET: I think we're in triage with our jurors. I think we should let him go on his cruise.

THE COURT: He says he doesn't want to cancel if he doesn't have to.

MR. POGOZELSKI: Do we know when he returns? I guess we're off that week. So...

THE COURT: Yeah.

MR. POGOZELSKI: As long as he returns before we start back up on the 20th. You know, losing three hours this week, I suppose is not -- I would just be afraid of now every juror wants to start --

COURTROOM SECURITY OFFICER: He mentioned it was a weekender.

MR. POGOZELSKI: Okay.

THE COURTROOM DEPUTY: So most weekenders, he could come back Monday morning, and we're off.

THE COURT: Eventually, hopefully, there will be some peer pressure in there to stop this slowly losing time. So I'll tell him that we won't be in session on Friday.

Anything further before we bring in the jury?

MR. ZIMET: Just as a housekeeping matter, I think we have been evicted from that little room outside of Judge Smith's courtroom. So I don't know if there's another one in the building. If your office could check, we would appreciate it.

COURTROOM SECURITY OFFICER: All I can do is check for you. They started a trial this morning.

THE COURT: If we have all the jurors, let's bring them in.

THE COURT SECURITY OFFICER: All rise.

(Jury in.)

THE COURT: Does counsel concede the presence of the jury and waive its polling?

MR. POGOZELSKI: Yes, Your Honor.

MR. ZIMET: Yes, sir.

MR. BARZEE: Yes, Your Honor.

THE COURT: And did everyone follow my admonition not to discuss the case or allow it to be discussed in your presence?

All right. I have another note about a conflict, and we try to accommodate everybody, but the more we break the trial here and there, the longer the case is going to take. But we're only going to be here three hours on Friday; so I'll accommodate this juror's request, and we won't be in session on Friday.

Mr. Zimet, you may proceed.

MR. ZIMET: Thank you.

CROSS-EXAMINATION

BY MR. ZIMET:

Q. Good afternoon, Agent.

A. Good afternoon, sir.

Q. We have not met before; is that correct?

A. Yes. You look familiar, but I don't think so.
Q. You haven't seen me in any post offices or anything like that?
A. I may have seen you wandering around the courtroom or something -- or the courthouse.
Q. All right. Let's focus in on your assignment in this case. You've repeated it several times. Let's just make it clear so we're on the same page: Your assignment was to review documents in this case; is that correct?
A. Yes, sir.
Q. And you started that, you said, in the last year; is that correct?
A. Correct.
Q. And the indictment in this case was in June, I believe, of 2024. So this was after the time of the indictment you started your work; is that correct?
A. No. I believe I assisted with some document review prior to that.
Q. Okay. So it might have been a little bit over a year?
A. Yes.
Q. So tell the jury how many reports you have written about the work you've done in document review in this case?
A. Zero.
Q. So, ordinarily, in law enforcement, at least when I was back involved in it, when an agent did work, they wrote a

report to memorialize what they did so in case they got transferred, retired, whatever it might be, their successor would know what they had done so the same work wouldn't have to be done again.

Is that the same that existed in 2025?
A. So that depends on your specific role in the investigation. I was one of many, many, many agents that was assisting with document review.
Q. All right. So the product result of your document review, was that memorialized in any way?
A. I don't believe so. We were just looking through documents and then tagging them.
Q. You used the pronoun "we," which suggests more than one?
A. Correct.
Q. How many agents or how many personnel were involved in document review on this case since the indictment?
A. At least ten.
Q. Ten?
A. Yes.
Q. And that's because there were so many documents; correct?
A. Yes.
Q. Well over one million?
A. I don't know the exact number, but I supposed so, yes.
Q. You'd lose count if it's over one million, I would assume?
A. Yes.

Q. So you were 1 of 10. Were you given a specific assignment as far as what to look for in these million-plus documents?
A. Yes. We were given a brief overview. And then we use a program where you can just tag the document if you want somebody else that knows more about the investigation to review it.
Q. Okay. So what were you assigned? You said "we" again, but what were you specifically assigned?
A. I was assigned text messages from Charles Boyd and Patrick Boyd.
Q. Okay. So just text messages between the two of them, or were they involved in text messages?
A. Text messages that came from their phones. They were involved with -- not just between the two of them, between various individuals.
Q. So it would be safe to say -- and this morning and this afternoon -- you've looked at a lot of emails; correct?
A. Yes, but I reviewed far less emails than text messages.
Q. I understand, but I asked about what your assignment was. Your assignment was to review text messages?
A. Yes, sir.
Q. Your assignment was not to review emails; correct?
A. Correct.
Q. So when you talked about the emails today, many were introduced into evidence, many were referred to having been

previously been introduced into evidence, that was not part of your assignment, to look at emails; is that correct?
A. Correct.
Q. So the email assignment was assigned to one or more other agents; is that correct?
A. Yes.
Q. Who were those other agents they were assigned to?
A. I don't know because we all work independently in our workstations.
Q. Okay. Is there somebody that is sort of like the point person that -- the results of one of your work or the other nine people were assigned a document review would send all their findings to?
A. I'm not sure. Because my supervisor personally asked me to assist with reviewing documents; so I just completed the task that was assigned to me.
Q. And who was your supervisor, sir?
A. Fernando Porras.
Q. And Mr. Porras is still with the Government; is that correct?
A. Yes.
Q. Do you know if he was collecting assignments from other agents in your group?
A. I don't know.
Q. So when you say you're assigned to look at text messages

between Charles Boyd -- involving Charles Boyd and Patrick Boyd, was there anything more specific about that assignment?
A. No. I had to read text messages.
Q. To read them to look for what?
A. Read them to look for evidence related to this investigation.
Q. When you say "evidence related to this investigation"?
A. Related to drug diversion.
Q. Okay. And were you also told that you should look for things that are inconsistent with --
A. Yes. That's something we always do.
Q. Can I finish the question?
A. Yes. I apologize.
Q. No problem.
-- inconsistent with the theory that, in fact, Charles Boyd, for instance, was involved in any criminal activity?
A. As part of our training, if we ever find anything that's exculpatory, we do bring that to the attention of the person who's working the investigation.
Q. And that's pretty important, isn't it?
A. Yes, sir.
Q. And that's something certainly worth memorializing, is it not?
A. Yes.
Q. And, in fact, you're required to memorialize that; is that

correct?
A. Yes.
Q. And you did memorialize exculpatory evidence that you found in this case, did you not?
A. I don't believe I found anything exculpatory in this case.
Q. So you're saying in all the text messages, you didn't find anything exculpatory?
A. I was only assigned a specific subset of text messages.
Q. So it's not all -- well, it's the text messages involving Charles Boyd or Pat Boyd being one of the participants; is that correct?
A. Yes, I believe so.
Q. Or is it not all those? It's a subsection of those?
A. Correct. I was assigned 1,000 pages of text messages to review.
Q. It's not all of the text messages involving Charles Boyd and Patrick Boyd; correct?
A. That's correct, sir.
Q. So it's 1,000 of those?
A. 1,000 pages.
Q. 1,000 pages of those?
A. Yes, sir.
Q. So, for instance, if one was 80 pages, that would be part of the 1,000 pages?
A. Correct.

Q. So it's not 80 different texts involving them. It's the total pages involving them; correct?
A. Yes.
Q. All right. So was that limited to a certain time period?
A. I don't recall.
Q. So there's a lot more text messages that involved Charles Boyd and also involved Patrick Boyd that you did not review; correct?
A. That's correct.
Q. And many of those came into evidence today; correct?
A. Yes.
Q. So when you testified in front of the jury this morning and this afternoon that you were reviewing documents and this was a document you reviewed, that was not necessarily accurate; is that correct?
A. I did review these documents in advance of today.
Q. You did not?
A. I did review these documents that I introduced in advance of today.
Q. For purposes of your testimony?
A. Correct.
Q. Not that you had found them as part of your investigation?
A. I never said I had found them, sir. I said I reviewed them.
Q. My question to you: Not part of your investigation, things

that you are using as part of your testimony today; correct?
A. Can you please ask that differently? I don't quite understand what you're asking.
Q. Well, many of the documents that you talked about today in your testimony -- direct examination and cross-examination -- were not documents that you found or came across during the course of your assignment in this case to review documents; correct?
A. That's correct.
Q. And the only reason you knew about them is because the prosecutor presented them to you in preparation for your testimony today; isn't that correct?
A. That's correct.
Q. So you are here today, basically, to introduce evidence that you had not investigated or found but evidence or documents that the prosecution had found and wanted to use you as a basis to present them to the jury; isn't that correct?
A. I wouldn't say that the prosecution found those documents. They were likely found by other individuals that work in my office, other criminal investigators.
Q. That was a horrible question on my part. Let me try to fix it. Okay?
A. Okay.
Q. That the prosecutor identified that they wanted to use in this case against the Boyds.

Would that be more accurate?

A. Yes.

Q. So you do not know if there are documents that are exculpatory in this case involving the Boyds, do you?

A. No, sir.

Q. And you're not saying there are not exculpatory documents. You just aren't aware of them; is that correct?

A. I'm personally not aware.

Q. And if the prosecutor decided not to use them for whatever reason, you would not have them as part of your examination since that was not presented to you to testify to; is that correct?

MR. POGOZELSKI: Objection, Your Honor. Speculation. Asking what the prosecution thinks or said to him. Hearsay.

THE COURT: Overruled.

BY MR. ZIMET:

Q. Judge said you can answer.

A. Can you please repeat the question?

Q. Sure.

If you were not presented exculpatory documents as part of your testimony today, that would be because the prosecutor had not presented them to you as part of your testimony; isn't that correct.

A. I don't know what I don't know.

Q. So let's look at Exhibit -- is it 645?

MR. ZIMET: Government's Exhibit 645. My eyes aren't very good. That's why I need to come up here. I'm not trying to be disrespectful.

BY MR. ZIMET:

Q. On this exhibit, first line, 11:47:24, this is Charlie Boyd saying to Patrick Boyd -- and this is on 9/29/20 -- "I think we may need to cut off Boulevard again. Lots of issues here."

Do you recall testifying to that on direct examination?

A. Yes, sir.

Q. And when Charles Boyd said, "We might have to cut off Boulevard again," did you find documents in your review that, in fact, Boulevard was cut off in September of 2020?

A. Not in the documents that I personally reviewed.

Q. How about in documents the prosecution gave to you to prepare your testimony that, in fact, Boulevard was cut off at that time?

A. I don't recall. I recall I introduced documents showing, I believe, in 2021 that they were still working with Boulevard.

Q. Listen to my question. I'm talking about 2020. I understand --

A. Okay.

Q. Okay. It's not my first rodeo. I understand.

Please answer the question that I'm asking you. Okay?

A. Okay.

Q. 2020, okay. Did you find documents in your review that

showed, in fact, that Boulevard was cut off in September of 2020?

A. I personally did not, no.

Q. Were you shown any documents by the prosecution getting ready for your testimony that, in fact, Boulevard was cut off in September 2020?

A. I do not recall if I saw any document like that.

Q. So that sentence talks about cutting off Boulevard again, and you have been around a long time as an agent and an investigator. So when someone says, "cut off Boulevard again," you would agree that that would suggest that Boulevard had previously been cut off; correct?

MR. POGOZELSKI: Objection, Your Honor. Calls for speculation.

THE COURT: Overruled.

BY MR. ZIMET:

Q. Please answer the question.

A. It could suggest that, yes.

Q. And certainly as a trained investigator, even though you're just reviewing documents, you would at least be curious and say, "Let me see if looking through my documents, I can find an instance where Boulevard had been previously cut off by Safe Chain," as Charles Boyd said in that email or in that conversation, text conversation in 2020.

Did that go through your mind at all?

A. Did that go through my mind when?
Q. I'm sorry?
A. Did that go through my mind when?
Q. When you read it.
A. I introduced the document into evidence.
Q. So when you introduced it into evidence and leading up to that today in your preparation, that's the first time you saw this document?
A. Yes.
Q. So in all your work last year-plus, you never looked at that document?
A. In all my work in the last year, this was not contained in the documents that I was assigned to review, initially.
Q. Even though it's a Charles Boyd document; right?
MR. POGOZELSKI: Objection. Asked and answered.
THE COURT: Overruled.
BY MR. ZIMET:
Q. Even though it's a Charles Boyd document, it wasn't something that you were asked to review? Is that your testimony?
A. I did review it in advance of today, but it did not come up in the documents that were assigned to me for review.
Q. When you say "in advance," that's in your trial preparation to come into court this morning; correct?
A. Yes.

Q. And when was that that you first saw this, date-wise?
A. Approximately one week ago.
Q. So the first time you saw this a week ago. And in your mind when you saw it, and you saw those words "cut off Boulevard again," did you ask the prosecutor, "Well, is there a document that shows that Boulevard was previously cut off?"
MR. POGOZELSKI: Objection, Your Honor.
THE COURT: Overruled.
A. I did not.
BY MR. ZIMET:
Q. And that was because that wasn't your job to ask questions of the prosecutor; is that right?
A. Sir, I was asked to introduce documents into evidence.
Q. And my question to you, sir, was that wasn't your job, okay, to ask the prosecutor questions about something that you saw in a document you were being asked to introduce; is that correct?
MR. POGOZELSKI: Objection. Asked and answered.
THE COURT: He didn't answer it.
Overruled.
A. Perhaps that was my error, and I should have asked.
BY MR. ZIMET:
Q. So the answer to my question is you did not ask the question; correct?
A. Correct.

Q. And you just testified that was an error. And it's an error because that is potentially an exculpatory piece of evidence that you would want the jury to hear if you're presenting your entire examination?

MR. POGOZELSKI: Objection, Your Honor.

THE COURT: Overruled.

BY MR. ZIMET:

Q. Go ahead.

A. Can you please repeat the question?

Q. Sure.

You just testified that it was your error in not asking the prosecutor about that question -- or, excuse me, that answer where Charlie Boyd said, "We might have to cut off Boulevard again."

You said that was your error, not bringing it up when you read it a week ago in preparation for your testimony?

A. Yes.

Q. And the reason it's an error is because it was important to follow through to see whether there's exculpatory evidence concerning the Boyds cutting off Boulevard because of another reason?

MR. POGOZELSKI: Objection, Your Honor. Beyond the scope. It requires speculation. He's already testified abut his role in testifying today.

THE COURT: Overruled.

BY MR. ZIMET:
Q. Go ahead.
A. I don't know if that's contained in other documents. I didn't review all the documents in this investigation.
Q. I understand you testified that, but please try to answer my question.
The reason it was an error, as you just testified, because, in your mind, it was important to see whether there was any exculpatory evidence relating to Charles Boyd; isn't that correct?
A. Yes.
Q. And so if you had asked that question, which obviously you did not ask that question, you would have expected a response from the prosecutor concerning this other event Charles Boyd was referencing; is that correct?
A. If it exists, yes.
Q. Well, did you ask any other agents who might have been involved in looking at this chat, which you said wasn't part of your job but somebody else's job, whether they had looked beyond this one answer to see whether it happened previously? In other words, cutting Boulevard off?
A. I did not.
Q. And you didn't do that because you didn't think it was important?
A. Not at all, sir. Because my role was to review documents,

and I reviewed the documents that were assigned to me.
Q. As a federal agent, you are trained, if something comes up that you see that's potentially exculpatory, that means inconsistent with the theory of guilt, that you need to follow through. And if you don't follow through, you want to make sure that someone from your agency or the Government follows through. Isn't that correct?
MR. POGOZELSKI: Objection. This has been covered at length.
THE COURT: Overruled.
BY MR. ZIMET:
Q. You can answer.
A. Sorry. Can you please repeat the question?
Q. Sure.
As a federal agent -- you have been a federal agent for ten years now?
A. Seventeen.
Q. Seventeen.
And thank you for your service.
A. Thank you.
Q. You are trained that if you find something or see something that potentially is exculpatory, it's your obligation -- obligation, part of your sworn oath -- to make sure it's followed through on to see if, in fact, there is exculpatory evidence relating to someone who is being prosecuted; is that

correct?
A. Yes, that's correct.
Q. And you failed to do that; is that correct?
A. With respect to the specific document, you're correct. I should have asked if there was more information about this cutting off Boulevard again.
Q. And so that was another error, not asking your fellow agents; is that correct?
A. Yes.
Q. How about your supervisor? Is that somebody else that you should be asking when you saw that?
A. Yes.
Q. So if there was something that was exculpatory involving Charles Boyd, is it fair to say that as far as you know, no one from the Government followed through on that statement, at least that you're aware of?
MR. POGOZELSKI: Objection, Your Honor. Speculative. Beyond the scope of his direct.
THE COURT: It is speculative. I sustain the objection.
BY MR. ZIMET:
Q. Now, when we talked about something happening previously, your testimony today talked about HIV and Safe Chain; correct?
A. Yes.
Q. And you were not what's known as the case agent in this

case; is that correct?
A. That's correct.
Q. And the way they did it back in my day -- I assume that it's the same way today -- there is someone designated as a case agent, who is in charge of the entire investigation for your particular agency that's investigating the case; correct?
A. Yes.
Q. You were not that person?
A. No, sir.
Q. Is that correct?
A. That is correct.
Q. And many of the functions that you basically said it wasn't your job would have been the job of the case agent; is that correct?
A. Or other individuals who were assigned different roles, yes.
Q. And part of the case agent's job is to make sure that all the information that is collected is put in a safe place and that leads can be followed as to other things in the investigation; is that correct?
A. Correct.
Q. And part of the case agent's responsibility also includes making sure that positive -- let me phrase it this way -- exculpatory evidence concerning people being prosecuted is preserved and made sure that it's presented to the defendants

as well as to the Court; isn't that correct?
A. Yes.
Q. Now, tell the jury what exculpatory evidence you're aware of that's been collected during part of your investigation.
A. I personally am not aware of exculpatory evidence. It was not contained in the documents that I reviewed.
Q. Are you aware of anyone else in your agency collecting exculpatory evidence relating to the Boyds?
A. I personally don't know who was given that assignment.
Q. Well, the question is not who was given the assignment.
Are you aware of any exculpatory evidence collected during the course of your agency's investigation?
A. I do not know, sir.
Q. Is that something that you would have seen that you would ask for if you were an agent on a case?
A. Not if you're just assigned a task to complete, if you complete that task.
Q. That would be the case agent's job, primarily?
A. Yes.
Q. And do you know whether the case agent in this case did that?
A. I personally do not know.
Q. Did you ask?
A. No, sir.
Q. Was that a mistake?

A. No, sir. Because I was given a task, and I completed my task.
Q. So that wasn't your job?
A. That was not my assignment, sir.
Q. You're saying "assignment." I'm asking you was it not your job, as a federal agent, to ask whether there's any exculpatory evidence in this case?
MR. POGOZELSKI: Objection. Asked and answered.
THE COURT: Sustained.
BY MR. ZIMET:
Q. Now, your universe of communications, did that include Charles Boyd's communication to Abbie Divilio concerning the approval of Boulevard as a vendor for Safe Chain?
A. No.
Q. Whose job was that to look for those documents?
A. I don't know.
Q. Is there a way that we could find that out?
A. I don't know.
Q. If we wanted to find that out, who from your agency would we speak to try to find that out, if the jury is curious about that?
A. I guess I would have to ask the case agent.
Q. So you testified about Adam Brosius's indictment; correct?
A. That was contained in one of the documents that I introduced, yes.

Q. That was not a document that you reviewed as part of your assignment; correct?
A. No, sir.
Q. That was something that was given to you by the prosecutor to testify concerning that document that mentioned Adam Brosius had been indicted; correct?
A. To introduce the record into evidence, yes.
Q. Were you presented any documents by the prosecution of any communication with the Frier Levitt law firm concerning Adam Brosius's ability to continue staying on at Safe Chain after the time of his indictment?
A. No, sir.
Q. Were you -- in your review of chats, did you review any chats where Adam Brosius talked his way into staying at Safe Chain even after he was indicted?
A. No, sir.
Q. Did you look for something like that?
MR. POGOZELSKI: Objection. Asked and answered. Repetitive questioning.
THE COURT: Sustained.
BY MR. ZIMET:
Q. Did you ask any -- excuse me.
Were you shown any documents concerning Adam Brosius's status as an indicted person while working at Safe Chain?
A. I'm sorry. Can you repeat that again, please.

Q. Yes.

Were you shown any documents concerning Adam Brosius's staying at Safe Chain after he had been indicted?

A. I believe we introduced a couple records into evidence during my testimony where it showed that he continued to work there.

Q. The question, though, was any documents concerning the reasons why he was allowed to stay and work there at Safe Chain?

MR. POGOZELSKI: Objection. Asked and answered.

THE COURT: Overruled.

A. No, sir.

BY MR. ZIMET:

Q. You're asked questions concerning T3s or pedigrees; correct?

A. Yes.

Q. Prior to your involvement in this case, did you know what a T3 or pedigree was?

A. Yes. I had a general idea because I participated in a few other similar investigations with other agents in any office.

Q. And part of your review of documents that you reviewed related to T3s and pedigrees; is that correct?

A. The documents that were assigned to me?

Q. Yes.

A. No. That all consisted of text messages.

Q. So that was what was just provided to you by the prosecution in preparation for your testimony?
A. Yes, sir.
Q. So you're not aware if there are other documents that are inconsistent or provide detail or provide a fuller story than what were presented to you during your testimony?
A. No, sir.
Q. Did you ask whether or not there are other documents that maybe provide more information or more detail concerning the T3s?
MR. POGOZELSKI: Objection. Asked and answered. Repetitive questioning.
THE COURT: Overruled.
A. No, sir.
BY MR. ZIMET:
Q. You were shown a whole bunch -- well, let me ask it this way: As part of your evaluation of text messages, did you review text messages as to what the process was at Safe Chain concerning pedigrees and T3s in the summer of 2020?
A. No, sir.
Q. You were provided -- how about text messages concerning standard operating procedures?
A. No, sir.
Q. So you never saw those before -- before your preparation for testimony; is that correct?

A. That's correct.
Q. Did you review any text messages concerning Charles Boyd's insisting, in fact, that the rules related to T3s had to be followed by Boulevard?
A. Not in the text messages that I reviewed, sir.
Q. Did you ask whether any of those existed?
A. No, I did not.
Q. Do you know who initiated the preparation of T3s relating to Boulevard products?
A. No, sir.
Q. Did you ask?
A. No, sir.
Q. You talked and you testified about Charles Boyd's role in T3s and Boulevard products; correct?
A. I introduced documents into evidence involving him, yes.
Q. And you testified about it, too. It's not just "Yes, this is a document"?
MR. POGOZELSKI: Objection, Your Honor. Mischaracterizes his testimony.
THE COURT: It's cross-examination.
Overruled.
BY MR. ZIMET:
Q. Didn't you testify about some of them?
A. I did not provide additional details, sir. I only provided the information of the documents.

Q. I didn't ask did you ask details. I asked did you testify about them?
A. Yes, I introduced documents into evidence.
Q. And, in fact, there's a whole bunch of documents -- and we'll get to it at some point -- where you said this was a Safe Chain pedigree.
Remember those at the end of your direct examination?
A. Yes, sir.
Q. As part of your preparation and part of your assignment to review documents, had you looked at any of those documents prior to the time of your testimony, other than in preparation with the Government prosecutors?
A. No, sir.
Q. So as far as your preparation, you don't know where those documents came from, do you?
A. They were responsive to a subpoena.
Q. A subpoena to whom?
A. Subpoena to various companies who were subpoenaed for records for this investigation.
Q. Well, wasn't it a subpoena to Gilead to produce those documents?
A. I believe that is one of the subpoenas, yes.
Q. And didn't Gilead seize all of the Safe Chain documents that existed?
A. That, I don't know.

Q. You talked a little bit earlier about a briefing that you had about what the case was about, didn't you?

"Yes?"

A. Yes. We were provided with a general overview of the investigation.

Q. Well, who provided the general overview of the investigation?

A. I believe it came from one of the prosecutors on the prosecution team.

Q. One of these prosecutors?

A. Yes.

Q. And did they tell you, during that briefing session, that all of the documents from Safe Chain were documents that had been seized by Gilead in July of 2021?

MR. POGOZELSKI: Objection. Hearsay. Repetitive questioning.

THE COURT: Overruled.

A. Can you, please, repeat the question?

BY MR. ZIMET:

Q. Sure.

In the prosecutor's briefing of you --

And I assume that happened sometime in 2024?

A. Yes.

Q. -- did the prosecutors tell you that the Safe Chain documents that you were going to review had been seized by

Gilead in 2021, when all the Safe Chain records had been seized?

A. No, I don't recall that that was mentioned.

Q. Let me be clear: There's a difference -- and I want to make sure that we're on the same page with this.

A. Yes.

Q. There's a difference between "I don't recall" and "No, that didn't happen"?

A. I don't recall if it happened at the briefing.

Q. You recall learning it at a different time; is that correct?

MR. POGOZELSKI: Objection. Asked and answered.

THE COURT: Overruled.

That means you can answer the question.

A. I'm not sure I knew all these documents were simply from a Gilead subpoena.

BY MR. ZIMET:

Q. As part of your review of text messages and also in preparation for your testimony today, did you learn what the process was for T3s at Safe Chain?

A. No.

Q. So when you testified earlier today that this was a Safe Chain T3 that was supplied to a pharmacy, you did not know that firsthand, did you?

MR. POGOZELSKI: Objection. It requires speculation.

Again, repetitive questioning. Beyond the scope of his direct.

THE COURT: Overruled.

A. I read the document, sir. And it was titled Safe Chain at the top; so I trust the documents that were provided to me by my colleagues.

BY MR. ZIMET:

Q. So because the document said "Safe Chain pedigree" or whatever at the top, you believe that was something that was submitted to a pharmacy? Is that your testimony -- that's the basis of your testimony?

MR. POGOZELSKI: Objection. It requires speculation.

THE COURT: Overruled.

A. Sir, it's a document that I reviewed in my direct testimony.

BY MR. ZIMET:

Q. And would you, please, answer my question, sir?

A. Could you, please, ask the question, again.

Q. Because the document at the top said "Safe Chain" and "pedigree," that was the basis for your testimony that that was a document supplied by Safe Chain to one of its pharmacies; is that correct?

A. Yes.

Q. Do you know whether there's any investigation that was conducted in this case concerning whether that answer was, in fact, correct?

A. I do not personally know.
Q. How about indirectly? Do you know?
A. I do not indirectly know.
Q. So there's several references that you made in your direct examination as to communications, like text messages or emails, where there's discussion about "We need to speak to Adam."
Do you recall that in your direct testimony?
A. Yes.
Q. And Adam, your understanding, was Adam Brosius; is that correct?
A. Yes.
Q. Now, from the standpoint of your review of documents, do you know whether those conversations actually took place?
A. No, sir.
Q. So when you left off your testimony that there's going to be a conversation, do you know whether the Government knows the content of any conversation that took place after the communication that we need to talk to Adam?
A. I personally do not know.
Q. Did you see anything as part of your review or anything in part of your preparation as to what Adam was telling the Boyds concerning any of these issues?
A. I personally do not know.
Q. How about anything that you have seen or heard as part of being on this, I guess, Boyd trial team, I guess you are?

A. I don't know.
Q. You haven't heard anything?
A. No, sir.
Q. Do you know whether anyone from your team has spoken to Adam Brosius and asked him what was said during the course of that conversation?
A. I personally do not know.
Q. Do you know whether any of your team has even spoken to Adam Brosius?
A. I personally do not know.
Q. Have you heard anything from anyone on your team? I'm not saying when you were personally involved in the conversation but knew something had taken place?
A. I have not asked that question of anyone on my team, no.
Q. I'm sorry?
A. I do not know.
Q. During the course of your review of documents, have you reviewed documents where Adam Brosius has made representations that the wrong pill issue was caused by a Gilead manufacturing issue?
A. Not in the documents that I reviewed.
Q. You have, in fact, heard of that issue; correct?
A. I believe it was contained in some of the documents that I introduced.
Q. And do you know whether there's any follow-up or not,

whether there, in fact, was a Gilead manufacturing issue during the time period covered in this case?

A. I apologize. I'm confused. That there was a Gilead issue? I don't know about that.

Q. You have not -- I thought your answer was that --

A. I misunderstood you, sir.

I'm not familiar with Gilead making an error and putting -- is what you stated? -- incorrect pills in a bottle?

Q. Yes.

A. I'm not familiar with that.

Q. Just so we're clear on your testimony: There's nothing that you have reviewed yourself concerning Gilead being a manufacturer who had an issue with wrong pills in bottles that had been manufactured by Gilead?

A. There's nothing that I reviewed myself, no.

Q. Anything that you were told or presented by anyone on your investigative team?

A. No, sir.

Q. I believe on your direct testimony, you talked about Worldwide; is that correct?

A. You would have to refresh my recollection as to which document contained Worldwide.

Q. Let me ask it this way: Are you familiar from your review, your year-long review of documents plus your preparation, of an entity known as Worldwide?

A. Is it -- I believe it's included in the indictment; right?
Q. I wish I could, but I'm not allowed to testify. You know that.
A. Yes, it is.
Q. And as part of your review of messages, text messages, your preparation today, you knew what Worldwide is; correct?
A. Only in the documents that I reviewed.
Q. And what do those documents discuss relating to Worldwide?
A. I would need to refresh my recollection with the documents, sir.
Q. Just so I understand, these are documents that you first reviewed in the last week.
You've gone over your testimony with the Government, I assume, several times before today; correct?
A. Yes.
Q. And you're telling this jury that you don't remember parts of the documents that you already testified about this morning concerning entities such as Worldwide?
A. Sir, I introduced a lot of documents.
I'm asking you to please refresh my recollection with a specific document.
Q. I understand, and we'll get to refreshing your recollection. I want to test your memory first.
You're saying you don't remember anything about Worldwide?
A. I believe it was in -- listed in one of the pedigrees that

we reviewed.
Q. Worldwide was?
A. I think so, but I would need to refresh my recollection with the document, sir.
Q. Okay. How about Gentek? Do you recall that name?
A. Yes, sir.
Q. What was Gentek?
A. It was another entity that was used to purchase drugs.
Q. And from review of documents in preparation for today, what did Gentek do in purchasing drugs?
A. I believe it was one of the drug suppliers, but I would need to look at a document to refresh my recollection.
Q. Well, in review of your testimony for today, did you come across documents that the principals of Gentek lied to the Safe Chain people concerning what they were doing?
A. I personally do not have any information about that.
Q. How about in conversation with your investigative team?
A. No, sir.
Q. You're not saying that Gentek didn't lie to Safe Chain. You just haven't seen any documents relating to it; is that correct?
MR. POGOZELSKI: Objection, Your Honor. Beyond the scope. This is a repetitive line of questioning. He's already testified about his limited role today.
THE COURT: Sustained.

BY MR. ZIMET:
Q. As part of your review of documents, how many vendors did you review that did business with Safe Chain?
A. Only the vendors listed in the documents that I introduced.
Q. And what were they?
A. A few. Some of the ones that you just addressed: Gentek, Worldwide.
Q. So Gentek was a vendor. Worldwide was a vendor.
Anyone else?
A. Yes. Peter's company, which for some reason I'm drawing a blank right now of the name.
Q. Okay. Any other vendors?
Peter's vendor was Boulevard.
A. Boulevard. Thank you, sir.
Q. No problem.
Anyone else, sir?
A. There were a few others listed in the pedigrees, but I would need to see the pedigrees to refresh my recollection.
Q. In preparation for your -- excuse me, in your review of documents as well as in your preparation, did you come across documents or have discussions concerning potential vendors that Safe Chain rejected because they, in fact, have lied to Boulevard -- excuse me, lied to Safe Chain concerning their credentials?
MR. POGOZELSKI: Objection, Your Honor. Again,

repetitive questioning. This is beyond the scope. It's the same line over and over and over again.

THE COURT: Overruled.

BY MR. ZIMET:

Q. Go ahead, answer.

A. Can you please repeat the question?

Q. Sure.

In your review of documents in your preparation for your testimony today, did you learn and did you discover and discuss the fact that Safe Chain had rejected vendor or vendors because of false information the vendors had provided to Safe Chain in their application process?

MR. POGOZELSKI: Objection. Compound.

THE COURT: He asked the question. You object to it. I overruled the objection. The witness can't remember the question; so he's got to ask it again. He asks it again, and then you object to it.

It's still overruled.

A. I personally --

THE COURT: Now, you will have to repeat it again.

BY MR. ZIMET:

Q. You can answer.

A. I personally do not know.

Q. You agree that would be exculpatory evidence, though; correct?

A. It could be.
Q. And if it is exculpatory evidence, it's something that your case agent should have and you should know about as being an agent in the case?
MR. POGOZELSKI: Objection, Your Honor.
THE COURT: Sustained.
BY MR. ZIMET:
Q. Now, you testified earlier that Abbie Divilio -- her name was listed on documents as being the compliance director; is that correct?
A. Yes.
Q. You were asked whether she was the compliance director. Remember those questions?
A. Yes. Because I saw her title listed in the body of the email.
Q. Did you also see communications in which she was acting as the compliance director?
A. Yes.
Q. So when you were asked whether she was a compliance director, the answer should have been yes; is that correct?
A. Yes.
Q. But your answer was not yes. Your answer was "I saw documents where she was referred to as a compliance director." Is that correct?
A. Yes.

Q. And there's a difference between those two answers, is there not?
A. I'm not sure.
Q. You also saw communications where Abbie Divilio was, in fact, a decision-maker, whether or not something would be approved or not approved concerning a particular transaction; isn't that correct?
MR. POGOZELSKI: Objection, Your Honor. Speculation.
THE COURT: Overruled.
A. I don't know which document you're referring to, sir.
BY MR. ZIMET:
Q. Well, do you remember it at all? It's not what particular document.
A. You would have to show me a document.
Q. I don't have to. I'm asking you a question.
A. Okay.
Q. Do you recall testifying this morning to this jury relating to events where Abbie Divilio was a decision-maker concerning the approval of certain transactions?
A. I don't recall that.
Q. Do you recall testimony this morning and into this afternoon concerning Abbie Divilio making recommendations -- excuse me, Abbie Divilio doing investigations concerning items on T3 and pedigrees?
A. Yes.

Q. What role did you think she had when she was doing that?

MR. POGOZELSKI: Objection, Your Honor. What role he thought? Again, he has already said -- testified to his limited scope of involvement.

THE COURT: Overruled.

A. From the records I reviewed, she's was in compliance.

BY MR. ZIMET:

Q. She was performing compliance duties; correct?

A. Yes.

Q. In your role as document reviewer as well as getting ready to testify on behalf of the Government in this case, did you see communications in which Charlie Boyd stated that he was not familiar with what the FDA requirements were concerning certain transactions in this case?

A. I don't believe I personally saw anything like that, no.

Q. How about anything that you were asked about or spoke about in your sessions getting ready to testify?

A. I don't believe so.

Q. In your preparation to testify in this case, you were asked some questions concerning documents relating to Medicine Shoppe.

Do you recall that?

A. Medicine Shoppe? No, I don't recall that.

Q. How about Olympia?

A. Yes.

Q. And what were the questions relating to Olympia that you were asked?
A. I believe those documents had to do with a refund that Olympia had requested, if I recall correctly, but I would need to see the documents to refresh my recollection.
Q. Okay. And part of your testimony concerning the reasons for a refund, do you recall that?
A. It was either dirty bottles or the wrong pills in a bottle. I would have to see a document to refresh my recollection.
Q. As part of your preparation in review of the documents, did you come across any documents which indicated in any way that Safe Chain knew the contents of any bottle that they were selling prior or during the time it was being sold?
A. I don't personally know.
Q. Well, you did not see any documents to indicated that they did, did you?
A. I don't recall.
Q. Did you see any documents, as part of your review or in your preparation, that Safe Chain, when they received bottles of drugs from Boulevard, believed that the contents of the bottles did not have what the bottle indicated was inside the bottle?
A. I don't recall.
Q. In your preparation for testimony today, did you learn or did you see any time in which Charles Boyd prepared any

pedigree in this case?
A. I don't recall.
Q. Isn't the answer you never saw one document, one pedigree that Charles Boyd had prepared? Isn't that the correct answer?
A. I said I don't recall.
Q. In your preparation for your testimony in this case as well your review of the documents, did you see any occasion where Charles Boyd had authored a pedigree or T3 sent to any pharmacy in this case?
A. I do not know.
Q. The answer is no, you have not; correct?
A. The answer is I do not know. I do not recall.
Q. Well, do you have any recollection whatsoever of Charles Boyd in any way, shape, or form authoring a pedigree sent to any pharmacy in this case?
MR. POGOZELSKI: Objection. Asked and answered.
THE COURT: Sustained.
BY MR. ZIMET:
Q. Now, you testified as to communications that Charles Boyd had with this person, King Kimchi?
A. King Kimchi, yes.
Q. Now, I think you testified that King Kimchi and Peter Khaim were the same person?
A. Yes.
Q. You didn't learn that from reviewing any documents, did

you?
A. I learned that from the document that I introduced into evidence.
Q. Which document was that?
A. A document in which King Kimchi is listed next to Peter's email, and Peter is referenced in the email. I believe Mr. Boyd is included in that email.
Q. So because it was sent to a certain email address, that meant that the two of them were the same person? That's your conclusion?
A. No, sir. The name appears next to the email address, and then Mr. Boyd addresses Peter in the email.
Q. So because he sends it to Peter at that email, that meant, in your mind, in your investigative mind, that he knew they were the same person?
A. Yes. Someone's name appears next to their email address.
Q. So from your investigation, did you have any documentation or any information whatsoever that Charles Boyd spoke to King Kimchi?
A. I mean, we have records he spoke to Peter, and that's King Kimchi.
Q. Well, you now believe that, but any record at all that he spoke to a person he believed was King Kimchi at the time that you spoke to him?
A. Based off the records that I reviewed, it appears that he

knew that King Kimchi was Peter, and there are records that he spoke to Peter.
Q. So there's no record that he spoke to King Kimchi; correct?
A. There's a record that he spoke to Peter and that he knew Peter was King Kimchi; so, yes, those records exists.
Q. Based on your conclusion and your speculation; isn't that correct, sir?
A. Based on my review of records.
Q. Your review of records, and then you reached a conclusion, which was basically your speculation; isn't that correct, sir?
A. I disagree with you, but okay.
Q. Well, reasonable people can disagree; correct?
A. Yes.
Q. So if a jury has a reasonable doubt about that, they could disagree with your opinion; correct?
A. Yes.
Q. So just because -- and again, you have 17 years of service. Just because you have 17 years of service doesn't mean that your conclusion is a correct one; isn't that right?
A. Yes.
Q. And by the way, that was not a document you reviewed prior to the time -- during the course of your document review, was it?
A. Correct.
Q. That was something that you spoke with the prosecutors

about; correct?
A. Correct.
Q. And that was a conclusion that they had reached and wanted to know whether you agreed with it or not; isn't that correct?
MR. ZIMET: Objection, Your Honor. Hearsay.
THE COURT: Sustained.
BY MR. ZIMET:
Q. Well, was that your conclusion that you had made yourself, independent of prosecutors?
MR. POGOZELSKI: Objection, Your Honor. He read from the documents.
THE COURT: Overruled.
BY MR. ZIMET:
Q. Go ahead.
A. It's -- I reviewed the documents, and it appears that that is the case based off the documents that I reviewed.
Q. The question to you, sir, was that something that you independently concluded yourself?
A. Yes. Based off the fact that King Kimchi appears next to the email address that Mr. Boyd knows is Peter's email address, I arrived at the conclusion that he's aware that King Kimchi and Peter were one and the same.
Q. And you just used the word "appear" to be the same; correct?
A. Yes.

Q. And that's your testimony; correct?
A. Yes.
Q. Not that they are, but appears, in your mind, to the same; correct?
A. That he believed them to be the same, yes.
Q. You're saying you read into his mind that he believes them to be the same? Is that your testimony now?
A. No, sir. Based on the review of the records.
Q. Your review of the records?
A. That's correct.
Q. But you really didn't review the records. That's something that you worked with the prosecution -- reviewed with the prosecution, okay, in preparation for your testimony; isn't that correct?
A. Yes.
MR. ZIMET: So let's take a look now at the -- Exhibit 404, please.
BY MR. ZIMET:
Q. And this is a Patrick Boyd-Adam Brosius May 2020 text message, I think, that you spoke about?
A. Yes.
MR. ZIMET: And if we can scroll down a little bit. Keep going, please.
BY MR. ZIMET:
Q. In this text message, Adam Brosius is talking about how

financially successful HIV transactions can be; is that correct?

A. Where specifically are you referring to?

Q. Let's see.

MR. ZIMET: Let's go back to the top. Next page.

BY MR. ZIMET:

Q. "I have a phone call that Adam Brosius set up with a girl that is doing all HIV from Gulf.

Brosius: "Three million a month."

Pat Boyd: "Steal her."

"That's the plan"; right?

At the top, Brosius: "This HIV stuff can be very profitable. Not by percentage but by dollar volume."

You testified about that in your direct examination; correct?

A. Yes, I read that in my direct examination.

Q. And do you know what that meant?

A. No, sir. I introduced the documents into evidence.

Q. I'm sorry?

A. I said, "No, sir."

Q. As a financial investigator, did you have any sense what that statement by Brosius meant?

MR. POGOZELSKI: Objection. It requires speculation. Outside the scope.

THE COURT: Overruled.

A. Can you, please, repeat the question.
BY MR. ZIMET:
Q. Sure.
As a financial experienced agent -- or experienced agent in financial matters, better stated, did you have any sense as far as what that meant? That statement by Brosius meant?
A. Not necessarily. I didn't participate in the financial aspect of this investigation.
Q. Who was in charge of that in your case -- in this case, the financial part of the investigation?
A. In this case, I do not know.
Q. Let's now go to the -- part of your examination.
MR. ZIMET: If we can, let's go to Exhibit 15.
BY MR. ZIMET:
Q. Now this is a T3 that you testified to; correct?
A. Yes.
Q. And it says Gilead Sciences to Boulevard; correct?
A. Yes.
Q. Do you know where this came from?
A. From the records responsive to this subpoena.
Q. I know. But specifically, where did it come from? In other words, where was it generated from?
A. I do not know.
Q. Do you know whether Safe Chain created this?
MR. POGOZELSKI: Your Honor, we have a stipulation as

to authenticity. This is a misleading line of questioning.

THE COURT: Overruled.

BY MR. ZIMET:

Q. Go ahead.

A. Can you, please, scroll to the top?

It looks like the document was created by Safe Chain Solutions.

Q. The question is do you know where this document came from, sir?

A. I know it was responsive to a subpoena, but I don't know who actually collected the documents and provided them to us.

Q. Do you know if it was ever used in any way, shape, or form in this case?

A. I don't understand the question.

Q. Do you know whether this was transmitted to anyone in this case? This document?

A. Yes. I believe this one was.

Q. And how do you know that?

A. Because this is one of the wire counts -- let me see. January 21st. It's Count II of the indictment. This is related to the records of a shipment of misbranded HIV drug Biktarvy from outside of Florida to Pharmacy One.

Q. So you're saying because it's in the indictment, that means it was used in this case? Is that your testimony?

A. No. Because there's other document that I introduced,

along with this one, that included emails that shows that this was transmitted.

Q. That this email was transmitted as part of a transaction to this pharmacy? Is that your testimony, sir?

A. Can you, please, ask the question again.

Q. Sure.

Is it your testimony that this document was transmitted by email to a pharmacy in this case?

A. I would have to see the other documents I introduced. I think this may have been attached to an email, but I don't recall.

Q. So because it's in the indictment, that doesn't necessarily mean that it was something that was actually used by Safe Chain in this case; correct?

A. That's not -- that's not necessarily true, no, sir.

Q. Well, tell us when Charles Boyd was involved in the preparation of this document.

A. I --

MR. POGOZELSKI: Objection, Your Honor. Requires speculation.

THE COURT: Overruled.

A. I do not know.

BY MR. ZIMET:

Q. Well, tell us when Patrick Boyd was involved in preparation of this document.

A. I would have to see other documents to refresh my recollection.

Q. Tell us whether or not Charles Boyd ever knew this document existed prior to the raid that was taking place at Safe Chain in July of 2021?

MR. POGOZELSKI: Objection. Speculation. Outside the scope.

THE COURT: Overruled.

BY MR. ZIMET:

A. I do not know.

Q. Tell us whether or not Patrick Boyd ever knew this document existed prior to the Gilead raid of Safe Chain in July of 2021.

A. I do not know.

Q. Are you aware of how T3s were transmitted to purchasers of HIV drugs from Safe Chain?

A. I am not aware.

Q. Were they actually transmitted to pharmacies?

MR. POGOZELSKI: Objection. It requires speculation.

THE COURT: If he knows.

Overruled.

A. I don't personally know.

BY MR. ZIMET:

Q. Do you see any documents as part of your examination or in your preparation that, in fact, T3s were transmitted with drugs that were submitted or sold to pharmacies?

A. I do not recall.
Q. Do you recall --
MR. ZIMET: Let's go to Number 15, ma'am -- 16, next page.
BY MR. ZIMET:
Q. This is an invoice, okay. Do you recall where this came from?
A. It was provided in response to a subpoena.
Q. Do you recall during the course of your investigation -- excuse me, your document review, that vendors were providing false invoices and false documents to Safe Chain?
MR. POGOZELSKI: Objection, Your Honor. Speculation.
THE COURT: Overruled.
A. I don't recall.
BY MR. ZIMET:
Q. Do you recall during your preparation to testify that you were shown documents that, in fact, were falsely created by persons -- by companies that were selling drugs to Safe Chain?
A. I don't recall seeing those documents.
Q. So because you didn't see them, it doesn't mean that didn't happen; is that correct?
A. You're asking me to guess.
Q. I'm sorry?
A. You're asking me to guess, sir.
Q. I'm asking you to answer my question.

A. I don't know. I didn't see them.
Q. Do you know if anyone on your team investigated whether false documents were presented to Safe Chain by vendors?
MR. POGOZELSKI: Objection. Asked and answered. Outside the scope. It's a repetitive line of questioning.
THE COURT: Sustained.
BY MR. ZIMET:
Q. Let's go to 18, please. Another T3; correct?
A. Yes.
Q. Do you know where this one came from?
A. No, sir.
Q. Do you know if Charlie Boyd ever saw this document prior to the time of his being indicted?
A. I don't know.
Q. Do you know whether Pat Boyd ever saw this prior to being indicted?
A. I do not know.
Q. Do you know if Charlie Boyd had anything to do with the preparation of this document?
A. I do not know.
Q. Same question as far as to Pat Boyd.
A. I do not know.
Q. Let's go to 90, please.
91.
Would it be safe to say, sir, that as far as any T3 that we

were shown -- I think I got about 10 or 15 maybe from this morning.

You're not aware whether Charlie Boyd or Pat Boyd were involved in the preparation of any of those T3s?

A. I believe we saw some communications that showed that they had communicated to certain individuals that the T3s were not good and have to be changed.

Q. That they were inaccurate; correct?

A. That suggests that they were involved in the preparation and they were asking somebody else to alter the T3s.

Q. Alter --

A. Or to edit them in some way and add different information.

Q. Well, actually, what's in those communications were from Charlie Boyd, that if you want to have an accurate T3, you have to have this type of information in the T3; isn't that correct?

A. I would have to see the document you're referring to.

Q. Well, isn't that what you testified to this morning?

A. I would have to see the document you are referring to.

Q. You don't remember what you testified to this morning?

A. I testified to a lot of records.

Q. I understand that. But I'm talking about is whether or not what Charlie Boyd said was "You have to put something specific in, or you need this type of information to make it a valid T3."

A. Can you please refresh my recollection with the document?

Q. I'll refresh it in a couple of minutes, but I'm going to test your memory first.
A. I would like for you to show me the document, please.
Q. I would like you to answer my question.
MR. POGOZELSKI: Objection. Argumentative. Asked and answered.
THE COURT: Just answer his question.
A. I don't recall, sir. I would have to see the document.
BY MR. ZIMET:
Q. Now, you testified about some communications relating to a company called Synergy.
Do you recall that?
A. Yes.
Q. And what is Synergy?
A. I don't recall. I would have to see the document.
Q. Sir, you testified this morning about a company that you don't know what it's about; isn't that correct?
MR. POGOZELSKI: Objection, Your Honor. Argumentative. Again, he already testified about his limited scope here.
THE COURT: Sustained.
BY MR. ZIMET:
Q. Do you have any knowledge of what Synergy is?
MR. POGOZELSKI: Objection. Same reasons.
THE COURT: Sustained.
///

BY MR. ZIMET:
Q. Now, the deposition testimony that you talked about, the various excerpts of testimony, is that something that was part of your document review?
A. No.
Q. That's something that the prosecutors selected and asked you to testify about; isn't that correct?
MR. POGOZELSKI: Objection, Your Honor. We have gone over this about 50 different times.
Asked and answered. Repetitive line of questioning. Beyond the scope.
THE COURT: And I've overruled it about 50 times. You can answer.
A. Sorry. Can you repeat the question, please?
BY MR. ZIMET:
Q. The deposition excerpts that you testified about this morning -- remember those?
A. Yes.
Q. Those were something that were not part of your document review; isn't that correct?
A. That's correct.
Q. The deposition excerpts that you testified about were excerpts that were selected by the prosecutors; isn't that correct?
A. I don't know who specifically selected them, but I was

asked to review them in preparation to introduce them as records into evidence.
Q. Who asked you to do it?
A. One of the prosecutors.
Q. Okay. So whether they picked it out or if someone else picked it out, they're the ones that asked you to talk about them; correct?
A. Yes.
Q. And you know that those came from depositions taken in a civil case being prosecuted by Gilead; isn't that correct?
A. I believe so.
Q. You know so, don't you?
A. Yes.
Q. When you say you believe so, you really know that that was the answer that, in fact, that took place; isn't that right, sir?
MR. POGOZELSKI: Objection, argumentative.
THE COURT: Overruled.
A. Those are synonymous terms, sir. "I believe so" and "I know so" mean the same thing.
BY MR. ZIMET:
Q. I have a great one-liner, but I can't use it so -- and my wife would kill me if I said it.
But did you review -- well, first of all, the Gilead civil case, the attorneys representing the Boyds were not Mr. Barzee

or myself; correct?
A. I do not know.
Q. Well, when you heard objections to certain things that were asked in that deposition, do you know whether that was Mr. Barzee or myself?
A. I don't know, sir.
Q. Did you review anything else in those depositions, or did you review the entire depositions?
A. No, sir, only the documents that I introduced into evidence.
Q. So those depositions were both long depositions, were they not?
A. I do not know.
Q. Did you ask the prosecutors is there anything in there that is inconsistent with what you want me to talk about and testify about?
A. No, sir.
Q. Did the prosecutors tell you that, for instance, Charles Boyd was asked whether he knew what WAC was?
MR. POGOZELSKI: Objection, Your Honor. Calls for hearsay. Self-serving hearsay.
THE COURT: Overruled.
A. That was not brought to my attention, no.
BY MR. ZIMET:
Q. So when you talked about the part where Patrick Boyd talked

about WAC, you were not trying to suggest that Charles Boyd was denying that he knew what WAC was; correct?
A. No, sir.
Q. In fact, you know in that deposition Charles Boyd discussed what WAC was; correct?
A. No, I do not know that.
Q. The prosecutors didn't tell you that?
A. No, sir.
Q. Were you asked to review any other depositions from the Gilead civil case?
A. No, sir.
Q. Do you know what other witnesses testified in the Gilead civil case?
A. No, sir.
Q. You talked about Peter Boulevard several times during your direct examination.
Do you recall that?
A. Peter from Boulevard, yes.
Q. And he was referred as Peter Boulevard in certain communications; correct?
A. I would have to see those communications.
Q. Was he ever referred to as Peter Khaim in any of the conversations involving Charlie Boyd?
A. I don't recall.
Q. Was he ever referred to as Peter Khaim in any conversations

involving Pat Boyd?
A. I don't recall.
Q. In your preparation or reviewing documents, did you review documents involving Peter from Boulevard?
A. Yes, I believe so.
Q. And that was part of your assignment; isn't that correct?
A. No.
Q. So it was not part of your review of documents, Peter Boulevard communications?
A. I don't -- I don't recall if he was included in the communications that I reviewed personally.
Q. Just so we're clear: Can you give us sort of a description of what the universe of Charlie and Pat Boyd text messages were that you reviewed?
It didn't involve Peter Boulevard; correct?
A. I reviewed a lot of text messages primarily for Patrick Boyd.
Q. So it wasn't primarily for Charlie Boyd; correct?
A. Correct. The text messages I reviewed when I was first assigned that group of text messages, I believe that my subset primarily involved Patrick Boyd, and there may have been some communications between the brothers, but I believe mine may have been from Patrick Boyd's phone.
Q. So any testimony you might have given that might suggest that you had made a document review and come across documents

relating to Charlie Boyd, not involving Pat Boyd, that would be inaccurate; correct?
A. I'm sorry. Please repeat the question.
Q. Any testimony that you would have given in this courtroom in front of this jury that would in any way suggest that you were reviewing documents relating to Charlie Boyd, independent of Patrick Boyd, that would be incorrect?
A. I honestly don't recall if some of the text messages came from Mr. Charles Boyd's phone. I would have to go back and review what I was assigned.
Q. But that wasn't your assignment -- is that correct? -- as you just testified primarily what your assignment was?
A. My assignment was to review text messages, and I was given a subset of text messages, and I reviewed those text messages.
Q. Primarily relating to Patrick Boyd; isn't that correct?
A. The ones that I recall, but there were probably others related to Charles Boyd.
Q. Didn't you just testify it was primarily relating to Patrick Boyd?
A. I said the ones that I recall primarily related to Patrick Boyd.
I have to review all those text messages again to determine which ones corresponded to which defendant.
Q. Do you recall in your review of documents as well as your preparation that there were instances where Abbie Divilio made

mistakes?
A. I don't recall coming across that in my review of records.
Q. Do you recall instances where communications were made to Gilead that were inaccurate based on mistakes that Abbie Divilio had made?
A. I don't recall that in my review of records.
Q. Do you recall in your review of documents that Gilead was concerned that Safe Chain was not providing information being requested by Gilead?
A. I don't recall that in my review of records.
Q. Do you recall in your review of documents that Gilead had sent out a PharmAlert in March of 2021 accusing Safe Chain of wrongdoing?
A. I don't recall coming across that in my review of records.
Q. Do you recall in your review of documents that Safe Chain had been provided subpoenas in May of 2021 relating to a Southern District of Florida lawsuit involving Gilead providing drugs that ended up on the black market?
MR. POGOZELSKI: Objection, Your Honor. Again, beyond the scope. He's testified about his limited scope here.
THE COURT: Overruled.
A. I don't recall that from the records that I reviewed.
BY MR. ZIMET:
Q. Well, do you recall talking about that with the prosecutors before your testimony?

A. No, sir. I don't believe I discussed that with the prosecutors.
Q. So you know you didn't talk about it with them, but you don't recall knowing about it during the course of your work; is that right?
A. That's a confusing question. Can you, please, ask it again?
Q. Well, it's based on your confusing answer.
On one hand, you say you don't recall anything about the Southern District of Florida lawsuit and subpoena issued to Safe Chain in May of 2021; correct?
A. No, I don't recall that.
Q. But you know for sure that you never discussed that with the prosecutors in preparation for your testimony; is that correct?
A. Yes.
Q. That one is not "I don't recall." That's a "No"; is that right?
A. No, I did not discuss it with them.
Q. Do you recall in your preparation, in your review of documents, that Safe Chain was never alerted by Gilead that, in fact, their drugs had ended up on the black market?
A. I'm sorry. Please repeat the question.
Q. Right.
Do you recall in your preparation, review of documents,

that Gilead had never communicated to Safe Chain that Gilead drugs had ended up on the black market?
A. I'm not aware of that.
Q. You're not saying it didn't happen. You're just not aware of it from your review of documents; is that correct?
A. Correct.
Q. Who on your team would be assigned to look into that issue?
A. I'm not sure, sir.
Q. That's a question much better for the case agent; is that correct?
A. Yes.
Q. Not you?
A. Correct.
Q. And not something that was provided to you as part of the debriefing was concerned when you got ready for your testimony?
A. Correct.
Q. Or your investigation?
A. What do you mean by "investigation?"
Q. Well, your investigation of documents.
I thought you said that you had a debriefing ahead of time by the prosecutor to tell you what to look for.
A. Correct.
Q. What were you supposed to look for?
A. We were supposed to look for certain keywords in text messages related to drug diversion.

Q. Let me ask it this way: Were you looking at things to build the case against the Boyds? Is that correct?
A. I was reviewing documents and searching for keywords.
Q. To build the case against the Boyds?
A. I'm not sure if we were building a case at that point in time, sir.
Q. They were already charged; is that right?
A. No. My review was prior to them being charged.
Q. Were you looking to find all the facts that were available and then be able to make a determination based on all the facts?
A. I was searching for keywords in documents.
Q. That's not my question, sir.
Were you looking to find all the facts that would relate to the issue of whether or not there was something done that was illegal?
A. Was I searching for facts of things that were illegal? Is that what you're asking?
Q. The question to you, sir, again, were you searching for all the facts that would be relevant to a determination of whether or not anything illegal had been done?
A. I'm not sure. I was given the assignment and a list of keywords, and somebody else would review the messages that I marked with the specific keywords.
Q. So correct me if I'm wrong, your -- you were never assigned

by the prosecutors in this case responsibility to see whether there was any evidence -- or put it this way: All the evidence that related to the potential violation of any crimes in this case?

MR. POGOZELSKI: Objection. Asked and answered.

THE COURT: Sustained.

BY MR. ZIMET:

Q. So during the course of your review, you said you used keywords. Is that right?

A. Yes.

Q. What were those keywords?

A. I don't recall what they were at this time. I know they were related to drug diversion, but I don't recall the keywords that were provided to us to search for in the text messages.

Q. Did you write them down?

A. No.

Q. Did you have a memo or something that had what those keywords were?

A. There was a system, and the keywords were listed within the system.

Q. So somebody had already put them in the system?

A. I suppose so.

Q. So it wasn't you were assigned keywords. You were just assigned to see what results came up with someone else's keywords?

A. We were assigned to identify specific keywords that existed within text messages.
Q. How about the keyword "mistake?" Was that a keyword?
MR. POGOZELSKI: Objection. Asked and answered. Beyond the scope.
THE COURT: Sustained.
BY MR. ZIMET:
Q. If we wanted to see what those keywords were, let's say the jury was interested in that, who would we want to talk to, and who would we want to have that information from?
A. Case agent or the prosecutor.
Q. You were asked by Mr. Barzee in cross-examination as far as other platforms, I think that's the right word, that communications took place on.
Do you recall those questions?
A. Yes.
Q. And in reviewing documents, reviewing items in this case, do you know whether anyone from your team tried to find those other platforms to see what was communicated?
A. I personally do not know.
Q. Did you find anything in your review of documents, anything that was presented to you by the prosecutors in your preparation to testify that Charlie Boyd used any platform other than text messages, Teams messages, and emails?
A. I personally do not know.

Q. So the answer to my question is no, you did not; correct?
A. No.
Q. And so do you know whether -- and you talked about Adam Brosius, for instance?
A. Yes.
Q. Did you find any documents in your review that Adam Brosius used any of those, I'll call them, "alternative platforms," other than the ones Charlie Boyd utilized?
A. Not in the documents that I reviewed.
Q. How about Peter Boulevard?
A. Not in the documents that I reviewed.
Q. How about what you were presented by the prosecutors getting ready for your testimony?
A. Any -- can you, please, repeat the initial question? Any evidence of additional methods of communication?
Q. Alternative platforms? That's what I'm calling it.
A. Well, there were Teams chats.
Q. Teams, text messages, emails.
A. Outside of the ones that I introduced?
Q. Right.
A. Outside of the ones that I introduced into evidence, I'm not aware of others.
Q. And who from your investigative team would know about that? Communications?
A. The case agent.

Q. During the course of your review of documents, did you find any documents that indicated Charlie Boyd knowing that the documents -- excuse me, that the drugs that were being sold to them had been drugs that had been diverted by certain other vendors or companies?
A. All the documents that he introduced showed that he was aware of issues with pedigrees and issues with a lot of drugs that he was purchasing as far as containing the incorrect drugs; so, yes, I do believe that he had knowledge about that.
Q. He identified issues; correct? You saw that. You introduced documents that talked about issues; correct?
A. He was worried about identifying the issues, not -- yes.
Q. He was worried about them. You also saw introduced documents where he wanted to get explanations as to why these things were happening; isn't that correct?
A. That is correct. But he continued to deal with the same vendors that were causing the issues, like Boulevard.
Q. But what you didn't testify and you didn't identify any documentation is what excuses he was told as to those things that had happened; isn't that correct?
A. That is correct.
Q. And so you don't know what he was told.
You don't know whether they were truthful or not, and certainly, you don't know whether he reasonably relied upon them; isn't that correct?

A. I do not know.
Q. So if, in fact, Charlie Boyd was conned, you did not find any documents to support the fact that he was not conned; isn't that correct?
A. That was not within the documents that I reviewed, no.
Q. And when there was a problem that came up with T3s relating to Boulevard, Charlie Boyd went to Peter Boulevard; isn't that correct?
A. Sometimes he communicated with his brother. Sometimes he communicated with Adam Brosius.
Q. To find out what the story was; isn't that correct?
A. The communications, yes.
Q. To get information; correct?
A. Yes.
Q. To problem solve; isn't that correct?
A. Yes.
Q. And what he was told satisfied him; isn't that correct?
A. That, I don't know. You would have to ask him.
THE COURT: Mr. Zimet, is this a good spot to take a break?
MR. ZIMET: Yes, sir.
THE COURT: All right.
Members of the jury, we're going to recess for the evening. Remember my admonition not to discuss the case or allow it to be discussed in your presence, and we'll see you

back at 9:00 tomorrow morning.

THE COURT SECURITY OFFICER: All rise.

(Jury out.)

THE COURT: And, Agent, during the break of your testimony, you're not allowed to discuss your testimony with anyone and we'll see you back tomorrow at 9:00.

THE WITNESS: Thank you, sir.

THE COURT: If there's nothing else to come before the court, we'll be in recess until 9:00 tomorrow morning.

(Trial was adjourned at 4:59 PM.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

DATE: 10/6/2025

/s/Patricia Bailey-Entin
PATRICIA BAILEY-ENTIN, FPR, RPR
Official Court Reporter
United States District Court
Southern District of Florida
U.S. Federal Courthouse
299 East Broward Boulevard
Fort Lauderdale, Florida 33301

## $

**$104** [1] - 28:11
**$111** [1] - 189:17
**$14,441,600.37** [1] - 129:21
**$150** [1] - 202:14
**$300,000** [1] - 198:1
**$500** [1] - 33:16
**$92** [1] - 28:11

## '

**'albuterol** [1] - 161:1
**'contacts** [1] - 59:1
**'expletive** [2] - 163:10, 199:12
**'expletive'** [5] - 61:9, 61:11, 83:22, 132:18, 199:13
**'G'-like** [1] - 134:11
**'Pharmacies** [1] - 34:6
**'sold'** [1] - 114:15

## /

**/s/Patricia** [1] - 293:15

## 0

**019427** [1] - 31:5

## 1

**1** [10] - 1:8, 1:19, 33:1, 55:4, 106:5, 111:6, 155:19, 189:24, 222:10, 227:1
**1,000** [5] - 230:14, 230:19, 230:20, 230:21, 230:24
**1.5** [2] - 104:6, 132:23
**10** [8] - 43:21, 85:19, 98:7, 109:9, 109:24, 120:12, 227:1, 276:1
**10/6/2025** [1] - 293:15
**100** [4] - 78:18, 103:3, 122:24, 192:4
**102** [6] - 4:19, 5:15, 41:20, 42:2, 42:18, 42:19
**103** [6] - 3:20, 4:20, 46:1, 46:7, 46:11, 46:12
**104** [5] - 4:21, 169:13, 169:19, 169:22, 169:23
**105** [2] - 5:24, 6:22
**107** [2] - 7:4, 32:14
**108** [6] - 4:22, 6:16, 35:10, 35:16, 35:20, 35:21
**109** [5] - 4:23, 43:14, 44:3, 44:6, 44:7
**10:00** [2] - 222:12, 222:14
**10:40** [1] - 74:8
**10:54** [1] - 74:8
**10th** [10] - 17:2, 18:2, 61:17, 69:5, 70:20, 111:13, 130:17, 131:5, 131:21, 161:5
**11** [4] - 31:23, 75:25, 79:12, 133:5
**113** [1] - 7:1
**11374** [2] - 31:20, 31:23
**11376** [1] - 64:10
**115** [4] - 5:1, 7:2, 124:14, 125:23
**116** [1] - 38:10
**117** [1] - 6:1
**118** [1] - 6:19
**119** [1] - 6:20
**11:00** [1] - 8:10
**11:15** [2] - 89:14, 90:11
**11:26** [1] - 90:12
**11:32** [1] - 90:12
**11:40** [1] - 30:11
**11:44** [1] - 90:12
**11:47** [1] - 182:21
**11:47:24** [1] - 234:5
**11th** [1] - 132:16
**12** [3] - 54:20, 76:23, 161:14
**12.5** [2] - 104:3, 202:15
**1200** [1] - 132:18
**121** [1] - 6:18
**122** [1] - 6:21
**123** [3] - 5:1, 124:15, 125:23
**125** [6] - 5:1, 5:5, 61:14, 61:20, 61:23, 61:24
**126** [5] - 5:6, 62:12, 62:18, 62:21, 62:22
**127** [1] - 6:8
**128** [6] - 5:7, 6:7, 62:24, 63:8, 63:11, 63:12
**129** [6] - 5:8, 7:6, 64:19, 64:25, 65:3, 65:4
**12:00** [2] - 8:12, 182:24
**12:02** [1] - 123:22
**12th** [3] - 76:10, 101:6, 161:13
**13** [11] - 3:14, 54:7, 54:19, 62:15, 102:9, 128:24, 140:9, 140:20, 140:23, 140:24, 164:14
**130** [5] - 5:9, 63:19, 63:25, 64:3, 64:4
**131** [6] - 5:10, 7:7, 65:25, 66:6, 66:9, 66:10
**132** [6] - 5:11, 6:13, 66:14, 66:21, 66:24, 66:25
**133** [3] - 6:25, 67:3, 67:9
**135** [10] - 5:12, 5:13, 7:5, 69:2, 69:10, 69:13, 69:14, 69:25, 70:1, 70:6
**135A** [2] - 70:2, 70:5
**136** [2] - 5:17, 17:24
**138** [1] - 5:20
**139** [1] - 5:22
**13th** [2] - 128:20, 163:16
**14** [12] - 3:3, 3:15, 54:19, 97:17, 105:12, 105:24, 141:12, 141:19, 141:22, 141:23, 172:4, 172:9
**14-FL0195** [2] - 140:18, 148:4
**140** [2] - 3:14, 5:21
**141** [4] - 3:15, 5:1, 124:16, 125:23
**142** [1] - 3:16
**144** [1] - 3:17
**145** [1] - 3:18
**146** [1] - 3:19
**147** [1] - 3:21
**149** [3] - 5:1, 124:18, 125:23
**14th** [3] - 48:8, 48:20, 52:6
**15** [13] - 3:16, 71:6, 71:13, 142:9, 142:15, 142:18, 142:19, 156:18, 214:12, 216:23, 270:13, 274:3, 276:1
**15-minute** [1] - 71:2
**150** [1] - 104:3
**151** [2] - 4:11, 4:12
**152** [2] - 4:13, 84:14
**153** [2] - 4:14, 4:15
**154** [2] - 4:16, 4:17
**155** [1] - 7:11
**156** [2] - 7:9, 7:10
**157** [1] - 4:18
**158** [1] - 7:15
**159** [1] - 3:5
**15th** [1] - 156:5
**16** [8] - 3:17, 3:25, 56:18, 143:22, 144:4, 144:7, 144:8, 274:3
**160** [2] - 3:5, 6:6
**161** [5] - 5:1, 6:3, 6:4, 124:20, 125:23
**162** [5] - 5:2, 5:19, 6:15, 124:22, 125:23
**164** [1] - 7:8
**168** [1] - 4:7
**169** [2] - 4:5, 4:21
**17** [11] - 3:18, 5:23, 50:17, 144:25, 145:7, 145:10, 145:11, 163:19, 206:1, 266:17, 266:18
**170** [1] - 5:18
**171** [1] - 5:16
**172** [1] - 3:6
**173** [1] - 29:5
**174** [1] - 87:23
**176** [1] - 92:17
**179** [5] - 5:14, 94:4, 94:12, 94:15, 94:16
**17th** [1] - 51:6
**18** [8] - 3:19, 52:16, 78:25, 145:20, 145:25, 146:3, 146:4, 275:8
**187** [1] - 100:2
**19** [5] - 31:4, 31:5, 65:10, 104:7, 117:2
**190** [5] - 5:15, 102:5, 102:12, 102:15, 102:16
**192** [5] - 5:16, 171:14, 171:20, 171:23, 171:24
**1:00** [2] - 222:12, 222:15
**1:15** [5] - 123:12, 123:13, 123:17, 123:21, 123:22
**1st** [10] - 90:19, 90:22, 91:5, 91:10, 92:14, 92:20, 94:9, 95:17, 97:1, 143:10

## 2

**2** [14] - 3:12, 43:22, 44:15, 55:4, 59:14, 59:20, 59:23, 59:24, 64:6, 84:14, 121:5, 133:20, 148:14
**20** [6] - 3:20, 6:2, 103:8, 103:14, 103:17, 103:18
**200** [3] - 5:2, 124:24, 125:23
**2006** [1] - 38:6
**2007** [2] - 33:23, 34:1
**200K** [2] - 85:23, 87:7
**2011** [3] - 33:23, 34:1, 38:6
**2012** [4] - 32:21, 32:25, 33:3, 33:12
**2015** [4] - 42:8, 43:12, 193:9, 214:11
**2016** [6] - 46:4, 46:25, 47:21, 169:16, 170:3, 193:9
**2017** [1] - 74:3
**2018** [5] - 32:18, 36:2, 43:17, 44:12, 45:2
**2020** [124] - 17:2, 19:15, 19:25, 20:12, 20:23, 21:3, 21:14, 23:22, 25:9, 29:2, 29:8, 32:3, 32:8, 38:13, 41:6, 41:13, 48:9, 48:20, 50:18, 51:6, 52:6, 52:16, 54:7, 56:18, 58:11, 58:25, 59:17, 60:3, 60:7, 61:3, 61:17, 62:2, 62:15, 63:5, 63:22, 64:22, 65:9, 66:3, 66:16, 67:6, 69:5, 70:20, 75:11, 75:25, 76:10, 76:24, 78:20, 79:2, 79:15, 79:24, 80:3, 82:25, 83:16, 83:25, 84:11, 84:17, 85:19, 86:15, 87:4, 88:15, 89:4, 90:6, 90:7, 90:19, 90:22, 91:10, 92:14, 92:20, 93:16, 94:9, 95:4, 95:17, 96:3, 97:1, 97:5, 98:4, 100:4, 101:6, 102:9, 103:11, 103:23, 104:11, 104:25, 105:12, 105:24, 106:18, 120:19, 121:20, 126:19, 127:11, 128:7, 128:20, 128:24, 129:6, 129:18, 129:24, 130:3, 130:15, 130:16, 131:5, 131:22, 132:3, 132:16, 133:5, 157:5,

157:24, 158:21, 161:3, 161:5, 161:14, 163:16, 164:14, 164:17, 171:17, 172:4, 172:9, 234:12, 234:19, 234:25, 235:2, 235:6, 235:24, 247:19, 268:19
**20209/11** [1] - 95:5
**2021** [52] - 39:6, 39:20, 78:22, 107:2, 107:13, 107:18, 107:24, 109:10, 109:24, 110:1, 111:21, 112:11, 112:20, 114:9, 115:14, 117:2, 119:12, 120:12, 122:6, 133:11, 133:23, 135:11, 136:6, 136:17, 138:5, 138:22, 140:15, 141:10, 143:10, 143:16, 144:17, 147:5, 147:7, 150:9, 152:11, 155:4, 155:21, 156:5, 156:18, 162:5, 162:17, 163:5, 170:11, 214:12, 234:18, 250:14, 251:1, 273:5, 273:12, 284:12, 284:16, 285:11
**2023** [2] - 47:25, 193:9
**2024** [2] - 225:15, 250:22
**2025** [2] - 1:5, 226:5
**20th** [5] - 8:16, 8:19, 9:15, 13:1, 223:7
**21** [7] - 3:21, 78:16, 83:13, 147:13, 147:20, 147:23, 147:24
**217** [3] - 5:2, 125:1, 125:23
**21st** [9] - 8:16, 8:19, 13:1, 141:10, 143:10, 143:16, 155:4, 155:21, 271:20
**224** [1] - 3:6
**22nd** [7] - 8:9, 8:12, 12:23, 83:25, 127:11, 136:6, 147:5
**23** [1] - 4:4
**23rd** [4] - 13:3, 13:4, 144:17, 147:7
**24** [2] - 7:12, 44:21
**24-cr-205500** [1] - 1:2
**243** [1] - 109:7
**247** [3] - 5:2, 125:3, 125:24
**25** [2] - 7:13, 82:24
**25th** [9] - 39:5, 39:20, 79:2, 79:14, 79:24, 80:3, 80:9, 82:23, 133:23
**265** [3] - 5:2, 125:5, 125:24
**268** [3] - 114:3, 217:4, 217:6
**26th** [1] - 9:15
**27** [9] - 19:15, 19:25, 20:12, 20:23, 21:3, 21:14, 83:16, 84:11, 163:4
**27-NY0160** [1] - 139:8
**272** [5] - 5:17, 136:14, 136:20, 136:23, 136:24
**275-5300** [1] - 30:11
**277** [5] - 5:18, 170:8, 170:14, 170:17, 170:18
**279** [5] - 5:19, 162:2, 162:8, 162:11, 162:12
**28** [1] - 84:17
**29** [9] - 29:2, 29:8, 32:8, 42:8, 43:12, 58:11, 86:15, 87:4, 104:25
**295** [5] - 5:20, 138:2, 138:11, 138:14, 138:16
**295A** [4] - 5:20, 138:11, 138:14, 138:16
**299** [1] - 293:18
**29th** [6] - 23:22, 25:9, 32:3, 58:25, 88:1, 161:3
**2:03** [1] - 165:10
**2:10** [1] - 165:10
**2nd** [6] - 96:3, 97:5, 97:14, 129:18, 130:2, 130:4

## 3

**3** [12] - 31:16, 32:19, 38:14, 47:5, 51:4, 52:1, 67:23, 88:25, 104:6, 128:17, 132:13, 148:14
**3.3** [1] - 190:21
**3.6** [1] - 191:2
**30** [10] - 38:13, 78:22, 88:15, 89:4, 90:7, 103:23, 107:18, 150:9, 158:21, 203:7
**307** [5] - 5:21, 139:17, 139:23, 140:1, 140:2
**308** [5] - 5:22, 138:19, 138:25, 139:3, 139:4
**30th** [5] - 90:6, 103:11, 104:11, 107:2, 107:13
**31st** [2] - 41:6, 41:13
**33** [1] - 83:23
**33128** [1] - 1:19
**33132** [1] - 1:16
**33301** [2] - 1:22, 293:18
**339** [3] - 5:2, 125:7, 125:24
**343** [5] - 5:23, 16:24, 17:5, 17:8, 17:9
**344** [5] - 5:24, 105:9, 105:15, 105:18, 105:19
**347** [6] - 6:1, 116:24, 117:5, 117:8, 117:9, 219:1
**349** [5] - 6:2, 19:22, 20:4, 20:7, 20:8
**35** [2] - 4:22, 19:12
**350** [5] - 6:3, 161:11, 161:19, 161:22, 161:23
**350A** [4] - 6:4, 161:19, 161:22, 161:24
**351** [5] - 6:5, 76:7, 76:13, 76:16, 76:17
**353** [4] - 6:6, 158:25, 159:6, 160:3
**36** [1] - 7:14
**39** [1] - 6:17
**3911** [2] - 100:12, 100:13
**3:00** [3] - 8:16, 8:19, 12:25
**3:18** [1] - 221:24
**3:27** [1] - 221:24
**3PL** [3] - 114:13, 114:17, 217:14
**3rd** [3] - 1:19, 130:2, 130:5

## 4

**4** [12] - 3:13, 42:22, 48:5, 48:12, 48:15, 48:16, 75:21, 79:4, 79:5, 106:2, 198:17, 198:24
**4/8/2021** [2] - 7:1, 113:2
**40** [5] - 1:19, 4:2, 89:20, 174:11, 203:8
**400** [1] - 136:1
**403** [1] - 74:1
**404** [6] - 6:7, 128:4, 128:10, 128:13, 128:14, 268:17
**405** [3] - 5:2, 125:9, 125:24
**406** [5] - 6:8, 126:16, 126:22, 126:25, 127:1
**408** [5] - 6:9, 57:20, 58:1, 58:4, 58:5
**41** [5] - 3:22, 77:7, 78:5, 78:8, 78:9
**410** [5] - 6:10, 60:10, 60:16, 60:19, 60:20
**412** [5] - 6:11, 56:15, 56:21, 56:24, 56:25
**414** [5] - 6:12, 50:14, 50:21, 50:24, 50:25
**41A** [5] - 3:23, 89:18, 89:24, 90:1, 97:11
**41B** [1] - 89:17
**41E** [2] - 3:24, 90:1
**42** [3] - 3:4, 3:4, 4:19
**420** [1] - 41:2
**422** [3] - 5:3, 125:21, 125:24
**427** [5] - 6:13, 131:25, 132:6, 132:9, 132:10
**432** [6] - 6:14, 86:12, 86:18, 86:21, 86:22, 87:23
**438** [1] - 95:25
**44** [3] - 4:23, 85:3, 85:13
**445** [3] - 5:2, 125:11, 125:24
**446** [3] - 5:3, 125:13, 125:24
**447** [5] - 6:15, 162:14, 162:20, 162:23, 162:24
**45** [1] - 4:1
**458** [5] - 6:16, 107:21, 108:2, 108:5, 108:6
**46** [4] - 4:20, 21:19, 174:22, 175:8
**463** [1] - 111:15
**47** [2] - 174:22, 175:8
**473** [5] - 6:17, 39:2, 39:9, 39:12, 39:13
**475** [5] - 6:18, 120:15, 120:23, 121:1, 121:3
**479** [5] - 6:19, 118:9, 118:15, 118:18, 118:19
**48** [2] - 3:13, 33:13
**480** [5] - 6:20, 119:9, 119:15, 119:18, 119:19
**481** [5] - 6:21, 122:3, 122:9, 122:12, 122:13
**482** [5] - 6:22, 104:22, 105:3, 105:6, 105:7
**483** [1] - 115:7
**484** [3] - 5:3, 125:15, 125:24
**4:00** [3] - 13:4, 83:1
**4:59** [2] - 1:6, 293:10
**4th** [1] - 1:15

## 5

**5** [5] - 38:20, 44:12, 45:2, 106:7, 148:18
**5/12/2021** [2] - 7:2, 115:21
**50** [5] - 6:12, 174:11, 203:8, 278:9, 278:12
**500K** [1] - 127:17
**501** [1] - 51:14
**503** [2] - 18:17, 80:17
**505** [2] - 88:18, 96:21
**507** [5] - 6:23, 54:4, 54:10, 54:13, 54:14
**509** [5] - 6:24, 75:8, 75:14, 75:17, 75:18
**524** [5] - 6:25, 133:8, 133:14, 133:17, 133:18
**527** [5] - 7:1, 112:17, 112:23, 113:1, 113:2
**529** [5] - 7:2, 115:11, 115:17, 115:20, 115:21
**53** [2] - 4:8, 4:10
**535** [3] - 5:3, 125:17, 125:24
**537** [5] - 7:4, 106:22, 107:5, 107:8, 107:9
**538** [5] - 7:5, 135:6, 135:14, 135:17, 135:18
**54** [1] - 6:23
**551** [1] - 93:13
**56** [1] - 6:11
**58** [1] - 6:9
**59** [1] - 3:12
**5:00** [3] - 8:12, 8:13, 8:19
**5:26** [2] - 79:7, 80:9
**5:29** [2] - 80:3, 80:12
**5:54** [1] - 104:2
**5:58** [1] - 81:23

**5th** [5] - 32:18, 36:2, 43:16, 46:25, 63:5

## 6

**6** [11] - 1:5, 1:22, 56:7, 64:22, 82:21, 90:16, 98:4, 106:11, 110:4, 148:22, 179:11
**60** [1] - 6:10
**61** [1] - 5:5
**612** [6] - 7:6, 129:1, 129:10, 129:13, 129:14, 130:20
**613** [6] - 7:7, 130:12, 130:21, 130:22, 130:25, 131:1
**617** [5] - 7:8, 163:13, 163:22, 163:25, 164:1
**61958-1101-01** [1] - 31:4
**61958-1901-01** [1] - 31:5
**61958-2501-01** [1] - 31:4
**62** [1] - 5:6
**621** [5] - 7:9, 156:1, 156:8, 156:11, 156:12
**623** [5] - 7:10, 156:14, 156:21, 156:24, 156:25
**63** [1] - 5:7
**630** [5] - 7:11, 155:1, 155:7, 155:10, 155:11
**633** [1] - 1:22
**64** [1] - 5:9
**645** [9] - 7:12, 23:17, 23:25, 24:3, 24:4, 28:18, 180:22, 233:25, 234:1
**646** [5] - 7:13, 25:6, 25:15, 25:20, 25:21
**65** [1] - 5:8
**653** [5] - 7:14, 36:5, 36:13, 36:16, 36:17
**66** [2] - 5:10, 5:11
**665** [3] - 5:3, 125:19, 125:24
**666** [5] - 7:15, 158:7, 158:13, 158:16, 158:17
**69** [1] - 5:12
**6:00** [1] - 49:19
**6th** [3] - 8:22, 63:22, 65:9

## 7

**7** [6] - 66:16, 78:20, 95:7, 111:20, 112:11, 190:13
**70** [8] - 3:25, 5:13, 16:6, 16:12, 16:16, 16:17, 16:20, 22:9
**71** [5] - 4:1, 45:7, 45:15, 45:18, 45:19
**718** [2] - 30:10, 30:11
**72** [6] - 4:2, 40:9, 40:16, 40:19, 40:20, 40:24
**73** [7] - 4:4, 22:14, 22:18, 22:24, 23:3, 23:4, 23:7
**74** [5] - 4:5, 169:1, 169:6, 169:9, 169:10
**75** [2] - 6:24, 131:10
**750K** [1] - 127:25
**7537** [1] - 64:10
**76** [1] - 6:5
**78** [1] - 3:22
**7th** [1] - 113:25

## 8

**8** [5] - 60:7, 61:3, 96:21, 96:23, 190:13
**80** [7] - 4:7, 168:13, 168:19, 168:21, 168:22, 230:23, 231:1
**81** [6] - 4:8, 52:19, 53:1, 53:4, 53:5, 53:8
**822** [1] - 149:13
**83** [6] - 4:10, 53:12, 53:19, 53:22, 53:23, 54:1
**86** [1] - 6:14
**872-7665** [1] - 30:10
**88** [1] - 101:19
**8th** [5] - 59:17, 60:3, 67:6, 112:20, 114:1

## 9

**9** [8] - 52:7, 97:23, 100:4, 107:11, 114:9, 130:16, 164:17
**9/2020** [1] - 95:4
**9/29/20** [1] - 234:6
**90** [7] - 3:23, 4:11, 150:16, 150:22, 150:25, 151:1, 275:23
**91** [6] - 4:12, 151:6, 151:13, 151:16, 151:17, 275:24
**92** [5] - 4:13, 151:20, 152:1, 152:4, 152:5
**9229** [9] - 26:18, 31:21, 31:23, 58:14, 81:15, 142:24, 146:19, 149:6, 158:4
**9229.xlsx** [1] - 161:17
**93** [5] - 4:14, 152:22, 153:2, 153:5, 153:6
**94** [6] - 4:15, 5:14, 153:11, 153:17, 153:20, 153:21
**95** [5] - 4:16, 153:24, 154:6, 154:9, 154:10
**9516** [1] - 31:20
**96** [5] - 4:17, 154:13, 154:19, 154:22, 154:23
**98** [7] - 4:18, 157:2, 157:8, 157:11, 157:12, 157:17, 157:18
**99** [1] - 1:15
**9:00** [8] - 8:9, 8:12, 8:19, 12:24, 293:1, 293:6, 293:9
**9:02** [1] - 1:6
**9:54** [1] - 55:12
**9th** [4] - 62:2, 131:21, 214:11, 222:18

## A

**a.m** [3] - 90:12
**AB** [2] - 7:2, 115:21
**Abbie** [53] - 24:21, 29:12, 31:14, 38:23, 62:2, 88:2, 88:13, 88:22, 89:5, 90:25, 91:24, 92:20, 93:23, 100:5, 100:6, 100:19, 101:5, 102:8, 103:5, 106:18, 109:9, 111:9, 111:22, 111:25, 112:9, 112:12, 114:10, 117:13, 118:24, 120:7, 121:21, 137:21, 164:19, 171:16, 172:2, 172:8, 184:13, 212:20, 215:21, 216:4, 216:10, 216:22, 217:9, 217:11, 219:8, 244:12, 260:8, 261:4, 261:18, 261:22, 261:23, 283:25, 284:5
**Abbie's** [1] - 122:1
**ability** [2] - 10:14, 245:10
**able** [12] - 29:25, 30:24, 31:6, 31:8, 41:14, 92:22, 99:16, 100:22, 117:24, 136:7, 179:25, 287:10
**above-entitled** [1] - 293:13
**Absolutely** [1] - 122:24
**abut** [1] - 238:23
**Academy** [1] - 15:6
**access** [1] - 86:5
**accessed** [2] - 44:21, 180:16
**accommodate** [5] - 9:16, 12:22, 13:7, 224:14, 224:17
**accommodated** [2] - 10:4, 11:9
**accommodating** [2] - 8:25, 9:1
**according** [12] - 28:11, 33:20, 33:24, 35:3, 78:14, 79:1, 80:22, 143:12, 146:14, 149:1, 149:5, 152:15
**According** [2] - 33:22, 33:25
**account** [1] - 202:19
**accounting** [1] - 85:23
**accounting@Safe** [1] - 143:25
**accounting@SafeChain.com** [1] - 140:12
**accuracy** [1] - 77:21
**accurate** [4] - 231:14, 233:1, 276:14, 293:12
**accurately** [1] - 77:15
**accusing** [1] - 284:12
**acquisition** [5] - 173:7, 173:9, 193:14, 194:1, 195:8
**Act** [4] - 43:3, 43:25, 44:19, 77:4
**acting** [1] - 260:16
**activity** [1] - 229:16
**acts** [2] - 50:10, 177:1
**actual** [1] - 55:9
**Acumatica** [1] - 32:4
**AD** [1] - 112:3
**ad** [1] - 119:2
**AD's** [1] - 83:2
**Adam** [116] - 32:2, 39:5, 39:19, 54:21, 54:24, 55:18, 56:17, 57:9, 57:11, 59:16, 60:2, 61:5, 61:17, 63:4, 63:14, 63:21, 64:9, 64:13, 64:21, 65:7, 66:2, 66:17, 67:5, 76:22, 83:1, 84:23, 86:14, 87:3, 87:10, 87:15, 88:19, 89:9, 89:13, 90:5, 90:10, 90:15, 91:10, 93:20, 93:25, 97:5, 103:10, 103:22, 104:2, 104:13, 104:24, 107:23, 111:8, 111:20, 111:24, 115:14, 116:2, 116:6, 116:11, 116:16, 122:5, 122:19, 122:25, 123:3, 126:19, 127:9, 127:10, 127:16, 128:1, 128:7, 128:19, 132:3, 133:1, 136:16, 137:3, 137:18, 159:3, 159:23, 160:21, 161:4, 162:5, 170:10, 170:20, 170:22, 183:7, 183:10, 184:2, 184:4, 184:25, 186:7, 186:8, 186:23, 187:2, 187:8, 190:12, 191:23, 202:13, 204:8, 204:9, 204:24, 215:13, 244:23, 245:5, 245:9, 245:14, 245:23, 246:2, 253:6, 253:9, 253:18, 253:21, 254:5, 254:9, 254:18, 268:19, 268:25, 269:7, 290:3, 290:6, 292:10
**adamant** [1] - 107:15
**add** [3] - 11:7, 122:20, 276:12
**added** [3] - 82:16, 82:18, 83:3
**addendum** [1] - 57:23
**addition** [1] - 212:6
**additional** [8] - 10:6, 11:23, 31:10, 93:11,

93:12, 102:23, 248:24, 290:15
**address** [25] - 17:16, 19:16, 19:17, 19:19, 20:15, 21:13, 30:1, 30:7, 31:18, 31:21, 50:17, 57:14, 64:15, 92:23, 93:7, 110:15, 110:19, 111:1, 148:5, 149:12, 265:8, 265:11, 265:16, 267:20
**addressed** [1] - 258:6
**addresses** [2] - 83:4, 265:12
**addressing** [1] - 9:11
**adds** [1] - 108:18
**adjourned** [1] - 293:10
**admissibility** [1] - 124:8
**admit** [35] - 16:12, 22:24, 23:24, 25:15, 40:16, 45:15, 53:1, 53:19, 75:14, 78:5, 115:16, 129:9, 130:20, 132:6, 133:13, 135:13, 136:19, 142:14, 144:3, 145:6, 145:24, 150:21, 155:6, 156:20, 159:18, 159:25, 161:18, 162:7, 162:19, 163:21, 168:18, 169:5, 169:18, 170:13, 171:19
**admitted** [1] - 125:22
**admitting** [1] - 89:18
**admonition** [11] - 12:18, 71:4, 75:2, 123:10, 123:16, 126:10, 165:2, 167:20, 221:16, 224:10, 292:24
**advance** [5] - 100:24, 231:16, 231:18, 236:21, 236:23
**advantage** [3] - 28:5, 28:7, 28:8
**affected** [1] - 12:4
**affects** [1] - 10:14
**affirmed** [1] - 13:15
**afraid** [1] - 223:8
**afternoon** [11] - 65:10, 100:21, 102:23, 139:8, 172:23, 172:24, 224:23, 224:24, 227:17, 231:13, 261:22
**agency** [5] - 15:8, 240:6, 242:6, 243:7, 244:19
**agency's** [1] - 243:12
**agent** [31] - 14:10, 14:11, 14:17, 15:7, 15:8, 15:13, 71:9, 74:12, 123:16, 124:1, 124:12, 175:6, 225:25, 235:9, 240:2, 240:15, 241:25, 242:5, 242:13, 243:15, 243:20, 244:6, 244:22, 260:3, 260:4, 270:4, 286:9, 289:11, 290:25
**Agent** [68] - 12:9, 13:12, 14:5, 14:15, 15:10, 16:3, 17:1, 17:13, 18:22, 22:13, 23:10, 24:9, 34:20, 35:12, 36:7, 39:4, 41:5, 45:6, 46:3, 46:17, 48:7, 50:9, 53:11, 66:16, 75:10, 77:12, 78:11, 94:6, 101:21, 104:10, 105:11, 106:24, 111:18, 113:5, 126:18, 130:14, 135:21, 136:16, 137:2, 138:4, 138:21, 139:19, 140:11, 141:14, 142:11, 142:22, 143:24, 145:2, 146:7, 147:15, 148:3, 150:18, 151:8, 151:23, 153:14, 154:16, 155:3, 155:15, 156:3, 156:16, 158:9, 159:2, 163:15, 164:4, 168:11, 169:15, 224:23, 293:4
**agent's** [3] - 242:17, 242:22, 243:18
**agents** [21] - 175:20, 188:19, 189:2, 189:3, 189:6, 189:10, 191:15, 203:2, 204:3, 204:12, 208:20, 208:25, 210:4, 226:7, 226:15, 228:5, 228:7, 228:23, 239:17, 241:8, 246:20
**ago** [4] - 88:6, 237:2, 237:3, 238:16
**agree** [13] - 9:22, 173:9, 177:20, 178:20, 178:24, 181:25, 183:3, 188:14, 191:18, 204:17, 211:12, 235:11, 259:24
**agreed** [2] - 9:22, 267:4
**Aguerrevere** [2] - 222:9, 222:10
**ahead** [24] - 16:19, 19:11, 23:6, 27:19, 29:15, 40:23, 45:22, 53:7, 81:25, 98:6, 123:10, 153:10, 157:19, 165:1, 167:6, 214:16, 214:24, 217:11, 238:8, 239:2, 259:5, 267:14, 271:4, 286:20
**Albuterol** [1] - 160:12
**alerted** [1] - 285:21
**Alex** [1] - 200:9
**Alexander** [1] - 1:13
**allegation** [3] - 54:24, 182:5, 182:12
**allegations** [1] - 42:9
**allege** [1] - 23:13
**alleged** [3] - 26:12, 34:22, 104:16
**allow** [10] - 12:19, 71:4, 75:3, 123:11, 126:11, 165:3, 167:21, 221:16, 224:11, 292:25
**allowed** [4] - 71:10, 246:8, 256:2, 293:5
**almost** [2] - 136:8, 174:25
**alter** [2] - 276:10, 276:11
**alternate** [1] - 166:11
**alternates** [3] - 165:21, 166:5, 167:25
**alternative** [2] - 290:7, 290:16
**aluminum** [1] - 209:18
**AM** [2] - 1:6, 74:8
**Amanda** [10] - 54:7, 54:20, 55:6, 55:19, 55:25, 56:11, 75:11, 75:23, 75:24, 138:5
**amazing** [1] - 129:21
**AMERICA** [1] - 1:4
**AmerisourceBergen** [2] - 102:25, 146:15
**Amine** [2] - 160:22, 160:24
**Amine@PharmaSales.com** [1] - 160:21
**amount** [3] - 173:16, 189:19, 198:4
**Amsterdam** [2] - 102:25, 146:17
**analysis** [5] - 106:4, 189:14, 189:20, 190:2, 191:4
**analysts** [9] - 189:9, 189:10, 191:15, 203:3, 204:4, 204:12, 208:20, 208:25, 210:5
**Anderson** [1] - 109:17
**announced** [1] - 33:2
**Announcements** [1] - 131:5
**answer** [34] - 65:14, 73:1, 182:16, 196:4, 197:8, 233:17, 234:23, 235:17, 237:19, 237:23, 238:12, 239:5, 239:20, 240:12, 251:14, 252:16, 252:24, 255:5, 259:5, 259:22, 260:20, 260:22, 264:3, 264:4, 264:11, 264:12, 274:25, 277:4, 277:7, 278:13, 279:15, 285:8, 290:1
**answered** [26] - 175:2, 185:22, 186:4, 186:17, 191:9, 201:19, 201:23, 202:20, 207:20, 211:3, 212:3, 212:17, 220:12, 236:15, 237:18, 244:8, 245:18, 246:10, 247:11, 251:12, 264:16, 275:4, 277:6, 278:10, 288:5, 289:4
**answering** [1] - 200:9
**answers** [4] - 190:18, 192:3, 200:2, 261:1
**antiretroviral** [1] - 28:11
**anyway** [2] - 8:7, 222:22
**AOL.com** [1] - 148:10
**apologize** [7] - 18:19, 71:23, 109:15, 180:25, 196:6, 229:13, 255:3
**app** [1] - 117:14
**appear** [9] - 25:3, 25:11, 59:9, 80:21, 84:5, 90:4, 90:9, 137:2, 267:23
**APPEARANCES** [1] - 1:11
**applicable** [1] - 149:21
**application** [5] - 111:22, 216:11, 216:23, 217:1, 259:12
**applications** [5] - 210:14, 212:25, 213:1, 213:12, 215:25
**appreciate** [2] - 109:21, 223:22
**appreciated** [1] - 100:23
**approach** [4] - 9:23, 15:23, 50:5, 168:4
**approval** [2] - 244:13, 261:19
**approved** [6] - 139:12, 140:6, 216:10, 216:22, 261:6
**April** [9] - 111:20, 112:11, 112:20, 113:25, 114:1, 114:9, 117:2, 119:24, 136:17
**argumentative** [8] - 185:22, 193:1, 200:10, 208:9, 210:19, 277:5, 277:18, 279:17
**arguments** [1] - 174:1
**arrived** [1] - 267:21
**arrow** [5] - 88:5, 127:10, 127:16, 132:17, 134:21
**article** [21] - 24:17, 25:8, 26:4, 26:7, 26:10, 26:11, 28:18, 28:20, 32:9, 34:11, 35:13, 35:25, 181:9, 181:13, 181:15, 181:22, 181:25, 182:9, 182:14, 182:20
**Article** [2] - 7:13, 25:21
**articles** [1] - 74:1
**ASAP** [4] - 46:21,

62:4, 63:16, 83:6
**Asentra's** [1] - 136:1
**Asia** [1] - 163:6
**Asian** [2] - 163:9, 221:1
**Asians** [1] - 221:2
**aside** [1] - 12:2
**aspect** [2] - 10:15, 270:8
**assessing** [1] - 9:24
**assigned** [25] - 205:11, 207:10, 227:7, 227:8, 227:9, 228:4, 228:7, 228:12, 228:16, 228:25, 230:8, 230:14, 236:13, 236:22, 240:1, 242:15, 243:16, 246:23, 282:20, 283:10, 286:7, 287:25, 288:23, 288:24, 289:1
**assignment** [21] - 225:6, 225:8, 227:1, 227:19, 227:20, 227:22, 228:2, 228:4, 229:2, 232:7, 243:9, 243:10, 244:4, 244:5, 245:2, 249:9, 282:6, 283:11, 283:12, 283:13, 287:22
**assignments** [1] - 228:22
**assist** [2] - 193:23, 228:15
**assistant** [1] - 34:5
**Assistant** [1] - 1:14
**assisted** [5] - 175:13, 185:6, 195:2, 206:18, 225:17
**assisting** [2] - 189:15, 226:7
**associated** [4] - 30:3, 30:24, 100:9, 171:5
**assume** [6] - 10:13, 119:2, 226:24, 242:3, 250:22, 256:14
**assumes** [2] - 190:14, 196:1
**assuming** [2] - 199:2, 199:18
**assurance** [1] - 172:12
**Atkinson** [1] - 120:9
**Atripla** [1] - 28:10
**attached** [10] - 59:9, 59:11, 63:15, 68:1, 100:22, 136:2, 139:10, 160:5, 171:2, 272:10
**attaching** [2] - 96:4, 140:13
**attachment** [20] - 35:25, 41:24, 47:10, 68:21, 69:7, 69:21, 69:24, 70:10, 70:19, 94:25, 95:3, 137:3, 137:4, 137:16, 161:16, 161:19, 179:13
**attachment's** [1] - 170:5
**attachments** [4] - 138:7, 148:13, 179:10, 179:11
**Attain** [6] - 30:5, 30:7, 30:21, 31:8, 31:18, 31:19
**attempted** [2] - 30:5, 93:4
**attempting** [7] - 29:16, 29:22, 100:21, 109:12, 117:15, 215:24, 219:11
**attended** [1] - 15:4
**attention** [4] - 11:4, 109:21, 229:18, 280:23
**attentive** [1] - 11:1
**attitude** [1] - 166:9
**Attorney** [1] - 34:5
**Attorneys** [1] - 1:15
**attorneys** [3] - 208:2, 208:5, 279:25
**audited** [1] - 134:7
**August** [53] - 17:2, 18:2, 19:15, 19:25, 20:12, 20:23, 21:3, 21:14, 41:6, 41:13, 48:8, 48:20, 52:6, 52:16, 63:5, 63:22, 64:22, 65:9, 66:3, 66:16, 67:6, 69:5, 70:20, 75:11, 75:25, 76:10, 76:23, 78:20, 79:2, 79:14, 79:24, 80:3, 80:9, 82:23, 82:24, 83:16, 83:25, 84:11, 84:17, 129:6, 129:18, 129:24, 130:2, 130:4, 130:5, 130:15, 130:16, 130:17, 131:5, 131:21, 161:13, 161:14
**authenticate** [3] - 110:16, 110:20, 111:3
**authentication** [2] - 156:17, 213:25
**authenticity** [1] - 271:1
**authored** [1] - 264:8
**authoring** [1] - 264:14
**authorization** [2] - 158:10, 158:20
**Authorization** [2] - 7:15, 158:17
**authorized** [6] - 34:3, 68:11, 77:2, 194:16, 195:23, 196:11
**available** [1] - 287:9
**awaiting** [1] - 93:2
**aware** [43] - 173:15, 173:18, 175:6, 177:3, 177:12, 177:14, 178:13, 179:1, 185:20, 189:16, 189:19, 189:22, 190:12, 191:2, 191:6, 195:18, 195:20, 195:22, 196:24, 197:5, 197:10, 201:3, 201:4, 209:5, 209:7, 216:10, 216:25, 233:7, 233:8, 241:16, 243:3, 243:5, 243:7, 243:11, 247:4, 267:21, 273:14, 273:16, 276:3, 286:3, 286:4, 290:22, 291:7

## B

**background** [1] - 15:1
**bad** [5] - 32:5, 32:7, 108:16, 115:4, 218:16
**badge** [1] - 167:5
**badges** [1] - 189:7
**BAILEY** [2] - 2:2, 293:15
**Bailey** [1] - 293:15
**BAILEY-ENTIN** [2] - 2:2, 293:15
**Bailey-Entin** [1] - 293:15
**bank** [1] - 202:19
**bankruptcy** [1] - 93:18
**bars** [1] - 210:25
**Barzee** [12] - 1:17, 1:18, 10:21, 11:6, 25:17, 42:16, 73:24, 165:16, 166:14, 279:25, 280:5, 289:12
**BARZEE** [177] - 3:6, 9:4, 10:22, 11:7, 12:17, 16:15, 17:7, 20:6, 22:25, 24:2, 25:18, 29:18, 33:4, 33:9, 34:9, 34:17, 35:17, 36:15, 39:11, 40:18, 42:17, 44:5, 45:17, 46:10, 48:14, 50:22, 53:3, 53:21, 54:11, 56:23, 58:3, 59:21, 60:17, 61:22, 62:19, 63:10, 64:2, 65:2, 66:8, 66:23, 67:11, 69:12, 70:4, 71:19, 73:25, 75:1, 75:15, 76:15, 78:7, 86:20, 89:23, 94:13, 102:14, 103:15, 105:4, 105:17, 107:6, 108:3, 112:24, 115:18, 117:6, 118:17, 119:16, 120:24, 122:10, 126:9, 126:24, 128:11, 129:12, 130:24, 132:8, 133:15, 135:15, 136:21, 138:12, 139:1, 139:25, 140:22, 141:21, 142:16, 144:5, 145:8, 146:2, 147:22, 150:23, 151:15, 152:3, 153:3, 153:18, 154:7, 154:20, 155:8, 156:9, 156:22, 157:9, 158:14, 161:21, 162:10, 162:21, 163:23, 166:15, 167:19, 168:20, 169:8, 169:20, 170:15, 171:22, 172:22, 174:7, 175:4, 176:11, 176:22, 177:10, 179:5, 179:17, 180:8, 180:22, 181:2, 181:12, 181:14, 183:24, 184:5, 184:7, 185:25, 186:6, 186:19, 187:7, 189:1, 190:11, 190:20, 191:1, 191:12, 193:3, 194:7, 194:24, 196:7, 199:20, 199:21, 200:1, 200:12, 200:25, 201:15, 201:21, 201:25, 202:6, 202:12, 202:22, 203:13, 205:24, 207:24, 208:8, 208:10, 208:11, 209:13, 210:21, 211:5, 212:1, 212:5, 212:19, 213:16, 213:18, 213:22, 213:23, 214:16, 214:18, 216:15, 217:4, 217:5, 217:8, 217:10, 219:1, 219:2, 220:1, 220:3, 220:14, 221:13, 224:9
**Barzee's** [1] - 222:4
**based** [18] - 12:23, 12:25, 23:1, 72:3, 74:1, 82:15, 84:6, 88:10, 134:18, 265:25, 266:6, 266:8, 267:16, 267:19, 268:8, 284:4, 285:8, 287:10
**basis** [4] - 10:18, 232:17, 252:10, 252:19
**basket** [1] - 106:6
**bathroom** [1] - 165:8
**Batlle** [3] - 8:8, 8:25, 12:23
**Bay** [1] - 65:10
**bcc'd** [2] - 76:21, 76:22
**Beach** [8] - 8:10, 141:4, 142:4, 143:13, 144:12, 145:17, 149:11, 150:11
**becoming** [1] - 14:15
**BEFORE** [1] - 1:10
**began** [1] - 29:23
**begin** [1] - 108:13
**beginning** [2] - 12:2, 181:19
**behalf** [1] - 262:11
**belief** [1] - 193:20
**believes** [2] - 101:14, 268:6
**Bellevue** [2] - 39:22, 40:4
**below** [25] - 17:18, 32:6, 37:8, 37:10, 65:9, 77:3, 81:12, 82:8, 85:10, 86:6,

92:8, 95:12, 95:14, 102:22, 104:1, 114:11, 120:2, 120:3, 132:20, 137:5, 139:9, 139:13, 170:20, 195:7
**beneath** [1] - 28:6
**Berger** [5] - 185:3, 185:9, 185:11, 185:17, 215:13
**best** [6] - 99:8, 99:10, 99:14, 108:25, 171:7, 172:17
**better** [3] - 92:10, 270:5, 286:9
**between** [59] - 18:23, 23:21, 24:10, 28:11, 39:4, 48:7, 48:20, 50:16, 54:6, 56:17, 57:22, 59:16, 60:12, 75:10, 78:13, 78:15, 78:23, 79:2, 85:2, 86:14, 90:5, 90:15, 97:11, 104:2, 104:24, 106:25, 107:23, 114:5, 114:14, 115:9, 115:13, 118:11, 119:11, 120:18, 122:5, 126:18, 128:6, 130:7, 132:2, 133:10, 135:8, 135:22, 162:16, 178:1, 178:2, 181:4, 187:2, 190:3, 204:8, 217:15, 227:11, 227:14, 229:1, 251:7, 261:1, 282:22
**Between** [1] - 112:5
**beyond** [9] - 238:22, 239:20, 241:18, 252:1, 257:22, 259:1, 278:11, 284:19, 289:5
**Bible** [1] - 215:18
**BIC041A** [1] - 31:4
**big** [6] - 11:21, 41:15, 132:21, 166:8, 174:16, 205:16
**Biggart** [1] - 138:5
**Biktarvy** [23] - 31:22, 52:11, 101:7, 137:16, 141:5, 141:8, 142:1, 142:23, 143:19, 144:18, 144:20, 145:14, 146:12, 146:13, 147:9, 152:15, 170:24, 172:14, 195:12, 195:24, 196:12, 197:20, 271:22
**Biktarvy2.PDF** [1] - 137:4
**bilking** [1] - 182:12
**bill** [2] - 83:3, 141:3
**billed** [1] - 182:6
**billing** [2] - 182:1, 182:13
**billion** [1] - 33:1
**bills** [1] - 83:12
**bin** [3] - 164:5, 164:10, 172:6
**bipolar** [2] - 49:14, 52:4
**bit** [19] - 9:11, 21:25, 23:18, 31:10, 51:18, 64:15, 79:21, 81:21, 85:4, 86:2, 91:6, 120:15, 129:3, 173:6, 181:1, 199:14, 225:19, 250:1, 268:22
**black** [3] - 284:18, 285:22, 286:2
**Blackstone** [1] - 143:25
**Blackstone@SafeChain.com** [3] - 140:12, 141:15, 145:4
**blank** [2] - 143:5, 258:11
**blockbuster** [1] - 211:18
**blue** [4] - 102:1, 113:17, 127:10, 133:22
**BNR** [5] - 29:24, 30:1, 81:13, 82:9, 95:15
**BO** [1] - 127:25
**board** [1] - 92:24
**Board** [1] - 96:15
**body** [2] - 221:2, 260:14
**book** [1] - 167:6
**boom** [2] - 127:20, 128:2
**BOP** [1] - 96:13
**Borokhovich** [1] - 94:22
**bother** [3] - 210:6, 210:17, 211:22
**bottle** [21] - 38:17, 49:5, 51:24, 70:14, 157:25, 161:6, 195:11, 195:12, 195:15, 197:12, 197:16, 199:10, 200:13, 200:19, 200:20, 201:17, 255:8, 263:8, 263:12, 263:21, 263:22
**bottles** [21] - 32:5, 39:23, 51:9, 134:22, 136:2, 183:16, 195:24, 196:12, 196:22, 197:1, 197:20, 198:6, 198:19, 201:3, 208:23, 209:9, 209:18, 255:13, 263:8, 263:19, 263:21
**bottom** [22] - 20:18, 20:20, 21:6, 21:22, 27:16, 29:14, 43:25, 44:17, 55:4, 55:6, 55:20, 84:23, 87:16, 120:5, 122:17, 149:18, 154:3, 155:18, 160:4, 160:19, 183:17, 183:25
**bought** [3] - 76:3, 152:15, 182:7
**Boulevard** [122] - 17:21, 18:11, 18:24, 19:15, 19:18, 22:2, 24:13, 26:18, 28:21, 28:23, 29:17, 29:23, 31:20, 31:21, 31:22, 31:23, 32:5, 41:15, 49:1, 51:7, 51:9, 58:14, 59:10, 62:6, 63:16, 69:8, 79:23, 81:9, 81:15, 81:21, 82:9, 82:11, 82:13, 82:17, 82:24, 83:11, 83:17, 83:20, 83:25, 84:9, 84:19, 84:24, 87:5, 87:14, 91:9, 92:8, 96:10, 97:4, 97:12, 99:19, 101:11, 104:4, 107:15, 109:1, 130:1, 131:17, 133:25, 134:13, 134:24, 136:3, 136:8, 142:24, 143:6, 143:18, 145:22, 146:19, 146:25, 147:8, 149:6, 151:9, 154:15, 158:4, 161:7, 161:17, 181:5, 183:15, 183:20, 199:8, 204:9, 216:11, 216:22, 217:1, 220:15, 221:5, 221:11, 234:7, 234:11, 234:12, 234:15, 234:18, 235:1, 235:5, 235:8, 235:10, 235:11, 235:22, 237:5, 237:6, 238:13, 238:20, 239:21, 241:6, 244:13, 248:4, 248:9, 248:14, 258:13, 258:14, 258:23, 263:20, 270:17, 281:15, 281:18, 281:19, 282:4, 282:9, 282:15, 290:10, 291:17, 292:7, 293:18
**Boulevard's** [1] - 205:1
**Boulevard/King** [1] - 84:5
**bounce** [1] - 166:11
**Box** [1] - 163:19
**box** [1] - 85:9
**boxes** [1] - 68:6
**boy** [1] - 41:21
**BOYD** [4] - 1:7, 1:17, 1:21
**Boyd** [388] - 7:14, 16:9, 17:2, 17:15, 17:19, 18:2, 18:24, 19:2, 19:7, 19:14, 19:24, 20:12, 21:2, 21:12, 21:22, 22:21, 23:21, 24:11, 24:12, 24:16, 24:19, 25:8, 25:9, 26:11, 28:20, 29:12, 29:13, 32:2, 32:17, 34:12, 35:12, 35:24, 36:1, 36:11, 36:17, 38:12, 39:5, 39:19, 40:3, 40:13, 41:14, 41:17, 41:23, 41:24, 43:11, 43:16, 44:11, 45:1, 45:12, 46:4, 46:18, 46:24, 47:2, 47:24, 48:8, 48:20, 48:21, 48:24, 49:2, 49:5, 49:11, 49:13, 49:15, 49:21, 50:16, 51:5, 51:8, 51:10, 51:20, 52:3, 52:10, 52:23, 54:6, 55:12, 55:20, 56:4, 56:9, 56:11, 56:17, 57:9, 57:11, 57:22, 58:12, 58:18, 58:24, 59:7, 59:16, 60:2, 60:12, 60:25, 61:7, 61:17, 62:14, 63:4, 63:21, 64:21, 65:6, 66:2, 66:17, 67:5, 67:17, 68:22, 69:4, 69:16, 70:10, 70:19, 71:21, 71:25, 72:25, 73:2, 73:7, 73:14, 73:18, 73:20, 73:22, 75:11, 75:25, 76:9, 76:23, 78:13, 78:15, 78:23, 79:2, 79:12, 79:24, 80:22, 81:9, 81:22, 82:24, 83:17, 84:10, 85:3, 85:7, 86:15, 87:3, 87:13, 87:17, 87:19, 88:14, 88:19, 89:6, 90:5, 90:15, 91:10, 91:25, 92:21, 93:16, 93:20, 93:25, 94:7, 96:6, 96:11, 97:4, 97:11, 97:19, 98:10, 98:22, 99:5, 99:13, 99:22, 101:5, 102:8, 103:5, 103:11, 103:22, 104:25, 105:11, 105:22, 106:4, 106:25, 107:14, 107:23, 107:24, 108:19, 108:24, 109:4, 109:9, 111:8, 111:20, 111:24, 112:3, 112:5, 112:7, 112:13, 112:19, 113:13, 113:16, 114:6, 114:11, 114:25, 115:1, 115:13, 116:2, 116:3, 116:8, 116:15, 117:1, 117:14, 118:2, 118:12, 118:23, 119:11, 119:23, 120:2, 120:18, 121:7, 121:15, 121:19, 121:25, 122:6, 122:19, 122:24, 123:2, 123:5, 126:19, 127:11, 127:19, 127:24, 128:6, 128:19, 130:7, 132:2, 132:15, 132:20, 133:3, 133:10, 133:23, 134:6, 134:16, 135:8, 135:22, 136:5, 136:17, 137:3, 137:18,

138:5, 139:19, 140:4, 159:11, 161:14, 162:4, 162:5, 162:16, 163:4, 168:16, 169:16, 170:2, 170:11, 170:21, 171:16, 172:3, 172:8, 177:24, 178:5, 178:8, 178:10, 178:13, 179:1, 179:6, 179:9, 179:11, 179:13, 179:22, 180:3, 180:9, 181:4, 181:18, 182:6, 184:10, 191:25, 192:13, 193:7, 198:12, 198:25, 199:2, 199:6, 199:9, 199:22, 200:2, 202:1, 203:20, 204:5, 204:9, 206:15, 212:15, 216:4, 217:18, 217:21, 218:19, 219:9, 220:20, 221:4, 221:10, 227:9, 227:10, 229:1, 229:2, 229:16, 230:10, 230:16, 230:17, 231:7, 234:5, 234:6, 234:10, 235:23, 236:14, 236:18, 238:13, 239:9, 239:14, 241:14, 253:25, 262:12, 263:25, 264:4, 264:8, 264:14, 264:19, 265:7, 265:12, 265:18, 267:20, 268:19, 269:10, 272:16, 272:24, 273:3, 273:11, 275:12, 275:15, 275:18, 275:21, 276:3, 276:14, 276:22, 280:19, 280:25, 281:1, 281:4, 281:23, 282:1, 282:13, 282:17, 282:18, 282:21, 283:1, 283:6, 283:7, 283:15, 283:17, 283:19, 283:21, 289:23, 290:8, 291:2, 292:2, 292:7

**Boyd's** [55] - 3:25, 4:1, 4:2, 4:4, 4:5, 4:7, 4:8, 4:10, 16:17, 18:10, 22:5, 23:4, 24:15, 25:2, 25:12, 37:3, 40:20, 45:19, 53:5, 53:16, 53:23, 72:18, 73:4, 73:7, 73:8, 73:9, 73:11, 73:12, 73:13, 73:21, 77:13, 77:16, 85:20, 86:8, 87:6, 116:12, 134:25, 163:8, 168:22, 169:3, 169:10, 177:18, 178:22, 191:13, 192:3, 202:19, 210:6, 210:23, 211:22, 244:12, 248:2, 248:13, 282:23, 283:9

**Boyd-Adam** [1] - 268:19

**Boyd/Peter** [1] - 21:10

**Boyds** [9] - 191:6, 232:25, 233:4, 238:20, 243:8, 253:21, 279:25, 287:2, 287:4

**brand** [1] - 113:12

**break** [8] - 9:16, 13:4, 70:25, 71:9, 123:8, 224:14, 292:20, 293:4

**breakdown** [1] - 165:23

**brief** [2] - 14:14, 227:3

**briefing** [4] - 250:1, 250:12, 250:21, 251:9

**briefly** [1] - 159:16

**bring** [13] - 12:7, 56:1, 74:15, 74:19, 124:5, 126:1, 167:12, 181:13, 192:17, 217:4, 223:18, 224:1, 229:18

**bringing** [3] - 109:21, 209:2, 238:15

**broken** [2] - 32:6, 183:16

**broker** [1] - 190:21

**Brooklyn** [1] - 81:13

**Brosius** [94] - 32:2, 39:5, 39:19, 54:21, 54:24, 56:17, 57:9, 57:11, 59:16, 60:2, 61:5, 61:17, 63:4, 63:14, 63:21, 64:13, 64:21, 65:7, 66:2, 66:17, 67:5, 76:22, 84:23, 86:14, 87:3, 88:19, 89:9, 89:13, 90:5, 90:15, 91:10, 93:20, 93:25, 97:5, 103:10, 103:22, 104:2, 104:24, 107:23, 111:8, 111:20, 111:24, 115:14, 116:2, 116:6, 116:11, 116:16, 122:5, 122:19, 122:25, 126:19, 127:9, 127:10, 127:16, 128:1, 128:7, 128:19, 132:3, 136:16, 137:18, 159:3, 159:23, 160:21, 161:4, 162:5, 170:10, 184:4, 184:25, 186:7, 186:8, 186:23, 187:2, 187:8, 190:12, 202:14, 204:9, 215:13, 245:5, 245:14, 253:9, 254:5, 254:9, 254:18, 268:19, 268:25, 269:7, 269:9, 269:12, 269:22, 270:6, 290:4, 290:6, 292:10

**Brosius'** [1] - 204:24

**Brosius's** [9] - 104:13, 123:3, 137:3, 170:21, 191:23, 244:23, 245:10, 245:23, 246:2

**Brother** [7] - 48:8, 48:20, 49:16, 49:21, 106:25, 107:13, 199:2

**brother** [8] - 48:23, 49:1, 49:4, 49:7, 49:9, 49:12, 199:8, 292:9

**Brother's** [1] - 199:11

**brothers** [2] - 123:2, 282:22

**brothers/ coconspirators** [1] - 73:19

**brought** [2] - 186:24, 280:23

**Broward** [1] - 293:18

**Bruce** [2] - 1:21, 130:22

**BTW** [1] - 121:8

**Buckeye** [1] - 68:13

**Buddy** [1] - 57:12

**build** [2] - 287:2, 287:4

**building** [2] - 223:22, 287:5

**bullet** [12] - 36:25, 37:3, 37:8, 37:18, 37:20, 37:23, 43:25, 44:17, 129:19, 129:25, 131:4, 131:16

**bunch** [8] - 177:17, 186:12, 202:13, 206:8, 247:16, 249:4

**business** [8] - 10:11, 10:13, 27:22, 104:5, 104:7, 131:10, 163:6, 258:3

**busy** [2] - 83:19, 117:21

**but..** [2] - 11:24, 89:21

**buying** [6] - 81:10, 110:11, 142:22, 152:10, 158:2, 172:14

**BY** [394] - 2:1, 3:3, 3:4, 3:4, 3:5, 3:5, 3:6, 3:6, 14:2, 16:2, 16:25, 17:12, 18:1, 18:5, 18:9, 18:21, 19:13, 19:23, 20:11, 20:19, 21:1, 21:11, 21:21, 22:1, 22:12, 23:9, 23:20, 24:8, 24:25, 25:7, 25:25, 26:22, 27:15, 27:25, 28:19, 29:6, 29:11, 31:13, 31:17, 32:1, 32:15, 33:19, 34:19, 35:2, 35:11, 35:23, 36:6, 36:19, 36:23, 37:9, 37:14, 38:3, 38:11, 38:15, 38:22, 39:3, 39:18, 40:2, 40:7, 41:3, 41:9, 41:22, 42:6, 42:24, 43:9, 43:15, 43:23, 44:10, 44:16, 44:25, 45:5, 46:2, 46:16, 47:7, 47:20, 48:6, 48:18, 50:8, 50:15, 51:3, 51:19, 52:2, 52:9, 52:17, 53:10, 54:5, 54:17, 55:5, 56:8, 56:16, 57:2, 57:8, 57:21, 58:9, 59:6, 59:15, 60:1, 60:11, 60:24, 61:15, 62:1, 62:13, 62:25, 63:3, 63:13, 63:20, 64:7, 64:12, 64:20, 65:5, 66:1, 66:11, 66:15, 67:4, 67:14, 67:24, 68:20, 69:3, 69:15, 70:12, 75:9, 75:22, 76:8, 76:20, 77:11, 78:10, 79:13, 79:19, 79:22, 80:8, 80:20, 81:4, 81:20, 82:4, 82:22, 83:10, 83:15, 83:24, 84:4, 84:15, 84:22, 85:6, 85:15, 86:3, 86:13, 87:2, 87:25, 88:20, 90:3, 90:18, 91:7, 92:7, 92:19, 94:5, 94:19, 95:8, 96:2, 96:24, 97:3, 97:13, 97:24, 98:9, 98:16, 98:21, 99:4, 99:12, 100:3, 100:18, 101:4, 101:20, 102:6, 102:19, 103:9, 103:21, 104:23, 105:10, 105:21, 106:3, 106:16, 106:23, 107:12, 107:22, 108:9, 109:8, 110:5, 111:7, 111:16, 112:18, 113:4, 114:4, 115:8, 115:12, 115:25, 116:19, 116:25, 117:11, 118:10, 118:22, 119:10, 119:22, 120:17, 121:6, 121:14, 121:18, 122:4, 122:18, 126:17, 127:4, 127:8, 127:15, 127:22, 128:5, 128:18, 129:5, 129:16, 130:13, 131:3, 131:15, 131:20, 132:1, 132:14, 133:9, 133:21, 135:7, 135:20, 136:15, 137:1, 138:3, 138:20, 139:5, 139:18, 140:3, 140:10, 141:1, 141:13, 141:24, 142:10, 142:21, 143:23, 144:10, 145:1, 145:12, 145:21, 146:6, 147:14, 148:1, 148:15, 148:19, 148:23, 149:19, 150:3,

150:17, 151:3, 151:7, 151:21, 152:8, 152:23, 153:8, 153:12, 154:1, 154:14, 155:2, 155:13, 156:2, 156:15, 157:3, 157:14, 157:20, 158:8, 158:19, 159:1, 159:10, 160:9, 160:15, 160:20, 161:12, 162:3, 162:15, 163:3, 163:14, 164:3, 168:10, 168:24, 169:14, 170:1, 170:9, 170:19, 171:15, 172:1, 172:22, 174:7, 175:4, 176:11, 176:22, 177:10, 179:5, 179:17, 180:8, 181:2, 181:14, 183:24, 184:7, 185:25, 186:6, 186:19, 187:7, 189:1, 190:11, 190:20, 191:1, 191:12, 193:3, 194:7, 194:24, 196:7, 199:21, 200:1, 200:12, 200:25, 201:15, 201:21, 201:25, 202:6, 202:12, 202:22, 203:13, 205:24, 207:24, 208:11, 209:13, 210:21, 211:5, 212:1, 212:5, 212:19, 213:18, 213:23, 214:18, 216:15, 217:5, 217:10, 219:2, 220:3, 220:14, 224:22, 233:16, 234:4, 235:16, 236:17, 237:10, 237:22, 238:7, 239:1, 240:11, 241:21, 244:10, 245:21, 246:13, 247:15, 248:22, 250:19, 251:17, 252:6, 252:15, 258:1, 259:4, 259:21, 260:7, 261:11, 262:7, 264:18, 267:7, 267:13, 268:18, 268:24, 269:6, 270:2, 270:14, 271:3, 272:23, 273:9, 273:22, 274:5, 274:15, 275:7, 277:9, 277:21, 278:1, 278:15, 279:21, 280:24, 284:23, 288:7, 289:7

## C

**C-A-L-I-E-N-E-S** [1] - 13:22
**CA** [1] - 96:13
**calendar** [1] - 13:8
**CALIENES** [2] - 3:3, 13:14
**Calienes** [66] - 12:10, 13:12, 13:21, 14:5, 15:10, 16:3, 17:1, 17:13, 18:22, 22:13, 23:10, 24:9, 34:20, 35:12, 36:7, 39:4, 41:5, 45:6, 46:3, 46:17, 48:7, 50:9, 53:11, 66:16, 75:10, 77:12, 78:11, 94:6, 101:21, 104:10, 105:11, 106:24, 111:18, 113:5, 124:1, 126:18, 130:14, 135:21, 136:16, 137:2, 138:4, 138:21, 139:19, 140:11, 141:14, 142:11, 142:22, 143:24, 145:2, 146:7, 147:15, 148:3, 150:18, 151:8, 151:23, 153:14, 155:3, 155:15, 156:3, 156:16, 158:9, 159:2, 163:15, 164:4, 168:11, 169:15
**California** [1] - 96:14
**Cambridge** [4] - 81:17, 143:7, 144:15, 149:13
**cancel** [1] - 223:1
**cannot** [1] - 93:9
**capacity** [3] - 185:7, 203:15, 205:9
**caps** [1] - 197:1
**capsule** [1] - 28:14
**Cardinal** [1] - 172:15
**care** [1] - 27:12
**careful** [1] - 112:6
**Carolina** [1] - 152:14
**carried** [2] - 23:14, 175:19
**CASE** [1] - 1:2
**case** [113] - 11:16, 12:19, 15:20, 23:11, 33:5, 33:7, 34:13, 36:8, 42:10, 71:4, 75:3, 123:11, 126:11, 160:25, 165:3, 167:21, 173:24, 173:25, 175:5, 175:12, 175:13, 175:18, 175:25, 184:4, 185:5, 186:22, 188:11, 188:17, 188:22, 189:3, 189:12, 189:17, 191:4, 194:25, 195:3, 196:14, 196:24, 201:22, 203:25, 205:5, 205:7, 206:20, 206:22, 208:16, 209:5, 211:18, 212:10, 216:18, 221:8, 221:9, 221:16, 224:11, 224:15, 225:6, 225:9, 225:14, 225:22, 226:1, 226:16, 230:4, 230:5, 232:7, 232:25, 233:4, 241:25, 242:1, 242:5, 242:6, 242:13, 242:17, 242:22, 243:15, 243:18, 243:20, 244:7, 244:22, 246:17, 250:2, 252:24, 255:2, 260:3, 260:4, 262:11, 262:14, 262:19, 264:1, 264:6, 264:9, 264:15, 267:16, 270:9, 270:11, 271:13, 271:16, 271:24, 272:8, 272:14, 279:10, 279:25, 281:10, 281:13, 286:9, 287:2, 287:4, 287:5, 288:1, 288:4, 289:11, 289:17, 290:25, 292:24
**cases** [2] - 188:14, 205:16
**cash** [3] - 109:1, 209:24, 210:22
**Cassandra** [2] - 31:2, 88:2
**Castillo** [9] - 114:13, 114:14, 114:16, 114:18, 217:14, 217:15, 217:16, 217:24, 218:1
**caused** [1] - 254:19
**causes** [1] - 84:25
**causing** [1] - 291:17
**CB** [1] - 93:19
**cc** [1] - 17:16
**cc'd** [4] - 179:9, 179:12, 179:23, 180:14
**CD** [12] - 16:3, 16:4, 22:13, 22:16, 40:8, 40:11, 45:6, 52:18, 53:12, 168:11, 168:12, 168:25
**CDGXKA** [1] - 101:8
**cdgxka.pdf** [1] - 90:21
**CDs** [2] - 15:24, 168:5
**Center** [1] - 15:5
**center** [1] - 214:20
**CEO** [1] - 184:10
**certain** [11] - 173:16, 204:16, 231:4, 261:19, 262:13, 265:8, 276:6, 280:3, 281:19, 286:24, 291:4
**certainly** [4] - 197:2, 229:22, 235:19, 291:24
**certify** [1] - 293:11
**Cesar** [9] - 114:13, 114:14, 114:16, 114:18, 217:14, 217:15, 217:16, 217:24, 218:1
**CesarCastillo.com** [1] - 114:21
**CesarCastilloInc.com** [1] - 114:22
**cetera** [3] - 72:1, 123:1
**Chain** [135] - 31:15, 31:22, 35:6, 36:20, 36:24, 37:15, 38:4, 40:5, 43:1, 43:2, 43:3, 43:6, 43:24, 44:19, 50:17, 57:23, 61:16, 67:25, 68:6, 68:17, 70:16, 77:4, 81:5, 81:17, 82:9, 95:3, 95:4, 95:9, 101:21, 104:18, 137:14, 140:13, 142:5, 142:11, 143:7, 143:12, 143:17, 144:14, 145:22, 146:21, 147:4, 147:8, 149:8, 150:7, 150:19, 151:9, 151:22, 152:19, 152:24, 153:13, 154:3, 154:15, 156:5, 156:18, 157:4, 158:9, 163:18, 164:5, 170:25, 174:2, 174:8, 174:10, 184:11, 184:16, 184:18, 186:1, 186:9, 187:3, 191:7, 196:25, 197:11, 197:15, 197:19, 198:9, 201:18, 208:18, 208:21, 209:1, 209:8, 209:14, 209:18, 210:22, 212:21, 214:10, 214:19, 215:7, 215:12, 215:14, 215:17, 235:23, 241:23, 244:13, 245:10, 245:15, 245:24, 246:3, 246:9, 247:18, 249:6, 249:23, 250:13, 250:24, 251:1, 251:20, 251:23, 252:3, 252:7, 252:18, 252:20, 257:15, 257:19, 258:3, 258:22, 258:23, 259:10, 259:11, 263:12, 263:19, 270:24, 271:6, 272:13, 273:4, 273:12, 273:15, 274:11, 274:18, 275:3, 284:8, 284:12, 284:15, 285:11, 285:21, 286:1
**chain** [1] - 34:2
**Chain's** [2] - 149:12, 189:23
**Chain-Boulevard** [1] - 145:22
**Chain.com** [3] - 62:15, 143:25, 145:3
**chance** [1] - 26:7
**changed** [3] - 12:1,

121:9, 276:7
**changes** [2] - 11:15, 57:16
**changing** [4] - 8:12, 8:18, 197:15, 208:23
**characterize** [1] - 183:6
**charge** [6] - 37:21, 161:7, 173:16, 189:11, 242:5, 270:9
**charged** [4] - 185:12, 185:19, 287:7, 287:8
**charges** [2] - 33:3, 33:12
**charging** [3] - 104:11, 149:15, 182:6
**Charles** [237] - 3:25, 4:5, 4:7, 4:8, 4:10, 7:14, 16:9, 16:17, 17:2, 17:15, 17:19, 18:2, 18:10, 18:24, 19:2, 19:7, 19:14, 19:24, 20:12, 21:2, 21:10, 21:12, 21:22, 22:5, 23:21, 24:10, 24:12, 24:15, 24:16, 25:8, 26:11, 28:20, 29:13, 32:17, 36:1, 36:11, 36:17, 37:3, 38:12, 39:5, 39:19, 40:3, 41:24, 43:11, 43:16, 44:11, 45:1, 46:4, 46:18, 47:2, 48:8, 48:20, 48:21, 48:24, 49:2, 49:5, 49:11, 49:13, 49:21, 51:20, 52:3, 52:10, 52:23, 53:5, 53:16, 53:23, 57:22, 58:12, 58:18, 58:24, 59:7, 61:17, 63:4, 63:21, 64:21, 65:6, 66:2, 66:17, 67:5, 67:17, 68:22, 69:4, 69:16, 70:10, 70:19, 71:25, 72:25, 73:4, 73:7, 73:9, 73:11, 73:12, 73:14, 73:18, 73:20, 73:22, 76:9, 76:23, 77:13, 77:16, 78:13, 78:15, 78:23, 79:2, 79:12, 79:24, 80:22, 81:9, 81:22, 82:24, 83:17, 84:10, 85:3, 85:7, 85:20, 86:8, 86:15, 87:3, 87:6, 87:13, 87:17, 87:19, 88:14, 88:19, 89:6, 90:5, 90:15, 91:10, 91:25, 92:21, 93:16, 93:20, 93:25, 96:6, 96:11, 97:4, 97:11, 97:19, 98:10, 98:22, 99:5, 99:13, 99:22, 101:5, 102:8, 103:5, 103:11, 103:22, 105:11, 105:22, 106:4, 106:25, 107:14, 107:23, 108:19, 108:24, 109:4, 111:20, 111:24, 112:3, 112:5, 114:6, 114:10, 114:25, 117:1, 117:13, 118:2, 118:11, 119:11, 119:23, 120:2, 122:6, 122:19, 123:5, 126:19, 127:11, 127:19, 127:24, 130:7, 132:2, 132:15, 132:20, 133:3, 138:5, 139:19, 140:4, 159:11, 161:14, 162:4, 168:15, 168:22, 169:3, 169:10, 170:10, 170:21, 171:16, 172:3, 172:8, 181:4, 181:5, 182:6, 198:25, 199:6, 199:9, 200:2, 204:9, 210:23, 227:9, 229:1, 229:15, 230:10, 230:16, 231:6, 234:10, 235:23, 236:14, 236:18, 239:9, 239:14, 241:14, 244:12, 248:2, 248:13, 263:25, 264:4, 264:8, 264:13, 264:19, 265:18, 272:16, 273:3, 280:18, 281:1, 281:4, 283:9, 283:17
**CHARLES** [2] - 1:7, 1:21
**Charlie** [32] - 34:12, 64:14, 89:10, 172:10, 181:8, 181:18, 182:11, 184:10, 186:24, 210:7, 215:12, 217:18, 217:21, 219:9, 234:5, 238:13, 262:12, 275:12, 275:18, 276:3, 276:14, 276:22, 281:23, 282:13, 282:18, 283:1, 283:6, 289:23, 290:8, 291:2, 292:2, 292:7
**chart** [4] - 78:16, 80:6, 89:17
**Charts** [2] - 3:23, 90:1
**chat** [4] - 137:20, 172:16, 182:19, 239:18
**chats** [5] - 204:8, 208:1, 245:13, 245:14, 290:17
**check** [12] - 57:12, 61:8, 134:14, 175:9, 179:18, 180:16, 203:4, 204:12, 204:18, 220:6, 223:22, 223:24
**checked** [2] - 85:22, 134:22
**checking** [1] - 175:6
**checklist** [1] - 191:20
**Chesapeake** [1] - 149:13
**choral** [1] - 8:17
**churn** [1] - 108:22
**Cintex** [2] - 108:16, 116:3
**City** [2] - 26:16, 26:18
**city** [2] - 27:5, 144:13
**civil** [5] - 207:18, 279:10, 279:24, 281:10, 281:13
**claim** [1] - 73:20
**claimed** [1] - 34:4
**claims** [4] - 193:25, 194:6, 194:9, 194:11
**clear** [9] - 70:2, 72:16, 213:10, 216:3, 217:17, 225:7, 251:4, 255:11, 282:12
**clicked** [1] - 203:10
**client** [2] - 43:5, 160:22
**clients** [1] - 10:12
**Clifford** [1] - 100:21
**close** [1] - 81:18
**closing** [1] - 104:6
**cluster** [1] - 155:23
**CM** [1] - 137:12
**CMPharma@yahoo.com** [1] - 137:6
**coconspirator** [3] - 159:19, 159:22, 159:24
**colleagues** [1] - 252:5
**collected** [4] - 242:18, 243:4, 243:11, 271:11
**collecting** [2] - 228:22, 243:7
**Colombia** [1] - 8:22
**Column** [2] - 70:11, 70:18
**column** [1] - 47:9
**columns** [3] - 47:8, 91:8, 102:1
**comfortable** [1] - 65:20
**coming** [6] - 26:8, 62:5, 87:7, 131:17, 284:2, 284:14
**commented** [1] - 34:6
**commission** [1] - 132:19
**commissions** [1] - 191:3
**commit** [2] - 11:18, 55:1
**common** [1] - 28:10
**communicated** [6] - 221:5, 276:6, 286:1, 289:19, 292:9, 292:10
**communicating** [1] - 206:5
**communication** [5] - 205:18, 244:12, 245:9, 253:18, 290:15
**communications** [24] - 57:14, 172:12, 177:23, 178:15, 215:22, 216:6, 244:11, 253:5, 260:16, 261:4, 262:12, 264:19, 276:5, 276:13, 277:10, 281:20, 281:21, 282:9, 282:11, 282:22, 284:3, 289:14, 290:24, 292:12
**communities** [1] - 27:4
**companies** [7] - 186:13, 186:14, 207:22, 207:23, 249:18, 274:18, 291:5
**company** [25] - 29:25, 37:21, 109:18, 110:8, 110:10, 114:18, 114:20, 129:20, 148:11, 149:21, 150:4, 164:15, 174:8, 174:10, 176:14, 176:15, 177:9, 213:3, 219:20, 220:7, 220:8, 258:10, 277:11, 277:16
**compared** [1] - 91:11
**competition** [1] - 46:23
**complaint** [1] - 171:6
**complaints** [1] - 183:16
**complete** [5] - 43:3, 73:1, 155:23, 243:16, 243:17
**completed** [5] - 43:4, 67:20, 72:15, 228:15, 244:1
**completely** [4] - 27:20, 33:6, 34:12, 192:4
**completeness** [3] - 72:11, 72:14, 72:21
**compliance** [32] - 31:15, 37:6, 37:10, 40:4, 61:16, 65:11, 97:7, 98:12, 102:8, 102:20, 113:18, 117:13, 129:23, 129:24, 131:14, 172:3, 184:14, 212:20, 213:11, 215:21, 215:23, 217:19, 219:16, 220:9, 260:9, 260:12, 260:17, 260:19, 260:23, 262:6, 262:8
**compliant** [3] - 37:21, 43:2, 44:20
**complied** [1] - 149:21
**compound** [2] - 209:11, 259:13
**computer** [3] - 180:16, 203:4, 203:19
**computers** [4] - 179:19, 204:19, 205:3, 205:13
**con't** [2] - 3:4, 42:23
**CON'T** [2] - 3:5, 160:8
**concede** [5] - 12:13, 74:22, 126:5, 167:15, 224:5
**concentrate** [1] - 10:14
**concerned** [7] - 10:10, 10:15, 65:13, 172:13, 183:19, 284:8, 286:15

**concerning** [28] - 238:20, 239:14, 242:24, 244:12, 245:5, 245:9, 245:23, 246:2, 246:7, 246:14, 247:9, 247:19, 247:21, 248:2, 252:24, 253:22, 255:12, 256:18, 257:15, 258:21, 258:23, 261:6, 261:18, 261:22, 261:23, 262:13, 262:20, 263:6
**concerns** [3] - 11:3, 49:21, 218:10
**conclude** [3] - 8:16, 10:7, 117:25
**concluded** [1] - 267:18
**conclusion** [9] - 176:19, 177:5, 265:10, 266:6, 266:9, 266:19, 267:3, 267:8, 267:21
**conduct** [1] - 175:19
**conducted** [1] - 252:24
**conferring** [1] - 10:24
**confirm** [5] - 31:7, 88:9, 88:10, 103:1, 161:7
**confirmation** [4] - 141:16, 141:25, 145:4, 145:13
**confirming** [1] - 101:1
**conflict** [1] - 224:13
**conflicts** [1] - 12:22
**confused** [1] - 255:3
**confusing** [2] - 285:6, 285:8
**confusion** [1] - 69:23
**connected** [1] - 55:10
**connection** [1] - 221:10
**conned** [2] - 292:2, 292:3
**consisted** [1] - 246:25
**consistent** [1] - 57:16
**conspiracy** [2] - 55:1, 104:16
**consulting012345@ Gmail** [1] - 22:3
**consulting012345@ Gmail.com** [1] - 17:17
**Consulting012345@ Gmail.com** [2] - 17:20, 18:11
**contact** [4] - 103:1, 110:16, 117:19, 171:2
**contacted** [1] - 110:20
**contain** [3] - 22:18, 45:11, 77:12
**contained** [7] - 100:7, 236:12, 239:3, 243:6, 244:24, 254:23, 255:22
**containing** [1] - 291:8
**content** [3] - 16:4, 22:16, 253:17
**contents** [8] - 40:11, 45:9, 52:21, 53:14, 179:1, 208:23, 263:12, 263:20
**context** [3] - 28:21, 68:22, 178:13
**continue** [9] - 10:6, 22:8, 30:20, 75:5, 101:13, 104:4, 132:24, 168:1, 245:10
**continued** [2] - 246:5, 291:16
**continuously** [2] - 30:10, 93:5
**contradict** [1] - 22:5
**contradicted** [5] - 192:7, 192:8, 192:11, 192:14, 193:4
**control** [1] - 100:10
**Control** [1] - 77:25
**controlled** [2] - 212:6, 212:14
**conversation** [8] - 181:4, 235:24, 253:16, 253:17, 254:6, 254:12, 257:17
**conversations** [6] - 178:1, 178:2, 211:16, 253:13, 281:23, 281:25
**cool** [2] - 121:23, 134:13
**Coop** [1] - 91:19
**cooperating** [1] - 212:9
**Cooperative** [5] - 31:2, 82:7, 91:15, 95:11, 95:21
**copied** [1] - 103:4
**copies** [3] - 39:24, 43:4, 94:7
**copy** [4] - 17:16, 50:5, 100:13, 213:16
**copying** [7] - 17:19, 41:23, 46:18, 47:2, 63:21, 66:2, 102:8
**Corp** [1] - 68:11
**corporation** [3] - 174:16, 174:17, 176:17
**corporations** [1] - 214:5
**correct** [226] - 15:21, 19:9, 73:17, 78:1, 80:13, 130:5, 172:7, 173:7, 173:8, 174:23, 176:2, 177:25, 178:5, 178:6, 178:8, 178:9, 178:11, 179:20, 180:13, 180:17, 180:18, 181:6, 181:9, 181:20, 181:21, 182:3, 182:4, 182:21, 182:25, 183:1, 183:8, 183:11, 184:11, 184:14, 184:16, 187:23, 188:12, 189:18, 195:19, 199:23, 203:5, 203:10, 203:16, 203:22, 203:23, 204:10, 205:19, 207:6, 208:2, 208:5, 211:7, 211:16, 212:7, 212:25, 213:6, 213:8, 213:12, 214:13, 215:3, 215:7, 215:14, 215:16, 215:19, 215:21, 216:1, 216:5, 216:11, 217:23, 218:1, 219:4, 219:6, 219:9, 219:17, 219:24, 220:16, 220:20, 220:23, 224:25, 225:9, 225:12, 225:13, 225:16, 226:14, 226:20, 227:17, 227:22, 227:23, 228:2, 228:3, 228:5, 228:20, 230:1, 230:11, 230:14, 230:17, 230:18, 230:25, 231:2, 231:8, 231:9, 231:10, 231:15, 231:21, 232:1, 232:8, 232:9, 232:12, 232:13, 232:17, 233:7, 233:12, 233:23, 235:12, 236:24, 237:17, 237:24, 237:25, 239:10, 239:15, 240:7, 241:1, 241:2, 241:3, 241:4, 241:8, 241:23, 242:1, 242:2, 242:6, 242:10, 242:11, 242:14, 242:20, 242:21, 243:1, 244:23, 245:2, 245:6, 246:15, 246:22, 247:25, 248:1, 248:14, 251:11, 252:21, 252:25, 253:10, 254:22, 255:20, 256:6, 256:14, 257:21, 259:25, 260:10, 260:20, 260:24, 261:7, 262:8, 264:4, 264:11, 266:3, 266:7, 266:10, 266:12, 266:15, 266:19, 266:24, 267:1, 267:2, 267:4, 267:24, 268:1, 268:4, 268:10, 268:14, 269:2, 269:15, 270:15, 270:17, 272:14, 274:21, 275:8, 276:8, 276:15, 277:17, 278:7, 278:20, 278:21, 278:24, 279:7, 279:10, 280:1, 281:2, 281:5, 281:20, 282:6, 282:15, 282:18, 282:19, 283:2, 283:11, 283:15, 285:11, 285:15, 286:5, 286:6, 286:10, 286:13, 286:16, 286:22, 287:2, 287:25, 290:1, 291:10, 291:11, 291:15, 291:16, 291:20, 291:21, 291:25, 292:4, 292:8, 292:11, 292:13, 292:15, 292:17
**correctly** [2] - 91:22, 263:4
**correspond** [1] - 104:10
**corresponded** [1] - 283:23
**corresponding** [1] - 139:11
**corrupt** [1] - 33:15
**cosmetic** [1] - 134:14
**cost** [8] - 27:3, 28:11, 47:16, 173:7, 173:10, 193:14, 194:1, 195:8
**costly** [1] - 106:8
**counsel** [10] - 8:3, 12:13, 74:10, 74:22, 123:24, 126:5, 165:14, 167:15, 222:2, 224:5
**count** [1] - 226:24
**Count** [12] - 50:10, 54:24, 104:11, 141:9, 142:1, 143:19, 144:21, 145:14, 146:9, 147:9, 149:14, 271:20
**counterfeit** [1] - 101:14
**counting** [1] - 60:4
**country** [1] - 34:2
**counts** [1] - 271:19
**couple** [13] - 92:2, 106:17, 135:11, 135:23, 172:25, 173:3, 180:21, 183:15, 189:9, 191:25, 216:3, 246:4, 277:1
**course** [10] - 206:14, 232:7, 243:12, 254:5, 254:17, 266:22, 274:9, 285:4, 288:8, 291:1
**court** [7] - 9:25, 13:20, 72:25, 166:1, 196:17, 236:24, 293:9
**COURT** [307] - 1:1, 8:2, 9:6, 9:9, 9:14, 10:9, 10:17, 10:21, 10:23, 11:6, 11:8, 11:18, 12:7, 12:11, 12:13, 12:18, 13:24, 15:25, 16:16, 17:8, 17:11, 20:7, 23:3, 24:3, 25:17, 25:20, 29:20, 33:8, 33:10, 34:14, 34:18, 34:25, 35:20, 36:16, 39:12, 40:19, 42:4, 42:11, 42:16, 42:18, 44:6, 45:18, 46:11, 46:14,

48:15, 50:7, 50:24, 53:4, 53:22, 54:13, 56:24, 58:4, 59:23, 60:19, 61:23, 62:21, 63:11, 64:3, 65:3, 66:9, 66:24, 67:12, 69:13, 69:25, 70:3, 70:5, 70:24, 71:2, 71:7, 71:9, 71:13, 71:16, 72:7, 72:10, 72:20, 73:15, 73:18, 73:23, 74:4, 74:10, 74:14, 74:18, 74:20, 74:22, 75:2, 75:17, 76:16, 78:8, 86:21, 89:18, 89:24, 94:15, 102:15, 103:17, 105:6, 105:18, 107:8, 108:5, 113:1, 115:20, 117:8, 118:18, 119:18, 121:1, 122:12, 123:9, 123:14, 123:16, 123:20, 123:24, 124:4, 124:9, 124:13, 124:17, 124:19, 124:21, 124:23, 124:25, 125:2, 125:4, 125:6, 125:8, 125:10, 125:12, 125:14, 125:16, 125:18, 125:20, 125:22, 126:1, 126:3, 126:5, 126:10, 126:25, 128:13, 129:13, 130:25, 132:9, 133:17, 135:17, 136:23, 138:14, 139:3, 140:1, 140:23, 141:22, 142:18, 144:7, 145:10, 146:3, 147:23, 150:25, 151:16, 152:4, 153:5, 153:20, 154:9, 154:22, 155:10, 156:11, 156:24, 157:11, 157:16, 157:18, 158:16, 159:8, 159:17, 159:25, 161:22, 162:11, 162:23, 163:25, 164:25, 165:5, 165:7, 165:9, 165:12, 165:13, 165:17, 166:1, 166:6, 166:14, 166:16, 166:21, 166:24, 167:2, 167:5, 167:9, 167:12, 167:13, 167:15, 167:20, 168:3, 168:6, 168:21, 169:9, 169:22, 170:17, 171:23, 172:20, 174:6, 175:3, 176:8, 176:20, 177:7, 179:4, 179:15, 180:6, 183:23, 185:23, 186:5, 186:18, 187:5, 188:25, 190:10, 190:16, 190:24, 191:11, 193:2, 194:5, 194:20, 196:3, 199:18, 199:25, 200:11, 200:24, 201:20, 201:24, 202:5, 202:10, 202:21, 203:12, 205:21, 207:21, 209:12, 210:20, 211:4, 211:25, 212:4, 212:18, 216:13, 218:25, 220:13, 221:14, 221:20, 221:22, 222:1, 222:7, 222:14, 222:19, 222:22, 223:1, 223:5, 223:15, 224:1, 224:3, 224:5, 224:10, 233:15, 235:15, 236:16, 237:8, 237:19, 238:6, 238:25, 240:10, 241:19, 244:9, 245:20, 246:11, 247:13, 248:20, 250:17, 251:13, 252:2, 252:12, 257:25, 259:3, 259:14, 259:20, 260:6, 261:9, 262:5, 264:17, 267:6, 267:12, 269:25, 271:2, 272:21, 273:8, 273:19, 274:13, 275:6, 277:7, 277:20, 277:24, 278:12, 279:18, 280:22, 284:21, 288:6, 289:6, 292:19, 292:22, 293:2, 293:4, 293:8

**Court** [12] - 2:3, 2:4, 8:1, 74:14, 123:21, 124:4, 165:25, 166:4, 221:23, 243:1, 293:16, 293:16
**Court's** [3] - 10:19, 72:5, 169:7
**courthouse** [1] - 225:5
**Courthouse** [1] - 293:17
**COURTROOM** [8] - 9:8, 13:18, 168:2, 222:10, 222:18, 223:10, 223:13, 223:24
**courtroom** [14] - 10:15, 188:19, 189:4, 191:16, 195:19, 195:21, 203:3, 204:4, 210:4, 210:5, 223:21, 225:4, 283:4
**cover** [2] - 115:3, 218:15
**covered** [2] - 240:8, 255:2
**CP** [1] - 146:15
**created** [3] - 270:24, 271:6, 274:17
**credentials** [1] - 258:24
**credit** [1] - 30:19
**crew** [1] - 60:4
**crime** [3] - 74:2, 209:24, 210:2
**crimes** [3] - 14:25, 188:1, 288:3
**Criminal** [1] - 187:15
**criminal** [11] - 14:12, 14:25, 15:4, 15:11, 33:3, 33:6, 33:12, 187:13, 191:19, 229:16, 232:20
**criminally** [2] - 177:1, 177:5
**criminals** [1] - 206:12
**CROSS** [4] - 3:6, 3:6, 172:21, 224:21
**cross** [5] - 172:20, 222:5, 232:5, 248:20, 289:12
**CROSS-EXAMINATION** [4] - 3:6, 3:6, 172:21, 224:21
**cross-examination** [5] - 172:20, 222:5, 232:5, 248:20, 289:12
**cruise** [3] - 222:3, 222:8, 222:25
**Crystal** [1] - 9:6
**curious** [2] - 235:20, 244:20
**current** [2] - 14:17, 15:8
**customer** [12] - 62:4, 65:20, 68:17, 133:24, 134:2, 134:23, 135:25, 140:17, 141:3, 141:16, 144:1
**customers** [2] - 31:9, 197:5
**customerservice@SafeChain.com** [2] - 147:16, 148:6
**cut** [16] - 24:13, 28:22, 127:23, 181:5, 234:7, 234:10, 234:12, 234:15, 235:1, 235:5, 235:10, 235:12, 235:22, 237:4, 237:6, 238:13
**cutoff** [1] - 85:24
**cutting** [5] - 111:21, 235:8, 238:20, 239:21, 241:6

**D**

**d/b/a** [1] - 65:10
**Daily** [1] - 26:3
**daily** [1] - 43:4
**Dakota** [3] - 102:20, 109:15, 121:8
**damage/dirty** [1] - 139:10
**damaged** [1] - 139:10
**damaging** [2] - 27:9, 28:16
**Damaging** [1] - 26:23
**danger** [1] - 166:8
**Danny** [2] - 39:21, 65:8
**data** [3] - 43:3, 67:20, 83:6
**date** [69] - 18:14, 20:22, 21:12, 21:15, 29:1, 29:8, 32:16, 38:12, 41:4, 43:10, 44:11, 45:1, 46:24, 47:23, 52:5, 52:15, 58:10, 60:6, 61:2, 61:4, 69:18, 78:1, 78:19, 82:18, 84:9, 84:16, 85:18, 88:13, 89:1, 89:3, 89:5, 90:22, 92:13, 96:25, 97:14, 98:2, 105:22, 107:2, 107:17, 109:23, 111:13, 112:11, 120:11, 128:23, 129:17, 130:16, 133:4, 142:25, 143:8, 143:14, 143:15, 144:16, 146:24, 147:1, 147:3, 150:8, 150:10, 155:20, 156:5, 156:18, 158:20, 161:2, 163:16, 164:12, 164:15, 172:2, 203:21, 237:1
**DATE** [1] - 293:15
**date-wise** [1] - 237:1
**dated** [3] - 94:9, 114:9, 130:17
**dates** [2] - 70:16, 164:18
**dating** [1] - 193:9
**day's** [1] - 72:8
**days** [10] - 10:1, 11:10, 28:15, 32:6, 57:3, 72:23, 92:2, 98:2, 104:6, 104:7
**DEA** [2] - 37:6, 37:22
**deal** [1] - 291:16
**dealing** [1] - 56:13
**dealt** [1] - 55:22
**dear** [1] - 100:6
**debriefing** [2] - 286:15, 286:20
**December** [3] - 8:23, 105:12, 105:24
**decide** [1] - 62:6
**decided** [2] - 210:17, 233:9
**decision** [3] - 11:14, 261:5, 261:18
**decision-maker** [2] - 261:5, 261:18
**decision-making** [1] - 11:14
**Deeply** [1] - 26:23
**deeply** [1] - 27:9
**defects** [1] - 134:14
**Defendant** [1] - 43:10
**DEFENDANT** [2] - 1:17, 1:21
**defendant** [3] - 54:22, 72:17, 283:23
**defendants** [15] - 8:3, 11:20, 12:2, 23:13, 34:1, 34:11, 34:14, 74:3, 74:11, 91:1,

123:25, 165:14, 191:19, 222:2, 242:25
**Defendants** [1] - 1:8
**defense** [2] - 36:8, 124:7
**defense's** [1] - 11:15
**defer** [2] - 165:25, 166:3
**definitely** [2] - 61:1, 203:21
**degree** [2] - 15:2, 15:3
**delay** [1] - 109:15
**deleted** [5] - 204:13, 204:19, 204:22, 204:24, 205:1
**delivers** [1] - 28:14
**demeanor** [2] - 11:2, 11:4
**denied** [1] - 73:23
**denying** [2] - 73:4, 281:2
**Department** [8] - 14:6, 14:15, 28:12, 33:22, 33:24, 33:25, 182:10, 187:19
**department** [3] - 39:22, 57:15, 179:25
**department's** [1] - 213:11
**departments** [1] - 174:15
**Deposition** [12] - 3:25, 4:1, 4:3, 4:4, 4:6, 4:7, 16:18, 23:5, 40:21, 45:20, 168:23, 169:11
**deposition** [34] - 4:9, 4:10, 16:8, 22:6, 22:20, 25:2, 25:12, 40:13, 45:11, 47:24, 52:23, 53:6, 53:16, 53:24, 71:25, 72:8, 72:17, 72:18, 72:21, 73:6, 73:7, 73:8, 73:9, 168:15, 169:3, 192:1, 192:13, 192:23, 278:2, 278:16, 278:22, 280:4, 281:4
**depositions** [8] - 72:22, 192:12, 279:9, 280:7, 280:8, 280:11, 281:9
**DEPUTY** [6] - 9:8, 13:18, 168:2, 222:10, 222:18, 223:13
**DerOvanesian** [1] - 1:13
**Descovy** [1] - 39:23
**describe** [4] - 26:10, 26:12, 26:15, 34:21
**described** [2] - 34:13, 35:4
**description** [1] - 282:12
**Description** [1] - 3:11
**designated** [1] - 242:4
**desk** [2] - 203:20, 208:7
**detail** [2] - 247:5, 247:9
**details** [4] - 136:8, 189:22, 248:24, 249:1
**determination** [3] - 190:6, 287:10, 287:20
**determine** [5] - 34:8, 188:7, 204:5, 220:22, 283:22
**determined** [1] - 164:16
**developed** [3] - 37:8, 37:12, 37:25
**devices** [3] - 205:8, 205:12, 205:18
**Devilio** [1] - 184:13
**Dhruv** [6] - 64:14, 64:22, 65:9, 66:3, 66:17, 67:6
**diagnoses** [1] - 27:6
**Diaz** [3] - 8:14, 9:1, 12:25
**difference** [6] - 9:21, 11:21, 190:3, 251:4, 251:7, 261:1
**different** [41] - 13:8, 14:13, 49:6, 56:13, 72:16, 72:17, 72:21, 72:22, 91:22, 95:17, 99:18, 101:22, 146:8, 148:11, 174:11, 174:15, 174:22, 175:8, 177:18, 184:9, 186:12, 188:10, 188:19, 189:2, 189:3, 192:14, 193:16, 193:17, 196:10, 199:10, 202:13, 206:4, 210:8, 214:23, 215:2, 231:1, 242:15, 251:10, 276:12, 278:9
**differently** [2] - 176:10, 232:2
**difficult** [6] - 13:5, 110:6, 165:20, 166:4, 210:10, 210:15
**dig** [1] - 31:10
**digging** [1] - 30:3
**DIMITROULEAS** [1] - 1:10
**Dimitrouleas** [1] - 2:3
**Dimitrouleas/Hunt** [1] - 1:2
**dire** [2] - 42:3, 159:7
**DIRE** [4] - 3:4, 3:5, 42:5, 159:9
**direct** [17] - 46:23, 72:14, 119:2, 190:9, 211:24, 232:5, 234:8, 241:18, 249:7, 252:1, 252:13, 253:4, 253:7, 255:19, 269:14, 269:16, 281:16
**DIRECT** [6] - 3:3, 3:4, 3:5, 14:1, 42:23, 160:8
**directives** [1] - 214:7
**directly** [6] - 142:23, 149:4, 152:10, 170:23, 208:18, 215:6
**director** [8] - 31:15, 172:2, 217:18, 260:9, 260:12, 260:17, 260:20, 260:23
**dirty** [3] - 109:2, 198:7, 263:8
**disagree** [4] - 191:21, 266:11, 266:12, 266:15
**disappear** [2] - 206:5, 206:7
**disconnected** [1] - 93:5
**discounted** [1] - 47:3
**Discounted** [1] - 47:11
**discover** [1] - 259:9
**discovery** [3] - 194:25, 196:10, 204:2
**discretionary** [1] - 10:19
**discuss** [17] - 12:19, 43:24, 71:4, 71:10, 75:3, 123:11, 126:11, 165:2, 167:21, 171:2, 221:16, 224:11, 256:8, 259:9, 285:19, 292:24, 293:5
**discussed** [13] - 12:19, 71:5, 75:3, 123:11, 126:11, 165:3, 167:21, 221:17, 224:11, 281:4, 285:1, 285:13, 292:25
**discussing** [4] - 28:21, 74:2, 123:17, 193:10
**discussion** [1] - 253:6
**discussions** [1] - 258:21
**disgust** [2] - 183:2, 199:22
**disgusting** [1] - 183:5
**dispensed** [1] - 33:14
**disposal** [1] - 204:18
**disrespectful** [1] - 234:3
**distributing** [1] - 197:3
**distribution** [1] - 214:20
**distributor** [8] - 35:6, 46:22, 68:11, 77:3, 112:4, 160:23, 195:23, 196:11
**distributors** [4] - 34:4, 35:4, 194:16, 214:21
**District** [5] - 2:4, 284:17, 285:10, 293:16, 293:17
**DISTRICT** [3] - 1:1, 1:1, 1:10
**Disturbing** [3] - 24:18, 26:6, 181:16
**disturbing** [1] - 27:9
**diversion** [10] - 23:14, 26:12, 26:15, 33:1, 33:13, 34:22, 201:7, 229:8, 286:25, 288:13
**diversity** [3] - 106:6, 131:9, 131:12
**diverted** [2] - 34:1, 291:4
**diverters** [1] - 34:3
**Divilio** [37] - 24:21, 29:12, 38:23, 62:2, 88:2, 88:13, 88:22, 89:5, 90:25, 92:20, 93:23, 100:5, 100:19, 102:8, 103:5, 106:18, 109:9, 111:9, 112:9, 114:10, 117:13, 137:21, 164:19, 171:16, 172:8, 184:13, 212:20, 215:21, 216:10, 244:12, 260:8, 261:4, 261:18, 261:22, 261:23, 283:25, 284:5
**Divilio's** [1] - 31:14
**DIVISION** [1] - 1:2
**DMS** [3] - 110:7, 110:12, 110:23
**document** [100] - 25:2, 36:7, 36:10, 43:24, 82:13, 91:11, 100:8, 137:7, 143:2, 145:22, 155:14, 164:4, 164:8, 175:13, 185:7, 186:21, 189:15, 191:17, 192:14, 193:23, 195:2, 195:11, 196:9, 196:13, 196:20, 197:14, 197:18, 197:22, 198:12, 198:22, 199:15, 200:15, 206:18, 207:1, 209:7, 213:14, 216:19, 218:23, 219:3, 225:17, 225:22, 226:8, 226:9, 226:16, 227:4, 228:12, 231:14, 235:7, 236:5, 236:8, 236:11, 236:14, 236:18, 237:6, 237:16, 241:4, 245:1, 245:5, 248:17, 252:3, 252:7, 252:13, 252:18, 252:20, 255:22, 256:21, 257:4, 257:12, 261:10, 261:13, 261:14, 262:10, 263:9, 264:3, 265:2, 265:4, 265:5, 266:21, 266:22, 271:6, 271:8, 271:16, 271:25, 272:7, 272:17, 272:25, 273:3, 273:11, 274:10, 275:12, 275:19, 276:16, 276:18, 276:25, 277:3, 277:8, 277:15, 278:4, 278:19, 282:25

**Document** [2] - 6:1, 117:9
**documentation** [3] - 100:9, 265:17, 291:19
**documents** [177] - 15:14, 15:18, 67:20, 82:19, 88:10, 102:24, 131:17, 173:3, 175:21, 177:18, 177:23, 178:17, 179:2, 179:7, 185:8, 192:6, 192:17, 195:3, 195:4, 195:5, 195:9, 197:13, 197:17, 197:21, 201:12, 202:13, 202:16, 204:7, 204:16, 205:11, 206:11, 206:20, 206:22, 207:8, 208:7, 208:14, 208:17, 208:18, 209:6, 212:22, 213:6, 215:13, 215:22, 215:24, 216:16, 217:6, 219:6, 221:8, 221:12, 225:9, 226:11, 226:20, 227:2, 228:15, 231:13, 231:16, 231:18, 232:4, 232:6, 232:7, 232:16, 232:18, 233:3, 233:6, 233:20, 234:11, 234:13, 234:14, 234:17, 234:25, 235:4, 235:20, 235:21, 236:13, 236:22, 237:13, 239:3, 239:4, 239:25, 240:1, 243:6, 244:15, 244:24, 245:8, 245:23, 246:2, 246:7, 246:21, 246:23, 247:4, 247:8, 248:15, 248:25, 249:3, 249:4, 249:10, 249:15, 249:21, 249:23, 250:13, 250:25, 251:15, 252:4, 253:12, 254:17, 254:18, 254:21, 254:23, 255:24, 256:7, 256:8, 256:9, 256:11, 256:17, 256:19, 257:9, 257:14, 257:20, 258:2, 258:4, 258:20, 258:21, 259:8, 260:9, 260:23, 262:20, 263:3, 263:5, 263:10, 263:11, 263:15, 263:18, 264:7, 264:25, 267:11, 267:15, 267:16, 269:18, 271:11, 272:9, 273:1, 273:23, 274:11, 274:17, 274:19, 275:3, 280:9, 282:3, 282:4, 282:8, 282:25, 283:6, 283:24, 284:7, 284:11, 284:15, 285:21, 285:25, 286:5, 286:19, 287:3, 287:12, 289:17, 289:21, 290:6, 290:9, 290:11, 291:1, 291:2, 291:3, 291:6, 291:11, 291:14, 292:3, 292:5
**Documents** [2] - 5:1, 125:25
**DOJ** [1] - 55:9
**dollar** [2] - 128:22, 269:13
**dollars** [4] - 27:4, 27:11, 28:9, 221:7
**domain** [1] - 148:8
**done** [9] - 83:6, 83:12, 210:16, 212:2, 225:22, 226:3, 226:4, 287:15, 287:21
**door** [2] - 93:6, 167:10
**dot** [9] - 58:16, 60:25, 94:25, 96:12, 113:17, 120:5, 122:17, 128:20, 132:17
**dots** [3] - 102:1, 127:10, 133:22
**double** [3] - 128:2, 182:1, 182:13
**doubt** [1] - 266:14
**down** [83] - 17:25, 18:3, 21:24, 45:4, 50:13, 51:18, 52:1, 52:8, 52:14, 55:4, 55:20, 56:14, 61:12, 61:25, 63:17, 67:1, 70:22, 76:6, 77:7, 79:18, 81:19, 83:9, 84:3, 85:4, 86:1, 86:10, 89:8, 92:5, 97:2, 98:7, 104:7, 105:8, 106:21, 107:20, 109:5, 116:18, 118:7, 120:5, 122:2, 122:17, 124:16, 128:3, 129:1, 129:22, 135:5, 136:13, 138:1, 138:18, 139:16, 141:11, 142:8, 143:21, 144:24, 145:19, 150:15, 151:5, 151:20, 152:21, 153:24, 154:3, 155:1, 155:25, 156:13, 158:5, 159:20, 160:4, 160:19, 161:9, 163:13, 170:7, 181:22, 184:5, 189:3, 200:3, 202:18, 214:16, 214:23, 215:9, 217:8, 268:22, 288:15
**dozen** [3] - 178:19, 178:21, 186:15
**drastically** [1] - 131:8
**drawing** [1] - 258:10
**dreadful** [1] - 131:9
**drive** [3] - 27:4, 27:6, 131:11
**Drive** [1] - 149:13
**driver's** [1] - 104:13
**drug** [22] - 23:14, 26:15, 32:25, 34:22, 38:16, 47:16, 101:14, 146:11, 148:20, 148:24, 149:1, 157:21, 158:22, 160:16, 163:15, 172:5, 201:7, 229:8, 257:11, 271:21, 286:25, 288:13
**Drug** [14] - 7:8, 43:2, 43:24, 44:19, 77:3, 91:19, 93:1, 93:18, 95:20, 100:23, 100:25, 146:15, 164:1, 170:22
**Drugs** [3] - 28:13, 47:3, 47:11
**drugs** [25] - 31:3, 33:13, 34:1, 34:3, 34:6, 34:8, 35:7, 70:14, 99:23, 201:5, 201:6, 201:8, 257:8, 257:10, 263:20, 273:15, 273:24, 274:18, 284:18, 285:22, 286:2, 291:3, 291:4, 291:7, 291:9
**DSCSA** [2] - 44:19, 77:4
**due** [2] - 65:11, 139:9
**duly** [1] - 13:15
**duration** [1] - 78:17
**during** [29] - 8:6, 8:21, 25:1, 25:11, 25:12, 71:9, 80:22, 82:11, 104:16, 131:7, 222:8, 232:6, 243:4, 243:11, 246:5, 247:6, 250:12, 254:5, 254:17, 255:1, 263:13, 266:22, 274:9, 274:16, 281:15, 285:4, 288:8, 291:1, 293:4
**duties** [1] - 262:8

## E

**Eagle** [1] - 26:3
**easier** [2] - 80:7, 160:7
**easiest** [1] - 47:14
**East** [1] - 293:18
**Eastern** [1] - 79:6
**Eberspacher** [2] - 32:17, 36:1
**EDDIE** [3] - 3:3, 13:14, 13:22
**Eddie** [3] - 12:9, 13:12, 13:21
**edit** [1] - 276:12
**educational** [1] - 15:1
**effect** [1] - 214:11
**effects** [1] - 28:16
**eggs** [2] - 106:6, 131:10
**either** [5] - 31:9, 88:11, 120:10, 175:6, 263:8
**ELMO** [1] - 18:18
**Email** [66] - 3:14, 3:15, 3:17, 3:18, 3:20, 3:21, 4:19, 4:21, 4:22, 4:23, 5:5, 5:7, 5:8, 5:9, 5:10, 5:11, 5:12, 5:14, 5:15, 5:16, 5:17, 5:18, 5:19, 5:21, 5:22, 5:23, 5:24, 6:2, 6:3, 6:5, 6:6, 6:19, 6:22, 17:9, 20:8, 35:21, 42:19, 44:7, 61:24, 63:12, 64:4, 65:4, 66:10, 66:25, 69:14, 76:17, 94:16, 102:16, 103:18, 105:7, 105:19, 118:19, 136:24, 139:4, 140:2, 140:24, 141:23, 144:8, 145:11, 147:24, 160:3, 161:23, 162:12, 169:23, 170:18, 171:24
**email** [140] - 17:1, 17:14, 17:16, 18:4, 18:6, 18:10, 19:24, 20:12, 20:20, 21:2, 21:6, 21:23, 22:2, 29:12, 29:15, 29:19, 31:14, 32:8, 32:16, 38:12, 38:23, 41:23, 42:7, 43:10, 43:16, 44:11, 46:17, 46:24, 47:1, 47:2, 47:10, 50:17, 61:16, 62:3, 63:4, 63:14, 63:21, 64:13, 64:21, 65:6, 66:2, 66:16, 67:5, 67:15, 67:22, 68:1, 69:4, 69:17, 76:21, 85:7, 88:1, 88:14, 89:6, 90:25, 91:23, 93:16, 93:23, 94:6, 94:21, 96:4, 96:17, 99:22, 100:19, 100:25, 102:7, 102:22, 103:4, 104:15, 105:11, 105:22, 106:15, 106:17, 109:16, 109:23, 110:15, 110:19, 110:22, 111:9, 112:12, 114:5, 114:9, 114:11, 114:20, 117:1, 136:16, 137:3, 137:5, 137:6, 138:4, 138:21, 139:7, 139:11, 139:19, 139:20, 140:11, 141:14, 143:24, 145:3, 147:15, 148:5, 149:14, 157:24, 159:2, 159:11, 161:2, 161:13, 162:4, 164:19, 169:15, 170:2,

170:10, 170:20, 170:21, 171:16, 172:2, 179:9, 179:11, 179:19, 180:1, 203:5, 203:22, 217:8, 217:18, 218:8, 228:4, 235:23, 260:15, 265:6, 265:7, 265:8, 265:11, 265:12, 265:13, 265:16, 267:20, 272:3, 272:8, 272:10
**emailed** [1] - 134:2
**Emails** [6] - 4:20, 5:6, 5:20, 46:12, 62:22, 138:16
**emails** [37] - 21:15, 22:4, 29:8, 35:24, 46:3, 47:21, 48:1, 62:14, 99:18, 99:21, 103:23, 106:18, 114:21, 130:6, 137:21, 177:17, 178:4, 178:21, 179:23, 180:14, 193:9, 203:8, 203:9, 204:6, 207:25, 216:3, 217:20, 217:23, 227:17, 227:18, 227:22, 227:24, 228:2, 253:5, 272:1, 289:24, 290:18
**Emil** [1] - 94:22
**Emilia** [1] - 34:5
**Emily** [1] - 94:22
**employ** [2] - 109:17, 206:6
**employed** [1] - 174:10
**employee** [1] - 215:17
**employees** [6] - 174:12, 177:2, 189:9, 189:10, 214:7, 215:14
**encrypted** [3] - 205:8, 205:12, 205:18
**end** [7] - 8:10, 8:23, 9:19, 65:17, 114:21, 166:17, 249:7
**ended** [5] - 191:6, 191:7, 284:18, 285:22, 286:2
**ends** [1] - 188:7
**Enforcement** [1] - 15:5
**enforcement** [3] - 187:22, 212:7, 225:24
**engaged** [1] - 27:22
**enlarge** [1] - 47:6
**enlarged** [1] - 25:3
**ensure** [1] - 77:25
**enters** [2] - 74:21, 166:20
**Entin** [1] - 293:15
**ENTIN** [2] - 2:2, 293:15
**entire** [5] - 29:19, 189:24, 238:4, 242:5, 280:8
**entities** [4] - 91:8, 101:25, 207:16, 256:18
**entitled** [1] - 293:13
**entity** [17] - 81:8, 81:10, 82:5, 82:16, 91:18, 95:9, 100:25, 137:8, 142:22, 143:6, 143:11, 152:9, 152:10, 158:2, 255:25, 257:8
**entry** [2] - 67:20, 83:6
**equals** [1] - 119:24
**error** [10] - 172:16, 237:21, 238:1, 238:2, 238:11, 238:15, 238:18, 239:7, 241:7, 255:7
**errors** [1] - 106:8
**Esquire** [5] - 1:13, 1:14, 1:17, 1:18, 1:21
**essential** [1] - 27:12
**estimate** [2] - 12:1, 174:13
**et** [3] - 72:1, 123:1
**evaluation** [1] - 247:17
**evening** [1] - 292:24
**event** [1] - 239:14
**events** [1] - 261:18
**eventually** [2] - 29:25, 223:15
**evicted** [1] - 223:20
**Evidence** [93] - 16:18, 17:9, 20:8, 23:5, 24:5, 25:22, 35:21, 36:18, 39:14, 40:21, 42:19, 44:7, 45:20, 46:12, 48:17, 51:1, 53:6, 53:24, 54:15, 57:1, 58:6, 59:25, 60:21, 61:24, 62:22, 63:12, 64:4, 65:4, 66:10, 66:25, 69:14, 70:7, 75:19, 76:17, 78:9, 86:23, 90:2, 94:16, 102:16, 103:18, 105:7, 105:19, 107:10, 108:7, 113:3, 115:22, 117:10, 118:19, 119:20, 121:4, 122:14, 125:25, 127:2, 128:15, 129:15, 131:2, 132:11, 133:19, 135:19, 136:24, 138:17, 139:4, 140:2, 140:24, 141:23, 142:20, 144:8, 145:11, 146:5, 147:24, 151:2, 151:18, 152:6, 153:7, 153:22, 154:11, 154:24, 155:12, 156:12, 156:25, 157:13, 158:18, 160:3, 161:23, 161:25, 162:12, 162:25, 164:2, 168:23, 169:11, 169:23, 170:18, 171:24
**evidence** [146] - 15:15, 15:18, 17:5, 17:24, 18:17, 18:23, 20:4, 29:5, 29:19, 32:13, 33:8, 33:10, 35:16, 36:12, 38:10, 39:8, 41:2, 42:2, 43:21, 44:3, 46:7, 48:12, 50:21, 51:15, 54:10, 56:21, 57:25, 59:20, 60:15, 61:20, 62:17, 63:8, 63:24, 64:24, 66:5, 66:21, 67:8, 67:12, 69:9, 69:24, 73:5, 73:12, 76:12, 80:17, 84:14, 86:18, 87:24, 88:18, 92:17, 94:12, 95:25, 100:2, 101:19, 102:11, 103:13, 105:3, 105:14, 107:5, 108:2, 109:6, 111:14, 112:23, 114:3, 117:4, 118:14, 119:14, 120:22, 122:9, 124:11, 126:21, 128:9, 138:11, 138:24, 139:23, 140:19, 141:18, 147:19, 151:13, 151:25, 153:1, 153:16, 154:5, 154:18, 156:7, 157:8, 158:12, 159:6, 173:19, 173:22, 174:3, 190:15, 190:17, 196:2, 196:4, 196:24, 197:10, 201:9, 201:16, 201:18, 205:7, 206:17, 208:22, 209:5, 209:24, 210:1, 211:18, 213:8, 217:7, 221:4, 221:9, 227:25, 228:1, 229:5, 229:7, 230:3, 231:10, 232:14, 232:15, 236:5, 236:6, 237:13, 238:3, 238:19, 239:9, 240:25, 242:24, 243:3, 243:5, 243:8, 243:11, 244:7, 245:7, 246:4, 248:15, 249:3, 259:24, 260:2, 265:3, 269:18, 279:2, 280:10, 288:2, 290:15, 290:21
**exact** [6] - 42:13, 111:25, 174:12, 189:19, 195:23, 226:23
**exactly** [2] - 11:2, 215:2
**exam** [1] - 8:9
**examination** [17] - 72:15, 172:20, 222:5, 232:5, 233:10, 234:8, 238:4, 248:20, 249:7, 253:5, 269:14, 269:16, 270:12, 273:23, 281:16, 289:12
**EXAMINATION** [14] - 3:3, 3:4, 3:4, 3:5, 3:5, 3:6, 3:6, 14:1, 42:5, 42:23, 159:9, 160:8, 172:21, 224:21
**examined** [1] - 13:15
**example** [3] - 180:23, 193:8, 194:15
**examples** [1] - 120:9
**Excedrin** [1] - 52:12
**Excel** [5] - 5:13, 69:7, 69:24, 70:6, 83:21
**Excerpt** [16] - 3:25, 4:1, 4:2, 4:4, 4:5, 4:7, 4:8, 4:10, 16:17, 23:4, 40:20, 45:19, 53:5, 53:23, 168:22, 169:10
**excerpt** [10] - 16:8, 22:20, 40:13, 45:11, 52:23, 53:16, 72:18, 106:24, 168:15, 169:3
**excerpts** [5] - 192:4, 278:3, 278:16, 278:22, 278:23
**exculpatory** [23] - 73:21, 229:18, 230:3, 230:5, 230:7, 233:4, 233:6, 233:20, 238:2, 238:19, 239:9, 240:3, 240:22, 240:24, 241:13, 242:24, 243:3, 243:5, 243:8, 243:11, 244:6, 259:24, 260:2
**excuse** [13] - 9:19, 10:18, 80:16, 166:7, 167:7, 167:23, 238:12, 245:22, 258:19, 258:23, 261:23, 274:10, 291:3
**excused** [3] - 8:6, 8:15, 8:21
**excuses** [1] - 291:19
**Exec@SafeChain.com** [1] - 138:22
**exhibit** [12] - 20:3, 21:20, 25:1, 25:11, 25:12, 25:19, 34:11, 62:10, 77:12, 80:16, 89:20, 234:5
**Exhibit** [247] - 16:6, 16:12, 16:20, 16:22, 16:24, 17:5, 17:24, 18:17, 19:22, 22:9, 22:10, 22:14, 22:18, 22:24, 23:7, 23:8, 23:17, 23:25, 25:6, 25:15, 28:18, 29:5, 32:14, 35:10, 35:16, 36:5, 36:13, 38:10, 39:2, 39:9, 40:9, 40:16, 40:24, 40:25, 41:2, 41:20, 42:2, 43:14, 43:21, 44:3, 45:7, 45:15, 45:18, 45:24, 46:1, 46:7, 48:5, 48:12, 50:14, 50:21, 51:14, 52:19, 53:1, 53:8, 53:9,

53:12, 53:19, 54:1, 54:2, 54:4, 54:10, 56:15, 56:21, 57:20, 58:1, 59:14, 59:20, 60:10, 60:16, 61:14, 61:20, 62:12, 62:18, 62:24, 63:8, 63:19, 63:25, 64:19, 64:25, 65:25, 66:6, 66:14, 66:21, 66:24, 67:3, 67:9, 69:2, 69:10, 75:8, 75:14, 76:7, 76:13, 77:7, 78:5, 84:14, 86:12, 86:18, 87:23, 88:18, 89:17, 92:17, 94:4, 94:12, 95:25, 96:21, 97:11, 100:2, 101:19, 102:5, 102:12, 103:8, 103:14, 104:22, 105:3, 105:9, 105:15, 106:22, 107:5, 107:21, 108:2, 109:7, 111:15, 112:17, 112:23, 114:3, 115:7, 115:11, 115:17, 116:24, 117:5, 118:8, 118:9, 118:15, 119:9, 119:15, 120:15, 120:23, 122:3, 122:9, 124:14, 124:15, 124:18, 124:20, 124:22, 124:24, 125:1, 125:3, 125:5, 125:7, 125:9, 125:11, 125:13, 125:15, 125:17, 125:19, 125:21, 126:16, 126:22, 128:4, 128:10, 129:1, 129:10, 130:12, 130:20, 131:25, 132:6, 133:8, 133:14, 135:6, 135:14, 136:14, 136:20, 138:2, 138:11, 138:19, 138:25, 139:17, 139:23, 140:9, 140:20, 141:12, 141:19, 142:9, 142:15, 143:22, 144:4, 144:25, 145:7, 145:20, 145:25, 147:13, 147:20, 150:16, 150:22, 151:6, 151:13, 151:20, 152:1, 152:22, 153:2, 153:11, 153:17, 153:24, 154:6, 154:13, 154:19, 155:1, 155:7, 156:1, 156:8, 156:14, 156:21, 157:2, 157:8, 158:7, 158:13, 158:25, 159:6, 161:11, 161:19, 162:2, 162:8, 162:14, 162:20, 163:13, 163:22, 168:13, 168:19, 169:1, 169:6, 169:13, 169:19, 170:8, 170:14, 171:14, 171:20, 180:22, 198:17, 198:24, 217:6, 219:1, 233:25, 234:1, 268:17, 270:13

**exhibits** [9] - 77:22, 89:21, 124:8, 125:22, 164:22, 178:10, 178:12, 180:3, 181:3
**existed** [6] - 226:5, 248:6, 249:24, 273:4, 273:12, 289:1
**existing** [1] - 109:18
**exists** [3] - 203:23, 239:16, 266:5
**exit** [1] - 25:3
**exits** [7] - 71:8, 71:15, 123:15, 123:19, 165:6, 167:11, 221:21
**expand** [1] - 70:11
**expect** [2] - 114:13, 217:14
**expected** [2] - 8:10, 239:13
**expecting** [2] - 87:11, 108:15
**expensive** [1] - 84:24
**experienced** [2] - 270:4
**explain** [4] - 59:2, 93:9, 190:6, 201:2
**explained** [1] - 117:20
**explaining** [1] - 72:1
**explains** [1] - 72:8
**explanations** [1] - 291:14
**expletive** [4] - 49:7, 108:19, 155:23, 199:14
**expletive's** [1] - 60:5
**expletives** [1] - 108:12
**exploit** [1] - 27:10
**explosion** [1] - 127:20
**exposing** [1] - 27:5
**express** [1] - 49:21
**expressing** [1] - 199:22
**extent** [1] - 205:9
**extremely** [1] - 83:18
**eye** [1] - 119:1
**eyes** [2] - 193:6, 234:1

## F

**Fabian** [1] - 8:14
**Facebook** [2] - 117:18, 219:23
**facilities** [1] - 103:1
**facility** [1] - 21:4
**fact** [43] - 73:20, 160:25, 174:2, 185:11, 189:16, 189:22, 190:12, 191:2, 191:6, 194:15, 195:18, 195:22, 200:13, 203:2, 216:10, 216:22, 216:25, 219:21, 220:19, 229:15, 229:25, 234:12, 234:15, 235:1, 235:5, 240:24, 248:3, 249:4, 252:25, 254:22, 255:1, 258:22, 259:10, 261:5, 267:19, 273:24, 274:17, 279:15, 281:4, 285:22, 292:2, 292:3
**facts** [8] - 15:20, 190:14, 196:1, 287:9, 287:11, 287:14, 287:17, 287:20
**failed** [1] - 241:3
**fair** [3] - 174:13, 175:14, 241:14
**Fairfield** [1] - 91:19
**fairly** [1] - 77:15
**fake** [1] - 217:1
**false** [7] - 34:7, 73:20, 149:23, 259:11, 274:11, 275:3
**falsely** [1] - 274:17
**familiar** [10] - 15:19, 30:21, 173:5, 197:13, 201:12, 225:1, 255:7, 255:10, 255:23, 262:13
**far** [31] - 9:12, 24:20, 61:5, 73:1, 80:12, 82:8, 82:9, 88:23, 91:14, 95:21, 96:3, 96:14, 101:10, 109:25, 113:5, 116:20, 122:1, 130:9, 137:23, 148:10, 193:9, 215:12, 227:2, 227:18, 241:14, 249:14, 270:5, 275:21, 275:25, 289:12, 291:8
**fashion** [5] - 8:21, 9:7, 10:2, 116:10, 116:14
**fast** [4] - 32:20, 32:25, 86:7, 121:13
**fast-forward** [2] - 32:20, 32:25
**fax** [1] - 93:6
**FBI** [1] - 204:12
**FDA** [12] - 37:6, 37:22, 77:2, 100:12, 100:14, 101:15, 109:22, 119:5, 164:13, 215:10, 262:13
**FDCA** [1] - 149:22
**February** [5] - 39:5, 39:20, 144:17, 147:5, 147:7
**federal** [16] - 14:13, 15:13, 32:25, 33:3, 33:12, 37:5, 37:22, 179:18, 187:22, 188:9, 188:10, 205:16, 240:2, 240:15, 244:6
**Federal** [3] - 1:22, 15:5, 293:17
**fees** [1] - 190:22
**fellow** [1] - 241:7
**Fernando** [1] - 228:18
**few** [14] - 10:25, 15:24, 31:3, 58:21, 87:8, 88:6, 98:2, 103:23, 130:9, 165:22, 206:21, 246:19, 258:6, 258:17
**figuring** [1] - 189:12
**file** [9] - 43:6, 49:17, 50:1, 81:21, 82:1, 90:19, 91:4, 92:25, 101:11
**filed** [4] - 33:3, 33:12, 93:18, 182:11
**fill** [2] - 63:15, 93:22
**finally** [3] - 59:2, 68:16, 81:16
**finances** [1] - 191:20
**financial** [14] - 14:25, 187:13, 188:1, 188:14, 189:14, 189:20, 190:1, 191:4, 205:16, 269:21, 270:4, 270:5, 270:7, 270:10
**financial-type** [1] - 188:1
**financially** [1] - 269:1
**findings** [1] - 228:13
**fine** [3] - 181:1, 197:7, 204:23
**finger** [1] - 114:23
**finish** [2] - 192:9, 229:12
**firm** [1] - 245:9
**First** [1] - 65:10
**first** [47] - 10:7, 10:10, 13:15, 14:8, 16:3, 17:19, 18:4, 24:10, 28:1, 28:22, 47:19, 48:21, 50:10, 54:18, 67:17, 68:9, 71:19, 77:10, 78:12, 78:19, 78:23, 81:8, 81:9, 100:22, 109:16, 110:22, 112:5, 113:10, 116:3, 129:25, 131:16, 137:8, 173:3, 197:8, 216:8, 216:9, 234:5, 234:22, 236:7, 237:1, 237:3, 256:11, 256:23, 277:2, 279:24, 282:19
**firsthand** [1] - 251:24
**five** [3] - 42:9, 97:21, 214:24
**fix** [4] - 19:17, 21:5, 41:21, 232:21
**Fl** [1] - 1:22
**Flores** [1] - 1:18
**FLORIDA** [1] - 1:1
**Florida** [15] - 1:4, 1:16, 1:19, 1:22, 104:17, 141:4, 142:4, 143:13, 144:12, 145:17, 271:22, 284:17, 285:10, 293:17, 293:18
**Flowers** [1] - 102:20
**Flushing** [2] - 64:10, 81:11
**focus** [2] - 175:14,

225:6
**focused** [1] - 11:5
**foil** [8] - 160:11, 160:25, 197:1, 197:12, 197:16, 208:21, 209:9, 209:18
**follow** [15] - 12:18, 75:2, 88:7, 126:10, 167:20, 188:3, 188:15, 189:22, 215:14, 215:19, 224:10, 238:19, 240:4, 240:5, 254:25
**follow-up** [1] - 254:25
**followed** [5] - 106:8, 240:24, 241:15, 242:19, 248:4
**following** [6] - 74:9, 106:8, 123:23, 165:11, 189:12, 221:25
**follows** [2] - 13:16, 240:6
**FOR** [3] - 1:13, 1:17, 1:21
**foregoing** [1] - 293:11
**foreign** [1] - 14:23
**forensic** [1] - 180:15
**Form** [1] - 100:12
**form** [8] - 58:14, 59:8, 59:10, 100:13, 163:15, 172:6, 264:14, 271:12
**formal** [1] - 40:4
**FORT** [1] - 1:2
**Fort** [3] - 1:4, 1:22, 293:18
**forth** [1] - 204:10
**forward** [9] - 11:14, 32:20, 32:25, 48:25, 65:20, 97:8, 98:18, 111:23, 199:7
**forwarded** [4] - 43:5, 89:5, 90:25, 91:24
**forwarding** [2] - 35:12, 35:25
**forwards** [1] - 88:13
**founder** [1] - 184:10
**four** [8] - 24:10, 93:8, 139:14, 184:20, 184:21, 184:22, 185:9, 214:24
**fourth** [3] - 24:19, 185:2, 186:1
**FPR** [2] - 2:2, 293:15
**frame** [1] - 42:14
**fraud** [5] - 33:1, 55:1, 104:11, 149:15, 188:8
**fraudulent** [2] - 33:16, 114:23
**free** [4] - 89:14, 90:10, 90:11, 161:7
**Friday** [9] - 108:17, 108:20, 139:8, 222:13, 222:14, 222:23, 223:17, 224:16, 224:18
**Frier** [1] - 245:9
**front** [14] - 22:13, 40:8, 45:7, 52:18, 53:12, 77:19, 104:9, 137:8, 141:7, 167:9, 168:11, 168:12, 231:12, 283:5
**full** [3] - 10:4, 10:5, 104:7
**fuller** [1] - 247:5
**fun** [1] - 220:20
**functions** [1] - 242:12
**future** [1] - 99:6
**FYI** [1] - 93:17

**G**

**Garrett** [22] - 39:5, 39:19, 49:19, 51:16, 51:20, 52:3, 52:10, 107:24, 108:15, 108:18, 108:21, 109:2, 117:23, 122:6, 134:1, 136:17, 137:3, 137:18, 159:2, 159:21, 159:24, 161:4
**Garrett@ PharmaSales** [1] - 162:4
**General** [4] - 14:7, 14:16, 131:5, 187:16
**general** [4] - 173:1, 246:19, 250:4, 250:6
**generally** [4] - 14:20, 26:10, 105:25, 176:4
**generated** [1] - 270:22
**generic** [1] - 52:12
**Gentek** [16] - 49:9, 49:11, 133:25, 134:1, 134:5, 134:24, 198:18, 200:4, 200:16, 257:5, 257:7, 257:10, 257:14, 257:19, 258:6, 258:8
**Genvoya** [2] - 135:25, 136:1
**George** [1] - 117:19
**ghetto** [1] - 112:4
**GIF** [1] - 127:18
**Gilead** [66] - 81:10, 82:6, 100:4, 100:9, 100:13, 100:20, 100:23, 101:14, 106:18, 114:14, 114:15, 122:21, 123:3, 137:9, 142:23, 143:4, 146:13, 152:10, 164:19, 171:1, 172:12, 193:25, 194:6, 194:9, 194:11, 194:16, 194:23, 195:7, 195:23, 195:25, 196:11, 196:21, 200:14, 202:2, 207:18, 208:2, 208:4, 217:15, 217:16, 217:25, 249:20, 249:23, 250:14, 251:1, 251:16, 254:19, 255:1, 255:3, 255:7, 255:12, 255:14, 270:17, 273:12, 279:10, 279:24, 281:10, 281:12, 284:4, 284:7, 284:9, 284:11, 284:17, 285:21, 286:1
**girl** [1] - 269:7
**given** [12] - 8:11, 176:1, 227:1, 227:3, 243:9, 243:10, 244:1, 245:4, 282:24, 283:4, 283:13, 287:22
**Global** [2] - 37:17, 38:6
**GM** [2] - 87:5, 89:10
**Gmail** [1] - 111:1
**GNDCs** [1] - 135:24
**go-between** [1] - 187:2
**gold** [1] - 210:25
**google** [1] - 29:25
**Google** [1] - 30:6
**googled** [2] - 29:24, 30:6
**Gotcha** [1] - 108:24
**GOVERNMENT** [1] - 1:13
**Government** [108] - 9:2, 12:5, 13:10, 13:11, 16:12, 20:3, 22:24, 23:24, 25:14, 35:15, 40:15, 42:1, 43:20, 44:2, 45:14, 46:6, 48:11, 52:25, 53:18, 54:9, 56:20, 57:25, 59:19, 60:15, 61:19, 62:17, 63:7, 63:24, 64:24, 66:5, 66:20, 67:8, 72:9, 74:2, 75:13, 76:12, 78:4, 86:17, 94:11, 102:11, 103:13, 105:2, 105:14, 107:4, 108:1, 112:22, 115:16, 117:4, 118:14, 119:14, 120:22, 122:8, 129:9, 130:20, 132:5, 133:13, 135:13, 136:19, 138:10, 138:24, 139:22, 140:19, 141:18, 142:14, 144:3, 145:6, 145:24, 147:19, 150:21, 151:12, 151:25, 153:1, 153:16, 154:5, 154:18, 155:6, 156:7, 156:20, 157:7, 158:12, 159:5, 161:18, 162:7, 162:19, 163:21, 168:18, 169:5, 169:18, 170:13, 171:19, 177:16, 179:10, 180:2, 180:15, 200:8, 204:14, 207:14, 208:2, 208:4, 209:6, 210:17, 228:19, 240:6, 241:15, 249:12, 253:16, 256:13, 262:11
**government** [10] - 17:4, 36:12, 39:8, 50:20, 69:9, 126:21, 128:9, 173:15, 179:18, 205:17
**Government's** [425] - 3:12, 3:13, 3:14, 3:15, 3:16, 3:17, 3:18, 3:19, 3:20, 3:21, 3:22, 3:23, 3:25, 4:1, 4:2, 4:4, 4:5, 4:7, 4:8, 4:10, 4:11, 4:12, 4:13, 4:14, 4:15, 4:16, 4:17, 4:18, 4:19, 4:20, 4:21, 4:22, 4:23, 5:1, 5:5, 5:6, 5:7, 5:8, 5:9, 5:10, 5:11, 5:12, 5:13, 5:14, 5:15, 5:16, 5:17, 5:18, 5:19, 5:20, 5:21, 5:22, 5:23, 5:24, 6:1, 6:2, 6:3, 6:4, 6:5, 6:6, 6:7, 6:8, 6:9, 6:10, 6:11, 6:12, 6:13, 6:14, 6:15, 6:16, 6:17, 6:18, 6:19, 6:20, 6:21, 6:22, 6:23, 6:24, 6:25, 7:1, 7:2, 7:4, 7:5, 7:6, 7:7, 7:8, 7:9, 7:10, 7:11, 7:12, 7:13, 7:14, 7:15, 9:12, 16:6, 16:12, 16:17, 16:20, 16:24, 17:5, 17:9, 17:24, 18:17, 19:22, 20:8, 22:9, 22:14, 22:18, 22:24, 23:4, 23:7, 23:17, 23:25, 24:4, 25:6, 25:15, 25:21, 28:18, 29:5, 32:14, 35:10, 35:16, 35:21, 36:5, 36:13, 36:17, 38:10, 39:2, 39:9, 39:13, 40:9, 40:16, 40:20, 40:23, 41:2, 41:20, 42:2, 42:19, 43:14, 43:21, 44:3, 44:7, 45:7, 45:15, 45:18, 45:19, 46:1, 46:7, 46:12, 48:5, 48:12, 48:16, 50:14, 50:21, 50:25, 51:14, 52:18, 53:1, 53:5, 53:8, 53:12, 53:19, 53:23, 54:1, 54:4, 54:10, 54:14, 56:15, 56:21, 56:25, 57:19, 58:1, 58:5, 59:14, 59:20, 59:24, 60:10, 60:16, 60:20, 61:14, 61:20, 61:24, 62:11, 62:18, 62:22, 62:24, 63:8, 63:12, 63:18, 63:25, 64:4, 64:19, 64:25, 65:4, 65:25, 66:6, 66:10, 66:14, 66:21, 66:24, 66:25, 67:2, 67:9, 69:2, 69:10, 69:14, 70:6, 75:7, 75:14, 75:18, 76:7, 76:13, 76:17, 77:7, 78:5, 78:9, 84:14, 86:11, 86:18, 86:22, 87:22, 87:23, 88:18, 89:16, 90:1, 92:16, 94:4, 94:12, 94:16, 95:24, 96:21, 97:10,

100:2, 101:18, 102:5, 102:12, 102:16, 103:8, 103:14, 103:18, 104:22, 105:3, 105:7, 105:9, 105:15, 105:19, 106:22, 107:5, 107:9, 107:21, 108:2, 108:6, 109:6, 111:14, 112:17, 112:23, 113:2, 114:3, 115:7, 115:11, 115:17, 115:21, 116:24, 117:5, 117:9, 118:8, 118:15, 118:19, 119:9, 119:15, 119:19, 120:15, 120:23, 121:3, 122:3, 122:9, 122:13, 124:14, 124:15, 124:18, 124:20, 124:22, 124:24, 125:1, 125:3, 125:5, 125:7, 125:9, 125:11, 125:13, 125:15, 125:17, 125:19, 125:21, 125:23, 126:15, 126:22, 127:1, 128:4, 128:10, 128:14, 129:1, 129:10, 129:14, 130:12, 130:20, 131:1, 131:25, 132:6, 132:10, 133:8, 133:14, 133:18, 135:6, 135:14, 135:18, 136:14, 136:20, 136:24, 138:2, 138:11, 138:16, 138:19, 138:25, 139:4, 139:17, 139:23, 140:2, 140:9, 140:20, 140:24, 141:12, 141:19, 141:23, 142:9, 142:15, 142:19, 143:22, 144:4, 144:8, 144:25, 145:7, 145:11, 145:20, 145:25, 146:4, 147:13, 147:20, 147:24, 150:16, 150:22, 151:1, 151:6, 151:13, 151:17, 151:20, 152:1, 152:5, 152:22, 153:2, 153:6, 153:11, 153:17, 153:21, 153:24, 154:6, 154:10, 154:13, 154:19, 154:23, 155:1, 155:7, 155:11, 156:1, 156:8, 156:12, 156:14, 156:21, 156:25, 157:1, 157:8, 157:12, 158:6, 158:13, 158:17, 158:24, 159:6, 160:3, 161:10, 161:19, 161:23, 161:24, 162:2, 162:8, 162:12, 162:14, 162:20, 162:24, 163:13, 163:22, 164:1, 168:12, 168:19, 168:22, 168:25, 169:6, 169:10, 169:13, 169:19, 169:23, 170:8, 170:14, 170:18, 171:14, 171:20, 171:24, 180:22, 198:17, 198:24, 207:13, 217:6, 219:1, 234:1

**government's** [1] - 189:2

**graduate** [1] - 15:3

**graduated** [2] - 15:6, 15:7

**Gray** [2] - 165:15, 166:20

**gray** [12] - 9:8, 9:9, 10:25, 11:11, 11:14, 13:5, 165:17, 165:19, 166:19, 166:21, 167:9, 167:23

**great** [7] - 46:20, 67:13, 83:2, 93:17, 104:2, 104:7, 279:22

**greatest** [1] - 188:15

**greatly** [1] - 100:23

**Group** [6] - 109:19, 110:9, 110:12, 152:12, 152:16, 152:17

**group** [6] - 89:9, 90:14, 96:22, 110:24, 228:23, 282:20

**growing** [1] - 216:4

**guess** [12] - 10:24, 11:13, 18:3, 26:2, 165:25, 167:5, 223:3, 244:22, 253:25, 274:22, 274:24

**guidelines** [3] - 214:19, 214:24, 215:10

**guilt** [1] - 240:4

**Gulf** [1] - 269:8

**gun** [1] - 109:4

**guy** [3] - 59:2, 132:19, 184:4

**guys** [9] - 39:21, 56:5, 62:4, 67:18, 86:7, 89:2, 92:12, 97:6, 163:9

**GV022UA** [1] - 31:5

## H

**habits** [1] - 122:1

**Hacksaw** [1] - 19:1

**half** [4] - 14:19, 178:19, 178:21, 186:15

**Hammett** [2] - 119:12, 120:6

**Hammett's** [1] - 119:25

**hand** [3] - 8:24, 15:24, 285:9

**handed** [3] - 16:3, 208:1, 208:4

**handful** [1] - 28:16

**handle** [4] - 55:18, 133:24, 212:25, 215:2

**hands** [1] - 109:2

**handwriting** [1] - 155:14

**handwritten** [1] - 155:22

**happy** [2] - 57:16, 139:8

**hard** [1] - 140:4

**hate** [1] - 131:10

**head** [4] - 184:14, 212:20, 215:21, 215:23

**heads** [2] - 14:23

**health** [4] - 27:12, 39:22, 165:18, 187:20

**Health** [5] - 14:6, 14:16, 28:12, 65:10, 187:19

**healthcare** [1] - 55:1

**Healthcare** [5] - 38:18, 149:3, 149:4, 158:3, 160:17

**Healthfirst** [1] - 76:4

**healthy** [1] - 167:25

**hear** [2] - 93:17, 238:3

**heard** [10] - 188:3, 194:8, 194:10, 195:11, 206:3, 253:24, 254:2, 254:11, 254:22, 280:3

**hearsay** [7] - 159:15, 194:4, 233:14, 250:15, 267:5, 280:21

**heartbeat** [1] - 166:11

**hello** [3] - 29:16, 92:22, 109:15

**help** [7] - 83:19, 92:25, 116:4, 116:8, 116:12, 133:24, 134:17

**helped** [1] - 88:11

**helping** [1] - 61:8

**helps** [1] - 83:7

**hereby** [1] - 293:11

**HHS** [1] - 15:8

**hi** [2] - 117:15, 170:22

**Hi** [1] - 17:18

**hiccup** [1] - 112:1

**hide** [1] - 206:11

**high** [3] - 36:10, 78:11, 216:8

**highlighted** [5] - 31:6, 68:5, 68:8, 68:10, 68:21

**highlights** [1] - 68:3

**Highway** [1] - 1:22

**himself** [1] - 193:4

**historic** [1] - 129:20

**history** [7] - 14:15, 100:7, 109:20, 134:19, 156:17, 213:25, 214:21

**HIV** [38] - 7:1, 24:18, 26:5, 26:15, 27:3, 27:6, 28:15, 47:3, 47:11, 48:22, 56:5, 60:4, 61:11, 76:3, 106:6, 113:2, 113:12, 127:12, 128:21, 131:9, 133:1, 133:2, 133:3, 139:9, 169:16, 170:4, 170:6, 181:16, 181:20, 186:24, 189:16, 199:1, 241:23, 269:1, 269:8, 269:12, 271:21, 273:15

**hold** [3] - 115:10, 127:25, 168:2

**holidays** [1] - 104:6

**Homeland** [2] - 187:15, 187:17

**honest** [2] - 120:7, 206:2

**honestly** [1] - 283:8

**honesty** [2] - 119:24, 120:1

**Honor** [89] - 9:3, 9:4, 9:10, 9:22, 10:22, 11:7, 11:12, 12:15, 12:17, 13:11, 13:23, 15:23, 24:6, 25:19, 29:18, 33:4, 34:9, 34:17, 35:22, 40:22, 45:21, 50:5, 71:1, 73:25, 74:16, 74:24, 75:1, 75:6, 86:24, 89:25, 94:17, 103:19, 108:8, 121:2, 122:15, 123:18, 124:6, 126:7, 126:9, 126:14, 132:12, 138:15, 151:19, 157:17, 159:16, 166:4, 167:17, 167:19, 168:9, 172:19, 174:5, 176:7, 177:4, 180:5, 180:24, 183:21, 185:21, 186:3, 186:16, 188:21, 194:18, 200:22, 208:6, 210:19, 212:16, 221:13, 224:7, 224:9, 233:13, 235:13, 237:7, 238:5, 238:22, 241:17, 248:18, 257:22, 258:25, 260:5, 261:8, 262:2, 267:5, 267:10, 270:25, 272:19, 274:12, 277:18, 278:8, 280:20, 284:19

**HONORABLE** [1] - 1:10

**Honorable** [1] - 2:3

**hope** [1] - 83:6

**hopefully** [3] - 10:7, 104:4, 223:15

**hoping** [1] - 134:10

**horrible** [2] - 183:4, 232:21

**hospitals** [1] - 46:20

**hosted** [1] - 148:8
**hour** [1] - 8:11
**hours** [6] - 44:21, 60:4, 61:8, 222:23, 223:7, 224:16
**house** [5] - 210:1, 210:7, 210:11, 210:23
**housekeeping** [1] - 223:19
**houses** [2] - 209:21, 209:23
**huge** [2] - 28:15, 83:19
**Human** [4] - 14:6, 14:16, 187:19, 187:20
**hundreds** [2] - 195:3, 206:23
**hung** [1] - 117:22
**hurt** [1] - 27:3

**I**

**idea** [2] - 197:14, 246:19
**identified** [2] - 232:24, 291:10
**identify** [2] - 289:1, 291:18
**identifying** [2] - 217:24, 291:12
**II** [5] - 141:9, 142:1, 143:19, 146:9, 271:20
**III** [3] - 144:21, 145:14, 147:9
**illegal** [3] - 287:16, 287:17, 287:21
**illegitimate** [4] - 100:11, 149:25, 156:4, 164:16
**Illinois** [1] - 110:14
**illness** [1] - 27:5
**image** [18] - 25:3, 28:2, 79:20, 79:23, 80:2, 80:11, 80:15, 80:21, 81:3, 81:9, 81:18, 82:1, 82:10, 84:7, 97:25, 98:6, 98:10
**images** [2] - 130:8, 139:10
**imagine** [6] - 114:15, 115:3, 217:16, 217:25, 218:11, 218:20
**immediately** [2] - 183:7, 206:5
**impatient** [1] - 216:4
**implicate** [1] - 73:18
**implied** [1] - 14:8
**important** [4] - 229:20, 238:18, 239:8, 239:24
**impossible** [1] - 34:7
**imputed** [1] - 73:21
**inaccurate** [3] - 276:8, 283:2, 284:4
**inappropriate** [1] - 208:9
**Inc** [6] - 31:18, 31:19, 91:19, 110:12, 114:18, 152:12
**include** [5] - 141:5, 144:18, 177:23, 214:21, 244:11
**included** [6] - 172:11, 180:11, 256:1, 265:7, 272:1, 282:10
**includes** [2] - 147:17, 242:22
**including** [2] - 37:6, 37:22
**Income** [3] - 24:18, 26:5, 181:16
**incomplete** [1] - 114:24
**inconsistent** [8] - 13:2, 100:8, 119:6, 229:10, 229:15, 240:4, 247:5, 280:15
**Incorporated** [1] - 152:16
**incorrect** [5] - 109:20, 114:20, 255:8, 283:7, 291:8
**increasingly** [1] - 216:4
**indeed** [1] - 28:9
**independent** [3] - 34:2, 267:9, 283:6
**Independent** [5] - 31:1, 82:7, 91:15, 95:11, 95:20
**independently** [2] - 228:8, 267:18
**indicated** [6] - 185:8, 192:21, 263:11, 263:15, 263:21, 291:2
**indicted** [11] - 55:22, 185:11, 185:14, 186:2, 245:6, 245:15, 245:24, 246:3, 275:13, 275:16
**indictment** [31] - 23:11, 23:13, 26:13, 34:23, 42:13, 50:6, 50:10, 54:21, 55:9, 104:9, 141:7, 141:9, 142:1, 143:19, 144:21, 145:14, 147:10, 149:15, 182:10, 185:15, 185:17, 185:19, 225:14, 225:15, 226:16, 244:23, 245:11, 256:1, 271:20, 271:23, 272:12
**indirectly** [2] - 253:2, 253:3
**individual** [1] - 94:20
**individuals** [12] - 27:3, 33:13, 175:22, 176:13, 178:3, 185:15, 201:7, 205:17, 227:15, 232:19, 242:15, 276:6
**indulge** [2] - 32:23, 111:18
**industry** [1] - 193:19
**infecting** [2] - 166:9, 166:13
**inference** [1] - 73:2
**info** [8] - 62:4, 62:7, 64:9, 65:12, 83:2, 83:3, 93:22, 122:20
**info@Safe** [1] - 145:3
**info@SafeChain.com** [1] - 141:15
**inform** [1] - 11:13
**information** [41] - 10:3, 12:6, 19:6, 31:11, 62:8, 77:3, 77:16, 93:2, 93:10, 93:11, 100:7, 102:23, 109:13, 109:20, 114:12, 139:13, 143:2, 143:3, 143:5, 147:1, 149:23, 179:24, 185:13, 187:1, 192:11, 192:13, 215:7, 217:13, 241:5, 242:18, 247:9, 248:25, 257:16, 259:11, 265:18, 276:12, 276:15, 276:23, 284:8, 289:10, 292:13
**inhalation** [1] - 160:12
**initial** [4] - 112:1, 163:16, 164:12, 290:14
**initiated** [1] - 248:8
**inside** [2] - 171:1, 263:21
**insisting** [1] - 248:3
**Inspector** [3] - 14:7, 14:16, 187:16
**InstaCare** [3] - 91:21, 92:23, 93:4
**instance** [5] - 229:16, 230:23, 235:22, 280:18, 290:4
**instances** [3] - 196:20, 283:25, 284:3
**instead** [3] - 12:24, 95:20, 119:3
**instruction** [1] - 34:10
**intake** [3] - 58:14, 59:8, 59:10
**integrity** [1] - 106:12
**intention** [1] - 11:15
**interested** [1] - 289:9
**internal** [1] - 57:13
**interrupt** [1] - 164:25
**introduce** [9] - 15:18, 17:21, 177:16, 180:2, 232:14, 237:13, 237:16, 245:7, 279:1
**introduced** [41] - 73:13, 74:2, 178:7, 178:19, 178:21, 181:3, 181:23, 183:14, 192:6, 197:22, 198:24, 204:8, 213:4, 213:6, 213:8, 217:7, 219:3, 220:19, 227:25, 228:1, 231:18, 234:17, 236:5, 236:6, 244:25, 246:4, 248:15, 249:3, 254:24, 256:19, 258:4, 265:2, 269:18, 271:25, 272:9, 280:9, 290:19, 290:21, 291:6, 291:11, 291:13
**introducing** [4] - 15:14, 18:10, 173:19, 173:21
**introduction** [1] - 72:2
**INV** [1] - 95:5
**inventory** [3] - 93:13, 108:15, 108:22
**investigate** [1] - 14:12
**investigated** [3] - 14:24, 232:15, 275:2
**investigates** [1] - 205:17
**investigating** [1] - 242:6
**investigation** [35] - 33:6, 175:22, 188:6, 188:9, 189:20, 190:2, 191:19, 193:22, 196:19, 204:16, 205:10, 210:14, 226:6, 227:5, 229:6, 229:7, 229:19, 231:22, 231:25, 239:4, 242:5, 242:20, 243:4, 243:12, 249:19, 250:5, 250:7, 252:23, 265:17, 270:8, 270:10, 274:9, 286:17, 286:18, 286:19
**Investigations** [1] - 187:16
**investigations** [9] - 14:25, 33:1, 175:19, 187:13, 191:22, 202:24, 211:13, 246:20, 261:23
**investigative** [6] - 211:6, 211:12, 255:17, 257:17, 265:14, 290:23
**investigator** [5] - 14:12, 15:4, 235:10, 235:19, 269:21
**investigators** [3] - 188:10, 207:5, 232:20
**Invicta** [7] - 116:4, 116:20, 117:2, 117:14, 117:15, 137:10, 219:11
**invoice** [11] - 83:5, 98:12, 117:23, 140:13, 141:5, 141:8, 143:25, 144:16, 144:18, 144:20, 274:6
**invoiced** [1] - 132:23
**invoices** [6] - 39:24, 102:24, 139:11, 139:14, 195:6, 274:11
**involve** [2] - 35:4, 282:15
**involved** [24] - 15:13, 33:13, 64:15, 178:16, 181:20, 189:20, 191:14, 201:7, 208:22, 210:13, 225:25,

226:15, 227:12, 227:14, 229:16, 231:6, 231:7, 239:18, 254:12, 272:16, 272:24, 276:4, 276:9, 282:21
**involvement** [2] - 246:17, 262:4
**involving** [22] - 14:25, 33:6, 46:3, 62:14, 100:13, 112:19, 177:24, 178:4, 191:19, 229:1, 230:9, 230:16, 231:1, 231:2, 233:4, 241:13, 248:15, 281:23, 282:1, 282:4, 283:1, 284:17
**IPC** [5] - 31:1, 91:1, 91:24, 99:19, 100:25
**issue** [14] - 72:5, 87:14, 166:11, 172:15, 203:18, 210:6, 254:19, 254:20, 254:22, 255:1, 255:3, 255:13, 286:7, 287:15
**Issue** [1] - 109:11
**issued** [3] - 207:22, 208:16, 285:10
**issues** [15] - 24:14, 111:25, 172:12, 181:6, 195:19, 197:2, 217:24, 234:7, 253:22, 291:7, 291:10, 291:11, 291:12, 291:17
**Item** [1] - 97:17
**item** [1] - 204:22
**items** [4] - 204:21, 215:3, 261:23, 289:17
**itself** [2] - 200:15, 218:24
**Ivlis** [1] - 1:18

## J

**Jacqueline** [2] - 1:13, 8:8
**James** [1] - 27:9
**Janssen** [1] - 110:11
**January** [12] - 46:25, 47:21, 133:11, 133:23, 140:15, 141:10, 143:10, 143:16, 162:17, 163:4, 271:20
**Jefferey** [1] - 109:17
**JeffereyAndersonDms@gmail.com** [1] - 110:21
**Jenny** [1] - 30:4
**Jersey** [2] - 54:21, 91:19
**Jesse** [3] - 119:12, 119:25, 120:6
**Jessica** [2] - 181:12, 184:5
**job** [19] - 14:11, 14:20, 129:21, 212:24, 213:11, 219:16, 220:6, 220:9, 237:11, 237:14, 239:19, 242:13, 242:17, 243:18, 244:3, 244:6, 244:15
**job'** [1] - 176:6
**jobs** [1] - 214:8
**John** [1] - 120:9
**Jon** [3] - 112:20, 113:11, 116:15
**Jonathan** [2] - 41:10, 41:13
**JonWeed@Safe** [1] - 62:15
**JUDGE** [1] - 1:10
**judge** [5] - 10:10, 71:20, 159:15, 166:7, 211:14
**Judge** [32] - 10:16, 12:4, 16:13, 17:6, 20:5, 23:1, 24:1, 25:16, 34:24, 35:18, 36:14, 40:17, 42:3, 42:15, 44:4, 45:16, 50:23, 53:2, 56:22, 71:18, 72:9, 72:24, 86:19, 89:22, 138:13, 159:7, 161:20, 162:9, 169:21, 211:14, 223:20, 233:17
**judge's** [1] - 222:19
**Juluca** [2] - 148:25, 149:4
**July** [22] - 32:18, 33:3, 33:12, 36:2, 50:17, 51:6, 54:7, 56:18, 59:17, 60:3, 60:7, 61:3, 61:17, 62:2, 62:15, 120:19, 121:19, 122:6, 129:20, 250:14, 273:5, 273:12
**June** [9] - 38:13, 138:5, 155:4, 155:21, 157:4, 157:24, 158:21, 161:5, 225:14
**Juror** [2] - 166:20, 167:11
**juror** [5] - 8:8, 8:20, 9:6, 222:3, 223:8
**JUROR** [4] - 166:23, 167:1, 167:4, 167:8
**juror's** [1] - 224:17
**jurors** [9] - 10:6, 11:9, 74:18, 126:1, 165:7, 166:9, 168:7, 222:24, 224:1
**JURY** [1] - 1:9
**jury** [67] - 8:4, 10:12, 11:9, 12:7, 12:14, 16:21, 17:25, 20:10, 23:7, 24:7, 25:23, 34:10, 40:24, 42:21, 44:8, 45:23, 54:1, 64:6, 71:2, 71:6, 74:15, 74:23, 76:19, 77:19, 86:25, 94:18, 123:9, 124:5, 126:6, 165:4, 165:6, 166:2, 166:13, 166:22, 166:25, 167:2, 167:10, 167:12, 167:16, 167:24, 180:3, 180:9, 181:23, 190:6, 192:24, 193:6, 221:15, 221:18, 221:20, 221:21, 222:9, 223:18, 224:4, 224:6, 225:21, 231:12, 232:17, 238:3, 243:3, 244:20, 256:16, 261:17, 266:14, 283:5, 289:9, 292:23, 293:3
**Jury** [6] - 12:12, 71:8, 74:21, 123:15, 126:4, 167:14
**Justice** [3] - 33:24, 33:25, 182:11
**Justice's** [1] - 33:22
**JW** [2] - 7:1, 113:2

## K

**Katelyn** [1] - 138:21
**KatelynMiller@PharmaSales.com** [1] - 139:6
**Katie** [2] - 32:17, 36:1
**keep** [24] - 52:1, 52:15, 55:4, 57:10, 85:5, 86:1, 86:2, 89:8, 89:12, 97:2, 98:7, 98:10, 98:15, 98:20, 99:3, 99:9, 121:24, 148:21, 160:14, 160:18, 163:2, 205:18, 268:23
**keeping** [1] - 37:21
**keeps** [1] - 205:13
**Kenzie** [5] - 57:22, 58:13, 58:15, 58:24, 59:9
**kept** [1] - 43:5
**keyword** [2] - 289:3
**keywords** [14] - 286:24, 287:3, 287:12, 287:23, 287:24, 288:9, 288:11, 288:13, 288:18, 288:19, 288:23, 288:25, 289:1, 289:8
**Khaim** [6] - 78:13, 78:15, 97:19, 264:22, 281:22, 281:25
**kill** [1] - 279:23
**killing** [1] - 134:9
**Kimchi** [35] - 18:12, 18:13, 21:6, 69:4, 69:16, 70:11, 70:20, 76:9, 76:24, 83:11, 84:5, 92:21, 102:7, 102:22, 103:2, 161:13, 163:6, 163:9, 220:16, 220:17, 220:18, 221:5, 221:11, 264:20, 264:21, 264:22, 265:5, 265:19, 265:21, 265:23, 266:1, 266:3, 266:5, 267:19, 267:21
**kind** [6] - 14:20, 117:17, 127:23, 140:4, 183:2, 216:3
**King** [32] - 18:12, 18:13, 21:6, 69:4, 69:16, 70:11, 70:20, 76:9, 76:24, 83:11, 92:21, 102:7, 102:22, 103:2, 161:13, 163:6, 220:16, 220:17, 221:5, 221:11, 264:20, 264:21, 264:22, 265:5, 265:18, 265:20, 265:23, 266:1, 266:3, 266:5, 267:19, 267:21
**KingKimchiConsulting012345@Gmail.com** [1] - 20:21
**knowing** [5] - 174:3, 193:8, 203:9, 285:4, 291:2
**knowingly** [2] - 149:23, 149:25
**knowledge** [8] - 74:6, 177:13, 177:14, 179:6, 180:10, 216:21, 277:22, 291:9
**known** [3] - 187:20, 241:25, 255:25
**knows** [12] - 187:5, 190:16, 190:24, 194:5, 194:20, 205:5, 207:21, 216:13, 227:5, 253:16, 267:20, 273:19
**Kozak** [1] - 88:2

## L

**label** [2] - 84:6, 139:12
**labeled** [1] - 70:1
**labels** [1] - 139:10
**lack** [1] - 65:12
**lady** [1] - 8:5
**landing** [1] - 108:17
**Landy** [3] - 50:16, 51:6, 51:8
**lapels** [1] - 189:7
**last** [18] - 8:5, 8:20, 9:17, 11:16, 32:6, 37:18, 37:20, 78:21, 83:18, 96:17, 119:1, 132:19, 156:16, 222:11, 225:11, 236:10, 236:12, 256:12
**lastly** [1] - 31:1
**LAUDERDALE** [1] - 1:2
**Lauderdale** [3] - 1:4, 1:22, 293:18
**Law** [1] - 15:5
**law** [6] - 99:15, 177:11, 187:22, 212:7, 225:24, 245:9
**laws** [1] - 14:13
**lawsuit** [6] - 49:17, 50:1, 170:24, 202:2, 284:17, 285:10
**lawsuits** [1] - 207:18
**lawyer** [2] - 43:10,

196:3
**lawyers** [1] - 190:17
**leading** [1] - 236:6
**leads** [1] - 242:19
**learn** [4] - 251:19, 259:9, 263:24, 264:25
**learned** [1] - 265:2
**learning** [1] - 251:10
**least** [18] - 11:3, 24:10, 49:20, 49:24, 70:13, 87:8, 90:4, 104:6, 112:8, 136:7, 174:16, 178:19, 178:21, 186:15, 225:24, 226:17, 235:20, 241:16
**leave** [2] - 13:3, 166:21
**leaving** [1] - 222:16
**ledgers** [2] - 209:24, 211:2
**leery** [2] - 114:12, 217:13
**left** [6] - 30:4, 88:6, 143:5, 166:24, 167:25, 253:15
**legal** [2] - 176:18, 177:5
**legally** [1] - 176:16
**Legend** [2] - 170:22, 171:6
**legit** [1] - 49:10
**legitimate** [1] - 220:7
**length** [1] - 240:9
**less** [3] - 84:24, 191:7, 227:18
**letter** [1] - 9:17
**level** [3] - 36:10, 78:11, 93:23
**Levitt** [1] - 245:9
**license** [8] - 39:24, 92:24, 104:13, 119:3, 174:21, 216:11, 217:2, 220:6
**licenses** [6] - 30:24, 117:16, 175:7, 175:9, 219:22
**licensing** [2] - 37:5, 37:22
**lie** [1] - 257:19
**lied** [4] - 217:1, 257:14, 258:22, 258:23
**life** [1] - 56:13
**likely** [2] - 46:22, 232:19
**limited** [5] - 231:4, 257:24, 262:4, 277:19, 284:20
**line** [22] - 10:2, 17:16, 38:23, 44:13, 47:1, 47:11, 64:13, 66:18, 67:15, 94:23, 97:17, 117:14, 147:17, 148:2, 170:2, 234:5, 257:23, 259:2, 271:1, 275:5, 278:10
**liner** [1] - 279:22
**link** [8] - 24:16, 25:8, 28:18, 28:20, 32:9, 77:3, 181:9, 181:12
**LinkedIn** [2] - 117:18, 219:23
**List** [1] - 28:12
**list** [6] - 47:8, 99:22, 170:6, 177:22, 207:16, 287:22
**listed** [57] - 17:16, 29:24, 30:2, 31:18, 31:21, 48:8, 49:16, 50:9, 54:22, 81:8, 82:5, 91:8, 91:18, 92:24, 94:20, 95:9, 100:25, 101:25, 110:8, 110:10, 110:19, 114:18, 114:22, 117:19, 129:17, 137:8, 139:9, 139:13, 141:3, 142:22, 143:2, 143:3, 143:15, 144:13, 146:11, 148:2, 148:13, 148:24, 149:14, 150:4, 150:8, 150:19, 152:9, 157:21, 158:2, 158:22, 164:12, 164:15, 185:16, 215:23, 256:25, 258:4, 258:17, 260:9, 260:14, 265:5, 288:19
**listen** [3] - 10:14, 211:15, 234:19
**listened** [1] - 22:6
**listening** [1] - 212:11
**listing** [2] - 70:14, 151:9
**lists** [2] - 108:16, 154:3
**lived** [2] - 104:15, 104:17
**LLC** [16] - 26:18, 31:21, 58:14, 68:17, 81:15, 81:17, 114:18, 137:12, 140:18, 141:4, 142:24, 144:11, 146:19, 147:17, 148:4, 149:6
**LMP** [2] - 81:11, 82:8
**load** [1] - 27:4
**Local** [3] - 30:7, 30:10, 30:22
**locate** [1] - 93:9
**located** [7] - 26:18, 104:18, 142:3, 142:5, 144:11, 145:16, 152:13
**location** [2] - 93:6, 93:8
**locations** [1] - 104:3
**logical** [1] - 123:7
**logo** [1] - 43:1
**LOL** [2] - 108:19, 163:9
**LOLOL** [1] - 93:22
**Look** [1] - 183:15
**look** [33] - 37:7, 81:5, 93:17, 100:16, 101:22, 110:6, 120:5, 134:23, 137:20, 165:24, 178:20, 180:20, 193:6, 210:1, 213:19, 216:8, 220:1, 225:1, 227:2, 228:2, 228:25, 229:4, 229:5, 229:9, 233:25, 244:15, 245:17, 257:12, 268:16, 286:7, 286:21, 286:23, 286:24
**looked** [26] - 57:4, 61:4, 70:13, 80:11, 84:18, 85:8, 90:23, 91:20, 93:4, 96:4, 97:15, 101:23, 103:24, 112:12, 113:7, 113:24, 139:20, 146:8, 164:19, 204:5, 204:8, 208:21, 227:17, 236:10, 239:19, 249:10
**looking** [27] - 18:6, 20:15, 21:7, 21:16, 22:5, 29:7, 58:21, 79:14, 87:5, 87:10, 95:18, 110:1, 114:8, 119:1, 130:6, 146:8, 157:23, 164:23, 200:8, 209:23, 226:11, 235:21, 239:18, 287:1, 287:9, 287:14
**looks** [4] - 59:11, 103:20, 188:18, 271:6
**lose** [2] - 222:23, 226:24
**losing** [6] - 10:6, 10:11, 10:12, 104:6, 223:7, 223:16
**loss** [1] - 138:8
**lost** [1] - 121:21
**loud** [1] - 198:13
**Love** [1] - 133:3
**Low** [3] - 24:18, 26:5, 181:16
**Low-Income** [3] - 24:18, 26:5, 181:16
**LPM** [1] - 64:9
**lunch** [2] - 123:10, 123:13
**lying** [1] - 112:5

## M

**ma'am** [1] - 274:3
**machine** [2] - 209:9, 209:18
**mad** [1] - 165:24
**made-up** [1] - 173:10
**mafia** [1] - 163:7
**Main** [1] - 64:10
**maker** [2] - 261:5, 261:18
**man** [1] - 120:4
**managed** [1] - 37:5
**manager** [1] - 94:22
**managers** [3] - 57:14, 105:23, 155:19
**managing** [1] - 36:25
**Mantilla** [1] - 1:18
**manuals** [1] - 214:3
**manufactured** [1] - 255:14
**manufacturer** [11] - 38:16, 143:3, 149:1, 150:5, 160:16, 173:10, 173:12, 173:16, 200:21, 215:6, 255:13
**manufacturers** [3] - 122:22, 123:4, 134:8
**manufacturing** [3] - 196:21, 254:19, 255:1
**Marc** [5] - 120:18, 121:19, 121:25, 162:16, 163:4
**March** [20] - 78:22, 93:18, 107:2, 107:13, 107:18, 109:9, 109:24, 111:13, 112:12, 135:11, 136:6, 138:22, 150:9, 152:10, 156:5, 156:18, 170:3, 214:12, 284:12
**marked** [14] - 16:24, 20:4, 22:14, 25:6, 25:11, 25:12, 40:8, 45:7, 52:18, 53:12, 168:11, 168:12, 168:25, 287:24
**market** [6] - 173:17, 181:20, 194:2, 284:18, 285:22, 286:2
**marking** [2] - 25:1, 25:4
**marks** [5] - 59:1, 114:15, 120:4, 121:8, 134:10
**marks,'brokers** [1] - 56:2
**marshal** [1] - 167:6
**Maryland** [7] - 19:17, 81:17, 104:19, 142:6, 143:7, 144:15, 149:13
**master** [1] - 170:6
**match** [1] - 150:10
**matches** [1] - 98:12
**math** [1] - 47:13
**matter** [6] - 100:6, 177:2, 196:16, 201:4, 223:19, 293:13
**matters** [1] - 270:5
**McKenzie** [1] - 68:11
**McKesson** [9] - 68:9, 83:12, 172:14, 194:15, 194:22, 195:5, 195:6, 195:23, 196:11
**McKesson's** [1] - 83:3
**mean** [15] - 9:15, 11:18, 11:20, 71:22, 72:7, 136:1, 177:22, 188:5, 193:16, 265:20, 266:18, 272:13, 274:20, 279:20, 286:18
**meaning** [1] - 122:21
**means** [10] - 173:23, 174:21, 183:4, 194:10, 202:7, 211:9, 211:10, 240:3, 251:14, 271:23
**meant** [7] - 202:11, 265:9, 265:13,

269:17, 269:22, 270:6
**meantime** [1] - 168:4
**med** [1] - 49:14
**media** [5] - 117:18, 118:4, 118:25, 219:23, 220:11
**Medicaid** [7] - 28:12, 33:14, 33:16, 182:2, 182:6, 182:7, 182:13
**medical** [1] - 8:9
**Medicare** [3] - 182:2, 182:7, 182:12
**medication** [4] - 49:6, 52:4, 172:17, 199:10
**medications** [9] - 28:8, 28:14, 62:5, 173:17, 174:22, 182:7, 194:23, 195:7, 197:3
**medicine** [9] - 174:2, 182:2, 186:24, 194:1, 194:16, 196:22, 197:1, 200:20, 208:23
**Medicine** [2] - 262:20, 262:23
**medicines** [3] - 173:12, 189:17, 209:2
**Meeting** [6] - 7:6, 7:7, 7:11, 129:14, 131:1, 155:11
**meeting** [13] - 85:22, 129:6, 129:25, 130:3, 130:5, 130:14, 130:16, 130:17, 131:8, 131:21, 155:3, 155:19, 222:19
**Meg** [2] - 134:18, 134:22
**Mellott** [5] - 51:16, 51:20, 52:3, 52:10, 137:19
**members** [4] - 71:2, 123:9, 221:15, 292:23
**memo** [1] - 288:17
**memorialize** [3] - 226:1, 229:25, 230:3
**memorialized** [1] - 226:10
**memorializing** [1] - 229:22
**memory** [3] - 198:21, 256:23, 277:2
**mental** [2] - 165:18, 165:23
**mention** [1] - 120:8
**mentioned** [7] - 34:11, 83:2, 207:1, 222:8, 223:10, 245:5, 251:3
**mentions** [1] - 8:22
**mess** [1] - 60:5
**message** [38] - 20:14, 20:16, 24:12, 24:15, 24:16, 24:19, 28:22, 28:24, 39:16, 41:10, 48:21, 49:9, 52:15, 55:7, 55:13, 55:25, 58:13, 59:16, 75:23, 75:24, 82:24, 88:6, 89:3, 97:15, 103:10, 104:10, 111:20, 113:11, 116:3, 116:12, 116:16, 117:25, 127:18, 128:23, 135:3, 220:19, 268:20, 268:25
**Message** [2] - 6:15, 162:24
**Messages** [42] - 3:12, 3:13, 6:7, 6:8, 6:9, 6:10, 6:11, 6:12, 6:13, 6:14, 6:16, 6:17, 6:18, 6:20, 6:21, 6:23, 6:24, 6:25, 7:4, 7:5, 7:12, 24:4, 39:13, 48:16, 50:25, 54:14, 56:25, 58:5, 59:24, 60:20, 75:18, 86:22, 107:9, 108:6, 119:19, 121:3, 122:13, 127:1, 128:14, 132:10, 133:18, 135:18
**messages** [128] - 18:22, 23:21, 24:10, 24:20, 24:21, 25:9, 29:1, 29:7, 32:9, 39:4, 41:4, 48:7, 48:19, 49:20, 49:25, 50:9, 50:16, 51:16, 54:6, 56:17, 57:4, 57:22, 58:10, 60:12, 61:2, 75:10, 79:12, 80:15, 83:14, 84:9, 84:18, 86:14, 87:9, 90:9, 92:13, 95:18, 96:17, 96:25, 97:15, 99:17, 99:21, 101:11, 104:24, 106:24, 107:23, 108:11, 109:25, 111:17, 112:8, 112:9, 112:19, 113:6, 113:7, 113:10, 113:23, 113:25, 114:1, 114:7, 115:9, 115:13, 116:1, 118:11, 119:11, 120:3, 120:11, 120:18, 122:5, 122:17, 126:18, 128:6, 130:7, 132:2, 132:25, 133:4, 133:10, 135:8, 135:22, 162:16, 177:17, 178:7, 178:14, 178:22, 180:19, 182:18, 204:10, 206:5, 208:1, 219:8, 227:9, 227:11, 227:12, 227:13, 227:18, 227:20, 228:25, 229:3, 230:6, 230:8, 230:9, 230:14, 230:16, 231:6, 246:25, 247:17, 247:18, 247:21, 248:2, 248:5, 251:18, 253:5, 256:5, 282:13, 282:16, 282:19, 282:20, 283:8, 283:13, 283:14, 283:22, 286:25, 287:23, 288:14, 289:2, 289:24, 290:18
**messaging** [1] - 57:17
**met** [1] - 224:25
**metadata** [2] - 164:8, 164:9
**methods** [1] - 290:15
**Miami** [9] - 1:16, 1:19, 141:4, 142:4, 143:13, 144:12, 145:17, 149:11, 150:11
**Michael** [3] - 50:16, 51:6, 51:8
**Microsoft** [2] - 148:8, 148:11
**mid** [2] - 174:16, 174:18
**mid-size** [2] - 174:16, 174:18
**middle** [1] - 117:21
**might** [14] - 9:11, 11:13, 11:14, 23:18, 51:4, 109:2, 160:7, 225:19, 226:2, 234:10, 238:13, 239:17, 282:24
**Miller** [1] - 138:22
**million** [20] - 33:16, 104:3, 127:12, 189:17, 190:13, 190:21, 191:2, 191:7, 202:14, 202:15, 206:24, 207:3, 209:6, 221:7, 226:22, 226:24, 227:2, 269:9
**million-plus** [2] - 127:12, 227:2
**millions** [2] - 27:4, 27:11
**mind** [11] - 74:6, 199:24, 235:25, 236:1, 236:3, 237:4, 239:8, 265:14, 268:3, 268:6
**mine** [2] - 41:15, 282:22
**minute** [4] - 74:7, 79:15, 165:2, 221:15
**minutes** [16] - 71:6, 71:13, 78:18, 78:25, 79:9, 80:10, 80:24, 80:25, 88:6, 97:21, 165:4, 165:8, 216:23, 221:19, 221:23, 277:1
**misbranded** [1] - 271:21
**mischaracterizes** [1] - 248:19
**misleading** [3] - 33:9, 74:1, 271:1
**misremembering** [1] - 9:10
**missed** [4] - 85:23, 87:20, 109:15, 216:25
**missing** [1] - 168:3
**mission** [1] - 27:6
**missions** [1] - 14:22
**mistake** [2] - 243:25, 289:3
**mistakes** [2] - 284:1, 284:4
**mistrial** [1] - 74:1
**misunderstood** [1] - 255:6
**Modern** [9] - 140:18, 141:4, 143:13, 143:14, 147:17, 148:4, 149:10, 149:11, 150:11
**modified** [1] - 197:4
**moment** [3] - 10:22, 30:14, 57:18
**momentum** [1] - 104:5
**Monday** [5] - 8:15, 8:18, 93:12, 104:8, 223:14
**money** [11] - 49:18, 50:2, 187:8, 188:3, 188:7, 188:15, 189:12, 189:23, 190:19, 198:9, 202:18
**month** [10] - 83:18, 104:2, 104:5, 112:11, 129:20, 132:19, 134:3, 134:9, 202:15, 269:9
**months** [5] - 93:8, 106:17, 131:10, 135:11, 135:23
**Morning** [1] - 67:18
**morning** [30] - 13:9, 13:21, 14:3, 14:4, 39:21, 64:9, 76:25, 89:2, 89:11, 97:6, 101:7, 109:12, 114:12, 134:1, 217:13, 223:14, 223:25, 227:16, 231:12, 236:24, 256:17, 261:17, 261:21, 276:2, 276:17, 276:19, 277:16, 278:17, 293:1, 293:9
**most** [3] - 27:10, 28:10, 223:13
**motion** [9] - 34:17, 46:9, 71:16, 72:2, 72:3, 72:4, 73:23, 73:24, 160:1
**move** [24] - 20:3, 42:1, 46:7, 46:21, 48:25, 53:19, 62:10, 66:20, 69:23, 105:2, 112:22, 115:11, 118:7, 124:11, 138:10, 139:22, 142:14, 150:21, 151:12, 153:10, 159:5, 159:18, 161:18, 199:7
**moved** [1] - 93:7
**moves** [77] - 16:12, 17:4, 22:24, 23:24, 25:14, 35:15, 36:12, 39:8, 40:15, 43:20, 44:2, 45:14, 48:11, 50:20, 52:25, 54:9, 56:20, 57:25, 59:19, 60:15, 61:19, 62:17, 63:7, 63:24, 64:24, 66:5, 67:8, 69:9,

75:13, 76:12, 78:4, 86:17, 94:11, 102:11, 103:13, 105:14, 107:4, 108:1, 115:16, 117:4, 118:14, 119:14, 120:22, 122:8, 126:21, 128:9, 129:9, 130:20, 132:5, 133:13, 135:13, 136:19, 138:24, 140:19, 141:18, 144:3, 145:6, 145:24, 147:19, 151:25, 153:1, 153:16, 154:5, 154:18, 155:6, 156:7, 156:20, 157:7, 158:12, 162:7, 162:19, 163:21, 168:18, 169:5, 169:18, 170:13, 171:19
**moving** [4] - 52:1, 65:20, 73:25, 111:23
**MR** [1142] - 3:3, 3:4, 3:4, 3:5, 3:5, 3:6, 3:6, 9:2, 9:4, 9:5, 9:10, 9:22, 10:10, 10:18, 10:22, 10:24, 11:7, 11:12, 11:25, 12:4, 12:9, 12:15, 12:16, 12:17, 13:11, 13:23, 13:25, 14:2, 15:23, 16:1, 16:2, 16:11, 16:13, 16:15, 16:19, 16:23, 16:25, 17:4, 17:6, 17:7, 17:10, 17:12, 17:23, 18:1, 18:3, 18:5, 18:8, 18:9, 18:16, 18:21, 19:11, 19:13, 19:21, 19:23, 20:3, 20:5, 20:6, 20:9, 20:11, 20:18, 20:19, 20:24, 21:1, 21:9, 21:11, 21:19, 21:21, 21:24, 22:1, 22:8, 22:11, 22:12, 22:23, 22:25, 23:1, 23:6, 23:9, 23:16, 23:20, 23:24, 24:1, 24:2, 24:6, 24:8, 24:23, 24:25, 25:5, 25:7, 25:14, 25:16, 25:18, 25:23, 25:25, 26:21, 26:22, 27:14, 27:15, 27:23, 27:25, 28:17, 28:19, 29:4, 29:6, 29:10, 29:11, 29:18, 31:12, 31:13, 31:16, 31:17, 31:24, 32:1, 32:12, 32:15, 33:4, 33:9, 33:18, 33:19, 34:9, 34:16, 34:17, 34:19, 34:24, 35:2, 35:9, 35:11, 35:15, 35:17, 35:18, 35:22, 35:23, 36:4, 36:6, 36:12, 36:14, 36:15, 36:19, 36:21, 36:23, 37:7, 37:9, 37:13, 37:14, 38:1, 38:3, 38:9, 38:11, 38:14, 38:15, 38:20, 38:22, 39:1, 39:3, 39:8, 39:10, 39:11, 39:15, 39:18, 40:1, 40:2, 40:6, 40:7, 40:15, 40:17, 40:18, 40:22, 41:1, 41:3, 41:7, 41:9, 41:19, 41:22, 42:1, 42:3, 42:6, 42:12, 42:15, 42:17, 42:20, 42:24, 43:8, 43:9, 43:13, 43:15, 43:20, 43:23, 44:2, 44:4, 44:5, 44:8, 44:10, 44:15, 44:16, 44:24, 44:25, 45:4, 45:5, 45:14, 45:16, 45:17, 45:21, 45:25, 46:2, 46:6, 46:8, 46:10, 46:13, 46:15, 46:16, 47:5, 47:7, 47:18, 47:20, 48:4, 48:6, 48:11, 48:13, 48:14, 48:18, 50:4, 50:8, 50:13, 50:15, 50:20, 50:22, 50:23, 51:2, 51:3, 51:13, 51:17, 51:19, 51:23, 52:2, 52:7, 52:9, 52:14, 52:17, 52:25, 53:2, 53:3, 53:7, 53:10, 53:18, 53:20, 53:21, 53:25, 54:3, 54:5, 54:9, 54:11, 54:12, 54:16, 54:17, 55:3, 55:5, 56:7, 56:8, 56:14, 56:16, 56:20, 56:22, 56:23, 57:2, 57:6, 57:8, 57:19, 57:21, 57:25, 58:2, 58:3, 58:7, 58:9, 59:5, 59:6, 59:13, 59:15, 59:19, 59:21, 59:22, 60:1, 60:9, 60:11, 60:15, 60:17, 60:18, 60:22, 60:24, 61:12, 61:15, 61:19, 61:21, 61:22, 61:25, 62:1, 62:9, 62:13, 62:17, 62:19, 62:20, 62:23, 62:25, 63:2, 63:3, 63:7, 63:9, 63:10, 63:13, 63:17, 63:20, 63:24, 64:1, 64:2, 64:5, 64:7, 64:11, 64:12, 64:18, 64:20, 64:24, 65:1, 65:2, 65:5, 65:24, 66:1, 66:5, 66:7, 66:8, 66:11, 66:13, 66:15, 66:20, 66:22, 66:23, 67:1, 67:4, 67:8, 67:10, 67:11, 67:13, 67:14, 67:21, 67:24, 68:19, 68:20, 69:1, 69:3, 69:9, 69:11, 69:12, 69:15, 69:21, 70:1, 70:4, 70:8, 70:12, 70:22, 71:1, 71:18, 71:19, 71:20, 71:22, 71:23, 72:9, 72:13, 72:16, 72:24, 73:6, 73:10, 73:17, 73:19, 73:25, 74:16, 74:17, 74:24, 74:25, 75:1, 75:6, 75:9, 75:13, 75:15, 75:16, 75:20, 75:22, 76:6, 76:8, 76:12, 76:14, 76:15, 76:18, 76:20, 77:6, 77:11, 78:4, 78:6, 78:7, 78:10, 79:11, 79:13, 79:17, 79:19, 79:21, 79:22, 80:5, 80:8, 80:14, 80:16, 80:17, 80:18, 80:19, 80:20, 81:2, 81:4, 81:18, 81:20, 81:25, 82:4, 82:20, 82:22, 83:8, 83:10, 83:13, 83:15, 83:23, 83:24, 84:3, 84:4, 84:13, 84:15, 84:21, 84:22, 85:2, 85:6, 85:13, 85:15, 86:1, 86:3, 86:10, 86:13, 86:17, 86:19, 86:20, 86:24, 87:2, 87:22, 87:25, 88:17, 88:20, 89:16, 89:19, 89:22, 89:23, 89:25, 90:3, 90:14, 90:18, 91:4, 91:7, 92:5, 92:7, 92:16, 92:19, 94:3, 94:5, 94:11, 94:13, 94:14, 94:17, 94:19, 95:7, 95:8, 95:24, 96:2, 96:20, 96:24, 97:2, 97:3, 97:10, 97:13, 97:22, 97:24, 98:5, 98:9, 98:15, 98:16, 98:20, 98:21, 99:3, 99:4, 99:9, 99:12, 100:1, 100:3, 100:16, 100:18, 101:3, 101:4, 101:18, 101:20, 102:4, 102:6, 102:11, 102:13, 102:14, 102:17, 102:19, 103:7, 103:9, 103:13, 103:15, 103:16, 103:19, 103:21, 104:21, 104:23, 105:2, 105:4, 105:5, 105:8, 105:10, 105:14, 105:16, 105:17, 105:20, 105:21, 106:2, 106:3, 106:14, 106:16, 106:21, 106:23, 107:4, 107:6, 107:7, 107:11, 107:12, 107:20, 107:22, 108:1, 108:3, 108:4, 108:8, 108:9, 109:5, 109:8, 110:4, 110:5, 111:6, 111:7, 111:12, 111:16, 112:16, 112:18, 112:22, 112:24, 112:25, 113:4, 114:2, 114:4, 115:6, 115:8, 115:10, 115:12, 115:16, 115:18, 115:19, 115:23, 115:25, 116:18, 116:19, 116:23, 116:25, 117:4, 117:6, 117:7, 117:11, 118:7, 118:10, 118:14, 118:16, 118:17, 118:20, 118:22, 119:8, 119:10, 119:14, 119:16, 119:17, 119:21, 119:22, 120:14, 120:17, 120:22, 120:24, 120:25, 121:2, 121:5, 121:6, 121:12, 121:14, 121:17, 121:18, 122:2, 122:4, 122:8, 122:10, 122:11, 122:15, 122:18, 123:7, 124:6, 124:10, 124:14, 124:18, 124:20, 124:22, 124:24, 125:1, 125:3, 125:5, 125:7, 125:9, 125:11, 125:13, 125:15, 125:17, 125:19, 125:21, 126:7, 126:8, 126:9, 126:14, 126:17, 126:21, 126:23, 126:24, 127:3, 127:4, 127:6, 127:8, 127:14, 127:15, 127:21, 127:22, 128:3, 128:5, 128:9, 128:11, 128:12, 128:16, 128:18, 128:25, 129:5, 129:9, 129:11, 129:12, 129:16, 130:11, 130:13, 130:19, 130:21, 130:22, 130:23, 130:24, 131:3, 131:6, 131:13, 131:15, 131:19, 131:20, 131:24, 132:1, 132:5, 132:7, 132:8, 132:12, 132:14, 133:7, 133:9, 133:13, 133:15, 133:16, 133:20, 133:21, 135:5, 135:7, 135:13, 135:15, 135:16, 135:20, 136:13, 136:15, 136:19, 136:21, 136:22, 137:1, 138:1, 138:3, 138:10, 138:12, 138:13, 138:15, 138:18, 138:20, 138:24, 139:1, 139:2, 139:5, 139:16, 139:18, 139:22, 139:24, 139:25, 140:3, 140:8, 140:10, 140:19, 140:21, 140:22, 141:1, 141:11, 141:13, 141:18, 141:20, 141:21, 141:24, 142:8, 142:10, 142:14, 142:16, 142:17, 142:21, 143:21, 143:23, 144:3, 144:5, 144:6,

144:9, 144:10, 144:24, 145:1, 145:6, 145:8, 145:9, 145:12, 145:19, 145:21, 145:24, 146:1, 146:2, 146:6, 147:12, 147:14, 147:19, 147:21, 147:22, 148:1, 148:14, 148:15, 148:18, 148:19, 148:21, 148:23, 149:17, 149:19, 150:1, 150:3, 150:15, 150:17, 150:21, 150:23, 150:24, 151:3, 151:5, 151:7, 151:12, 151:14, 151:15, 151:19, 151:21, 151:25, 152:2, 152:3, 152:7, 152:8, 152:21, 152:23, 153:1, 153:3, 153:4, 153:8, 153:10, 153:12, 153:16, 153:18, 153:19, 153:23, 154:1, 154:5, 154:7, 154:8, 154:12, 154:14, 154:18, 154:20, 154:21, 154:25, 155:2, 155:6, 155:8, 155:9, 155:13, 155:25, 156:2, 156:7, 156:9, 156:10, 156:13, 156:15, 156:20, 156:22, 156:23, 157:1, 157:3, 157:7, 157:9, 157:10, 157:14, 157:17, 157:20, 158:5, 158:8, 158:12, 158:14, 158:15, 158:19, 158:24, 159:1, 159:5, 159:7, 159:10, 159:15, 159:16, 159:18, 159:21, 159:23, 160:2, 160:4, 160:9, 160:13, 160:15, 160:18, 160:20, 161:9, 161:12, 161:18, 161:20, 161:21, 162:1, 162:3, 162:7, 162:9, 162:10, 162:13, 162:15, 162:19, 162:21, 162:22, 163:1, 163:3, 163:12, 163:14, 163:21, 163:23, 163:24, 164:3, 164:21, 165:16, 165:20, 166:3, 166:7, 166:15, 167:17, 167:18, 167:19, 168:4, 168:9, 168:10, 168:18, 168:20, 168:24, 169:5, 169:7, 169:8, 169:12, 169:14, 169:18, 169:20, 169:21, 169:24, 170:1, 170:7, 170:9, 170:13, 170:15, 170:16, 170:19, 171:13, 171:15, 171:19, 171:21, 171:22, 172:1, 172:19, 172:22, 174:5, 174:7, 175:2, 175:4, 176:7, 176:11, 176:18, 176:22, 177:4, 177:10, 179:3, 179:5, 179:14, 179:17, 180:5, 180:8, 180:22, 181:2, 181:12, 181:14, 183:21, 183:24, 184:5, 184:7, 185:21, 185:25, 186:3, 186:6, 186:16, 186:19, 187:4, 187:7, 188:21, 188:23, 189:1, 190:8, 190:11, 190:14, 190:20, 190:23, 191:1, 191:9, 191:12, 193:1, 193:3, 194:4, 194:7, 194:18, 194:24, 196:1, 196:7, 199:16, 199:20, 199:21, 199:24, 200:1, 200:10, 200:12, 200:22, 200:25, 201:14, 201:15, 201:19, 201:21, 201:23, 201:25, 202:4, 202:6, 202:9, 202:12, 202:20, 202:22, 203:11, 203:13, 205:20, 205:24, 207:20, 207:24, 208:6, 208:8, 208:9, 208:10, 208:11, 209:11, 209:13, 210:19, 210:21, 211:3, 211:5, 211:23, 212:1, 212:3, 212:5, 212:16, 212:19, 213:16, 213:18, 213:22, 213:23, 214:16, 214:18, 216:12, 216:15, 217:4, 217:5, 217:8, 217:10, 218:23, 219:1, 219:2, 220:1, 220:3, 220:12, 220:14, 221:13, 222:4, 222:12, 222:16, 222:21, 222:24, 223:3, 223:6, 223:12, 223:19, 224:7, 224:8, 224:9, 224:20, 224:22, 233:13, 233:16, 234:1, 234:4, 235:13, 235:16, 236:15, 236:17, 237:7, 237:10, 237:18, 237:22, 238:5, 238:7, 238:22, 239:1, 240:8, 240:11, 241:17, 241:21, 244:8, 244:10, 245:18, 245:21, 246:10, 246:13, 247:11, 247:15, 248:18, 248:22, 250:15, 250:19, 251:12, 251:17, 251:25, 252:6, 252:11, 252:15, 257:22, 258:1, 258:25, 259:4, 259:13, 259:21, 260:5, 260:7, 261:8, 261:11, 262:2, 262:7, 264:16, 264:18, 267:5, 267:7, 267:10, 267:13, 268:16, 268:18, 268:22, 268:24, 269:5, 269:6, 269:23, 270:2, 270:13, 270:14, 270:25, 271:3, 272:19, 272:23, 273:6, 273:9, 273:18, 273:22, 274:3, 274:5, 274:12, 274:15, 275:4, 275:7, 277:5, 277:9, 277:18, 277:21, 277:23, 278:1, 278:8, 278:15, 279:17, 279:21, 280:20, 280:24, 284:19, 284:23, 288:5, 288:7, 289:4, 289:7, 292:21

**mrosen0571@AOL.com** [1] - 147:16

**multiple** [3] - 65:14, 117:16, 219:21

**Musial** [1] - 13:2

**MVE** [1] - 119:24

## N

**Nalley** [5] - 57:22, 58:13, 58:15, 58:24, 59:9

**name** [20] - 13:19, 13:21, 26:1, 30:22, 101:10, 110:8, 114:18, 137:16, 163:7, 170:5, 171:5, 177:18, 178:18, 178:23, 179:7, 257:5, 258:11, 260:8, 265:11, 265:16

**named** [6] - 62:14, 107:24, 109:17, 158:6, 184:4, 184:13

**names** [5] - 30:6, 30:23, 30:25, 56:3, 220:20

**narrow** [1] - 175:14

**National** [1] - 38:7

**national** [1] - 36:25

**nature** [1] - 74:1

**NDC** [1] - 93:14

**NDC's** [1] - 31:3

**NE** [1] - 1:15

**nearly** [1] - 112:11

**necessarily** [6] - 200:23, 201:1, 231:14, 270:7, 272:12, 272:15

**need** [51] - 13:3, 19:17, 23:18, 24:13, 28:22, 32:4, 46:21, 48:22, 48:24, 51:4, 56:2, 62:4, 63:16, 65:18, 65:19, 65:22, 67:20, 83:3, 83:21, 86:7, 93:10, 93:12, 96:7, 96:13, 99:6, 99:15, 99:16, 112:6, 115:2, 119:24, 122:20, 129:2, 131:8, 134:23, 177:22, 181:5, 198:16, 199:1, 199:6, 218:11, 234:2, 234:7, 240:4, 253:6, 253:18, 256:9, 257:3, 257:12, 258:18, 263:4, 276:23

**needs** [8] - 8:11, 8:15, 55:18, 77:2, 96:9, 183:11, 184:3

**never** [13] - 30:22, 136:8, 172:15, 182:2, 194:8, 231:23, 236:10, 247:24, 264:3, 285:13, 285:21, 286:1, 287:25

**New** [13] - 26:15, 26:18, 27:12, 28:12, 31:20, 31:23, 54:21, 64:10, 81:11, 81:13, 81:15, 91:19, 142:24

**new** [10] - 13:8, 27:6, 82:5, 82:16, 91:8, 91:23, 92:9, 101:25, 109:13, 134:10

**news** [4] - 108:15, 108:16, 113:11, 113:13

**News** [2] - 7:1, 113:2

**news/bad** [1] - 108:15

**newspaper** [2] - 26:2, 181:13

**next** [76] - 13:10, 24:15, 26:21, 27:23, 30:16, 41:8, 49:8, 51:2, 51:17, 51:24, 55:11, 55:24, 57:6, 58:8, 59:5, 60:22, 60:25, 68:5, 68:12, 68:14, 71:25, 72:7, 87:1, 87:17, 93:6, 94:25, 95:25, 96:3, 96:11, 100:17, 106:5, 106:10, 108:10, 113:16, 118:21, 119:21, 121:12, 121:17, 121:22, 122:16, 127:3, 127:6, 127:14, 127:16, 127:21, 128:19, 133:22, 134:2, 134:8, 134:20, 134:21, 136:4, 136:5, 137:7, 143:6,

143:11, 143:15, 146:25, 147:1, 155:22, 160:6, 160:7, 160:24, 163:1, 163:2, 171:4, 172:8, 214:25, 215:9, 215:11, 265:5, 265:11, 265:16, 267:19, 269:5, 274:3
**Nice** [2] - 108:19, 133:1
**nice** [2] - 117:15, 123:13
**Nicholls** [1] - 41:13
**Nicholls'** [1] - 41:10
**Nicole** [9] - 133:10, 133:22, 134:12, 134:21, 135:2, 135:9, 135:22, 135:24, 136:10
**night** [1] - 222:17
**nine** [2] - 222:17, 228:12
**NO** [1] - 1:2
**none** [4] - 34:2, 112:10, 161:1, 178:22
**noon** [1] - 12:24
**notation** [1] - 204:3
**note** [6] - 8:14, 8:24, 101:7, 165:15, 165:17, 224:13
**Notes** [6] - 7:6, 7:7, 7:11, 129:14, 131:1, 155:11
**notes** [11] - 8:4, 12:21, 129:6, 129:25, 130:3, 130:5, 130:14, 130:17, 131:21, 155:3, 155:19
**nothing** [10] - 11:7, 29:25, 33:5, 73:8, 123:20, 178:10, 221:22, 255:11, 255:15, 293:8
**notice** [2] - 183:10, 184:2
**notification** [4] - 163:15, 163:16, 164:13, 172:5
**Notification** [2] - 7:8, 164:1
**November** [3] - 8:22, 10:7, 104:5
**NP** [1] - 103:3
**Number** [3] - 3:11, 222:10, 274:3
**number** [20] - 19:1, 19:6, 27:6, 30:1, 30:2, 30:9, 30:11, 31:3, 83:4, 83:5, 93:5, 124:8, 142:25, 148:16, 157:16, 171:2, 173:10, 174:12, 191:20, 226:23
**numbers** [6] - 18:14, 69:18, 83:22, 127:12, 131:7, 134:10
**NW** [1] - 1:19
**NYBOP** [1] - 93:10
**NYSED.gov** [1] - 30:23

## O

**oath** [3] - 74:12, 124:2, 240:23
**object** [4] - 29:18, 42:15, 259:14, 259:17
**objected** [1] - 72:2
**objection** [265] - 8:25, 9:2, 9:5, 16:14, 17:6, 17:7, 20:5, 20:6, 22:25, 23:2, 24:1, 24:2, 25:16, 25:17, 25:18, 25:19, 33:4, 34:10, 34:24, 35:17, 35:18, 35:19, 36:14, 36:15, 39:10, 39:11, 42:17, 44:4, 44:5, 48:13, 48:14, 50:22, 50:23, 53:2, 53:3, 53:20, 53:21, 54:11, 54:12, 56:22, 56:23, 58:2, 58:3, 59:21, 59:22, 60:17, 60:18, 61:21, 61:22, 62:19, 62:20, 63:9, 63:10, 64:1, 64:2, 65:1, 65:2, 66:7, 66:8, 66:22, 66:23, 67:10, 67:11, 69:11, 69:12, 70:3, 70:4, 75:15, 75:16, 76:14, 76:15, 78:6, 78:7, 86:19, 86:20, 89:20, 89:22, 89:23, 94:13, 94:14, 102:13, 102:14, 103:15, 103:16, 105:4, 105:5, 105:16, 105:17, 107:6, 107:7, 108:3, 108:4, 112:24, 112:25, 115:18, 115:19, 117:6, 117:7, 118:16, 118:17, 119:16, 119:17, 120:24, 122:10, 122:11, 126:23, 126:24, 128:11, 128:12, 129:11, 129:12, 130:23, 130:24, 132:7, 132:8, 133:15, 133:16, 135:15, 135:16, 136:21, 136:22, 138:12, 138:13, 139:1, 139:2, 139:24, 139:25, 140:21, 140:22, 141:20, 141:21, 142:16, 142:17, 144:5, 144:6, 145:8, 145:9, 146:1, 146:2, 147:21, 147:22, 150:23, 150:24, 151:14, 151:15, 152:2, 152:3, 153:3, 153:4, 153:18, 153:19, 154:7, 154:8, 154:20, 154:21, 155:8, 155:9, 156:9, 156:10, 156:22, 156:23, 157:9, 157:10, 158:14, 158:15, 161:20, 161:21, 162:9, 162:10, 162:21, 162:22, 163:23, 163:24, 169:20, 169:21, 170:15, 170:16, 171:21, 171:22, 174:5, 175:2, 176:7, 176:18, 177:4, 179:3, 179:14, 180:5, 183:21, 185:21, 186:3, 186:16, 187:4, 188:21, 190:8, 190:14, 190:23, 191:9, 193:1, 194:4, 194:18, 196:1, 199:16, 199:24, 200:10, 200:22, 201:14, 202:4, 202:9, 202:20, 203:11, 205:20, 207:20, 208:6, 209:11, 210:19, 211:3, 211:23, 212:16, 216:12, 218:23, 220:12, 233:13, 235:13, 236:15, 237:7, 237:18, 238:5, 238:22, 240:8, 241:17, 241:20, 244:8, 245:18, 246:10, 247:11, 248:18, 250:15, 251:12, 251:25, 252:11, 257:22, 258:25, 259:13, 259:15, 260:5, 261:8, 262:2, 264:16, 267:5, 267:10, 269:23, 272:19, 273:6, 273:18, 274:12, 275:4, 277:5, 277:18, 277:23, 278:8, 279:17, 280:20, 284:19, 288:5, 289:4
**objections** [1] - 280:3
**obligated** [1] - 176:16
**obligation** [2] - 240:22, 240:23
**obnoxious** [1] - 61:1
**obtain** [1] - 210:10
**obtained** [1] - 207:11
**obvious** [1] - 34:14
**obviously** [6] - 10:6, 108:12, 165:20, 183:19, 200:21, 239:12
**occasion** [1] - 264:7
**October** [34] - 1:5, 8:9, 43:16, 44:12, 45:2, 90:19, 90:22, 91:5, 91:10, 92:14, 92:20, 93:16, 94:9, 95:17, 96:3, 97:1, 97:5, 97:14, 98:4, 100:4, 101:6, 102:9, 103:11, 103:23, 104:11, 104:25, 106:18, 163:16, 164:14, 164:17, 171:17, 172:4, 172:9
**odd** [1] - 117:17
**OF** [3] - 1:1, 1:4, 1:9
**offensive** [5] - 49:12, 198:14, 202:2, 202:8, 220:23
**offer** [2] - 9:20, 134:13
**Office** [3] - 14:7, 14:16, 187:16
**office** [4] - 219:16, 223:22, 232:20, 246:20
**officer** [1] - 166:2
**OFFICER** [13] - 71:7, 74:20, 123:14, 126:3, 165:5, 165:9, 165:12, 167:13, 221:20, 223:10, 223:24, 224:3, 293:2
**officer's** [1] - 220:9
**offices** [1] - 225:2
**Official** [2] - 2:3, 293:16
**often** [6] - 28:16, 191:21, 205:17, 205:23, 205:25, 206:2
**OIG** [1] - 15:8
**Olson** [1] - 167:24
**Olympia** [12] - 94:7, 94:21, 94:24, 95:10, 95:16, 96:18, 197:23, 198:1, 198:5, 262:24, 263:1, 263:4
**Omom** [1] - 155:22
**once** [1] - 172:17
**one** [127] - 8:5, 9:20, 9:21, 9:25, 11:16, 11:20, 12:1, 14:22, 18:19, 26:12, 28:5, 28:14, 29:14, 34:22, 39:23, 42:3, 47:8, 47:14, 47:15, 55:8, 55:13, 59:2, 61:4, 64:5, 68:9, 68:12, 68:14, 71:18, 76:3, 77:25, 80:17, 85:9, 91:14, 92:10, 93:13, 93:14, 94:18, 95:17, 95:20, 96:17, 113:6, 120:1, 124:12, 127:7, 127:12, 132:16, 134:18, 146:8, 152:9, 156:16, 160:6, 160:7, 160:13, 161:7, 165:7, 168:3, 170:24, 172:5, 172:13, 174:1, 180:18, 181:3, 181:24, 185:2, 185:9, 186:9, 186:23, 188:6, 188:14, 188:16, 188:24, 191:15, 191:20, 192:21, 194:15, 198:18, 198:19, 203:3, 206:24, 207:1, 207:3, 207:5, 208:25, 209:6, 209:20, 211:6, 214:24, 216:22, 217:6, 219:3, 219:6,

219:8, 219:13, 220:20, 223:21, 226:7, 226:13, 226:22, 226:24, 228:4, 228:11, 230:10, 230:23, 237:2, 239:20, 241:14, 244:24, 249:22, 250:8, 250:10, 252:20, 256:25, 257:11, 264:3, 266:19, 267:22, 271:17, 271:19, 272:1, 275:10, 279:4, 279:22, 285:9, 285:17
**One** [1] - 271:22
**one-liner** [1] - 279:22
**one-week** [1] - 12:1
**ones** [15] - 82:8, 91:20, 135:23, 145:2, 161:1, 177:9, 178:18, 258:6, 279:6, 283:16, 283:20, 283:23, 290:8, 290:19, 290:21
**online** [1] - 44:21
**Open** [1] - 64:22
**open** [11] - 32:5, 51:23, 80:15, 80:19, 81:2, 81:25, 91:4, 98:5, 160:22, 173:17
**opened** [9] - 49:5, 52:11, 179:19, 179:22, 179:25, 199:10, 203:5, 203:10, 203:21
**operating** [12] - 93:19, 156:4, 213:4, 213:7, 213:10, 213:17, 213:21, 213:24, 214:2, 214:4, 214:10, 247:22
**Operation** [1] - 26:24
**operations** [2] - 37:12, 37:25
**opinion** [3] - 218:20, 220:10, 266:15
**opp** [1] - 46:22
**opposite** [2] - 73:5, 192:22
**option** [1] - 134:14
**order** [8] - 95:3, 95:4, 99:10, 134:18, 188:11, 203:5, 203:10, 204:5
**Order** [1] - 8:1
**ordered** [1] - 170:25
**ordering** [1] - 65:20
**orders** [1] - 99:6
**Orders** [1] - 64:22
**ordinarily** [1] - 225:24
**organization** [2] - 176:9
**organizations** [1] - 176:4
**origin** [1] - 34:7
**original** [1] - 93:2
**originally** [2] - 33:14, 59:11
**originated** [1] - 34:3
**outside** [14] - 190:8, 191:10, 194:18, 203:11, 205:20, 211:24, 212:17, 223:20, 269:24, 271:22, 273:6, 275:5, 290:19, 290:21
**outweighed** [1] - 74:5
**overall** [2] - 37:12, 37:25
**overhear** [1] - 166:3
**overruled** [49] - 29:21, 33:11, 34:25, 42:18, 176:8, 176:20, 177:7, 179:15, 180:6, 188:25, 193:2, 194:5, 194:21, 196:5, 200:24, 202:10, 203:12, 205:21, 233:15, 235:15, 236:16, 237:8, 237:20, 238:6, 238:25, 240:10, 246:11, 247:13, 248:21, 250:17, 251:13, 252:2, 252:12, 259:3, 259:15, 259:18, 261:9, 262:5, 267:12, 269:25, 271:2, 272:21, 273:8, 273:20, 274:13, 278:12, 279:18, 280:22, 284:21
**oversight** [1] - 176:13
**overt** [1] - 50:9
**overview** [4] - 14:14, 227:3, 250:4, 250:6
**own** [1] - 177:9
**owned** [4] - 148:10, 186:11, 186:12, 186:14
**owner** [9] - 170:22, 176:16, 176:21, 177:1, 177:3, 177:8, 184:16, 184:25, 186:1
**owners** [3] - 176:14, 182:1, 184:18
**owns** [2] - 17:21, 18:11

## P

**P-A-R-E-K-H** [1] - 171:9
**p.m** [6] - 79:7, 80:3, 80:9, 80:12, 81:23, 104:2
**package** [2] - 84:2, 84:19
**PAGE** [1] - 3:2
**page** [110] - 19:12, 21:19, 26:21, 27:17, 27:24, 31:16, 31:25, 32:19, 38:14, 38:20, 39:16, 41:8, 42:22, 43:22, 44:15, 47:5, 47:19, 49:8, 50:11, 51:2, 51:4, 51:17, 52:1, 52:7, 54:18, 55:4, 55:11, 55:24, 56:7, 57:7, 58:8, 59:5, 60:23, 64:6, 67:23, 68:3, 75:21, 77:8, 77:10, 77:19, 78:12, 79:12, 82:21, 83:13, 83:23, 84:14, 84:21, 85:3, 85:13, 87:1, 87:17, 88:25, 90:4, 90:16, 92:18, 93:10, 95:7, 96:1, 96:21, 96:23, 97:23, 98:7, 100:17, 106:2, 107:11, 108:10, 110:4, 111:6, 114:17, 114:20, 118:21, 119:21, 121:5, 121:12, 121:17, 121:22, 122:16, 127:3, 127:6, 127:14, 127:21, 128:17, 132:13, 133:20, 134:20, 136:4, 137:7, 137:15, 141:2, 144:9, 148:14, 148:18, 148:22, 155:19, 160:13, 163:1, 163:2, 171:4, 179:11, 214:25, 215:9, 215:11, 225:8, 251:5, 269:5, 274:4
**Page** [1] - 3:11
**pages** [7] - 54:19, 230:14, 230:20, 230:21, 230:23, 230:24, 231:2
**Pages** [1] - 1:8
**paid** [1] - 190:21
**pain** [1] - 39:23
**Palm** [2] - 8:10, 222:20
**paperwork** [4] - 83:22, 113:14, 113:22, 116:7
**paragraph** [5] - 10:11, 26:23, 27:16, 32:20, 32:24
**paragraphs** [5] - 28:1, 28:4, 34:20, 34:21, 35:3
**Parekh** [3] - 171:9, 171:10, 171:11
**parentheses** [2] - 83:4, 136:2
**Park** [5] - 31:20, 31:23, 81:15, 110:14, 142:24
**part** [59] - 10:19, 18:18, 33:20, 33:22, 36:25, 37:10, 41:10, 69:25, 70:1, 73:4, 73:21, 110:17, 110:22, 110:23, 129:4, 131:14, 175:5, 176:15, 184:16, 221:2, 228:1, 229:17, 230:23, 231:22, 231:25, 232:1, 232:21, 233:10, 233:20, 233:22, 239:18, 240:23, 242:17, 242:22, 243:4, 245:1, 246:21, 247:17, 249:9, 251:18, 253:20, 253:21, 253:24, 256:5, 258:2, 263:6, 263:10, 263:18, 270:10, 270:12, 272:3, 273:23, 278:3, 278:19, 280:25, 282:6, 282:8, 286:14
**participants** [1] - 230:10
**participate** [2] - 203:15, 270:7
**participated** [3] - 14:24, 205:10, 246:19
**particular** [10] - 19:6, 26:2, 152:9, 164:8, 176:14, 203:20, 203:21, 242:6, 261:6, 261:12
**parties'** [1] - 165:19
**partner** [2] - 106:12, 186:10
**partners** [2] - 185:9, 186:9
**parts** [1] - 256:16
**past** [3] - 46:22, 181:19, 204:19
**pat** [1] - 138:5
**Pat** [60] - 24:19, 29:12, 35:24, 41:14, 50:16, 56:17, 59:16, 60:2, 60:12, 73:2, 75:11, 75:25, 103:22, 104:24, 107:23, 109:9, 109:12, 111:24, 112:7, 112:12, 114:6, 116:2, 116:8, 116:15, 117:1, 118:11, 122:19, 131:7, 133:10, 133:23, 140:6, 162:16, 181:4, 181:18, 182:11, 182:24, 183:7, 183:10, 183:13, 183:14, 183:19, 184:16, 186:25, 193:7, 199:2, 199:22, 206:15, 215:12, 217:21, 218:4, 220:19, 221:4, 230:10, 269:10, 275:15, 275:21, 276:3, 282:1, 282:13, 283:1
**Pat's** [2] - 218:3, 220:1
**Patient** [1] - 49:5
**patient** [5] - 49:21, 52:11, 172:13, 172:16, 199:10
**patients** [5] - 27:11, 27:17, 27:20, 33:14, 170:24
**PATRICIA** [2] - 2:2, 293:15
**Patrick** [144] - 4:1, 4:2, 4:4, 22:21, 23:4, 23:21, 24:11, 24:12, 25:1, 25:9, 25:12, 26:11, 28:20, 32:2, 32:17, 34:12, 35:12, 35:24, 36:1, 40:13,

40:20, 41:17, 41:23, 45:12, 45:19, 46:4, 46:18, 46:24, 47:24, 49:15, 51:5, 51:8, 51:10, 54:6, 55:12, 55:20, 56:4, 56:9, 56:11, 57:9, 57:11, 60:25, 61:7, 62:14, 71:21, 72:18, 73:7, 73:8, 73:13, 73:21, 88:14, 89:6, 91:25, 94:7, 101:5, 103:11, 111:8, 112:19, 113:13, 113:16, 114:11, 114:25, 115:13, 116:3, 116:12, 117:14, 118:2, 118:23, 120:18, 121:7, 121:15, 121:19, 121:25, 122:6, 122:24, 123:5, 128:6, 128:19, 134:6, 134:16, 135:8, 135:22, 136:5, 136:17, 137:3, 137:18, 162:5, 163:4, 163:8, 169:16, 170:2, 170:11, 170:21, 177:18, 177:24, 178:5, 178:8, 178:10, 178:13, 178:22, 179:1, 179:6, 179:9, 179:11, 179:13, 179:22, 180:3, 180:9, 182:6, 191:13, 191:25, 192:3, 192:13, 198:12, 202:1, 202:19, 203:20, 204:5, 210:6, 210:22, 211:22, 212:15, 216:4, 217:7, 218:8, 218:19, 219:9, 221:10, 227:9, 229:1, 230:17, 231:7, 234:6, 268:19, 272:24, 273:11, 280:25, 282:16, 282:21, 282:23, 283:7, 283:15, 283:19, 283:20
**PATRICK** [2] - 1:7, 1:17
**Pay** [1] - 119:11
**pay** [1] - 194:22
**paying** [1] - 11:4
**PB** [4] - 7:1, 7:2, 113:2, 115:21
**PDF** [5] - 81:21, 82:1, 82:16, 91:4, 95:4
**PDFs** [1] - 130:8
**pedigree** [34] - 37:5, 37:10, 68:1, 81:6, 82:17, 91:9, 92:9, 95:3, 95:9, 95:16, 100:8, 101:22, 114:19, 114:22, 142:12, 143:9, 143:12, 143:18, 145:22, 150:12, 151:9, 151:22, 152:24, 153:13, 154:2, 157:4, 246:18, 249:6, 252:7, 252:19, 264:1, 264:3, 264:8, 264:14
**Pedigree** [20] - 3:16, 3:19, 4:12, 4:13, 4:14, 4:15, 4:16, 4:17, 4:18, 42:25, 142:19, 146:4, 151:17, 152:5, 153:6, 153:21, 154:10, 154:15, 154:23, 157:12
**pedigree.docx** [1] - 41:24
**pedigree/transaction** [1] - 100:7
**Pedigrees** [2] - 4:11, 151:1
**pedigrees** [24] - 34:4, 34:7, 41:14, 43:3, 43:4, 44:21, 65:12, 67:6, 67:16, 76:4, 102:24, 121:9, 148:16, 150:18, 197:3, 246:14, 246:22, 247:19, 256:25, 258:17, 258:18, 261:24, 291:7
**peds** [2] - 130:1, 131:17
**peer** [1] - 223:16
**pending** [1] - 127:25
**people** [19] - 28:15, 55:17, 55:22, 57:15, 103:25, 104:6, 174:11, 178:1, 178:4, 178:7, 184:9, 193:16, 193:19, 204:19, 211:19, 228:12, 242:24, 257:15, 266:12
**People** [3] - 24:18, 26:5, 181:16
**people's** [2] - 209:20, 209:23
**percent** [5] - 103:3, 122:24, 131:10, 189:24, 192:4
**percentage** [2] - 128:21, 269:13
**perform** [2] - 190:1, 191:4
**performed** [1] - 189:14
**performing** [1] - 262:8
**perhaps** [5] - 9:23, 174:18, 206:25, 221:3, 237:21
**period** [4] - 90:9, 104:16, 231:4, 255:2
**permission** [2] - 17:10, 46:13
**person** [16] - 100:4, 110:19, 117:19, 168:3, 171:5, 203:8, 212:11, 228:11, 229:18, 242:8, 245:24, 264:20, 264:23, 265:9, 265:15, 265:23
**person's** [1] - 211:15
**personally** [43] - 175:9, 191:14, 197:17, 204:25, 205:2, 205:4, 206:18, 208:19, 209:4, 209:16, 209:19, 210:13, 210:24, 211:1, 216:14, 216:17, 216:18, 216:24, 217:3, 221:6, 221:12, 228:14, 233:8, 234:13, 235:3, 243:5, 243:9, 243:22, 253:1, 253:19, 253:23, 254:7, 254:10, 254:12, 257:16, 259:19, 259:23, 262:15, 263:14, 273:21, 282:11, 289:20, 289:25
**personnel** [1] - 226:15
**persons** [1] - 274:18
**Peter** [86] - 17:21, 18:11, 18:23, 19:14, 19:16, 19:18, 20:15, 22:2, 67:19, 68:23, 69:16, 78:13, 78:15, 78:24, 79:2, 79:12, 79:23, 80:1, 80:21, 81:9, 81:21, 82:11, 82:13, 82:17, 82:24, 83:1, 83:11, 83:17, 83:20, 83:25, 84:5, 84:9, 84:19, 85:3, 85:10, 85:16, 85:22, 86:4, 87:5, 87:20, 88:19, 89:1, 89:10, 89:14, 90:10, 90:15, 90:20, 91:5, 91:9, 91:23, 92:8, 97:4, 97:12, 97:16, 97:19, 98:17, 99:7, 99:19, 101:11, 130:7, 204:9, 205:1, 220:15, 221:5, 221:11, 264:22, 265:6, 265:12, 265:13, 265:20, 266:1, 266:2, 266:4, 266:5, 267:22, 281:15, 281:18, 281:19, 281:22, 281:25, 282:4, 282:8, 282:15, 290:10, 292:7
**Peter's** [5] - 98:24, 258:10, 258:13, 265:5, 267:20
**Peter/Borat** [1] - 131:18
**Pfizer** [1] - 123:1
**Ph** [1] - 1:19
**Pharma** [1] - 186:11
**pharmaceutical** [2] - 110:24, 174:22
**Pharmaceutical** [4] - 37:17, 38:7, 110:12, 137:12
**Pharmacies** [3] - 24:17, 26:5, 181:15
**pharmacies** [11] - 27:22, 30:12, 30:16, 31:8, 33:15, 34:2, 46:21, 91:20, 252:20, 273:17, 273:25
**pharmacist** [1] - 52:11
**pharmacists** [1] - 27:10
**pharmacy** [21] - 30:22, 30:23, 30:25, 39:23, 91:22, 92:24, 93:1, 93:7, 94:22, 141:2, 141:16, 142:3, 144:1, 182:1, 197:23, 251:23, 252:9, 264:8, 264:15, 272:4, 272:8
**Pharmacy** [30] - 31:1, 39:22, 64:9, 65:10, 65:11, 68:13, 81:11, 82:7, 82:9, 91:15, 91:21, 92:23, 93:4, 94:24, 95:11, 95:21, 96:15, 102:25, 139:8, 140:18, 141:4, 143:13, 143:14, 146:17, 147:17, 148:4, 149:10, 149:11, 150:11, 271:22
**PharmAlert** [1] - 284:12
**Pharmaquick** [4] - 144:11, 145:16, 146:23, 147:6
**phone** [17] - 19:6, 30:9, 30:11, 80:22, 82:11, 82:14, 90:23, 204:24, 205:1, 205:12, 211:15, 211:16, 211:19, 211:22, 269:7, 282:23, 283:9
**phones** [3] - 204:12, 204:18, 227:13
**photo** [3] - 51:23, 127:20, 157:24
**photograph** [1] - 81:5
**photographic** [1] - 82:10
**photos** [4] - 51:20, 54:18, 54:19, 160:5
**phrase** [1] - 242:23
**physical** [1] - 164:21
**PIC** [1] - 30:3
**pick** [1] - 47:14
**picked** [2] - 279:5, 279:6
**picking** [1] - 134:17
**pickup** [1] - 119:3
**pictures** [1] - 197:2
**piece** [1] - 238:2
**pieces** [1] - 93:13
**piling** [1] - 61:11
**pill** [4] - 28:14, 208:22, 209:8, 254:19
**pills** [12] - 28:16, 32:6, 39:23, 51:24, 172:14, 183:16, 195:12, 195:15, 201:17, 255:8, 255:13, 263:8
**Piotevien** [1] - 27:21
**pissed** [1] - 76:3
**place** [13] - 78:2, 90:12, 99:10, 101:1, 195:20, 197:6,

242:18, 253:13, 253:17, 254:13, 273:4, 279:15, 289:14
**places** [1] - 196:10
**plan** [3] - 48:24, 199:6, 269:11
**plane** [1] - 140:6
**planning** [1] - 86:9
**platform** [1] - 289:23
**platforms** [4] - 289:13, 289:19, 290:7, 290:16
**play** [10] - 23:6, 40:23, 45:22, 53:7, 53:25, 72:7, 72:14, 104:4, 134:9, 176:6
**played** [2] - 72:4, 72:18
**playing** [2] - 16:20, 22:9
**Plaza** [5] - 94:7, 94:21, 94:24, 95:10, 95:17
**plus** [6] - 117:17, 127:12, 219:22, 227:2, 236:10, 255:24
**PM** [9] - 1:6, 74:8, 123:22, 165:10, 221:24, 293:10
**PO** [2] - 83:5, 111:21
**POGOZELSKI** [779] - 3:3, 3:4, 3:5, 9:2, 9:10, 9:22, 10:24, 11:12, 11:25, 12:9, 12:15, 13:11, 13:23, 13:25, 14:2, 15:23, 16:1, 16:2, 16:11, 16:19, 16:23, 16:25, 17:4, 17:10, 17:12, 17:23, 18:1, 18:3, 18:5, 18:8, 18:9, 18:16, 18:21, 19:11, 19:13, 19:21, 19:23, 20:3, 20:9, 20:11, 20:18, 20:19, 20:24, 21:1, 21:9, 21:11, 21:19, 21:21, 21:24, 22:1, 22:8, 22:11, 22:12, 22:23, 23:6, 23:9, 23:16, 23:20, 23:24, 24:6, 24:8, 24:23, 24:25, 25:5, 25:7, 25:14, 25:23, 25:25, 26:21, 26:22, 27:14, 27:15, 27:23, 27:25, 28:17, 28:19, 29:4, 29:6, 29:10, 29:11, 31:12, 31:13, 31:16, 31:17, 31:24, 32:1, 32:12, 32:15, 33:18, 33:19, 34:16, 34:19, 35:2, 35:9, 35:11, 35:15, 35:22, 35:23, 36:4, 36:6, 36:12, 36:19, 36:21, 36:23, 37:7, 37:9, 37:13, 37:14, 38:1, 38:3, 38:9, 38:11, 38:14, 38:15, 38:20, 38:22, 39:1, 39:3, 39:8, 39:15, 39:18, 40:1, 40:2, 40:6, 40:7, 40:15, 40:22, 41:1, 41:3, 41:7, 41:9, 41:19, 41:22, 42:1, 42:20, 42:24, 43:8, 43:9, 43:13, 43:15, 43:20, 43:23, 44:2, 44:8, 44:10, 44:15, 44:16, 44:24, 44:25, 45:4, 45:5, 45:14, 45:21, 45:25, 46:2, 46:6, 46:13, 46:15, 46:16, 47:5, 47:7, 47:18, 47:20, 48:4, 48:6, 48:11, 48:18, 50:4, 50:8, 50:13, 50:15, 50:20, 51:2, 51:3, 51:13, 51:17, 51:19, 51:23, 52:2, 52:7, 52:9, 52:14, 52:17, 52:25, 53:7, 53:10, 53:18, 53:25, 54:3, 54:5, 54:9, 54:16, 54:17, 55:3, 55:5, 56:7, 56:8, 56:14, 56:16, 56:20, 57:2, 57:6, 57:8, 57:19, 57:21, 57:25, 58:7, 58:9, 59:5, 59:6, 59:13, 59:15, 59:19, 60:1, 60:9, 60:11, 60:15, 60:22, 60:24, 61:12, 61:15, 61:19, 61:25, 62:1, 62:9, 62:13, 62:17, 62:23, 62:25, 63:2, 63:3, 63:7, 63:13, 63:17, 63:20, 63:24, 64:5, 64:7, 64:11, 64:12, 64:18, 64:20, 64:24, 65:5, 65:24, 66:1, 66:5, 66:11, 66:13, 66:15, 66:20, 67:1, 67:4, 67:8, 67:13, 67:14, 67:21, 67:24, 68:19, 68:20, 69:1, 69:3, 69:9, 69:15, 69:21, 70:1, 70:8, 70:12, 70:22, 71:1, 71:22, 72:16, 73:6, 74:16, 74:24, 75:6, 75:9, 75:13, 75:20, 75:22, 76:6, 76:8, 76:12, 76:18, 76:20, 77:6, 77:11, 78:4, 78:10, 79:11, 79:13, 79:17, 79:19, 79:21, 79:22, 80:5, 80:8, 80:14, 80:17, 80:19, 80:20, 81:2, 81:4, 81:18, 81:20, 81:25, 82:4, 82:20, 82:22, 83:8, 83:10, 83:13, 83:15, 83:23, 83:24, 84:3, 84:4, 84:13, 84:15, 84:21, 84:22, 85:2, 85:6, 85:13, 85:15, 86:1, 86:3, 86:10, 86:13, 86:17, 86:24, 87:2, 87:22, 87:25, 88:17, 88:20, 89:16, 89:19, 89:25, 90:3, 90:14, 90:18, 91:4, 91:7, 92:5, 92:7, 92:16, 92:19, 94:3, 94:5, 94:11, 94:17, 94:19, 95:7, 95:8, 95:24, 96:2, 96:20, 96:24, 97:2, 97:3, 97:10, 97:13, 97:22, 97:24, 98:5, 98:9, 98:15, 98:16, 98:20, 98:21, 99:3, 99:4, 99:9, 99:12, 100:1, 100:3, 100:16, 100:18, 101:3, 101:4, 101:18, 101:20, 102:4, 102:6, 102:11, 102:17, 102:19, 103:7, 103:9, 103:13, 103:19, 103:21, 104:21, 104:23, 105:2, 105:8, 105:10, 105:14, 105:20, 105:21, 106:2, 106:3, 106:14, 106:16, 106:21, 106:23, 107:4, 107:11, 107:12, 107:20, 107:22, 108:1, 108:8, 108:9, 109:5, 109:8, 110:4, 110:5, 111:6, 111:7, 111:12, 111:16, 112:16, 112:18, 112:22, 113:4, 114:2, 114:4, 115:6, 115:8, 115:10, 115:12, 115:16, 115:23, 115:25, 116:18, 116:19, 116:23, 116:25, 117:4, 117:11, 118:7, 118:10, 118:14, 118:20, 118:22, 119:8, 119:10, 119:14, 119:21, 119:22, 120:14, 120:17, 120:22, 120:25, 121:2, 121:5, 121:6, 121:12, 121:14, 121:17, 121:18, 122:2, 122:4, 122:8, 122:15, 122:18, 123:7, 124:6, 124:10, 124:14, 124:18, 124:20, 124:22, 124:24, 125:1, 125:3, 125:5, 125:7, 125:9, 125:11, 125:13, 125:15, 125:17, 125:19, 125:21, 126:7, 126:14, 126:17, 126:21, 127:3, 127:4, 127:6, 127:8, 127:14, 127:15, 127:21, 127:22, 128:3, 128:5, 128:9, 128:16, 128:18, 128:25, 129:5, 129:9, 129:16, 130:11, 130:13, 130:19, 130:22, 131:3, 131:6, 131:13, 131:15, 131:19, 131:20, 131:24, 132:1, 132:5, 132:12, 132:14, 133:7, 133:9, 133:13, 133:20, 133:21, 135:5, 135:7, 135:13, 135:20, 136:13, 136:15, 136:19, 137:1, 138:1, 138:3, 138:10, 138:15, 138:18, 138:20, 138:24, 139:5, 139:16, 139:18, 139:22, 140:3, 140:8, 140:10, 140:19, 141:1, 141:11, 141:13, 141:18, 141:24, 142:8, 142:10, 142:14, 142:21, 143:21, 143:23, 144:3, 144:9, 144:10, 144:24, 145:1, 145:6, 145:12, 145:19, 145:21, 145:24, 146:6, 147:12, 147:14, 147:19, 148:1, 148:14, 148:15, 148:18, 148:19, 148:21, 148:23, 149:17, 149:19, 150:1, 150:3, 150:15, 150:17, 150:21, 151:3, 151:5, 151:7, 151:12, 151:19, 151:21, 151:25, 152:7, 152:8, 152:21, 152:23, 153:1, 153:8, 153:10, 153:12, 153:16, 153:23, 154:1, 154:5, 154:12, 154:14, 154:18, 154:25, 155:2, 155:6, 155:13, 155:25, 156:2, 156:7, 156:13, 156:15, 156:20, 157:1, 157:3, 157:7, 157:14, 157:17, 157:20, 158:5, 158:8, 158:12, 158:19, 158:24, 159:1, 159:5, 159:16, 159:18, 159:23, 160:2, 160:4, 160:9, 160:13, 160:15, 160:18, 160:20, 161:9, 161:12, 161:18, 162:1, 162:3, 162:7, 162:13, 162:15, 162:19, 163:1, 163:3, 163:12, 163:14, 163:21, 164:3, 164:21, 165:20, 166:3, 167:17, 168:4, 168:9, 168:10, 168:18, 168:24, 169:5, 169:12, 169:14, 169:18, 169:24, 170:1, 170:7, 170:9, 170:13, 170:19,

171:13, 171:15, 171:19, 172:1, 172:19, 174:5, 175:2, 176:7, 176:18, 177:4, 179:3, 179:14, 180:5, 183:21, 185:21, 186:3, 186:16, 187:4, 188:21, 188:23, 190:8, 190:14, 190:23, 191:9, 193:1, 194:4, 194:18, 196:1, 199:16, 199:24, 200:10, 200:22, 201:14, 201:19, 201:23, 202:4, 202:9, 202:20, 203:11, 205:20, 207:20, 208:6, 208:9, 209:11, 210:19, 211:3, 211:23, 212:3, 212:16, 216:12, 218:23, 220:12, 222:16, 222:21, 223:3, 223:6, 223:12, 224:7, 233:13, 235:13, 236:15, 237:7, 237:18, 238:5, 238:22, 240:8, 241:17, 244:8, 245:18, 246:10, 247:11, 248:18, 250:15, 251:12, 251:25, 252:11, 257:22, 258:25, 259:13, 260:5, 261:8, 262:2, 264:16, 267:10, 269:23, 270:25, 272:19, 273:6, 273:18, 274:12, 275:4, 277:5, 277:18, 277:23, 278:8, 279:17, 280:20, 284:19, 288:5, 289:4

**Pogozelski** [2] - 1:13, 168:1

**point** [24] - 11:25, 12:6, 36:25, 37:3, 37:8, 37:18, 37:20, 37:23, 43:25, 44:18, 73:11, 114:23, 129:19, 129:25, 131:4, 131:16, 134:9, 159:15, 165:1, 166:12, 199:17, 228:10, 249:5, 287:5

**pointed** [1] - 197:14

**pointer** [2] - 47:15, 57:10

**pointing** [1] - 91:9

**points** [1] - 44:14

**polling** [5] - 12:14, 74:23, 126:6, 167:16, 224:6

**Porras** [2] - 228:18, 228:19

**portal** [1] - 44:20

**position** [3] - 14:17, 165:19, 166:15

**positions** [1] - 38:6

**positive** [1] - 242:23

**possession** [3] - 100:10, 209:9, 209:14

**possibility** [1] - 170:23

**possible** [3] - 111:10, 122:1, 134:18

**post** [1] - 225:2

**potential** [3] - 166:10, 258:21, 288:3

**potentially** [3] - 238:2, 240:3, 240:22

**PR** [1] - 112:4

**practically** [1] - 34:7

**Prairie** [2] - 82:7, 91:16

**pray** [2] - 135:1, 135:3

**prejudice** [1] - 74:6

**Premium** [2] - 36:24, 38:7

**preparation** [38] - 232:11, 236:7, 236:23, 238:16, 247:2, 247:24, 248:8, 249:9, 249:11, 249:14, 251:19, 253:21, 255:24, 256:6, 257:9, 258:19, 258:20, 259:8, 262:19, 263:10, 263:19, 263:24, 264:6, 268:13, 272:17, 272:24, 273:24, 274:16, 275:19, 276:4, 276:9, 279:1, 282:3, 283:25, 285:14, 285:20, 285:25, 289:23

**prepare** [1] - 234:15

**prepared** [2] - 263:25, 264:4

**prescribed** [1] - 182:3

**prescription** [4] - 23:14, 32:25, 34:21, 35:7

**presence** [21] - 12:13, 12:20, 71:5, 74:22, 75:4, 117:18, 118:5, 118:25, 123:12, 126:5, 126:12, 165:3, 167:15, 167:22, 219:23, 220:5, 220:11, 221:17, 224:5, 224:12, 292:25

**present** [10] - 8:3, 74:11, 123:24, 123:25, 165:14, 222:2, 232:17

**presentation** [1] - 72:25

**presented** [14] - 165:14, 199:23, 217:1, 232:11, 233:11, 233:20, 233:22, 242:25, 245:8, 247:6, 255:16, 275:3, 289:22, 290:12

**presenting** [2] - 10:1, 238:4

**preserved** [2] - 72:5, 242:25

**press** [4] - 33:23, 33:24, 33:25, 209:8

**presses** [1] - 208:22

**pressure** [1] - 223:16

**pretty** [7] - 32:6, 56:5, 93:19, 116:4, 120:7, 172:13, 229:20

**previous** [10] - 13:3, 23:1, 35:18, 40:17, 45:16, 46:8, 72:5, 82:19, 91:11, 91:14

**previously** [8] - 8:9, 82:19, 228:1, 235:12, 235:22, 237:6, 239:20, 241:22

**Prezista** [1] - 134:22

**price** [2] - 173:13, 194:1

**prices** [2] - 170:4, 195:7

**primarily** [12] - 186:21, 193:23, 205:10, 206:18, 243:18, 282:16, 282:18, 282:21, 283:12, 283:15, 283:18, 283:20

**primary** [1] - 14:22

**principals** [1] - 257:14

**private** [1] - 205:14

**privately** [1] - 137:20

**probative** [1] - 74:5

**problem** [20] - 8:7, 8:20, 111:10, 134:3, 183:11, 183:14, 183:15, 184:1, 184:3, 195:24, 196:11, 198:18, 198:19, 200:21, 217:20, 217:22, 229:14, 258:15, 292:6, 292:15

**problems** [3] - 196:21, 199:22

**procedures** [12] - 156:4, 213:4, 213:7, 213:10, 213:17, 213:21, 213:24, 214:2, 214:4, 214:10, 215:1, 247:22

**proceed** [7] - 13:23, 39:25, 101:16, 126:13, 168:8, 172:17, 224:19

**proceedings** [5] - 74:9, 123:23, 165:11, 221:25, 293:12

**proceeds** [1] - 188:8

**process** [3] - 247:18, 251:20, 259:12

**processes** [1] - 106:9

**produce** [3] - 208:14, 208:17, 249:20

**produced** [1] - 19:5

**product** [18] - 43:5, 63:16, 87:12, 87:14, 94:24, 100:9, 100:11, 133:25, 134:4, 134:14, 134:24, 149:25, 156:4, 164:16, 172:11, 198:2, 215:6, 226:9

**products** [12] - 18:14, 30:18, 43:4, 46:19, 69:18, 100:13, 109:16, 139:9, 139:11, 214:20, 248:9, 248:14

**Products** [1] - 47:3

**profit** [4] - 138:8, 189:23, 189:24, 190:3

**profitable** [2] - 128:21, 269:13

**profited** [1] - 189:12

**program** [6] - 15:4, 15:7, 15:9, 203:19, 205:13, 227:4

**Program** [1] - 42:25

**progress** [2] - 113:14, 113:21

**pronoun** [1] - 226:13

**pronounce** [2] - 171:7, 214:1

**pronounced** [1] - 184:14

**proof** [1] - 159:13

**proper** [1] - 114:17

**property** [1] - 167:2

**propose** [2] - 8:11, 8:18

**proprietary** [1] - 44:20

**prosecuted** [3] - 240:25, 242:24, 279:10

**prosecution** [11] - 174:2, 232:16, 232:18, 233:14, 234:14, 235:4, 245:8, 247:2, 250:9, 268:12, 268:13

**prosecutor** [13] - 192:16, 232:11, 232:24, 233:9, 233:21, 237:5, 237:12, 237:15, 238:12, 239:14, 245:4, 286:21, 289:11

**prosecutor's** [1] - 250:21

**prosecutors** [19] - 210:5, 249:12, 250:8, 250:10, 250:24, 266:25, 267:9, 278:6, 278:23, 279:4, 280:14, 280:18, 281:7, 284:24, 285:2, 285:14, 288:1, 289:22, 290:12

**protection** [1] - 14:22

**provide** [11] - 12:5, 22:2, 27:12, 50:5, 98:23, 149:23, 197:4, 247:5, 247:9, 248:24

**provided** [20] - 29:17, 29:23, 36:8, 62:7, 88:10, 93:13, 109:13, 192:11, 247:1, 247:21, 248:24, 250:4,

250:6, 252:4, 259:11, 271:11, 274:8, 284:16, 286:14, 288:14
**provider** [2] - 114:13, 217:14
**providing** [3] - 274:10, 284:8, 284:17
**provisionally** [2] - 159:19, 159:25
**publish** [19] - 16:20, 17:10, 20:9, 24:7, 25:23, 29:20, 33:10, 36:21, 39:15, 42:20, 44:8, 46:13, 64:5, 76:18, 86:25, 94:18, 102:18, 115:23, 169:24
**published** [9] - 16:22, 17:25, 22:10, 23:8, 40:25, 45:24, 53:9, 54:2, 103:20
**Puerto** [2] - 152:14, 152:16
**pull** [38] - 16:23, 17:23, 18:16, 27:17, 27:20, 29:4, 38:9, 41:1, 41:19, 50:13, 51:14, 62:23, 69:22, 75:7, 80:5, 87:22, 88:17, 92:17, 100:1, 101:18, 104:21, 114:2, 120:14, 126:15, 128:25, 142:8, 143:21, 145:19, 147:12, 156:14, 157:1, 158:24, 164:22, 169:12, 170:8, 180:22, 191:13, 191:16
**pulled** [2] - 191:14, 191:23
**pulling** [1] - 191:18
**purchase** [6] - 18:15, 62:6, 69:19, 147:1, 194:23, 257:8
**purchased** [13] - 43:5, 62:8, 82:18, 109:16, 142:25, 143:8, 143:14, 143:15, 146:24, 147:3, 150:10, 195:25, 201:8
**purchasers** [1] - 273:14
**purchases** [3] - 102:24, 194:16, 194:22
**purchasing** [4] - 164:10, 195:6, 257:10, 291:8
**purpose** [3] - 15:14, 173:19, 173:21
**purposes** [1] - 231:20
**pursuant** [2] - 208:3, 208:4
**pushing** [2] - 108:21, 116:6
**put** [9] - 166:8, 183:10, 184:2, 202:13, 209:9, 242:18, 276:22, 288:2, 288:21
**puts** [2] - 165:20, 166:4
**putting** [4] - 12:2, 197:19, 209:3, 255:7

## Q

**quality** [2] - 34:6, 172:12
**quantity** [1] - 47:14
**quarantined** [1] - 100:11
**Queens** [2] - 31:20, 31:23
**queens** [1] - 26:3
**queenseagle.com** [1] - 24:17
**questioning** [9] - 245:19, 247:12, 250:16, 252:1, 257:23, 259:1, 271:1, 275:5, 278:10
**questions** [17] - 9:25, 42:12, 57:14, 65:12, 65:15, 77:5, 116:9, 116:13, 165:22, 172:19, 237:11, 237:15, 246:14, 260:13, 262:20, 263:1, 289:15
**quick** [1] - 100:16
**quickly** [1] - 9:24
**quite** [1] - 232:2
**quotation** [6] - 56:2, 59:1, 114:15, 120:4, 121:8, 134:10
**quote** [1] - 218:11
**quoted** [1] - 198:12

## R

**racist** [2] - 220:23, 220:25
**raid** [2] - 273:4, 273:12
**raised** [1] - 11:3
**Ralhan** [4] - 64:22, 66:3, 66:17, 67:6
**rampage** [1] - 113:18
**random** [2] - 49:18, 55:8
**rang** [2] - 30:9, 93:5
**rather** [3] - 11:1, 71:23, 118:1
**re** [2] - 7:2, 115:21
**reach** [2] - 62:8, 65:19
**reached** [4] - 31:1, 124:7, 266:9, 267:3
**read** [33] - 9:17, 17:18, 24:15, 27:19, 28:4, 28:25, 29:15, 33:23, 34:21, 65:8, 82:23, 87:8, 88:4, 111:17, 112:8, 160:10, 181:8, 181:22, 181:24, 198:13, 203:10, 213:6, 217:11, 220:4, 229:3, 229:4, 229:5, 236:4, 238:16, 252:3, 267:10, 268:6, 269:16
**reading** [3] - 29:19, 32:23, 132:24
**ready** [6] - 87:20, 235:5, 262:10, 262:17, 286:15, 290:13
**realize** [2] - 72:21, 88:7
**really** [5] - 88:11, 119:24, 182:3, 268:11, 279:14
**reason** [12] - 115:2, 192:3, 198:5, 213:19, 218:4, 218:9, 232:10, 233:10, 238:18, 238:21, 239:7, 258:10
**reasonable** [2] - 266:12, 266:14
**reasonably** [1] - 291:24
**reasons** [4] - 190:23, 246:8, 263:6, 277:23
**receive** [4] - 65:16, 65:18, 83:21, 179:24
**received** [193] - 16:16, 16:18, 17:8, 17:9, 20:7, 20:8, 23:3, 23:5, 24:3, 24:4, 25:20, 25:21, 34:6, 35:20, 35:21, 36:16, 36:17, 39:12, 39:13, 40:19, 40:21, 42:18, 42:19, 44:6, 44:7, 45:18, 45:20, 46:11, 46:12, 48:15, 48:16, 50:24, 50:25, 53:4, 53:6, 53:22, 53:24, 54:13, 54:14, 56:24, 56:25, 58:4, 58:5, 59:23, 59:24, 60:19, 60:20, 61:23, 61:24, 62:21, 62:22, 63:11, 63:12, 64:3, 64:4, 65:3, 65:4, 66:9, 66:10, 66:24, 66:25, 69:13, 69:14, 70:5, 70:6, 70:16, 75:17, 75:18, 76:16, 76:17, 78:8, 78:9, 86:21, 86:22, 89:24, 90:2, 93:12, 94:15, 94:16, 101:16, 102:15, 102:16, 103:17, 103:18, 105:6, 105:7, 105:18, 105:19, 107:8, 107:9, 108:5, 108:6, 109:14, 113:1, 113:3, 115:20, 115:22, 117:8, 117:9, 118:18, 118:19, 119:18, 119:19, 121:1, 121:3, 122:12, 122:13, 125:25, 126:25, 127:1, 128:13, 128:14, 129:13, 129:14, 130:25, 131:1, 132:9, 132:10, 133:17, 133:18, 135:17, 135:18, 136:23, 136:24, 138:14, 138:16, 139:3, 139:4, 140:1, 140:2, 140:23, 140:24, 141:22, 141:23, 142:18, 142:19, 144:7, 144:8, 145:10, 145:11, 146:3, 146:4, 147:23, 147:24, 150:25, 151:1, 151:16, 151:17, 152:4, 152:5, 153:5, 153:6, 153:20, 153:21, 154:9, 154:10, 154:22, 154:23, 155:10, 155:11, 156:11, 156:12, 156:24, 156:25, 157:11, 157:12, 158:16, 158:17, 160:3, 161:22, 161:23, 161:24, 162:11, 162:12, 162:23, 162:24, 163:25, 164:1, 168:21, 168:23, 169:9, 169:11, 169:22, 169:23, 170:17, 170:18, 171:23, 171:24, 187:22, 203:8, 209:6, 214:20, 263:19
**receiving** [2] - 182:20, 188:7
**recently** [2] - 214:12
**recess** [10] - 71:3, 74:7, 123:10, 123:21, 165:2, 165:8, 221:15, 221:23, 292:23, 293:9
**recollection** [15] - 192:16, 198:16, 213:13, 255:21, 256:9, 256:20, 256:23, 257:3, 257:12, 258:18, 263:5, 263:9, 264:13, 273:2, 276:25
**recommendation** [1] - 10:17
**recommendations** [1] - 261:22
**record** [19] - 8:2, 13:19, 74:8, 74:10, 88:11, 91:24, 116:8, 116:12, 123:22, 123:24, 165:10, 165:14, 211:20, 221:24, 222:1, 245:7, 265:22, 266:3, 266:4
**recording** [1] - 212:12
**records** [39] - 19:5, 19:8, 77:13, 77:16, 77:19, 78:15, 79:1, 80:23, 100:8, 173:19, 173:22, 180:11, 192:21, 207:14, 207:17, 209:1, 246:4, 249:19, 251:1, 262:6, 265:20, 265:25, 266:1, 266:5, 266:8, 266:9, 268:8, 268:9, 268:11, 270:20,

271:21, 276:20, 279:2, 284:2, 284:6, 284:10, 284:14, 284:22
**redacted** [1] - 117:23
**ref** [2] - 147:2, 147:3
**refer** [1] - 193:16
**reference** [8] - 83:4, 116:20, 142:25, 150:8, 163:18, 178:16, 180:20, 180:21
**referenced** [6] - 143:8, 143:15, 146:25, 150:11, 180:18, 265:6
**references** [2] - 139:14, 253:4
**referencing** [2] - 169:16, 239:15
**referred** [8] - 100:6, 173:4, 221:1, 227:25, 260:23, 281:19, 281:22, 281:25
**referring** [9] - 182:9, 182:10, 193:18, 216:7, 216:19, 261:10, 269:3, 276:16, 276:18
**reflect** [1] - 77:15
**refresh** [15] - 192:16, 198:16, 198:21, 213:13, 255:21, 256:9, 256:20, 257:3, 257:12, 258:18, 263:5, 263:9, 273:1, 276:25, 277:1
**refreshing** [1] - 256:22
**refund** [2] - 263:3, 263:7
**refunded** [1] - 198:9
**regard** [1] - 11:14
**regarding** [6] - 46:4, 67:6, 91:24, 101:7, 117:1, 143:25
**regardless** [2] - 116:10, 116:14
**Rego** [4] - 31:20, 31:23, 81:15, 142:24
**regularly** [1] - 214:5
**regulation** [1] - 173:15
**regulations** [1] - 37:22
**rehearsals** [1] - 8:17
**Reimbursable** [1] - 28:13
**reimbursements** [1] - 33:16
**reissue** [2] - 156:5, 156:18
**reissued** [1] - 214:11
**rejected** [2] - 258:22, 259:10
**relate** [9] - 138:7, 140:17, 141:8, 141:25, 143:18, 144:20, 145:13, 147:9, 287:14
**related** [12] - 195:5, 229:5, 229:7, 229:8, 246:22, 248:3, 271:21, 283:17, 283:20, 286:25, 288:3, 288:13
**relates** [1] - 71:20
**relating** [16] - 239:9, 240:25, 243:8, 248:8, 256:8, 257:20, 261:17, 262:20, 263:1, 277:10, 283:1, 283:6, 283:15, 283:18, 284:16, 292:6
**relationship** [1] - 109:19
**release** [3] - 33:23, 33:24, 33:25
**Relevance** [2] - 33:4, 188:23
**relevance** [1] - 42:15
**relevant** [2] - 74:4, 287:20
**relied** [1] - 291:24
**remain** [1] - 43:2
**remainder** [1] - 22:9
**remember** [30] - 47:23, 61:5, 71:4, 80:12, 95:21, 101:10, 116:21, 123:10, 123:16, 157:23, 165:2, 184:24, 192:1, 195:16, 198:3, 198:5, 198:15, 202:16, 221:1, 221:16, 222:8, 249:7, 256:16, 256:24, 259:15, 260:13, 261:12, 276:19, 278:17, 292:24
**reminds** [1] - 199:14
**removing** [2] - 197:1, 197:12
**renew** [3] - 25:19, 34:9, 34:17
**rep** [1] - 39:21
**repackaged** [2] - 201:3, 201:6
**repackaging** [1] - 201:6
**repeat** [15] - 176:24, 180:7, 196:6, 233:18, 238:9, 240:13, 245:25, 250:18, 259:6, 259:20, 270:1, 278:14, 283:3, 285:23, 290:14
**repeated** [1] - 225:7
**repeating** [1] - 108:12
**repetitive** [8] - 245:19, 247:12, 250:15, 252:1, 257:23, 259:1, 275:5, 278:10
**replaced** [1] - 49:13
**replies** [16] - 24:19, 48:24, 49:1, 49:4, 49:7, 49:11, 49:13, 87:10, 87:13, 108:21, 109:2, 111:24, 112:7, 113:13, 116:8, 136:7
**report** [7] - 7:3, 101:15, 109:22, 115:22, 116:9, 116:13, 226:1
**reported** [1] - 100:12
**REPORTED** [1] - 2:1
**reporter** [2] - 13:20, 188:24
**Reporter** [2] - 2:3, 293:16
**reports** [4] - 138:8, 178:22, 196:14, 225:21
**representations** [1] - 254:18
**representing** [1] - 279:25
**request** [6] - 12:25, 13:2, 13:5, 34:10, 40:4, 224:17
**requested** [3] - 65:13, 263:4, 284:9
**requesting** [1] - 65:11
**requests** [1] - 188:24
**require** [1] - 10:4
**required** [4] - 77:2, 208:14, 208:17, 229:25
**requirement** [1] - 99:14
**requirements** [3] - 37:6, 37:11, 262:13
**requires** [10] - 179:3, 183:21, 187:4, 216:12, 238:23, 251:25, 252:11, 269:23, 272:19, 273:18
**reseal** [1] - 209:18
**resealed** [1] - 201:17
**researching** [1] - 118:25
**resell** [1] - 201:8
**reserve** [1] - 46:8
**reserved** [2] - 27:11, 71:17
**resold** [1] - 33:14
**resolved** [1] - 65:19
**respect** [2] - 193:8, 241:4
**respond** [6] - 58:20, 83:11, 121:8, 134:6, 159:16, 160:24
**responding** [1] - 139:20
**responds** [16] - 18:10, 48:23, 49:2, 49:5, 49:12, 87:15, 108:19, 108:24, 109:4, 116:6, 116:11, 122:24, 123:5, 133:1, 133:3
**response** [33] - 18:2, 19:18, 40:3, 49:16, 51:10, 56:4, 76:9, 83:20, 85:20, 86:8, 87:6, 98:17, 98:24, 99:13, 100:20, 102:21, 103:2, 109:14, 119:25, 120:3, 123:2, 134:16, 134:25, 135:2, 140:5, 163:8, 182:24, 182:25, 199:11, 218:3, 220:2, 239:13, 274:8
**responses** [2] - 122:23, 136:5
**responsibilities** [6] - 14:11, 14:20, 175:22, 213:2, 219:18, 220:8
**responsibility** [3] - 73:4, 242:22, 288:1
**responsible** [8] - 175:17, 175:24, 176:1, 176:5, 177:1, 177:5, 177:8, 189:15
**responsive** [3] - 249:16, 270:20, 271:10
**rest** [2] - 132:24, 166:13
**result** [2] - 191:7, 226:9
**resulting** [1] - 33:15
**results** [2] - 228:11, 288:24
**resume** [2] - 36:11, 37:3
**Resume** [2] - 7:14, 36:17
**retail** [1] - 46:20
**retired** [1] - 226:2
**retrieved** [2] - 164:4, 164:9
**Return** [2] - 7:15, 158:17
**return** [12] - 8:23, 94:24, 95:4, 96:7, 139:9, 139:12, 139:13, 158:10, 158:20, 197:23, 198:1, 198:6
**returned** [3] - 30:18, 133:24, 198:20
**returning** [1] - 172:11
**returns** [7] - 32:5, 191:13, 191:16, 191:18, 191:23, 223:3, 223:6
**revenue** [5] - 129:20, 129:21, 189:23, 190:3, 190:6
**review** [105] - 26:7, 42:13, 45:9, 57:13, 101:15, 175:13, 185:7, 185:8, 186:21, 189:15, 191:17, 193:24, 195:2, 195:5, 195:9, 196:20, 197:14, 197:17, 197:18, 205:11, 206:19, 206:20, 225:8, 225:17, 225:22, 226:8, 226:9, 226:16, 227:5, 227:20, 227:22, 228:12, 230:15, 231:7, 231:16, 231:18, 232:7, 234:11, 234:25, 236:13, 236:19, 236:21, 236:22, 239:4, 239:25, 245:13, 246:21, 247:18, 248:2, 249:10, 250:25, 251:18, 253:12, 253:20, 254:17, 255:23, 255:24, 256:5, 257:9, 257:13, 258:2, 258:3, 258:19,

259:8, 263:10, 263:18, 264:7, 266:8, 266:9, 266:22, 268:8, 268:9, 268:11, 274:10, 278:4, 278:20, 279:1, 279:24, 280:7, 280:8, 281:9, 282:3, 282:8, 282:25, 283:10, 283:13, 283:22, 283:24, 284:2, 284:6, 284:7, 284:10, 284:11, 284:14, 284:15, 285:20, 285:25, 286:5, 287:8, 287:23, 288:8, 289:21, 290:6, 291:1
**reviewed** [56] - 16:4, 19:5, 22:16, 23:10, 40:11, 52:21, 53:14, 104:13, 194:25, 195:4, 197:13, 197:21, 201:12, 204:2, 204:7, 204:15, 205:10, 207:8, 212:23, 213:7, 215:22, 219:6, 221:8, 221:12, 227:18, 231:14, 231:23, 234:13, 240:1, 243:6, 245:1, 246:21, 248:5, 252:13, 254:18, 254:21, 255:12, 255:15, 256:7, 256:12, 257:1, 262:6, 265:25, 266:21, 267:15, 267:16, 268:12, 282:11, 282:14, 282:16, 282:19, 283:14, 284:22, 290:9, 290:11, 292:5
**reviewer** [1] - 262:10
**reviewing** [10] - 175:21, 228:15, 231:13, 235:20, 264:25, 282:3, 283:6, 287:3, 289:17
**revised** [1] - 92:9
**Richardson** [9] - 54:7, 54:20, 55:6, 55:19, 55:25, 56:11, 75:11, 75:24
**Rico** [2] - 152:14, 152:16
**rid** [2] - 57:10, 166:12
**Ridge** [1] - 110:14
**ring** [1] - 89:10
**rise** [11] - 71:7, 74:20, 123:14, 126:3, 165:5, 165:9, 165:12, 167:13, 221:20, 224:3, 293:2
**risk** [1] - 10:6
**RMA** [1] - 139:12
**road** [1] - 159:20
**Rochester** [7] - 91:19, 93:1, 93:18, 95:20, 99:19, 100:23, 100:25
**rodeo** [1] - 234:22
**Rodriguez** [1] - 34:5
**Rodriguez-Velez** [1] - 34:5
**ROFL** [1] - 109:3
**ROG.XLS** [1] - 69:8
**role** [11] - 175:21, 176:6, 191:17, 226:6, 238:24, 239:25, 248:13, 257:24, 262:1, 262:2, 262:10
**roles** [1] - 242:15
**rolling** [1] - 113:19
**room** [8] - 71:6, 165:4, 166:2, 166:22, 166:25, 167:3, 221:18, 223:20
**root** [5] - 183:11, 183:13, 184:1, 184:3
**Rosa** [1] - 34:5
**roughly** [2] - 164:18, 189:17
**Row** [2] - 79:4, 79:5
**RPR** [2] - 2:2, 293:15
**rule** [3] - 72:11, 72:13, 72:20
**rules** [3] - 99:16, 214:19, 248:3
**ruling** [6] - 23:1, 45:16, 46:8, 72:6, 168:19, 169:7
**rulings** [2] - 16:13, 40:17
**RX** [13] - 30:5, 30:7, 30:8, 30:10, 30:21, 30:22, 31:8, 31:18, 31:19, 36:24, 95:13
**Rx** [2] - 31:8, 38:7

**S**

**safe** [3] - 227:16, 242:18, 275:25
**Safe** [133] - 31:15, 31:22, 35:6, 36:20, 36:24, 37:15, 38:4, 40:4, 43:1, 43:3, 43:6, 50:17, 57:23, 61:16, 67:25, 68:6, 68:17, 70:16, 81:5, 81:17, 82:9, 95:3, 95:4, 95:9, 101:21, 104:18, 137:14, 140:13, 142:5, 142:11, 143:7, 143:11, 143:17, 144:14, 145:22, 146:21, 147:3, 147:8, 149:8, 149:11, 150:7, 150:19, 151:9, 151:22, 152:19, 152:24, 153:13, 154:3, 154:15, 156:5, 156:17, 157:4, 158:9, 163:18, 164:5, 170:25, 174:2, 174:8, 174:10, 184:10, 184:16, 184:18, 186:1, 186:9, 187:3, 189:23, 191:7, 196:25, 197:11, 197:15, 197:19, 198:9, 201:18, 208:18, 208:21, 209:1, 209:8, 209:14, 209:17, 210:22, 212:20, 214:10, 214:19, 215:6, 215:12, 215:14, 215:17, 235:22, 241:23, 244:13, 245:10, 245:14, 245:24, 246:3, 246:8, 247:18, 249:5, 249:23, 250:13, 250:24, 251:1, 251:20, 251:22, 252:3, 252:7, 252:18, 252:20, 257:14, 257:19, 258:3, 258:22, 258:23, 259:10, 259:11, 263:12, 263:19, 270:24, 271:6, 272:13, 273:4, 273:12, 273:15, 274:11, 274:18, 275:3, 284:8, 284:12, 284:15, 285:11, 285:21, 286:1
**SafeChain.com** [1] - 148:7
**safety** [1] - 49:22
**sake** [1] - 23:19
**sales** [7] - 106:6, 131:9, 131:11, 186:12, 186:14, 189:16, 191:8
**Sales** [1] - 186:11
**Sameer** [2] - 17:18, 83:5
**sat** [1] - 203:20
**satisfied** [1] - 292:17
**saved** [1] - 131:9
**saw** [24] - 179:13, 192:19, 199:15, 215:24, 216:16, 235:7, 236:7, 237:1, 237:3, 237:4, 237:16, 241:11, 247:24, 260:14, 260:22, 261:4, 262:15, 264:3, 275:12, 275:15, 276:5, 291:10, 291:13
**Sawyer** [8] - 133:10, 133:22, 134:12, 134:21, 135:9, 135:22, 135:24, 136:10
**Sawyer's** [1] - 135:2
**scared** [1] - 116:7
**scary** [1] - 55:23
**sceptical** [3] - 115:2, 218:4, 218:9
**schedule** [5] - 8:12, 8:18, 10:2, 13:3, 165:22
**scheduled** [1] - 8:9
**scheduling** [1] - 12:21
**Scheme** [3] - 24:18, 26:6, 181:16
**scheme** [3] - 23:14, 27:9, 201:8
**schemes** [5] - 26:12, 26:15, 27:3, 34:22, 35:3
**Sciences** [5] - 142:23, 143:4, 146:13, 152:10, 270:17
**scope** [21] - 190:8, 191:10, 194:19, 203:11, 205:20, 211:24, 212:17, 238:23, 241:18, 252:1, 257:23, 259:1, 262:4, 269:24, 273:7, 275:5, 277:19, 278:11, 284:20, 289:5
**screen** [4] - 18:20, 129:2, 154:16, 213:11
**screenshot** [2] - 30:2, 64:8
**scroll** [33] - 17:25, 19:11, 38:14, 44:24, 51:18, 52:7, 52:14, 54:19, 61:25, 67:21, 70:8, 75:20, 79:17, 79:21, 81:19, 83:8, 84:3, 85:4, 93:15, 101:3, 110:4, 128:16, 129:22, 132:13, 160:4, 163:1, 181:22, 214:16, 217:8, 218:3, 268:22, 271:5
**scrolling** [1] - 86:1
**SCS** [1] - 47:16
**seal** [2] - 160:10, 201:16
**sealed** [10] - 49:10, 49:11, 51:9, 200:4, 200:7, 200:14, 200:16, 200:19, 200:20, 201:4
**search** [10] - 207:5, 209:20, 209:23, 210:1, 210:6, 210:8, 210:9, 210:10, 210:13, 288:14
**searched** [2] - 77:25, 208:21
**searching** [6] - 30:23, 210:18, 287:3, 287:12, 287:17, 287:19
**seat** [1] - 222:11
**seated** [2] - 13:18, 165:13
**second** [21] - 26:23, 28:1, 28:24, 39:16, 43:25, 44:17, 46:17, 67:22, 69:17, 75:23, 75:25, 84:21, 92:18, 110:23, 129:19, 131:4, 141:2, 144:9, 164:23, 165:16, 184:8
**Secret** [4] - 14:18, 14:21, 15:6, 187:10
**secret** [4] - 205:14, 205:19, 209:24, 211:2
**security** [1] - 166:1
**SECURITY** [13] - 71:7, 74:20, 123:14, 126:3, 165:5, 165:9,

165:12, 167:13, 221:20, 223:10, 223:24, 224:3, 293:2
**Security** [6] - 43:2, 43:24, 44:19, 77:4, 187:15, 187:17
**see** [137] - 9:12, 9:18, 10:3, 13:6, 18:2, 18:4, 19:14, 20:16, 24:20, 26:23, 26:25, 27:16, 28:1, 29:12, 31:10, 32:20, 33:20, 33:21, 36:24, 37:18, 38:16, 41:10, 42:13, 51:4, 51:5, 52:14, 54:18, 54:19, 56:9, 58:15, 63:15, 66:18, 67:21, 71:5, 71:13, 75:23, 79:20, 79:23, 87:16, 88:1, 88:4, 88:9, 88:23, 89:1, 90:19, 108:10, 110:6, 110:7, 110:15, 110:17, 114:14, 114:17, 116:15, 117:24, 123:13, 123:17, 127:5, 127:9, 129:2, 137:7, 137:23, 140:4, 149:20, 155:17, 159:11, 160:7, 165:3, 175:7, 179:19, 180:16, 182:20, 182:23, 188:6, 189:6, 192:14, 192:22, 196:9, 196:13, 196:14, 198:22, 198:23, 200:5, 203:4, 204:3, 204:13, 204:19, 205:7, 214:16, 214:23, 215:1, 215:5, 216:6, 216:19, 217:8, 217:15, 218:3, 218:13, 218:17, 221:9, 221:18, 222:21, 235:21, 238:19, 239:8, 239:20, 240:3, 240:21, 240:24, 253:20, 258:18, 260:16, 262:12, 263:5, 263:9, 263:15, 263:18, 263:25, 264:7, 269:4, 271:19, 272:9, 273:1, 273:23, 274:20, 275:1, 276:16, 276:18, 277:8, 277:15, 281:21, 288:1, 288:24, 289:8, 289:19, 292:25, 293:6
**seeing** [1] - 274:19
**seem** [1] - 114:23
**Seeram** [1] - 30:4
**seize** [1] - 249:23
**seized** [4] - 210:22, 250:14, 250:25, 251:2
**Sekar** [1] - 172:10
**selected** [3] - 278:6, 278:23, 278:25
**selection** [1] - 222:9
**self** [1] - 280:21
**self-serving** [1] - 280:21
**sell** [9] - 30:12, 30:15, 135:24, 136:7, 146:13, 149:4, 173:12, 173:13, 173:17
**seller** [1] - 119:3
**selling** [4] - 107:15, 132:18, 263:13, 274:18
**Selzentry** [5] - 70:14, 157:22, 157:24, 158:2, 158:23
**Send** [1] - 19:19
**send** [11] - 28:20, 40:4, 83:21, 85:17, 127:18, 135:1, 135:3, 139:12, 161:7, 170:6, 228:12
**sending** [6] - 76:25, 84:2, 84:19, 85:23, 161:6, 217:18
**sends** [11] - 24:12, 24:16, 49:9, 80:2, 81:9, 84:5, 90:20, 92:9, 170:3, 217:21, 265:13
**sense** [3] - 11:12, 269:21, 270:5
**sent** [53] - 17:1, 17:13, 19:24, 20:12, 25:8, 26:11, 32:16, 36:1, 38:12, 41:23, 43:16, 45:1, 46:24, 51:20, 54:20, 61:16, 65:6, 66:17, 70:10, 70:19, 79:23, 80:21, 80:25, 81:21, 82:11, 82:13, 91:5, 91:10, 91:23, 94:20, 95:10, 95:16, 97:6, 97:25, 99:22, 101:11, 103:25, 106:4, 106:17, 111:20, 111:21, 116:3, 149:5, 159:2, 161:8, 169:15, 170:10, 182:21, 197:2, 264:8, 264:14, 265:8, 284:12
**sentence** [5] - 17:19, 30:16, 67:18, 88:5, 235:8
**separate** [1] - 174:21
**September** [23] - 23:22, 25:9, 29:2, 29:8, 32:3, 32:8, 42:8, 43:12, 85:19, 86:15, 87:4, 88:1, 88:15, 89:4, 90:6, 90:7, 95:4, 132:3, 132:16, 133:5, 234:12, 235:1, 235:6
**serious** [3] - 87:13, 183:10, 184:2
**Seroquel** [7] - 170:25, 195:15, 195:24, 196:12, 197:19, 209:10, 209:15
**Service** [4] - 14:18, 14:21, 15:6, 187:11
**service** [4] - 30:2, 240:19, 266:17, 266:18
**Services** [4] - 14:6, 14:16, 187:19, 187:21
**serving** [2] - 10:11, 280:21
**session** [6] - 8:7, 10:5, 222:22, 223:17, 224:17, 250:12
**sessions** [2] - 8:15, 262:17
**set** [2] - 176:9, 269:7
**setting** [1] - 206:6
**settlement** [1] - 122:20
**seven** [4] - 79:9, 79:15, 80:10, 80:24
**seven-minute** [1] - 79:15
**seventeen** [2] - 240:17, 240:18
**several** [10] - 14:13, 174:24, 174:25, 177:23, 192:6, 196:10, 225:7, 253:4, 256:14, 281:15
**severance** [1] - 72:3
**SG** [1] - 136:8
**Shadow** [1] - 181:15
**shadows** [1] - 55:18
**Shady** [2] - 24:17, 26:5
**shady** [1] - 182:1
**shape** [2] - 264:14, 271:12
**share** [3] - 92:25, 100:12, 122:21
**shelves** [1] - 209:3
**ship** [2] - 83:4, 149:25
**shipment** [8] - 134:1, 141:8, 142:1, 143:18, 144:20, 145:13, 147:9, 271:21
**shipping** [11] - 37:12, 37:25, 44:22, 84:6, 87:12, 113:13, 134:8, 141:16, 141:25, 145:4, 145:13
**ships** [1] - 134:15
**shocked** [1] - 27:21
**shoeboxes** [1] - 209:24
**Shoppe** [2] - 262:21, 262:23
**shortened** [1] - 104:5
**show** [79] - 19:21, 23:16, 24:23, 25:5, 32:12, 32:13, 35:9, 36:4, 39:1, 43:13, 44:14, 45:25, 48:4, 50:4, 51:13, 54:3, 56:14, 57:19, 59:13, 60:9, 61:13, 62:11, 63:18, 64:18, 65:24, 66:13, 67:2, 69:1, 70:23, 76:6, 77:7, 77:8, 78:12, 84:13, 86:11, 94:3, 102:4, 103:7, 105:9, 106:21, 107:20, 109:6, 111:14, 112:16, 114:2, 115:6, 116:23, 119:8, 122:3, 128:3, 130:11, 131:24, 133:7, 135:5, 136:13, 138:1, 138:18, 139:16, 141:12, 144:24, 150:16, 151:5, 151:20, 152:21, 154:12, 155:1, 156:1, 158:5, 161:10, 162:1, 162:13, 163:12, 163:13, 164:9, 171:13, 209:2, 213:13, 261:14, 277:3
**showed** [10] - 179:9, 191:25, 192:4, 195:6, 195:10, 198:12, 235:1, 246:5, 276:5, 291:6
**showing** [4] - 62:7, 195:24, 196:12, 234:17
**shown** [7] - 164:8, 235:4, 245:23, 246:2, 247:16, 274:17, 276:1
**shows** [2] - 237:6, 272:1
**shred** [3] - 164:5, 164:10, 221:9
**shredder** [1] - 207:1
**shredding** [1] - 172:6
**shut** [1] - 189:2
**sic** [9] - 60:4, 65:14, 65:21, 83:12, 97:7, 99:8, 115:2, 118:4
**sic]** [2] - 99:11, 119:1
**side** [3] - 28:16, 80:6
**side-by-side** [1] - 80:6
**signature** [1] - 66:18
**significance** [3] - 200:7, 200:13, 200:18
**significantly** [1] - 195:7
**silly** [1] - 84:25
**similar** [6] - 26:12, 34:22, 99:15, 145:2, 156:16, 246:20
**simple** [2] - 15:14, 63:15
**simply** [1] - 251:15
**singing** [1] - 8:17
**single** [2] - 28:9, 176:15
**sit** [2] - 9:23, 216:21
**sits** [1] - 222:11
**sitting** [3] - 109:1, 189:4, 189:11
**situation** [1] - 13:7
**six** [4] - 14:18, 43:6, 56:13, 214:24
**size** [2] - 174:16, 174:18
**sketchy** [1] - 58:19
**skip** [2] - 67:22, 98:6
**Skywrs** [1] - 199:5
**skywrs** [1] - 48:23
**slow** [1] - 124:16
**slowly** [2] - 9:24, 223:16

**small** [1] - 55:9
**smile** [2] - 222:6, 222:7
**Smith** [5] - 120:18, 121:19, 121:25, 162:16, 163:4
**Smith's** [1] - 223:21
**Snapchat** [1] - 206:4
**so..** [1] - 223:4
**social** [6] - 117:18, 118:4, 118:25, 219:23, 220:5, 220:11
**society** [1] - 27:10
**sold** [22] - 31:7, 34:3, 68:5, 82:5, 91:8, 101:25, 104:3, 137:8, 143:6, 143:11, 143:12, 146:25, 152:18, 174:2, 182:8, 194:2, 201:17, 217:16, 217:25, 263:13, 273:25, 291:3
**solution** [1] - 64:15
**Solutions** [33] - 31:15, 35:6, 36:20, 37:15, 38:4, 43:1, 68:6, 68:17, 70:17, 81:5, 81:17, 101:22, 104:18, 137:14, 142:5, 142:11, 143:7, 144:14, 146:21, 147:4, 147:8, 149:8, 150:7, 150:19, 151:9, 151:22, 152:19, 152:24, 153:13, 156:5, 157:4, 158:9, 271:7
**Solutions'** [5] - 43:3, 67:25, 140:13, 143:18, 154:15
**solve** [1] - 292:15
**someone** [22] - 30:10, 48:8, 60:12, 62:14, 63:16, 65:11, 65:14, 76:21, 107:24, 109:17, 111:3, 120:8, 175:10, 179:19, 197:15, 197:19, 235:10, 240:6, 240:25, 242:4, 279:5, 288:24
**sometime** [2] - 222:6, 250:22
**sometimes** [8] - 175:20, 178:16, 182:2, 205:22, 211:13, 292:9
**soon** [2] - 32:5, 134:11
**SOPs** [8] - 7:9, 7:10, 37:12, 37:25, 106:8, 156:12, 156:17, 156:25
**sorry** [31] - 42:12, 49:15, 71:23, 79:21, 82:1, 85:24, 87:23, 98:8, 99:21, 127:7, 133:1, 143:10, 150:6, 173:20, 176:24, 180:7, 187:18, 187:20, 208:8, 208:10, 214:12, 222:16, 236:2, 240:13, 245:25, 254:15, 269:19, 274:23, 278:14, 283:3, 285:23
**sort** [4] - 215:18, 220:10, 228:10, 282:12
**sorts** [1] - 166:9
**sound** [1] - 163:6
**sounded** [1] - 93:6
**sounds** [1] - 32:6
**source** [2] - 34:8, 134:11
**Sourcing** [2] - 37:17, 38:7
**SOUTHERN** [1] - 1:1
**Southern** [3] - 284:17, 285:10, 293:17
**speaker** [1] - 188:24
**speaking** [1] - 26:10
**speaks** [2] - 200:15, 218:23
**Special** [66] - 12:9, 13:12, 14:5, 14:15, 15:10, 16:3, 17:1, 17:13, 18:22, 22:13, 23:10, 24:9, 34:20, 35:12, 36:7, 39:4, 41:4, 45:6, 46:3, 46:17, 48:7, 50:9, 53:11, 66:16, 75:10, 77:12, 78:11, 94:6, 101:21, 104:10, 105:11, 106:24, 111:17, 113:5, 126:18, 130:14, 135:21, 136:16, 137:2, 138:4, 138:21, 139:19, 140:11, 141:14, 142:11, 142:22, 143:24, 145:2, 146:7, 147:15, 148:2, 150:18, 151:8, 151:23, 153:13, 154:16, 155:3, 155:15, 156:3, 156:16, 158:9, 159:2, 163:15, 164:4, 168:11, 169:15
**special** [5] - 14:10, 14:11, 14:17, 15:7, 15:8
**specialist** [1] - 102:21
**specialists** [1] - 43:3
**specialty** [2] - 46:19, 46:20
**specific** [16] - 10:1, 11:10, 176:13, 182:9, 198:4, 216:6, 220:8, 226:6, 227:1, 229:2, 230:8, 241:4, 256:21, 276:22, 287:24, 289:1
**specifically** [7] - 193:6, 193:18, 218:21, 227:8, 269:3, 270:21, 278:25
**specifics** [1] - 173:1
**speculation** [21] - 179:3, 179:14, 183:22, 187:4, 194:4, 194:19, 202:4, 216:12, 233:13, 235:14, 238:23, 251:25, 252:11, 261:8, 266:6, 266:10, 269:23, 272:20, 273:6, 273:18, 274:12
**speculative** [2] - 241:17, 241:19
**spell** [1] - 13:19
**spent** [3] - 60:4, 61:8, 220:15
**spoiling** [1] - 27:5
**spoken** [2] - 254:4, 254:8
**spot** [4] - 70:24, 165:21, 166:4, 292:19
**spread** [1] - 83:22
**Spreadsheet** [4] - 5:13, 6:4, 70:6, 161:24
**spreadsheet** [4] - 69:24, 83:3, 99:23, 161:16
**staff** [1] - 132:19
**Stain** [4] - 30:5, 30:8, 31:8, 95:13
**stamp** [2] - 79:6, 80:1
**stand** [1] - 96:14
**standard** [11] - 156:3, 213:4, 213:7, 213:10, 213:16, 213:21, 213:24, 214:2, 214:4, 214:10, 247:22
**standpoint** [1] - 253:12
**Stanley** [2] - 30:7, 30:9
**start** [13] - 11:17, 12:24, 16:20, 32:23, 68:9, 86:7, 99:1, 104:8, 107:2, 108:14, 198:25, 223:6, 223:9
**started** [4] - 130:1, 223:25, 225:11, 225:15
**starting** [2] - 28:5, 33:23
**starts** [1] - 32:20
**state** [9] - 13:19, 14:23, 37:5, 37:21, 55:8, 74:6, 144:13, 174:25
**State** [1] - 28:12
**state's** [1] - 27:6
**statement** [10] - 22:5, 73:13, 73:15, 73:21, 123:3, 149:18, 159:19, 241:15, 269:22, 270:6
**STATES** [3] - 1:1, 1:4, 1:10
**states** [9] - 24:13, 24:15, 28:22, 48:22, 49:9, 174:23, 174:24, 175:8
**States** [5] - 1:14, 2:4, 14:18, 174:23, 293:16
**status** [1] - 245:24
**stay** [2] - 167:25, 246:8
**staying** [3] - 245:10, 245:14, 246:3
**stays** [1] - 122:20
**steal** [2] - 27:11, 269:10
**STENOGRAPHICALLY** [1] - 2:1
**step** [1] - 55:18
**stickers** [2] - 136:3, 136:9
**sticks** [1] - 136:2
**still** [15] - 51:7, 74:12, 104:9, 107:15, 108:25, 121:13, 124:1, 134:13, 135:24, 141:7, 155:23, 165:21, 228:19, 234:18, 259:18
**stipulation** [2] - 124:7, 270:25
**stock** [1] - 136:2
**stocked** [1] - 134:3
**stop** [6] - 12:25, 30:14, 33:17, 101:9, 214:17, 223:16
**story** [2] - 247:5, 292:11
**strange** [1] - 118:1
**Street** [3] - 1:15, 1:19, 64:10
**Stribild** [1] - 28:10
**strike** [1] - 160:1
**stuff** [9] - 46:21, 55:21, 86:5, 97:6, 113:18, 128:21, 187:13, 204:10, 269:12
**sub** [1] - 89:21
**sub-exhibits** [1] - 89:21
**subject** [18] - 16:13, 40:17, 44:13, 45:16, 46:8, 47:1, 47:11, 67:15, 94:23, 109:11, 117:14, 147:17, 148:2, 159:19, 159:25, 168:19, 169:7, 170:2
**submit** [2] - 100:14, 109:22
**submitted** [2] - 252:9, 273:25
**subpoena** [19] - 207:11, 207:12, 207:13, 207:14, 208:3, 208:4, 208:13, 208:16, 210:6, 210:8, 249:16, 249:17, 249:18, 249:20, 251:16, 270:20, 271:10, 274:8, 285:10
**subpoenaed** [2] - 207:17, 249:18
**subpoenas** [4] - 207:22, 209:7, 249:22, 284:16
**subscriber** [1] - 19:5
**subsection** [2] - 149:22, 230:13

**subsequent** [1] - 110:16
**subset** [3] - 230:8, 282:20, 283:14
**successful** [2] - 29:23, 269:1
**successor** [1] - 226:2
**sued** [1] - 172:16
**suggest** [9] - 11:4, 196:25, 197:11, 206:17, 235:11, 235:18, 281:1, 282:24, 283:5
**suggested** [1] - 197:18
**suggesting** [2] - 9:17, 210:15
**suggestion** [1] - 209:17
**suggests** [4] - 197:5, 209:7, 226:13, 276:9
**suit** [1] - 55:8
**suite** [1] - 28:14
**Suite** [1] - 31:23
**sulfate** [1] - 160:12
**summaries** [1] - 77:12
**Summary** [4] - 3:22, 3:23, 78:9, 90:1
**summary** [12] - 77:15, 77:21, 78:12, 78:13, 78:16, 80:5, 80:6, 89:17, 97:11, 178:10, 178:12, 178:22
**summer** [1] - 247:19
**Sun** [2] - 82:7, 91:16
**super** [1] - 63:15
**supervisor** [3] - 228:14, 228:17, 241:10
**supplied** [3] - 34:1, 251:23, 252:20
**supplier** [3] - 68:13, 77:1, 134:7
**Suppliers** [2] - 7:1, 113:3
**suppliers** [2] - 113:12, 257:11
**Supply** [5] - 43:2, 43:24, 44:19, 77:4, 137:10
**support** [4] - 93:11, 102:20, 175:21, 292:3
**supporting** [1] - 131:17
**supports** [1] - 102:24
**suppose** [3] - 206:13, 223:8, 288:22
**supposed** [5] - 110:20, 111:3, 226:23, 286:23, 286:24
**surgery** [1] - 8:23
**surveillance** [1] - 209:1
**suspect** [2] - 149:25, 156:4
**sustain** [1] - 241:19
**sustained** [33] - 174:6, 175:3, 179:4, 183:23, 186:5, 186:18, 190:10, 191:11, 199:25, 200:11, 201:20, 201:24, 202:5, 202:21, 209:12, 210:20, 211:4, 211:25, 212:4, 212:18, 218:25, 220:13, 244:9, 245:20, 257:25, 260:6, 264:17, 267:6, 275:6, 277:20, 277:24, 288:6, 289:6
**SWAT** [2] - 105:25, 106:4
**switch** [1] - 57:18
**switched** [1] - 201:17
**sworn** [2] - 13:15, 240:23
**Synergy** [11] - 108:16, 109:13, 109:19, 110:9, 111:21, 113:7, 152:17, 152:18, 277:11, 277:14, 277:22
**synonymous** [1] - 279:19
**system** [7] - 31:9, 31:11, 37:12, 37:25, 288:19, 288:20, 288:21

## T

**T3** [55] - 31:22, 62:4, 62:7, 67:25, 68:6, 81:6, 82:16, 91:9, 91:23, 92:9, 92:23, 92:24, 93:13, 95:9, 95:16, 96:9, 98:13, 100:22, 101:22, 109:11, 109:12, 112:3, 119:1, 142:11, 143:9, 143:12, 143:17, 143:18, 145:22, 146:7, 146:14, 147:8, 148:4, 149:2, 149:5, 150:11, 150:18, 151:9, 151:22, 152:15, 152:24, 153:13, 154:2, 154:15, 157:4, 246:18, 251:23, 261:24, 264:8, 270:15, 275:8, 275:25, 276:14, 276:15, 276:24
**T3s** [29] - 19:16, 21:13, 29:16, 29:22, 44:21, 64:15, 71:21, 93:12, 96:4, 99:19, 121:10, 130:8, 148:16, 215:5, 215:25, 246:14, 246:22, 247:10, 247:19, 248:3, 248:8, 248:14, 251:20, 273:14, 273:24, 276:4, 276:6, 276:10, 292:6
**table** [1] - 47:6
**tablet** [1] - 28:9
**tablets** [3] - 170:25, 196:12, 197:20
**tag** [1] - 227:4
**tagging** [1] - 226:12
**talks** [1] - 235:8
**tape** [1] - 109:4
**Target** [2] - 24:18, 26:5
**Targeting** [1] - 181:15
**task** [5] - 228:15, 243:16, 243:17, 244:1, 244:2
**tasks** [1] - 176:1
**tax** [4] - 191:13, 191:16, 191:18, 191:23
**taxpayers** [1] - 27:3
**team** [15] - 100:6, 175:20, 188:18, 250:9, 253:25, 254:4, 254:8, 254:11, 254:14, 255:17, 257:17, 275:2, 286:7, 289:18, 290:23
**Teams** [29] - 6:7, 6:8, 6:13, 6:15, 6:17, 6:18, 6:20, 6:21, 7:12, 23:21, 24:4, 32:9, 39:4, 39:13, 113:7, 115:9, 119:19, 120:11, 121:3, 122:5, 122:13, 127:1, 128:14, 132:2, 132:10, 162:16, 162:24, 289:24, 290:17
**teams** [1] - 290:18
**technique** [1] - 212:7
**telephone** [2] - 207:22, 212:11
**ten** [10] - 74:7, 165:2, 165:4, 165:8, 221:15, 221:18, 221:23, 226:17, 226:18, 240:15
**ten-minute** [3] - 74:7, 165:2, 221:15
**term** [1] - 188:3
**terms** [3] - 11:15, 149:21, 279:19
**terrible** [1] - 183:4
**test** [2] - 256:23, 277:2
**testified** [35] - 13:16, 15:10, 15:14, 173:18, 173:21, 211:23, 231:12, 238:1, 238:11, 238:23, 239:5, 239:7, 244:23, 248:13, 248:16, 251:22, 256:17, 257:24, 260:8, 262:3, 264:19, 264:22, 269:14, 270:15, 276:17, 276:19, 276:20, 277:10, 277:16, 277:19, 278:16, 278:22, 281:12, 283:12, 284:20
**testify** [18] - 11:20, 11:21, 11:22, 197:9, 233:11, 245:5, 248:23, 249:1, 256:2, 262:11, 262:17, 262:19, 274:16, 278:7, 280:15, 283:18, 289:23, 291:18
**testifying** [7] - 12:2, 15:18, 196:17, 199:16, 234:8, 238:24, 261:17
**testimony** [53] - 71:9, 71:10, 195:19, 195:20, 231:20, 232:1, 232:5, 232:12, 233:21, 233:22, 234:15, 235:5, 236:20, 238:16, 241:23, 246:5, 247:2, 247:6, 247:25, 248:19, 249:11, 251:19, 252:9, 252:10, 252:14, 252:19, 253:7, 253:15, 255:11, 255:19, 256:13, 257:13, 259:9, 261:21, 263:6, 263:24, 264:6, 268:1, 268:7, 268:13, 271:24, 272:4, 272:7, 278:2, 278:3, 282:24, 283:4, 284:25, 285:14, 286:15, 290:13, 293:5
**text** [92] - 18:22, 20:14, 20:16, 48:7, 49:20, 49:24, 51:16, 54:6, 55:7, 55:12, 75:10, 79:12, 80:14, 82:20, 82:23, 83:14, 84:9, 85:2, 88:19, 88:23, 90:8, 90:14, 92:8, 92:13, 95:18, 97:15, 97:22, 99:17, 99:21, 101:11, 106:24, 108:11, 112:19, 113:25, 114:7, 115:13, 116:1, 130:7, 133:10, 135:8, 135:22, 177:17, 178:7, 178:14, 178:21, 180:19, 182:18, 204:10, 205:12, 207:25, 220:19, 227:9, 227:11, 227:12, 227:13, 227:18, 227:20, 228:25, 229:3, 230:6, 230:8, 230:9, 230:14, 230:16, 231:6, 235:24, 246:25, 247:17, 247:18, 247:21, 248:2, 248:5, 251:18, 253:5, 256:5, 268:19, 268:25, 282:13, 282:16, 282:19, 282:20, 283:8, 283:13, 283:14, 283:22, 286:24, 288:14, 289:2, 289:24, 290:18
**Text** [28] - 3:12, 3:13, 6:9, 6:10, 6:11, 6:12, 6:16, 6:23, 6:24,

6:25, 7:1, 7:2, 7:4, 7:5, 48:16, 50:25, 54:14, 56:25, 58:5, 59:24, 60:20, 75:18, 107:9, 108:6, 113:2, 115:21, 133:18, 135:18
**texting** [1] - 20:15
**texts** [9] - 21:10, 21:18, 22:4, 85:14, 92:6, 99:18, 113:6, 135:24, 231:1
**THE** [326] - 1:10, 1:13, 8:2, 9:6, 9:8, 9:9, 9:14, 10:9, 10:17, 10:21, 10:23, 11:6, 11:8, 11:18, 12:7, 12:11, 12:13, 12:18, 13:17, 13:18, 13:21, 13:24, 15:25, 16:16, 17:8, 17:11, 20:7, 23:3, 24:3, 25:17, 25:20, 29:20, 33:8, 33:10, 34:14, 34:18, 34:25, 35:20, 36:16, 39:12, 40:19, 42:4, 42:11, 42:16, 42:18, 44:6, 45:18, 46:11, 46:14, 48:15, 50:7, 50:24, 53:4, 53:22, 54:13, 56:24, 58:4, 59:23, 60:19, 61:23, 62:21, 63:11, 64:3, 65:3, 66:9, 66:24, 67:12, 69:13, 69:25, 70:3, 70:5, 70:24, 71:2, 71:7, 71:9, 71:12, 71:13, 71:14, 71:16, 72:7, 72:10, 72:20, 73:15, 73:18, 73:23, 74:4, 74:10, 74:13, 74:14, 74:18, 74:20, 74:22, 75:2, 75:17, 76:16, 78:8, 86:21, 89:18, 89:24, 94:15, 102:15, 103:17, 105:6, 105:18, 107:8, 108:5, 113:1, 115:20, 117:8, 118:18, 119:18, 121:1, 122:12, 123:9, 123:14, 123:16, 123:18, 123:20, 123:24, 124:3, 124:4, 124:9, 124:13, 124:17, 124:19, 124:21, 124:23, 124:25, 125:2, 125:4, 125:6, 125:8, 125:10, 125:12, 125:14, 125:16, 125:18, 125:20, 125:22, 126:1, 126:3, 126:5, 126:10, 126:25, 128:13, 129:13, 130:25, 132:9, 133:17, 135:17, 136:23, 138:14, 139:3, 140:1, 140:23, 141:22, 142:18, 144:7, 145:10, 146:3, 147:23, 150:25, 151:16, 152:4, 153:5, 153:20, 154:9, 154:22, 155:10, 156:11, 156:24, 157:11, 157:16, 157:18, 158:16, 159:8, 159:17, 159:25, 161:22, 162:11, 162:23, 163:25, 164:25, 165:5, 165:7, 165:9, 165:12, 165:13, 165:17, 166:1, 166:6, 166:14, 166:16, 166:21, 166:23, 166:24, 167:1, 167:2, 167:4, 167:5, 167:8, 167:9, 167:12, 167:13, 167:15, 167:20, 168:2, 168:3, 168:6, 168:21, 169:9, 169:22, 170:17, 171:23, 172:20, 174:6, 175:3, 176:8, 176:20, 177:7, 179:4, 179:15, 180:6, 183:23, 185:23, 186:5, 186:18, 187:5, 188:25, 190:10, 190:16, 190:24, 191:11, 193:2, 194:5, 194:20, 196:3, 199:18, 199:25, 200:11, 200:24, 201:20, 201:24, 202:5, 202:10, 202:21, 203:12, 205:21, 207:21, 209:12, 210:20, 211:4, 211:25, 212:4, 212:18, 216:13, 218:25, 220:13, 221:14, 221:20, 221:22, 222:1, 222:7, 222:10, 222:14, 222:18, 222:19, 222:22, 223:1, 223:5, 223:13, 223:15, 224:1, 224:3, 224:5, 224:10, 233:15, 235:15, 236:16, 237:8, 237:19, 238:6, 238:25, 240:10, 241:19, 244:9, 245:20, 246:11, 247:13, 248:20, 250:17, 251:13, 252:2, 252:12, 257:25, 259:3, 259:14, 259:20, 260:6, 261:9, 262:5, 264:17, 267:6, 267:12, 269:25, 271:2, 272:21, 273:8, 273:19, 274:13, 275:6, 277:7, 277:20, 277:24, 278:12, 279:18, 280:22, 284:21, 288:6, 289:6, 292:19, 292:22, 293:2, 293:4, 293:7, 293:8
**themselves** [2] - 215:15, 215:16
**theory** [2] - 229:15, 240:4
**therefore** [1] - 100:10
**Thereupon** [1] - 13:13
**thinking** [2] - 131:11, 183:22
**thinks** [2] - 97:7, 233:14
**third** [10] - 24:16, 36:25, 37:3, 37:23, 47:9, 51:23, 55:13, 58:13, 95:4, 184:25
**thousand** [2] - 206:21, 221:8
**thousands** [3] - 28:9, 195:3, 206:23
**thread** [9] - 82:20, 88:19, 88:23, 89:9, 90:15, 96:22, 97:22, 106:15
**Threats** [1] - 106:10
**three** [17] - 8:5, 28:10, 57:3, 59:1, 80:25, 90:5, 90:7, 93:8, 184:19, 184:22, 186:20, 189:6, 214:24, 222:23, 223:7, 224:16, 269:9
**throughout** [1] - 11:1
**throwing** [1] - 208:6
**thumbprint** [1] - 84:6
**Thursday** [3] - 222:17, 222:19, 222:23
**tied** [1] - 160:1
**timestamp** [2] - 80:11, 82:15
**tiny** [1] - 116:4
**title** [8] - 14:9, 24:17, 26:1, 26:4, 31:14, 94:20, 212:22, 260:14
**titled** [3] - 137:4, 161:17, 252:3
**today** [35] - 15:17, 26:8, 57:12, 65:18, 83:1, 83:19, 85:24, 87:7, 107:16, 108:16, 111:22, 127:17, 227:24, 231:10, 231:16, 231:19, 232:1, 232:4, 232:12, 232:14, 233:21, 236:7, 236:21, 238:24, 241:23, 242:4, 251:19, 251:22, 256:6, 256:14, 257:9, 257:13, 257:24, 259:9, 263:24
**together** [1] - 206:22
**tomorrow** [10] - 48:22, 56:12, 83:18, 85:23, 99:10, 111:25, 136:7, 293:1, 293:6, 293:9
**ton** [1] - 84:25
**tonight** [1] - 136:8
**Tony** [6] - 49:18, 185:3, 185:9, 185:11, 185:17, 215:13
**Tonyb@Safechain.Com** [1] - 35:13
**took** [7] - 78:1, 90:12, 201:16, 253:13, 253:17, 279:15, 289:14
**tool** [7] - 188:6, 203:14, 203:23, 203:25, 204:4, 204:17, 211:12
**tools** [10] - 179:18, 180:15, 188:10, 188:15, 188:16, 191:20, 202:23, 203:3, 207:5, 211:6
**top** [65] - 20:24, 25:4, 31:24, 38:21, 38:23, 39:16, 43:8, 44:24, 47:1, 48:21, 51:5, 51:6, 55:4, 55:13, 58:13, 64:13, 68:19, 70:9, 75:25, 83:17, 84:1, 84:16, 85:16, 86:4, 91:15, 93:21, 93:23, 95:10, 97:23, 106:14, 108:14, 110:7, 110:8, 114:5, 118:3, 119:23, 127:23, 127:24, 128:17, 129:4, 129:17, 130:4, 130:16, 137:15, 139:7, 140:5, 144:13, 148:24, 150:4, 150:6, 150:19, 151:10, 155:20, 157:21, 160:25, 161:4, 198:25, 213:22, 252:4, 252:8, 252:18, 269:5, 269:12, 271:5
**top-level** [1] - 93:23
**top-line** [2] - 47:1, 64:13
**topics** [1] - 57:18
**total** [3] - 78:17, 189:25, 231:2
**totaling** [1] - 33:1
**totally** [1] - 34:13
**touch** [1] - 93:1
**tough** [3] - 120:1, 134:17, 166:2
**towards** [1] - 154:3
**trace** [1] - 34:8
**Trace** [1] - 44:20
**Track** [1] - 44:20
**tracking** [1] - 84:6
**trade** [1] - 44:14
**trading** [1] - 106:12
**traffic** [1] - 8:11
**trained** [5] - 187:10, 187:15, 235:19, 240:2, 240:21
**training** [8] - 15:4, 15:7, 15:8, 121:13, 187:23, 187:25, 203:18, 229:17
**Training** [1] - 15:5
**transaction** [18] - 88:12, 93:3, 100:22, 101:1, 109:19, 110:16, 110:20, 111:4, 114:14,

149:18, 149:23, 156:17, 213:24, 214:21, 215:7, 217:15, 261:6, 272:3
**transactions** [6] - 91:25, 92:22, 93:11, 261:19, 262:14, 269:1
**TRANSCRIPT** [1] - 1:9
**transcription** [1] - 293:12
**transferred** [1] - 226:2
**transmitted** [7] - 271:15, 272:2, 272:3, 272:7, 273:14, 273:17, 273:24
**treated** [1] - 100:11
**treatments** [1] - 28:11
**trend** [1] - 138:8
**triage** [1] - 222:24
**trial** [12] - 9:16, 11:1, 11:5, 11:17, 15:11, 73:11, 73:12, 222:6, 223:25, 224:15, 236:23, 253:25
**TRIAL** [1] - 1:9
**Trial** [1] - 293:10
**trials** [1] - 15:13
**trickled** [1] - 202:18
**tried** [2] - 30:23, 289:18
**triple** [2] - 182:1, 182:13
**Triumeq** [2] - 28:10, 161:6
**troops** [1] - 108:18
**trouble** [1] - 55:9
**true** [4] - 34:8, 193:5, 193:7, 272:15
**trust** [1] - 252:4
**truth** [2] - 188:11, 221:4
**truthful** [2] - 192:5, 291:23
**try** [11] - 12:22, 18:17, 31:3, 99:8, 171:7, 188:7, 208:25, 224:14, 232:21, 239:5, 244:20
**trying** [4] - 117:20, 206:11, 234:2, 281:1
**Tuesday** [2] - 8:16, 8:18
**turn** [1] - 140:8
**turned** [1] - 204:13
**turns** [1] - 189:23
**two** [25] - 9:16, 10:5, 11:9, 14:22, 28:4, 32:5, 32:6, 32:25, 38:6, 42:12, 60:4, 61:8, 72:22, 104:2, 113:10, 120:3, 136:5, 168:5, 186:20, 214:24, 227:11, 227:14, 261:1, 265:9
**tying** [1] - 159:20
**TylerT@SafeChain.com** [1] - 60:13
**type** [3] - 188:1, 276:15, 276:23
**types** [1] - 14:13
**typically** [2] - 175:19, 176:9

## U

**U.S** [2] - 34:5, 293:17
**Ugh** [6] - 24:19, 133:24, 182:25, 183:2, 183:4, 199:14
**ultimately** [1] - 154:3
**unable** [1] - 103:1
**under** [32] - 26:23, 28:1, 36:24, 37:17, 42:25, 46:19, 47:16, 55:17, 56:1, 59:7, 67:17, 67:18, 72:11, 72:13, 74:12, 106:5, 106:7, 106:10, 124:1, 129:23, 129:24, 131:4, 131:13, 141:3, 143:3, 149:20, 149:21, 149:24, 159:19, 174:3, 194:17
**undergraduate** [1] - 15:2
**underlined** [1] - 215:5
**underlying** [1] - 137:5
**understandable** [1] - 27:21
**undo** [1] - 47:15
**unfortunately** [2] - 77:1, 158:6
**UNITED** [3] - 1:1, 1:4, 1:10
**United** [5] - 1:14, 2:4, 14:18, 174:23, 293:16
**universal** [1] - 183:2
**universally** [1] - 183:3
**universe** [2] - 244:11, 282:13
**University** [2] - 15:2, 15:3
**unknown** [1] - 34:6
**unless** [2] - 47:23, 180:18
**unlimited** [1] - 154:2
**unquote** [1] - 218:12
**unrelated** [3] - 33:7, 34:13, 74:2
**up** [110] - 16:23, 17:23, 18:8, 18:16, 24:24, 27:4, 29:4, 29:25, 30:7, 31:24, 38:1, 38:9, 38:21, 41:1, 41:19, 43:8, 44:9, 44:24, 50:13, 51:14, 55:3, 56:1, 56:12, 61:11, 62:9, 62:23, 64:11, 64:14, 68:19, 69:22, 70:8, 75:7, 77:10, 79:21, 80:5, 80:19, 81:2, 81:25, 87:15, 87:22, 88:7, 88:17, 91:4, 92:17, 93:4, 93:15, 98:8, 100:1, 101:3, 101:18, 104:21, 106:14, 111:6, 113:20, 114:2, 117:22, 120:14, 126:15, 128:25, 129:17, 132:16, 137:15, 142:8, 143:21, 145:19, 147:12, 150:1, 156:14, 157:1, 158:24, 159:20, 160:1, 160:13, 160:14, 160:18, 169:12, 170:8, 173:10, 176:9, 177:16, 180:22, 188:7, 191:6, 191:7, 192:17, 195:24, 196:12, 201:13, 202:13, 203:5, 213:22, 217:4, 218:3, 220:1, 223:7, 234:2, 236:6, 236:21, 238:15, 240:2, 254:25, 269:7, 284:18, 285:22, 286:2, 288:24, 292:6
**update** [2] - 134:1, 134:2
**Updated** [1] - 161:17
**updated** [1] - 111:22
**upgrade** [1] - 28:15
**UT** [1] - 21:4
**Utah** [4] - 19:16, 20:15, 21:13, 119:3
**utilized** [2] - 203:25, 290:8

## V

**V-I-P-U-L-B-H-A-I** [1] - 171:9
**valid** [4] - 117:16, 175:7, 219:22, 276:23
**validate** [1] - 77:21
**validating** [1] - 218:10
**value** [1] - 74:5
**Vanderbilt** [2] - 15:2, 15:3
**various** [7] - 70:14, 70:16, 130:8, 138:7, 227:15, 249:18, 278:3
**Velez** [1] - 34:5
**vendor** [20] - 30:19, 58:14, 59:8, 59:10, 109:13, 117:14, 119:5, 156:17, 186:24, 212:24, 212:25, 213:12, 213:24, 215:25, 216:11, 244:13, 258:8, 258:13, 259:10
**vendors** [13] - 187:3, 198:18, 219:14, 258:2, 258:4, 258:12, 258:21, 259:10, 259:11, 274:10, 275:3, 291:5, 291:17
**verification** [1] - 219:13
**Verification** [1] - 109:11
**verified** [1] - 99:16
**verify** [17] - 29:16, 29:22, 30:5, 31:2, 31:6, 92:22, 92:25, 93:2, 100:21, 100:22, 109:12, 117:15, 117:20, 117:24, 215:7, 215:24, 219:11
**Verizon** [3] - 19:8, 77:13, 77:16
**versions** [2] - 99:18, 101:22
**via** [3] - 100:12, 207:11, 209:6
**victim** [1] - 134:9
**video** [7] - 16:8, 22:20, 40:13, 45:11, 71:20, 71:25, 168:15
**videos** [2] - 191:25, 192:19
**view** [2] - 11:2, 203:5
**viewed** [1] - 91:11
**VII** [1] - 104:11
**VIII** [2] - 1:7, 149:14
**ViiV** [7] - 38:18, 123:1, 149:3, 149:4, 158:3, 160:17
**violation** [1] - 288:3
**violations** [1] - 14:12
**vipulbhai** [1] - 171:9
**viral** [1] - 27:4
**visiting** [1] - 14:24
**VLS** [1] - 139:8
**voicemail** [2] - 30:4, 88:6
**voir** [2] - 42:3, 159:7
**VOIR** [4] - 3:4, 3:5, 42:5, 159:9
**volume** [2] - 128:22, 269:13
**Volume** [1] - 1:7
**vs** [1] - 1:5
**vulnerable** [1] - 27:11

## W

**W-A-C** [1] - 173:4
**W-A-S-A-T-C-H** [1] - 68:15
**WAC** [27] - 46:4, 46:20, 47:8, 47:16, 48:1, 71:22, 71:23, 71:24, 72:1, 72:8, 72:18, 73:1, 73:16, 173:4, 173:5, 174:3, 193:8, 193:10, 193:13, 193:16, 193:17, 194:17, 280:19, 281:1, 281:2, 281:5
**wait** [2] - 9:18, 168:2
**waiting** [1] - 93:17
**waive** [5] - 12:14, 74:23, 126:6, 167:16, 224:6
**walk** [6] - 24:9, 48:19, 108:11, 113:9, 116:1, 135:21
**walked** [1] - 190:12
**wandering** [1] - 225:4
**wants** [9] - 8:6, 8:21, 9:6, 9:14, 135:25, 136:1, 170:23, 222:3, 223:9
**warehouse** [2] - 61:8, 209:2
**warrant** [4] - 210:8, 210:9, 210:10, 210:13
**warrants** [1] - 207:6
**watching** [1] - 189:5

**ways** [3] - 131:11, 193:16, 206:4
**Weaknesses** [1] - 106:5
**web** [3] - 93:10, 114:17, 114:20
**website** [1] - 30:24
**wedding** [2] - 48:23, 199:5
**Wednesday** [3] - 11:11, 13:6, 108:22
**Wednesday's** [1] - 131:8
**Weed** [2] - 112:20, 113:11
**week** [25] - 8:5, 8:20, 8:21, 9:7, 9:12, 9:13, 9:14, 9:17, 9:19, 9:23, 10:4, 10:7, 11:16, 12:1, 108:21, 119:1, 130:1, 130:9, 134:2, 223:4, 223:7, 237:2, 237:3, 238:16, 256:12
**weekend** [1] - 104:7
**weekender** [1] - 223:11
**weekenders** [1] - 223:13
**weekly** [1] - 155:19
**weeks** [3] - 9:16, 10:5, 103:23
**Wellness** [2] - 102:25, 146:17
**West** [2] - 8:10, 222:20
**WhatsApp** [3] - 206:4, 206:6, 206:8
**whatsoever** [6] - 196:24, 196:25, 197:19, 221:10, 264:13, 265:18
**whole** [4] - 9:14, 89:20, 247:16, 249:4
**Wholesale** [3] - 17:22, 30:1, 137:10
**wholesale** [10] - 35:4, 35:6, 173:7, 173:9, 174:22, 175:7, 193:14, 193:25, 195:8, 214:20
**wholesaler** [3] - 29:24, 30:3, 217:2
**Wholesaler** [4] - 29:24, 81:13, 82:9, 95:15
**Wholesalers** [4] - 109:19, 110:9, 152:16, 152:17
**wholesalers** [5] - 30:13, 30:16, 33:15, 152:12, 174:19
**wife** [1] - 279:23
**WILLIAM** [1] - 1:10
**William** [2] - 1:17, 2:3
**wire** [5] - 85:24, 104:11, 149:15, 211:14, 271:19
**wires** [4] - 211:6, 211:8, 211:9, 212:6
**wiretap** [1] - 211:15
**Wisconsin** [1] - 91:16
**wise** [2] - 166:12, 237:1
**wish** [1] - 256:2
**witness** [97] - 13:10, 15:23, 16:24, 19:22, 23:16, 24:24, 25:6, 32:13, 35:10, 36:4, 39:1, 41:20, 42:11, 43:14, 46:1, 48:4, 50:5, 50:14, 54:4, 56:15, 57:19, 59:13, 60:9, 61:13, 61:14, 62:11, 62:24, 63:2, 63:18, 64:18, 65:24, 66:13, 67:2, 69:1, 70:23, 75:7, 76:7, 77:7, 77:8, 86:11, 94:3, 102:4, 103:7, 104:22, 105:9, 106:22, 107:21, 112:16, 115:6, 116:23, 118:8, 119:8, 120:14, 122:3, 126:15, 128:4, 129:1, 130:11, 131:24, 133:7, 135:6, 136:14, 138:2, 138:19, 139:17, 140:9, 141:12, 142:9, 143:22, 144:25, 145:20, 147:12, 150:16, 151:6, 151:20, 152:22, 153:11, 153:25, 154:12, 155:1, 156:1, 156:14, 158:6, 158:25, 159:20, 161:10, 162:1, 162:14, 163:13, 168:5, 169:13, 170:8, 171:13, 180:2, 212:9, 212:10, 259:15
**WITNESS** [9] - 3:2, 13:17, 13:21, 71:12, 71:14, 74:13, 123:18, 124:3, 293:7
**Witness** [2] - 71:15, 123:19
**witnesses** [6] - 9:12, 11:4, 11:24, 196:14, 196:16, 281:12
**word** [2] - 267:23, 289:13
**words** [12] - 15:19, 68:5, 68:8, 68:10, 115:3, 183:25, 203:7, 210:9, 218:11, 237:4, 239:21, 270:22
**workers** [1] - 209:2
**works** [2] - 71:1, 215:17
**workstations** [1] - 228:9
**Worldwide** [10] - 186:11, 255:20, 255:22, 255:25, 256:6, 256:8, 256:18, 256:24, 258:7, 258:8
**worldwide** [1] - 257:2
**worried** [4] - 10:13, 172:15, 291:12, 291:13
**worries** [1] - 55:21
**worry** [2] - 118:4, 220:5
**worse** [2] - 49:2, 199:9
**worst** [1] - 160:25
**worth** [3] - 28:9, 198:1, 229:22
**worthless** [1] - 119:6
**woth** [1] - 60:4
**Wow** [1] - 49:12
**write** [93] - 18:13, 19:14, 21:2, 32:2, 39:19, 41:13, 46:18, 49:16, 49:24, 51:5, 52:3, 52:10, 55:6, 55:12, 55:19, 56:4, 56:11, 57:9, 57:11, 58:12, 58:24, 59:7, 60:2, 60:25, 61:7, 62:2, 63:14, 64:13, 67:17, 69:16, 76:2, 76:23, 83:17, 83:20, 83:25, 84:23, 85:7, 85:16, 86:4, 87:3, 87:19, 89:9, 89:13, 92:8, 92:20, 93:16, 93:20, 96:6, 97:4, 98:10, 98:22, 99:5, 99:13, 100:4, 100:19, 101:5, 102:21, 103:2, 103:22, 109:9, 111:8, 114:10, 114:25, 117:13, 117:25, 118:2, 118:23, 119:23, 120:2, 121:7, 121:19, 121:25, 122:19, 122:25, 123:2, 127:10, 127:16, 127:24, 128:1, 128:19, 132:15, 134:12, 134:16, 134:21, 136:5, 136:10, 137:18, 139:6, 140:5, 160:21, 161:4, 172:8, 288:15
**writes** [8] - 17:19, 56:10, 65:9, 75:24, 112:3, 112:5, 113:11, 116:15
**writing** [3] - 20:20, 68:22, 166:8
**written** [7] - 48:21, 64:8, 129:19, 131:4, 133:22, 170:20, 225:21
**wrongdoing** [1] - 284:13
**wrote** [2] - 116:3, 225:25
**WTF** [1] - 93:22
**WW** [1] - 64:22

## X

**XR** [1] - 170:25

## Y

**year** [12] - 42:7, 104:4, 185:6, 195:1, 202:14, 204:3, 216:18, 225:11, 225:19, 236:10, 236:12, 255:24
**year-long** [1] - 255:24
**year-plus** [1] - 236:10
**years** [8] - 14:19, 42:9, 43:6, 56:13, 206:1, 240:16, 266:17, 266:18
**yes-man** [1] - 120:4
**yesterday** [5] - 61:8, 65:16, 67:19, 68:23, 87:11
**Yo** [1] - 87:17
**York** [10] - 26:15, 26:18, 28:12, 31:20, 31:23, 64:10, 81:11, 81:13, 81:15, 142:24
**Yorkers** [1] - 27:12
**yourself** [4] - 221:9, 255:12, 267:8, 267:18
**yucky** [1] - 183:4

## Z

**zero** [3] - 27:7, 104:8, 225:23
**Zimet** [5] - 1:21, 10:9, 166:6, 224:19, 292:19
**ZIMET** [186] - 3:4, 3:5, 3:6, 9:5, 10:10, 10:18, 12:4, 12:16, 16:13, 17:6, 20:5, 23:1, 24:1, 25:16, 34:24, 35:18, 36:14, 39:10, 40:17, 42:3, 42:6, 42:12, 42:15, 44:4, 45:16, 46:8, 48:13, 50:23, 53:2, 53:20, 54:12, 56:22, 58:2, 59:22, 60:18, 61:21, 62:20, 63:9, 64:1, 65:1, 66:7, 66:22, 67:10, 69:11, 71:18, 71:20, 71:23, 72:9, 72:13, 72:24, 73:10, 73:17, 73:19, 74:17, 74:25, 75:16, 76:14, 78:6, 80:16, 80:18, 86:19, 89:22, 94:14, 102:13, 103:16, 105:5, 105:16, 107:7, 108:4, 112:25, 115:19, 117:7, 118:16, 119:17, 122:11, 126:8, 126:23, 128:12, 129:11, 130:21, 130:23, 132:7, 133:16, 135:16, 136:22, 138:13, 139:2, 139:24, 140:21, 141:20, 142:17, 144:6, 145:9, 146:1, 147:21, 150:24, 151:14, 152:2, 153:4, 153:19, 154:8, 154:21, 155:9, 156:10, 156:23, 157:10, 158:15, 159:7, 159:10, 159:15, 159:21, 161:20, 162:9, 162:22,

163:24, 165:16, 166:7, 167:18, 169:7, 169:21, 170:16, 171:21, 222:4, 222:12, 222:24, 223:19, 224:8, 224:20, 224:22, 233:16, 234:1, 234:4, 235:16, 236:17, 237:10, 237:22, 238:7, 239:1, 240:11, 241:21, 244:10, 245:21, 246:13, 247:15, 248:22, 250:19, 251:17, 252:6, 252:15, 258:1, 259:4, 259:21, 260:7, 261:11, 262:7, 264:18, 267:5, 267:7, 267:13, 268:16, 268:18, 268:22, 268:24, 269:5, 269:6, 270:2, 270:13, 270:14, 271:3, 272:23, 273:9, 273:22, 274:3, 274:5, 274:15, 275:7, 277:9, 277:21, 278:1, 278:15, 279:21, 280:24, 284:23, 288:7, 289:7, 292:21

**zoom** [21] - 23:18, 27:14, 31:12, 33:18, 37:13, 39:16, 82:3, 91:5, 91:6, 122:16, 129:4, 129:22, 130:2, 130:19, 131:6, 131:13, 131:14, 131:19, 149:17, 150:2, 181:1

**zooming** [1] - 129:3