UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 24-cr-20255-Dimitrouleas/Hunt

UNITED STATES OF AMERICA, Fort Lauderdale, Florida

October 28, 2025

vs.

9:01 AM - 5:02 PM

PATRICK BOYD and CHARLES BOYD, Volume XVI

Defendants. Pages 1 to 65

---

# TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE WILLIAM P. DIMITROULEAS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: Alexander Pogozelski, Esquire
Jacqueline DerOvanesian, Esquire
Assistant United States Attorneys
99 NE 4th Street
Miami, Florida 33132

FOR DEFENDANT PATRICK BOYD: William Barzee, Esquire
Ivlis Mantilla, Esquire
Barzee Flores
40 NW 3rd Street Ph 1
Miami, Florida 33128

FOR DEFENDANT CHARLES BOYD: Bruce Zimet, Esquire
633 S. Federal Highway Fl 6
Fort Lauderdale, Florida 33301

STENOGRAPHICALLY REPORTED BY:

PATRICIA BAILEY-ENTIN, RPR, FPR
Official Court Reporter before:
The Honorable William P. Dimitrouleas
United States District Court

(Call to the Order of the Court.)

THE COURT: We are back on the record. Counsel are present. Both defendants are present.

What's the status on the exhibits?

MS. DEROVANESIAN: Your Honor, I think we've resolved the issues with the exhibits. Everything either exists in paper or electronic format. I believe the only -- just, I guess, this is a technical issue that we wanted to confirm for the Court is that there was one deposition clip that was played by the Government during our case, and then we played a little bit more of the same clip from that same deposition at the very end, right before we rested.

So we've agreed to just make that entire clip the exhibit that goes back to the jury. I don't know that we formally moved that second part in, but we just wanted to note that, for the Court, we agreed that's the right thing to do.

THE COURT: Mr. Zimet.

MR. ZIMET: Yes, I want to make sure it went back to the jury. The Government said it was not introduced into evidence. It's played; so it's part of the evidence that the jury saw. So I have no problem including it with the original exhibit that did not include that part as long as that except is included.

THE COURT: Well, have you checked the computer to make

sure that that's the way that it is?

MR. ZIMET: They represented to me that they had it on a disk and it was going to go back to the jury; so I'm accepting that representation.

THE COURT: But you can look at it now because I'm going to ask everybody if we have an agreement that everything's there that's supposed to be there and nothing's there that's not supposed to be there.

MR. ZIMET: If I can just have the indulgence of the Court.

THE COURT: Okay.

MR. ZIMET: Your Honor, I played Government's Exhibit 668. It includes the excerpt that we had requested and the Court had ordered to be played; so I'm satisfied it's intact and properly going back to the jury.

THE COURT: Mr. Barzee.

MR. BARZEE: Agreed.

THE COURT: All right. So do we have paper copies that we can put on the table and maybe the computer that's supposed to go back so that after the jury is instructed, Crystal can take everything back to the jury?

MR. ZIMET: We can do that, Judge.

MR. BARZEE: Which table?

THE COURTROOM DEPUTY: Right here.

MS. DEROVANESIAN: And, Your Honor, just one other

thing that we wanted to note. There were about five exhibits that were Government exhibits that were previously admitted by the Government as smaller portions of bank records, and then the defense moved in the larger exhibit.

The only thing about that is they still have the same exhibit number. So we agreed to make the larger exhibits the same number but just add "A" to them. So that affects Government's Exhibit 702, 705, 706, 710, and 711. So we would just --

THE COURT: One more time.

MS. DEROVANESIAN: Sure.

702, 705, 706, 710, and 711.

(Government's No. 702A, 705A, 706A, 710A, 711A, Bank Records, were received in Evidence.)

THE COURT: Okay. And the laptop that's going back, we're comfortable that there's only exhibits that have been admitted on the laptop and there's nothing else there?

MR. ZIMET: Yes, sir.

MR. BARZEE: Yes, Your Honor.

MS. DEROVANESIAN: Your Honor, I apologize. There's just one IT issue. Apparently, the laptop -- there's an issue opening Excel files at this moment. I understand that it is being resolved by IT, as we speak. It was working yesterday. So I hope that it will be resolved in the next moments.

THE COURT: Well, it's going to take me a while to read

the instructions.

So how does the jury know how to open up the computer and access the files? How is jury going to know that?

MS. DEROVANESIAN: There's a Post-It note that we placed on the laptop with a username and a password, and then they can put the USB into the computer. We're happy to provide further instructions. I think they would just open a File Explorer, and then you click on the USB. If it's helpful, we can write it out.

THE COURT: I'm sure out of the 12 people on the jury, somebody is going to be familiar with computers. If you had 12 people like me, it would be a problem. So whatever you all want to agree on. If they come out with questions that they don't know how to open up the computer, we can deal with it at that point.

MR. ZIMET: Obviously, any note, other than the original instructions, we would want to see before anything goes back there.

MS. DEROVANESIAN: You can see it. It's right here.

MR. ZIMET: I understand that. I said anything other than that that goes back there.

THE COURT: Right. That's why I want you to agree that everything's there that's supposed to be there and there's nothing's there that's not supposed to be there and that there aren't any secret notes saying --

MR. ZIMET: "Look at Exhibit 303."

THE COURT: Yeah.

MR. ZIMET: "That's the key to the case."

THE COURT: I'm also going to send back a copy of the indictment. I've redacted out the forfeiture count, though.

MR. ZIMET: So, Judge, while they're doing that, what's the Court's general policy towards juries? How late do you let them sit? Whether you want us here at the end of the day when you dismiss them? If you want us here in the morning when they come in, et cetera?

THE COURT: We'll work until 5:00. At 5:00, I'll bring the jury out. I'll explain to them they can deliberate as long as they want to but that if one person is tired or hungry and he or she wants to go home, then we will recess until the next morning.

MR. ZIMET: And the next morning, do you want us here at 9:00 to start, or you just let them start?

THE COURT: It's the same thing I'm going to ask you to do today. That is either be here or be so close that you can get back in ten minutes if the jury has a question or a verdict. And if the jury hasn't reached a verdict by noontime, we'll have ordered lunch for them, and bring the lunch in. They can deliberate while they're having lunch.

MR. ZIMET: Okay.

THE COURT: Also, if the jury recesses their

deliberations, what I normally would want to tell them is to come back at 9:00 tomorrow. And once the 12th person in the room, resume their deliberations. They can't deliberate unless all 12 people are in the room. And then we wouldn't have to be here at 9:00, to bring them out and ask the question whether they followed my instruction. They would just start their deliberations as soon as the 12th person is there.

If we get to that, is that procedure acceptable, Mr. Zimet?

MR. ZIMET: Yes, sir, of course.

THE COURT: Mr. Barzee.

MR. BARZEE: Yes, Your Honor.

MS. DEROVANESIAN: Yes, Your Honor.

THE COURT: Do we have all the jurors?

What are we going to do if the jury asks for an exhibit list because they don't know where to find a particular exhibit?

MR. ZIMET: We can provide one, Judge. And, obviously, I'm sure the Government can. We can make sure each other side sees it and then send it back, just like anything else.

THE COURT: You may want to be working on it now because it's my experience, that's one of the first questions that's going to come out but maybe it won't.

MR. ZIMET: Obviously, we will stay here the first hour or so. Usually there are organizational kind of questions.

THE COURT: Okay.

MR. ZIMET: I want to make sure we get to them kind of quickly.

MS. DEROVANESIAN: Your Honor, we have a copy of our exhibit list that we would propose just sending back.

THE COURT: Does it redact out the exhibits that weren't admitted?

MS. DEROVANESIAN: Yes.

THE COURT: Why don't you show it to defense counsel.

MR. POGOZELSKI: We'll need a version that takes out the ones that weren't introduced.

THE COURT, I mean I'll send back the exhibit list if both sides agree. Absent both sides agreeing, then I only send it back if there's a request for one.

So if you both agree that each side's exhibit list is acceptable, we can send it back now. If you don't both agree, then we'll wait and see if we have a request from the jury.

So we have six jurors. We are missing five.

So we have an agreement on the verdict form?

MR. ZIMET: Can I see it one more time, Judge?

THE COURT: Do we have an agreement on the verdict form?

MR. ZIMET: Can I see it one more time?

I don't see a signature for the foreperson.

MR. POGOZELSKI: There's not a signature for the

foreperson. I'm not seeing it.

THE COURT: Okay.

MR. ZIMET: But otherwise, it's fine, Judge.

MR. POGOZELSKI: I can send just the Word version to you right now to add to it. Would that be the easiest?

THE COURT: Sure.

THE COURTROOM DEPUTY: I can do that.

MR. ZIMET: There's some page numbers on there that I don't think are accurate on the bottom, if you want to see those also.

COURTROOM DEPUTY: I see you. I got you.

(Jury enters.)

THE COURT: Does counsel concede the presence of the jury and waive its polling?

MR. POGOZELSKI: Yes, Your Honor.

MR. ZIMET: Yes, sir.

MR. BARZEE: Yes, Your Honor.

THE COURT: And did everyone follow my admonition not to discuss the case or allow it to be discussed in your presence?

All right. I'm going to give you the final instructions now. I'll give you a copy of the instructions that I will have read to you and a copy of the indictment and the verdict forms to take back with you. We are going to collect your cell phones during your deliberations, though.

All right. Members of the jury, it's my duty to instruct you on the rules of law that you must use in deciding this case. After I've completed these instructions, you will go in the jury room and begin your discussions -- what we call your deliberations. You must decide whether the Government has proved the specific facts necessary to find the defendants guilty beyond a reasonable doubt.

Your decision must be based only on the evidence presented during the trial. You must not be influenced in any way by either sympathy for or prejudice against the defendants or the Government. You must follow the law as I explain it, even if you do not agree with the law, and you must follow all of my instructions as a whole. You must not single out or disregard any of the Court's instructions on the law.

The indictment or formal charge against a defendant isn't evidence of guilt. The law presumes every defendant is innocent. The defendants do not have to prove their innocence or produce any evidence at all. A defendant does not have to testify, and you cannot consider in any way the fact that a defendant did not testify. The Government must prove guilt beyond a reasonable doubt. If it fails to do so, you must find a defendant not guilty.

The Government's burden of proof is heavy, but it doesn't have to prove a defendant's guilty beyond all possible doubt. The Government's proof only has to exclude any

reasonable doubt concerning a defendant's guilt.

A reasonable doubt is a real doubt, based on your reason and common sense, after you've carefully and impartially considered all the evidence in the case.

Proof beyond a reasonable doubt is proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs. If you're convinced that a defendant has been proved guilty beyond a reasonable doubt, say so. If you're not convinced, say so.

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted, but anything the lawyers say is not evidence and isn't binding on you. You shouldn't assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts. Your own recollection and interpretation of the evidence is what matters.

In considering the evidence, you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

Direct evidence is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as

an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight that you may give to either direct or circumstantial evidence.

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say and how important that testimony was. In making that decision, you may believe or disbelieve any witness in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness, I suggest that you ask yourself a few questions:

Did the witness impress you as one who was telling the truth?

Did the witness have any particular reason not to tell the truth?

Did the witness have a personal interest in the outcome of the case?

Did the witness seem to have a good memory?

Did the witness have the opportunity and ability to accurately observe the things he or she tested about?

Did the witness appear to understand the questions clearly and answer them directly?

Did the witness's testimony differ from other testimony

or other evidence?

You must consider some witness's testimony with more caution than others. For example, paid informants, witnesses who have been promised immunity from prosecution, or witnesses who hope to gain more favorable treatment in their own cases may have a reason to make a false statement in order to strike a good bargain with the Government.

So while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact, and ask whether there was evidence that at some other time, a witness said or did something or didn't say or do something that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement. But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as she or she remembers it. People naturally tend to forget some things or remember them inaccurately. So if a witness misstated something, you must consider whether it was because of an innocent lapse in memory or an intentional deception. The significance of that

misstatement may depend on whether the misstatement was about an important fact or about an unimportant detail.

Certain summaries and charts were admitted into evidence. You may use those summary and charts as evidence. It is up to you to decide how much weight to give the charts and summaries.

You've been permitted to take notes during the trial. Most of you -- perhaps all of you -- have taken advantage of this opportunity. You must use your notes only as a memory aid during deliberations. You must not give your notes priority over your independent recollection of the evidence, and you must not allow yourself to be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than your memories or impressions of the testimony.

The indictment charges eight separate crimes called counts against the defendants. Each count has a number. You will given a copy of the indictment to refer to during your deliberations.

Count I charges that the defendants knowingly and willfully conspired to introduce adulterated and misbranded drugs and to defraud the FDA.

Counts II and III charge the defendants committed what are called substantive offenses, specifically introduction of a misbranded drug into interstate commerce. I will explain the

law governing those substantive offenses in a moment.

Count IV charges that the defendants knowingly and willfully conspired to traffic in medical products with false documentation. I will explain the law governing that substantive offense in a moment.

Count V charges that the defendants knowingly and willfully conspired to commit wire fraud.

Counts VI, VII and VIII charge that the defendants committed what we call substantive offenses, specifically wire fraud. I will explain the law governing those substantive offenses in a moment.

But first note that the defendants are not charged in Counts I, IV and V with committing a substantive offense. They are charged with conspiring to commit that offense. I'll also give you specific instructions on conspiracy.

When a statute specifies multiple, alternative ways in which an offense maybe committed, the indictment may allege the multiple ways in the conjunctive, that is by using the word "and." If only one of the alternatives is proved beyond a reasonable doubt, that is sufficient for a conviction so long as you agree unanimously as to that alternative.

Count I. It's a separate federal crime for anyone to conspire with someone else to do something that would be another federal crime if it was actually carried out. It is also a federal crime for anyone to conspire with someone else

to defraud the United States or any of its agencies including the United States Food and Drug Administration, FDA. To defraud the United States means to cheat the Government out of property or money or to interfere with any of its lawful governmental functions by deceit, craft, or trickery.

Regarding the separate alleged objects of the conspiracy to introduce adulterated drugs into interstate commerce and conspire to introduce misbranded drugs into interstate commerce, I will explain the elements of those crimes for you in a moment.

A conspiracy is an agreement by two or more people to commit an unlawful act. In other words, it is a kind of partnership for criminal purposes. Every member of the conspiracy becomes the agent or partner of every other member.

The Government does not have to prove that all the people named in the indictment were members of the plan or that those who were members made any kind of a formal agreement. The Government does not have to prove that the members planned together all the details of the plan or the overt acts that the indictment charges would be carried out in an effort to commit the intended crime.

The heart of a conspiracy is the making of the unlawful plan itself followed by the commission of any overt act. The Government does not have to prove that the conspirators succeeded in carrying out the plan. A defendant can be found

guilty of this crime only if all the facts are proved beyond a reasonable doubt.

First, two or more persons in some way agreed to try to accomplish a shared and lawful plan.

Second, the defendant knew the unlawful purpose of the plan and willfully joined in it.

Third, during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment.

And fourth, the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

An overt act is any transaction or event, even one that may be entirely innocent when viewed alone, that a conspirator commits to accomplish some object of the conspiracy. A person may be a conspirator without knowing all of the details of the unlawful plan or the names and identities of all the other alleged conspirators. If a defendant played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan and wilfully joined in the plan on at least one occasion, that's sufficient for you to find the defendant guilty, but simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy.

A person who doesn't know about a conspiracy but

happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

In this case, regarding the alleged conspiracy in Count I, the indictment charges that the defendants conspired to A, introduce or deliver for introduction into interstate commerce adulterated drugs with the intent to defraud or mislead.

B, introduce or deliver for introduction into interstate commerce misbranded drugs with the intent to defraud or mislead.

And C, defraud the FDA.

In other words, the defendants are charged with conspiring to commit the two separate substantive crimes and with conspiring to defraud the FDA. The Government does not have to prove that a defendant willfully conspired to commit all three of these crimes. It is sufficient if the Government proves beyond a reasonable doubt that a defendant willfully conspired to commit one of these crimes, but to return a verdict of guilty, you must all agree on which of the three crimes a defendant conspired to commit.

This is a criminal prosecution arising in part under the Federal Food Drug and Cosmetic Act, Title 21, United States Code, Sections 301 and following, which has, as its underlying purpose, the protection of the public health and welfare, including the protection of consumers.

One of the purposes of the Federal Food, Drug, and Cosmetic Act was to ensure that drugs sold for use by human beings were safe, effective and bore labeling containing only true and accurate information. I will hereafter refer to the Federal Food, Drug, and Cosmetic Act as the FDCA.

Introduction of adulterated or misbranded drugs into interstate commerce. Count I of the indictment charges as two objects of the conspiracy that the defendants conspired A, to introduce or deliver for introduction into interstate commerce adulterated drugs with the intent to defraud or mislead, and to B, to introduce or delivery for introduction into interstate commerce misbranded drugs with the intent to defraud or mislead.

I will instruct you momentarily on the meaning of the terms "adulterated" and "misbranded" and the manner in which the drugs in this case are alleged to have been adulterated and misbranded.

Counts II and II in the indictment charge that the defendants, with the intent to defraud or mislead, introduced or delivered for introduction into interstate commerce or caused to be introduced or delivered into interstate commerce a misbranded drug.

In order for the defendants to be found guilty of this crime, the Government must prove beyond a reasonable doubt all of the following elements:

First, that the defendant caused a drug, as I will define that term, to be introduced or delivered for introduction into interstate commerce.

Second, that the drug was misbranded or adulterated, as I'll explain those terms momentarily.

And third, that the defendant acted with the intent to defraud or mislead.

The term "drug" is defined as articles intended for use in the cure, mitigation, treatment or prevention of illness.

"Interstate commerce" means commerce between any state or the District of Columbia and any place outside thereof.

If you find for Count I that drugs were distributed between states, then you must find that the drugs in this count were in interstate commerce.

If you find for Counts II and III, that the Biktarvy medication identified in those counts was sent from a place outside of Florida, into the State of Florida, then you must find that the Biktarvy was in interstate commerce.

To act with the intent to defraud means to act with the specific intent to deceive or cheat. It is not necessary, however, to prove that anyone was, in fact, defrauded so long as it is established beyond a reasonable doubt that the defendant acted with the intent to defraud.

To act with the intent to defraud means to act with the specific intent to create a false impression by misstating,

omitting, or concealing facts. It is not necessary, however, to prove that anyone was, in fact, mislead so long as it is established beyond a reasonable doubt that the defendant acted with the intent to mislead.

A defendant acts with the intent to defraud or mislead under the FDCA if the defendant acts with the intent to defraud or mislead the consumers of the defendants' products or the Government.

To act with the specific intent to defraud or mislead the consumers of a product means to act with the specific intent to defraud or mislead either the direct purchaser of the product or subsequent purchasers or users of the product, about the nature of the product being purchased or used, or some significant fact or aspect of the products being purchased or used.

To act with the intent to defraud or mislead, the Government means to act with the specific intent to interfere with or obstruct a lawful government function by deceit, craft, or trickery or at least by means that are dishonest.

Ordinarily, there is no way that a defendant's state of mind can be proved directly because no one can read another person's mind and tell what that person is thinking, but a defendant's state of mind can be proved indirectly from the surrounding circumstances. This includes things such as what the defendant said, what the defendant did, how the defendant

acted, and any other facts or circumstances in evidence that bear on the defendant's intent.

A drug is adulterated if any substance has been substituted in whole or in part for the drug.

A drug is misbranded if its labeling is false or misleading in any particular way -- or in any particular.

The FDCA has distinct definitions for the terms "label" and "labeling." The term "label" means a display of written, printed, or graphic matter upon the immediate container of any article.

The term "labeling" means all labels and other written, printed, or graphic matter that appears on any product or on any of its containers or wrappers or that accompanies the product. Thus the term "labeling" is broader than the term "label" and labels are but one kind of labeling.

It is unnecessary for the matter to have been physically attached to the drug or to have been shipped at the same time or with the drug to constitute labeling under the FDCA. As I just explained, such matter can constitute labeling if it accompanies the product.

Such matter may be considered to accompany a drug if the matter is designed for use in the distribution and sale of the drug as part of an integrated distribution program such that the matter supplements explains or otherwise textually relates to the drug, you may find that product tracing

information also referred to as T3s or pedigrees which provides certain information about a drug such as the origin of the drug, the distributors involved in each sale, the quantity, the lot number, the strength and dosage and date of each sale and which accompanies a drug constitutes labeling.

In order to find the drug to be misbranded, you need not need to find that the labeling is false or misleading in its entirety. You need only find that any single representation in the labeling is false is misleading with all of you agreeing as to the particular representation in which the labeling is false or misleading.

The third object of the criminal conspiracy charged in Count I is that the defendants conspired or agreed or defraud the FDA. To defraud the FDA, for purposes of this charge, means to interfere with any of the FDA's lawful functions by deceit, craft, or trickery, even if the FDA does not suffer a loss of money or property.

Under the FDCA, the FDA has broad authority to regulate drugs in the United States in order to protect the health and safety of consumers. This broad authority includes the lawful functions to A, regulate the interstate distribution of drugs and their components; B, regulate and protect the integrity of the prescription drugs supply chain; C, ensure that drugs are safe and effective for their intended uses; and D, ensure that the drugs bear truthful and proper labeling.

Count IV. It's a federal crime to knowingly and willfully conspire with someone to do something that if actually carried out were to result in the crime of knowingly and falsely making or altering the labeling or documentation including documentation relating to origin or origination of shipping of a pre-retail medical product.

It is also a federal crime to knowingly and willfully conspire with someone to do something that, if actually carried out, would result in the crime of knowingly possessing, transporting or trafficking in a pre-retail medical product involving false or altered labeling or documentation including documentation relating to the origination or shipping.

In other words, Count IV of the indictment charges that the defendants conspired with each other and others to commit two separate substantive crimes.

A conspiracy is an agreement by two or more persons to commit an lawful act. In other words, it is a kind of partnership for criminal purposes. Every member of the conspiracy becomes the agent or partner of every other member.

The Government does not have to prove that all the people named in the indictment were members of the plan or that those who were members made any kind of formal agreement. The heart of a conspiracy is the making of the unlawful plan itself. So the Government does not have to prove that the conspirators succeeded in carrying out the plan.

A person may be a conspirator even without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators. If a defendant played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan and willfully joined in the plan on at least one occasion, that's sufficient for you to find a defendant guilty. But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy.

Also, a person who doesn't know about a conspiracy but happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

In order for a defendant to be found guilty of this charge, the Government must prove beyond a reasonable doubt each of the following elements:

First, two or more persons in some way or manner agreed to try to accomplish a common and unlawful plan to A, falsely make or alter the labeling or documentation, including documentation relating to origination or shipping of a pre-retail medical product and/or to process, transport, or traffic in a pre-retail medical product involving false or altered labeling or documentation, including documentation relating to the origination or shipping.

And second, the defendant knew about the plan's

unlawful purpose and willfully joined in it.

The Government does not have to prove that a defendant wilfully conspired to commit both crimes. It is sufficient if the Government proves beyond a reasonable doubt that the defendant willfully conspired with another person to commit any one of the two substantive crimes alleged in this count.

The first object of this count is that the defendant conspired to violate the substantive crime alleged in or outlined in Title 18, United States Code, Section 670(a)(2). The elements of this offense are as follows:

First, the defendant knowingly obtained a pre-retail medical product.

Second, the defendant did so by using any means or facility of interstate commerce.

And third, the defendant knowingly and falsely made or altered the labeling or documentation, including documentation relating to origination or shipping of a pre-retail medical product. The second object of this count is that the defendant conspired to violate the substantive crime outline in Title 18, United States Code, Section 670 (a)(3).

In order for a defendant to be found guilty of this charge, the Government must prove beyond a reasonable doubt each of the following elements:

First, the defendant knowingly possessed, transported, or trafficked in a pre-retail medical product.

Second, the defendant did so by using any means or facility of interstate commerce.

Third, the labeling or documentation including documentation relating to origination or shipping of the pre-retail medical products was falsely made or altered.

And fourth, the defendant knew the labeling or documentation including documentation relating to origination or shipping was falsely made or altered.

To return a verdict of guilty, you must all agree that either the defendant conspired to commit both substantive offenses, or you must all agree on which of the two substantive crimes the defendant conspired to commit.

The term "pre-retail medical product" means a medical product that has not yet been made available for retail purchase by a consumer. Under the law, the consumer is the person who will or does actually obtain the medical benefit of the medical product. The consumer of a drug is the person who swallows the pill or otherwise receives the drug for therapeutic reasons.

The term "medical product" means a drug.

The term "drug" and "labeling" have the meanings given those terms in the FDCA, which I have defined for you above.

If you find that the defendant has committed this offense, you must also find whether the value of the medical products involved in the offense was $5,000 or greater. If you

find that the defendant committed this offense, you must also find whether the defendant was employed by or was an agent of or organization in the supply chain for the pre-retail medical product.

The term "supply chain" includes a wholesaler of the pre-retail medical products.

Count V. It's a federal crime to knowingly and willfully conspire with someone to do something that, if actually carried out, would result in a crime of wire fraud.

A conspiracy is an agreement by two or more persons to commit an unlawful act. In other words, it is kind of a partnership for criminal purposes. Every member of the conspiracy becomes the agent or partner of every other member.

The Government does not have to prove that all the people named in the indictment were members of the plan or that those who were members made any kind of formal agreement. The heart of the conspiracy is the making of the unlawful plan itself, so the Government does not have to prove that the conspirators succeeded in carrying out the plan.

A defendant can be found guilty of this conspiracy offense only if all the following facts are proved beyond a reasonable doubt:

First, two or more persons in some way or manner agreed to try to accomplish a common and unlawful plan to commit wire fraud as charged in the indictment.

And second, the defendant knew the unlawful purpose of the plan and willfully joined in it.

A person may be a conspirator without -- a person can be a conspirator even without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators.

If a defendant played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan and willfully joined in the plan on at least one occasion, that's sufficient for you to find a defendant guilty. But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests doesn't establish proof of a conspiracy. Also, a person who doesn't know about a conspiracy but happens to act in a way that advances some purpose of one doesn't automatically become a conspirator.

Count VI, VII and VIII. It's a federal crime to use interstate wire, radio, or television communications to carry out a scheme to defraud someone else. A defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

First, the defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises.

Second, the false pretenses, representations, or

promises were about a material fact.

Third, the defendant acted with the intent to defraud.

And fourth, the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

A scheme to defraud means any plan or course of action intended to deceive or cheat someone to obtain money or property by using false or fraudulent pretenses, representations, or promises. This includes deceiving another into paying for one thing and then delivering something materially different.

A statement or representation is false or fraudulent if it is about a material fact that the speaker knows is untrue or makes with reckless indifference to the truth and makes with the intent to defraud. A statement or representation may be false or fraudulent when it is a half-truth or effectively conceals a material fact and is made with the intent to defraud.

A material fact is an important fact that a reasonable person would use to decide whether to do or not do something. A fact is material if it has the capacity to natural tendency to influence a person's decision. It doesn't matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.

To act with intent to defraud means to act knowingly

and with the specific intent to use false or fraudulent pretenses, representations, or promises to obtain a victim's money or property, regardless of whether the defendant intends to leave the victim economically worse off. This includes intentionally lying to induce a victim into a transaction that will cost him or her money or property.

The Government does not have to prove all the details alleged in the indictment about the precise nature and purpose of the scheme. It also doesn't have to prove that the material transmitted by interstate wire was itself false or fraudulent or that the wire was intended as the specific exclusive means of carrying out the alleged fraud or that the defendant personally made the transmission over the wire, and it doesn't have to prove that the alleged scheme actually associated in defrauding anyone.

To use interstate wire communications is to act so that if something would normally be sent through the wire communications in the normal course of business, each separate use of the interstate wire communications as part of the scheme to defraud is a separate crime.

During a conspiracy, if a conspirator commits a crime to advance the conspiracy towards its goals, then in some cases a coconspirator may be guilty of the crime even though the coconspirator did not participate directly in the crime.

So regarding Counts II and III, if you have first found

the defendant guilty of the crime of conspiring to introduce or deliver for introduction into interstate commerce misbranded drugs with the intent to defraud or mislead, you may also find the defendant guilty of any of the crimes charged in Counts II and III even though the defendant did not personally participate in the crime.

Regarding Counts VI through VIII, if you have first found a defendant guilty of the crime of conspiring to commit wire fraud, you may also find the defendant guilty of any of the crimes charged in Counts VI through VIII, even though the defendant did not personally participate in the crime.

To do so, you must find beyond a reasonable doubt one, during the conspiracy, a conspirator committed the additional crime charged to further the conspiracy's purpose.

Two, the defendant was a knowing and wilful member of the conspiracy when the crime was committed.

And three, it was reasonably foreseeable that a coconspirator would commit the crime as a consequence of the conspiracy.

It is possible to prove a defendant guilty of a crime even without evidence that the defendant personally performed every act charged. Ordinarily, any act a person can do may be done by directing another person or agent, or it may be done by acting with or under the direction of others.

A defendant aides and abets a person if the defendant

intentionally joins with the person to commit a crime.

A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person. A defendant is also responsible if the defendant willfully directs or authorizes the acts of an agent, employee, or other associate.

But finding that a defendant is criminally responsibility for the acts of another person requires proof that the defendant intentionally associated with or participated in the crime -- not just proof that the defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that the defendant was a wilful participant and not merely a knowing spectator.

If a defendant's knowledge of a fact is an essential part of crime, it's enough that the defendant was aware of a high probability that the fact existed -- unless the defendant actually believed the fact didn't exist.

Deliberate avoidance of positive knowledge, which is the equivalent of knowledge, occurs, for example, if a defendant receives a package containing drugs that were acquired illegally but deliberately avoids learning that it contains illicit drugs so he or she can deny knowledge of actual origin of the drugs.

So you may find that a defendant knew about the illegal

origin and the nature of the drugs if you determine beyond a reasonable doubt that the defendant actually knew about the illegal origin and the nature of the drugs or had every reason to know but deliberately closed his or her eyes.

But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that a defendant knew about the actual origin of the drugs.

Patrick Boyd's theory of defense is that the Government has failed to prove beyond a reasonable doubt that Patrick Boyd had the required intent to defraud or wilfulness to commit any of the offenses charged in the indictment.

The evidence presented at trial must be viewed through the lens of Patrick Boyd's good faith in conducting the business of Safe Chain. Although Patrick Boyd's actions or business judgment might retrospectively be questioned or even second guessed, none of Patrick Boyd's actions were accompanied by an intent to defraud or wilfulness when actually performed.

Patrick Boyd maintains that Safe Chain was, in fact, the victim of fraudulent conduct orchestrated by the operators of the HIV vendors companies.

Charles Boyd's theory of defense is that the Government has failed to prove beyond a reasonable doubt that Charles Boyd had the required intent to defraud or wilfulness to commit any of the offenses charged in the indictment. The evidence presented at trial must be viewed through the lens of Charles

Boyd's good faith in conducting the business of Safe Chain. Although Charles Boyd's action or business judgment might retrospectively be questioned or even second-guessed, none of Charles Boyd's actions were accompanied by an intent to defraud or wilfulness when actually performed. Charles Boyd maintains that Safe Chain was, in fact, the victim of fraudulent conduct orchestrated by the operators of the HIV vendor respects.

Good faith is a complete defense to each of the charges in the indictment. Since each count alleges an offense requiring willfulness and/or an intent to defraud and/or willfulness. A defendant isn't required to prove good faith. The Government must prove intent to defraud and/or willfulness beyond a reasonable doubt.

An honestly held opinion or an honestly formed belief cannot be fraudulent intent or willfulness even if the opinion or believe is mistaken. Similarly, evidence of a mistake in judgment, an error in management, or carelessness can't establish fraudulent intent or willfulness. But an honest belief that a business venture would ultimate succeed does not constitute good faith if the defendant intended to deceive others by making representations the defendant knew to be false or fraudulent.

Good faith is a complete defense to the charge in the indictment because the Government must prove beyond a reasonable doubt that the defendant acted with the intent to

defraud. Evidence that the defendant in good faith followed the advice of counsel would be inconsistent with such an unlawful intent. Unlawful intent has not been proved if the defendant, before acting, made a full and complete good faith report of all material facts to an attorney he or she considered competent, received the attorney's advice to the specific course of conduct that was followed and reasonably relied upon that advice in good faith.

The word "knowingly" means that an act was done voluntarily and intentional and not because of a mistake or by accident. The word "willfully" means that the act was criminally -- let me start over.

The word "willfully" means that the act was committed voluntarily and purposely with the intent to do something the law forbids, that is with bad purpose -- or with the bad purpose to disobey or disregard the law.

While a person must have acted with the intent to do something the law forbids, before you can find that the person acted willfully, the person need not be aware of the specific law or rule that his conduct may be violating.

You'll see that the indictment charges that a crime was committed on or about a certain day. The Government doesn't have to prove that the offense occurred on an exact date. The Government only has to prove beyond a reasonable doubt that the crime was committed on a date reasonably close to the date

alleged.

Each count of the indictment charges a separate crime against one or more of the defendants. You must consider each crime and the evidence relating to it separately. If you find a defendant guilty or not only of one crime, that must not affect your verdict for any other crime or any other defendant. I caution you that each defendant is on trial only for the specific crimes charged in the indictment. You're here to determine from the evidence in this case whether each defendant is guilty or not guilty of those specific crimes.

You must never consider punishment in any way to decide whether a defendant is guilty or not guilty. If you find a defendant guilty, the punishment is for the judge alone to decide later.

Your verdict, whether guilty or not guilty, must be unanimous. In other words, each of you must all agree. Your deliberations are secret. You'll never have to explain your verdict to anyone. Each of you must decide the case for yourself but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement.

While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong, but don't give up your honest beliefs just because others think differently or because you

simply want to get the case over with. Remember that in a very real way, you're judges -- judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you go to the jury room, you should choose one of your members to act as a foreperson. The foreperson will direct your deliberations and will speak for you in court. A verdict form has been prepared for your convenience, and there's a different verdict form for each defendant and there's a line as to each count for you to check either guilty or not guilty.

If you check guilty on some counts, then you have to indicate some other answers to those counts. And there's a line for the foreperson to sign and date when you all have agreed on a verdict in this case.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it, date it, and can carry it. Then you will return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the marshal. The marshal will bring it to me, and I'll respond as promptly as possible, either in writing or by talking to you in the courtroom, but I caution you not to tell me how many jurors have voted one way or the other at that time.

Will counsel approach the bench sidebar.

(Sidebar held.)

THE COURT: Any exception or objection to the content or the manner in which the instructions were given?

MR. ZIMET: Not as to the manner it's given, Judge. We would renew our objection as to the Pinkerton instruction and the deliberate ignorance instruction.

THE COURT: Those objections are overruled.

MR. POGOZELSKI: No objection from the Government.

MR. BARZEE: With the exception of the two objections already raised, no further objections.

THE COURT: Okay. Those objections are overruled.

All right. So I'll send back the instructions, the verdict form, and the indictment.

MS. DEROVANESIAN: We provided a copy of our exhibit list and then an instruction on opening Excel files to the defense.

MR. ZIMET: We have no problem with the instructions as far as the computer is concerned. The exhibit list we haven't had a chance to go over yet, Judge.

THE COURT: Okay. So we'll wait to see if the jury asks for an exhibit list.

(Sidebar ended.)

THE COURT: Crystal, do you have the verdict forms?

THE COURTROOM DEPUTY: Yes, I do.

THE COURT: All right. I'm going to send back a copy of the instructions that I just gave you. I'll send back the verdict forms. I'll send back a copy of the indictment. We'll get the evidence together, and we'll be sending that back in a few moments. And there will be instructions on how you can operate the computer if you want to look at any of the electronic exhibits.

During your deliberations, I'm going to ask that you try to minimize any interruptions in your deliberations.

If someone goes to the bathroom, someone goes outside to smoke a cigarette, try to minimize the number of the interruptions and the duration of the interruptions because once a person leaves the jury deliberation room, you have to cease your deliberations. You can only deliberate when all 12 people are in the room.

Again, we're going to have to collect your cell phones. We'll give them back to you at the end of the day. And if you don't -- and at this point, I'm going to ask you to retire and consider your verdicts.

THE COURT SECURITY OFFICER: All rise.

(Jury exits.)

THE COURT: Crystal just mentioned to me that there's one juror that's been bringing a laptop every day; so I'm going to ask Crystal to take the laptop along with the cell phones.

MR. ZIMET: No objection, Judge.

MR. POGOZELSKI: No objection.

THE COURT: Again, if you left phone numbers where you can be reached, if there's nothing else to come before the Court, we'll be in recess until we hear further from the jury or 5:00, whichever come first.

If we haven't heard anything from the jury, let's get together a few minutes before 5:00 so we can agree on what we're going to do at that point.

MR. POGOZELSKI: Yes, Your Honor.

THE COURT: And we'll be in recess.

(Off the record from 10:12 AM to 10:37 AM, after which the following proceedings were had:)

THE COURT: We are back on the record. Counsel are present. Both defendants are present. Apparently, the Government didn't send back one exhibit.

Any objection to that exhibit going back?

MR. ZIMET: Judge, we've now seen it, examined it, and have no objection to it going back.

MR. BARZEE: No objection.

THE COURT: So Crystal will take it back, and we'll be in recess until we hear from the jury.

(Off the record from 10:37 AM to 2:01 PM, after which the following proceedings were had:)

THE COURTROOM DEPUTY: All rise.

THE COURT: Please be seated. We are back on the

record. Counsel are present. Both defendants are present.

We have a note from the jury. "Can we have a list of Government Evidence Numbers for Count II, January 21st, 2021, and Count III, February 23rd of 2021."

MR. POGOZELSKI: Yeah, we have our exhibit list here. There were a couple of changes made to the 700s, when we talked to defense counsel; so one of our paralegals is getting the full exhibit list.

THE COURT: Okay.

MR. POGOZELSKI: And so we're just waiting.

THE COURT: Do we want to give them a full exhibit list, or do we want to try to figure out what exhibits apply to Counts II and III?

MR. POGOZELSKI: We would suggest, to avoid any further notes, just give them the full exhibit list.

THE COURT: Does the full exhibit list differentiate which exhibits are for Count I, II, or III?

MR. POGOZELSKI: It does.

THE COURT: If we're going to give them the Government exhibit list, do we also give them the defendants' exhibit list?

MR. POGOZELSKI: Yes, Your Honor.

THE COURT: Mr. Zimet.

MR. ZIMET: I think it's appropriate to give both exhibit lists. The problem is, is that the Government's

exhibit list makes reference that certain exhibits apply to certain counts. And that's inappropriate for the Court to provide the jury with instructions as to what exhibits apply to what. The exhibit list are all the exhibits. They can make the determination as to what's appropriate.

So, for instance, good faith is an appropriate exhibit for Count II, Count III -- every other count, and it would be inappropriate for the Court to say, "Well, this is the exhibit that you should be looking at for this particular count."

THE COURT: How hard is it for you to go through your exhibit list and delete which counts it applies to?

Is there a Word processor where you can just go in there and delete the references to counts?

MR. POGOZELSKI: We could do that, Your Honor. I mean, they're specifically asking that question.

THE COURT: If we have an agreement as to which exhibits apply to Counts II and III, to me, that's the ideal response to answer their question.

But if we don't have an agreement as to which exhibits apply to Counts II and III, then, to me, the fallback is to give them all the exhibits, which will help a little bit, but it may not answer their question. It may not help them zero in on whatever the issue they're wanting to have answered.

MR. POGOZELSKI: Okay. We would be fine taking out the references to the specific counts and just providing the full

exhibit list.

MR. ZIMET: And that's fine, except the title to the first group of exhibits says 001-S Counts. I would ask that be deleted also, Judge.

THE COURT: I think if we're going to give them a generic exhibit list, we're going to have to delete the commentary as to, you know, which exhibits apply to which counts.

MR. POGOZELSKI: So then that would just involve removing the header for the 001s, which are counts; is that correct? And then references to counts in the exhibit list?

MR. ZIMET: Yes.

MR. POGOZELSKI: That's fine with us, Your Honor. So we'll just go make those changes.

THE COURT: Is what we're changing is just the first 21 exhibits? We're going to delete --

MR. POGOZELSKI: Reference to counts as well as the header.

THE COURT: Right.

And then the rest of it is okay?

MR. ZIMET: As long as "counts" are not referenced anywhere else. I don't see them, if they are.

MR. POGOZELSKI: Yeah, we'll do a "Control F" for "count" to the extent it's referenced anywhere else, but it shouldn't be.

THE COURT: And how about the defense exhibit list? Are we in agreement on that one going back?

MR. ZIMET: We don't make reference to counts, Judge.

MR. POGOZELSKI: So we will quickly go make those changes to the Word documents, show it to defense counsel, and then send both the Government and defense exhibit list back.

THE COURT: Let's make the changes, come back here, and then review them before we send them back.

Mr. Barzee.

MR. BARZEE: Yeah, Your Honor, I would have an objection to these descriptions of the exhibits going back to the jury. They're not generic. They're written by the prosecutors. I don't necessarily agree with the headings. I believe that there should be no description of the exhibits sent back.

THE COURT: Then how is the jury going to be able to look at an exhibit list to find out where they should go to answer their question? If it's just a bunch of numbers, how is that going to help them?

MR. BARZEE: I don't know how much help it would be, but I think that would be the only appropriate thing to go back to the jury; otherwise, it's giving the Government an opportunity to make further argument.

THE COURT: Give me an example some of the commentary that you think is prejudicial to your client.

MR. BARZEE: For example -- I mean, this is just an example that pops out -- Exhibit 245 is labeled in part "Illegitimate Biktarvy."

MR. POGOZELSKI: So these would just be subject lines of the emails, Your Honor: Date, participants, the subject line, which would be the "re."

THE COURT: Did you say 245, Mr. Barzee?

MR. BARZEE: Yes.

THE COURT: I don't see the word "illegitimate" there.

MR. ZIMET: The second line, Judge, at the end.

MR. POGOZELSKI: Yeah, it's an email regarding e-pharm/alert notice, illegitimate; so that's the subject line of the email. There's nothing inappropriate about putting the subject line of an email. It's not a characterization. It's just...

THE COURT: Well, I'm just thinking maybe the Government exhibit list that I'm looking at was amended later on and changed the description of the exhibits.

MR. POGOZELSKI: It was, Your Honor. So I can approach and show you what we're all looking at here, at least the part that doesn't have the financials.

THE COURT: Okay.

Well, did the email say, "Illegitimate Biktarvy?"

MR. POGOZELSKI: That's the subject line.

THE COURT: So I think that's what the jury wants to

know -- is if there was an email about illegitimate Biktarvy, where they can find it.

So give me another example, Mr. Barzee.

MR. BARZEE: For example, Count XVI, Kalarama (ph), damaged bottle.

MR. POGOZELSKI: That's the subject line of the email.

THE COURT: On this exhibit list where it says, "Intentionally left blank," those were exhibits that weren't introduced into evidence?

MR. POGOZELSKI: That's correct, Your Honor.

THE COURT: Okay.

MR. POGOZELSKI: And that's the same for the defense exhibit list.

THE COURT: Well, while the Government is going and making those changes to the first 21 or so, keep looking, Mr. Barzee, and see if you can come up with another example of some prejudice, and maybe we'll just delete those particular ones.

If we're going to try to help the jury, I think we need to try to answer their question. So just giving them a bunch of exhibit numbers without any description would be, to me, insulting.

MR. BARZEE: Understood.

If I could have a couple minutes.

THE COURT: While they're doing the redacted description of exhibits to eliminate counts, you look at the

exhibit list and see if there's other ones that you'd rather change or redact, and we'll be in recess for a few minutes.

MR. BARZEE: Thank you.

THE COURTROOM DEPUTY: All rise.

(Off the record from 2:11 PM to 2:22 PM, after which the following proceedings were had:)

THE COURT: Please be seated. We're back on the record much. Counsel are present. Both defendants are present. What's the status of the exhibit list?

MR. ZIMET: Judge, the Government has made the changes that we requested; so as far as Charles Boyd is concerned, we have no objection to this going back with the Boyd exhibit list.

THE COURT: Mr. Barzee.

MR. BARZEE: I'm in agreement.

THE COURT: All right. So what I'm going to do is I'm going to write on this note, "I'm sending back both exhibit lists, but it would be inappropriate for me to designate what exhibits apply or don't apply to a particular count."

MR. BARZEE: I think that's appropriate, Your Honor.

MR. POGOZELSKI: That works, Your Honor.

THE COURT: Mr. Zimet.

MR. ZIMET: I think something should be added, Judge, that both the Government and defense exhibits should be considered for all counts in the indictment.

THE COURT: But I'm saying I'm sending back both exhibit lists. They really just asked for different counts. I'm sending back both exhibit lists. It would seem to me that means they're to consider all the exhibits.

I can say, "Please consider all the exhibits. I'm sending back both exhibit lists. It would be inappropriate for me to designate which exhibits do or do not apply to particular counts."

MR. POGOZELSKI: And just briefly, Your Honor, I think the comment that you started with is the appropriate comment. It answers essentially the jury's question and no further commentary is necessary about considering both exhibit lists. They're getting both. They only asked for one, and you're instructing them that it's inappropriate for you to designate which exhibits correspond to the counts. So your limited instruction is entirely appropriate without anything additional.

MR. ZIMET: Well, the problem is, is that you're confirming that that's what they should be looking at, and that's improper for the Government or for the Court to be making that suggestion. That's why your second presentation, Judge, is the appropriate one.

MR. BARZEE: Agreed.

MR. POGOZELSKI: You could just say, "Here are both exhibit lists, the Government and defense."

MR. BARZEE: They should be considering all the exhibits, and there's nothing wrong with the Court instructing them to consider all the exhibits.

MR. POGOZELSKI: This is in response to a narrow question. They have the Court's instructions. No further instructions or commentary are necessary other than providing the Government exhibit list and the defense exhibit list, especially when they only asked for the Government exhibit list; so we're doing more than is even necessary.

MR. ZIMET: Why shouldn't we be fair for both sides?

MR. POGOZELSKI: We should answer the jury's question. That's what we should do.

MR. ZIMET: And be fair to both sides all the way through the whole case.

MR. POGOZELSKI: And that's why both are being given.

THE COURT: All right. What I'm going to do is I'll write on their note and send back with the exhibit list: "Here are both exhibit lists. It would be inappropriate to indicate which exhibits do or do not apply to a particular count."

MR. POGOZELSKI: Thank you, Your Honor.

MR. ZIMET: Judge, we would object and ask that the language that we suggested be included.

MR. BARZEE: And I'll join in that objection.

THE COURT: All right. Overruled.

So I'll bring down the note: "Here are both exhibit

lists. It would be inappropriate to indicate which exhibits do or do not apply to a particular count."

And we'll send that back with the two exhibit lists, and we'll be in recess until we hear further from the jury.

MR. POGOZELSKI: Thank you, Your Honor.

THE COURTROOM DEPUTY: All rise.

(Off the record from 2:28 PM to 4:54 PM, after which the following proceedings were had:)

THE COURT: We're back on the record. Counsel is present. Both defendants are present.

It's 4:55. I would propose bringing the jury in. Tell them they can deliberate as long as they want to but if someone is hungry or tired, we can recess the deliberations until tomorrow morning.

Oh, the Government is not here.

(Pause in proceedings.)

THE COURT: So we're back on the record. Counsel are present. Both defendants are present. It's a couple minutes before 5:00. I would propose bringing the jury out, telling them they can deliberate as long as they want to, but I can't feed them. If someone is tired or hungry and they want to go home, we will recess the deliberations until tomorrow at 9:00.

I'll ask them, "Does anybody want to go home at this point?" If nobody raises their hand, I'll ask them to retire and continue their deliberations. If one or more people do,

then I'll recess the deliberations until tomorrow at 9:00. I'll tell me them that once the 12th juror is in the room, they can resume the deliberations, and they're not to discuss the case or allow it to be discussed with anybody during the break.

MR. BARZEE: I'm sorry, Your Honor. Are you giving them a cutoff time for -- if they're going to continue, they're continuing indefinitely?

THE COURT: Yeah. If they want to continue, they can continue until they send out a note saying, "We want to go home."

MR. BARZEE: Got it. Okay.

THE COURT: Even though I've got Panther tickets tonight.

And then any objection to my telling them that the 12th juror can -- as soon as the 12th juror is there, they can resume their deliberations without the necessity of our reconvening?

MR. POGOZELSKI: No objection, Your Honor.

MR. ZIMET: No objection, Judge.

MR. BARZEE: No objection.

THE COURT: All right. Let's bring in the jury.

COURTROOM DEPUTY: When I knocked on the door, they asked me to give them five minutes.

THE COURT: We'll be in recess for five minutes.

(Off the record from 4:58 PM to 5:00 PM, after which the

following proceedings were had:)

THE COURT: We're back on the record. Counsel are present. The defendants are present.

Let's bring in the jury.

THE COURT SECURITY OFFICER: All rise.

(Jury enters.)

THE COURT: Does counsel concede the presence of the jury and waive its polling?

MR. POGOZELSKI: Yes, Your Honor.

MR. ZIMET: Yes, sir.

MR. BARZEE: Yes, Your Honor.

THE COURT: I'm sorry to interrupt your deliberations, but it's 5:00; so I want to let you know that I can't feed you at this point. If everybody wants to continue the deliberations, we can keep on going. But if somebody is hungry or tired and wants to go home, then we would consider recessing the deliberations until tomorrow morning.

Is there anybody that wants to or has to at this point go home? If so, please raise your hand.

(Hands raised.)

THE COURT: All right. So we're going to go ahead and recess the deliberations until tomorrow at 9:00.

Remember my admonition not to discuss the case or allow it to be discussed in your presence. Even if all 12 of you went to breakfast tomorrow somewhere, you can't discuss the

case until all 12 of you are back in the jury deliberation room.

And you may go home and your family members may want to pump you for information, you can't talk about the case until the case is over with.

Once the 12th person is in the room tomorrow morning, you can resume your deliberations. I'm not going to call you out and ask you the same questions I ask you all the time.

So have a nice evening, and we'll see you back tomorrow at 9:00.

THE COURT SECURITY OFFICER: All rise for the jury.

(Jury exits.)

THE COURT: And if there's nothing else to come before the Court, we will be in recess until sometime after 9:00.

(Jury trial was adjourned at 5:02 PM.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

DATE: 10/29/25

/s/Patricia Bailey-Entin
PATRICIA BAILEY-ENTIN, RPR, FPR
Official Court Reporter
United States District Court
Southern District of Florida

## $

**$5,000** [1] - 28:25

## /

**/s/Patricia** [1] - 55:20

## 0

**001-S** [1] - 45:3
**001s** [1] - 45:10

## 1

**1** [2] - 1:8, 1:19
**10/29/25** [1] - 55:20
**10:12** [1] - 42:11
**10:37** [2] - 42:11, 42:22
**12** [6] - 6:10, 6:11, 8:4, 41:14, 54:24, 55:1
**12th** [6] - 8:2, 8:7, 53:2, 53:14, 53:15, 55:6
**18** [2] - 27:9, 27:19

## 2

**2021** [2] - 43:3, 43:4
**2025** [1] - 1:5
**21** [3] - 19:22, 45:15, 48:15
**21st** [1] - 43:3
**23rd** [1] - 43:4
**24-cr-20255-Dimitrouleas/Hunt** [1] - 1:2
**245** [2] - 47:2, 47:7
**28** [1] - 1:5
**2:01** [1] - 42:22
**2:11** [1] - 49:5
**2:22** [1] - 49:5
**2:28** [1] - 52:7

## 3

**301** [1] - 19:23
**303** [1] - 7:1
**33128** [1] - 1:19
**33132** [1] - 1:16
**33301** [1] - 1:22
**3rd** [1] - 1:19

## 4

**40** [1] - 1:19
**4:54** [1] - 52:7
**4:55** [1] - 52:11
**4:58** [1] - 53:25
**4th** [1] - 1:15

## 5

**5:00** [7] - 7:11, 42:5, 42:7, 52:19, 53:25, 54:13
**5:02** [2] - 1:6, 55:15

## 6

**6** [1] - 1:22
**633** [1] - 1:22
**668** [1] - 4:13
**670** [1] - 27:20
**670(a)(2)** [1] - 27:9

## 7

**700s** [1] - 43:6
**702** [2] - 5:8, 5:12
**702A** [1] - 5:13
**705** [2] - 5:8, 5:12
**705A** [1] - 5:13
**706** [2] - 5:8, 5:12
**706A** [1] - 5:13
**710** [2] - 5:8, 5:12
**710A** [1] - 5:13
**711** [2] - 5:8, 5:12
**711A** [1] - 5:13

## 9

**99** [1] - 1:15
**9:00** [8] - 7:17, 8:2, 8:5, 52:22, 53:1, 54:22, 55:10, 55:14
**9:01** [1] - 1:6

## A

**a)(3)** [1] - 27:20
**abets** [2] - 33:25, 34:3
**ability** [1] - 13:21
**able** [1] - 46:16
**above-entitled** [1] - 55:19
**absent** [1] - 9:13
**accept** [1] - 13:6
**acceptable** [2] - 8:8, 9:16
**accepting** [1] - 4:4
**access** [1] - 6:3
**accident** [1] - 37:11
**accompanied** [2] - 35:16, 36:4
**accompanies** [3] - 23:13, 23:20, 24:5
**accompany** [1] - 23:21
**accomplish** [4] - 18:4, 18:15, 26:18, 29:24
**accomplishing** [1] - 18:12
**accurate** [4] - 10:9, 13:6, 20:4, 55:18
**accurately** [1] - 13:22
**acquired** [1] - 34:22
**Act** [3] - 19:22, 20:2, 20:5
**act** [28] - 12:6, 17:12, 17:23, 18:8, 18:10, 18:13, 19:1, 21:19, 21:24, 22:9, 22:10, 22:16, 22:17, 25:17, 26:12, 29:11, 30:14, 31:25, 32:16, 33:22, 37:9, 37:11, 37:13, 39:5
**acted** [8] - 21:6, 21:23, 22:3, 23:1, 31:2, 36:25, 37:17, 37:19
**acting** [2] - 33:24, 37:4
**action** [2] - 31:6, 36:2
**actions** [3] - 35:14, 35:16, 36:4
**acts** [6] - 17:19, 22:5, 22:6, 34:2, 34:5, 34:8
**actual** [3] - 12:25, 34:24, 35:7
**add** [2] - 5:7, 10:5
**added** [1] - 49:23
**additional** [2] - 33:13, 50:17
**adjourned** [1] - 55:15
**Administration** [1] - 17:2
**admitted** [6] - 5:2, 5:17, 9:7, 12:11, 12:12, 15:3
**admonition** [2] - 10:18, 54:23
**adulterated** [9] - 15:21, 17:7, 19:6, 20:6, 20:10, 20:15, 20:16, 21:4, 23:3
**advance** [1] - 32:22
**advances** [3] - 19:1, 26:12, 30:15
**advantage** [1] - 15:8
**advice** [3] - 37:2, 37:6, 37:8
**affairs** [1] - 12:7
**affect** [1] - 38:6
**affects** [1] - 5:7
**agencies** [1] - 17:1
**agent** [6] - 17:14, 25:19, 29:2, 29:13, 33:23, 34:5
**agree** [13] - 6:13, 6:22, 9:13, 9:15, 9:16, 11:12, 16:21, 19:19, 28:9, 28:11, 38:16, 42:7, 46:13
**agreed** [11] - 3:14, 3:17, 4:17, 5:6, 18:3, 24:13, 26:17, 29:23, 39:14, 39:16, 50:23
**agreeing** [2] - 9:13, 24:10
**agreement** [14] - 4:6, 9:19, 9:21, 17:11, 17:17, 25:16, 25:22, 29:10, 29:16, 38:21, 44:16, 44:19, 46:2, 49:15
**ahead** [1] - 54:21
**aid** [1] - 15:9
**aides** [1] - 33:25
**aids** [1] - 34:3
**Alexander** [1] - 1:13
**allege** [1] - 16:17
**alleged** [13] - 17:6, 18:11, 18:18, 19:3, 20:16, 26:3, 27:6, 27:8, 30:6, 32:8, 32:12, 32:14, 38:1
**alleges** [1] - 36:9
**allow** [4] - 10:19, 15:12, 53:4, 54:23
**alone** [2] - 18:14, 38:13
**alter** [1] - 26:19
**altered** [5] - 25:11, 26:23, 27:16, 28:5, 28:8
**altering** [1] - 25:4
**alternative** [2] - 16:16, 16:21
**alternatives** [1] - 16:19
**AM** [4] - 1:6, 42:11, 42:22
**amended** [1] - 47:17
**AMERICA** [1] - 1:4
**answer** [6] - 13:24, 44:18, 44:22, 46:18, 48:19, 51:11
**answered** [1] - 44:23
**answers** [2] - 39:12, 50:11
**apologize** [1] - 5:20
**appear** [1] - 13:23
**APPEARANCES** [1] - 1:11
**applies** [1] - 44:11
**apply** [11] - 43:12, 44:1, 44:3, 44:17, 44:20, 45:7, 49:19, 50:7, 51:19, 52:2
**approach** [2] - 39:25, 47:19
**appropriate** [8] - 43:24, 44:5, 44:6, 46:21, 49:20, 50:10, 50:16, 50:22
**argument** [1] - 46:23
**arising** [1] - 19:21
**arriving** [1] - 12:17
**article** [1] - 23:10
**articles** [1] - 21:8
**aspect** [1] - 22:14
**asserts** [1] - 12:25
**Assistant** [1] - 1:14
**associate** [1] - 34:6
**associated** [2] - 32:14, 34:9
**associating** [3] - 18:23, 26:8, 30:12
**assume** [1] - 12:14
**attached** [1] - 23:17
**attorney** [1] - 37:5
**attorney's** [1] - 37:6
**Attorneys** [1] - 1:15
**authority** [2] - 24:18, 24:20
**authorizes** [1] - 34:5
**automatically** [3] - 19:2, 26:13, 30:16
**available** [1] - 28:14
**avoid** [1] - 43:14
**avoidance** [1] - 34:19
**avoids** [1] - 34:22
**aware** [2] - 34:16, 37:19

## B

**bad** [2] - 37:15
**BAILEY** [2] - 2:2, 55:21
**Bailey** [1] - 55:20
**BAILEY-ENTIN** [2] - 2:2, 55:21
**Bailey-Entin** [1] - 55:20
**Bank** [1] - 5:13
**bank** [1] - 5:3
**bargain** [1] - 14:7
**Barzee** [9] - 1:17, 1:18, 4:16, 8:11, 46:9, 47:7, 48:3, 48:16, 49:14
**BARZEE** [23] - 4:17, 4:23, 5:19, 8:12, 10:17, 40:10, 42:19, 46:10, 46:20, 47:1, 47:8, 48:4, 48:22,

49:3, 49:15, 49:20, 50:23, 51:1, 51:23, 53:5, 53:11, 53:20, 54:11
**based** [2] - 11:8, 12:2
**bathroom** [1] - 41:10
**bear** [2] - 23:2, 24:25
**become** [4] - 19:2, 26:13, 30:16, 38:23
**becomes** [3] - 17:14, 25:19, 29:13
**BEFORE** [1] - 1:10
**begin** [1] - 11:4
**beings** [1] - 20:3
**belief** [2] - 36:14, 36:19
**beliefs** [1] - 38:25
**bench** [1] - 39:25
**benefit** [1] - 28:16
**between** [2] - 21:10, 21:13
**beyond** [24] - 11:7, 11:21, 11:24, 12:5, 12:8, 16:19, 18:1, 19:17, 20:24, 21:22, 22:3, 26:15, 27:4, 27:22, 29:21, 30:21, 33:12, 34:12, 35:1, 35:9, 35:22, 36:13, 36:24, 37:24
**Biktarvy** [5] - 21:15, 21:18, 47:3, 47:23, 48:1
**binding** [1] - 12:13
**bit** [2] - 3:12, 44:21
**blank** [1] - 48:8
**bore** [1] - 20:3
**bottle** [1] - 48:5
**bottom** [1] - 10:9
**Boyd** [6] - 35:9, 35:18, 35:22, 36:5, 49:11, 49:12
**BOYD** [4] - 1:7, 1:17, 1:21
**Boyd's** [8] - 35:8, 35:13, 35:14, 35:16, 35:21, 36:1, 36:2, 36:4
**break** [1] - 53:4
**breakfast** [1] - 54:25
**briefly** [1] - 50:9
**bring** [7] - 7:11, 7:22, 8:5, 39:21, 51:25, 53:21, 54:4
**bringing** [3] - 41:23, 52:11, 52:19
**broad** [2] - 24:18, 24:20
**broader** [1] - 23:14
**Bruce** [1] - 1:21
**bunch** [2] - 46:18, 48:19
**burden** [1] - 11:23
**business** [6] - 32:18, 35:14, 35:15, 36:1, 36:2, 36:19
**BY** [1] - 2:1

## C

**cannot** [2] - 11:19, 36:15
**capacity** [1] - 31:21
**carefully** [1] - 12:3
**carelessness** [2] - 35:5, 36:17
**carried** [5] - 16:24, 17:20, 25:3, 25:8, 29:9
**carry** [3] - 30:18, 31:5, 39:17
**carrying** [5] - 17:25, 18:11, 25:25, 29:19, 32:12
**CASE** [1] - 1:2
**case** [23] - 3:11, 7:3, 10:19, 11:3, 12:4, 12:11, 12:15, 13:19, 19:3, 20:16, 38:9, 38:18, 38:20, 38:22, 39:1, 39:3, 39:14, 51:14, 53:4, 54:23, 55:1, 55:4, 55:5
**cases** [2] - 14:5, 32:22
**caused** [3] - 20:21, 21:1, 31:3
**caution** [4] - 14:3, 14:10, 38:7, 39:23
**cease** [1] - 41:14
**cell** [3] - 10:25, 41:16, 41:24
**certain** [8] - 15:3, 18:23, 24:2, 26:8, 30:12, 37:22, 44:1, 44:2
**certify** [1] - 55:17
**cetera** [1] - 7:10
**chain** [4] - 13:1, 24:23, 29:3, 29:5
**Chain** [4] - 35:14, 35:18, 36:1, 36:6
**chance** [1] - 40:20
**change** [2] - 38:23, 49:2
**changed** [1] - 47:18
**changes** [6] - 43:6, 45:14, 46:5, 46:7, 48:15, 49:10
**changing** [1] - 45:15
**characterization** [1] - 47:14
**charge** [8] - 11:15, 15:23, 16:8, 20:18, 24:14, 26:15, 27:22, 36:23
**charged** [12] - 16:12, 16:14, 19:12, 24:12, 29:25, 33:4, 33:10, 33:14, 33:22, 35:11, 35:24, 38:8
**charges** [11] - 15:16, 15:20, 16:2, 16:6, 17:20, 19:4, 20:7, 25:13, 36:8, 37:21, 38:2
**CHARLES** [2] - 1:7, 1:21
**Charles** [7] - 35:21, 35:22, 35:25, 36:2, 36:4, 36:5, 49:11
**charts** [3] - 15:3, 15:4, 15:5
**cheat** [3] - 17:3, 21:20, 31:7
**check** [2] - 39:9, 39:11
**checked** [1] - 3:25
**choose** [1] - 39:4
**cigarette** [1] - 41:11
**circumstances** [3] - 13:2, 22:24, 23:1
**circumstantial** [3] - 12:23, 13:1, 13:4
**clearly** [1] - 13:24
**click** [1] - 6:8
**client** [1] - 46:25
**clip** [3] - 3:10, 3:12, 3:14
**close** [2] - 7:19, 37:25
**closed** [1] - 35:4
**coconspirator** [3] - 32:23, 32:24, 33:18
**Code** [3] - 19:23, 27:9, 27:20
**collect** [2] - 10:25, 41:16
**Columbia** [1] - 21:11
**comfortable** [1] - 5:16
**comment** [2] - 50:10
**commentary** [4] - 45:7, 46:24, 50:12, 51:6
**commerce** [19] - 15:25, 17:8, 17:9, 19:6, 19:9, 20:7, 20:9, 20:12, 20:20, 20:21, 21:3, 21:10, 21:14, 21:18, 27:14, 28:2, 31:4, 33:2
**commission** [1] - 17:23
**commit** [21] - 16:7, 16:14, 17:12, 17:20, 19:13, 19:15, 19:18, 19:20, 25:14, 25:17, 27:3, 27:5, 28:10, 28:12, 29:11, 29:24, 33:8, 33:18, 34:1, 35:10, 35:23
**commits** [2] - 18:15, 32:21
**committed** [11] - 15:23, 16:9, 16:17, 18:10, 28:23, 29:1, 33:13, 33:16, 37:13, 37:22, 37:25
**committing** [1] - 16:13
**common** [7] - 12:3, 12:21, 18:23, 26:9, 26:18, 29:24, 30:12
**communicate** [1] - 39:19
**communication** [1] - 31:4
**communications** [4] - 30:18, 32:16, 32:18, 32:19
**companies** [1] - 35:20
**competent** [1] - 37:6
**complete** [3] - 36:8, 36:23, 37:4
**completed** [1] - 11:3
**components** [1] - 24:22
**computer** [7] - 3:25, 4:19, 6:2, 6:6, 6:14, 40:19, 41:6
**computers** [1] - 6:11
**concealing** [1] - 22:1
**conceals** [1] - 31:17
**concede** [2] - 10:13, 54:7
**concerned** [3] - 12:22, 40:19, 49:11
**concerning** [2] - 12:1, 13:10
**conclusions** [1] - 12:21
**conduct** [4] - 35:19, 36:6, 37:7, 37:20
**conducting** [2] - 35:13, 36:1
**confirm** [1] - 3:9
**confirming** [1] - 50:19
**conjunctive** [1] - 16:18
**consequence** [1] - 33:18
**consider** [14] - 11:19, 12:10, 13:5, 14:2, 14:9, 14:18, 14:24, 38:3, 38:11, 41:19, 50:4, 50:5, 51:3, 54:16
**considered** [4] - 12:4, 23:21, 37:6, 49:25
**considering** [4] - 12:20, 38:19, 50:12, 51:1
**conspiracy** [29] - 16:15, 17:7, 17:11, 17:14, 17:22, 18:7, 18:12, 18:15, 18:24, 18:25, 19:3, 20:8, 24:12, 25:16, 25:19, 25:23, 26:10, 26:11, 29:10, 29:13, 29:17, 29:20, 30:13, 30:14, 32:21, 32:22, 33:13, 33:16, 33:19
**conspiracy's** [1] - 33:14
**conspirator** [10] - 18:14, 18:16, 19:2, 26:1, 26:13, 30:3, 30:4, 30:16, 32:21, 33:13
**conspirators** [7] - 17:24, 18:7, 18:18, 25:25, 26:3, 29:19, 30:6
**conspire** [6] - 16:23, 16:25, 17:8, 25:2, 25:8, 29:8
**conspired** [16] - 15:21, 16:3, 16:7, 19:4, 19:15, 19:18, 19:20, 20:8, 24:13, 25:14, 27:3, 27:5, 27:8, 27:19, 28:10, 28:12
**conspiring** [5] - 16:14, 19:13, 19:14, 33:1, 33:8
**constitute** [3] - 23:18, 23:19, 36:20
**constitutes** [1] - 24:5
**consumer** [3] - 28:15, 28:17
**consumers** [4] - 19:25, 22:7, 22:10, 24:20
**container** [1] - 23:9
**containers** [1] - 23:13
**containing** [2] - 20:3, 34:21
**contains** [1] - 34:23
**content** [1] - 40:3
**continue** [5] - 52:25, 53:6, 53:8, 53:9, 54:14

**continuing** [1] - 53:7
**Control** [1] - 45:23
**convenience** [1] - 39:7
**convicted** [1] - 14:18
**conviction** [1] - 16:20
**convinced** [3] - 12:8, 12:9, 38:24
**convincing** [1] - 12:5
**copies** [1] - 4:18
**copy** [8] - 7:4, 9:4, 10:22, 10:23, 15:18, 40:15, 41:1, 41:3
**correct** [2] - 45:11, 48:10
**correspond** [1] - 50:15
**Cosmetic** [3] - 19:22, 20:2, 20:5
**cost** [1] - 32:6
**counsel** [13] - 3:3, 9:9, 10:13, 37:2, 39:25, 42:13, 43:1, 43:7, 46:5, 52:9, 52:17, 54:2, 54:7
**Counsel** [1] - 49:8
**count** [15] - 7:5, 15:17, 21:13, 27:6, 27:7, 27:18, 36:9, 38:2, 39:9, 44:7, 44:9, 45:24, 49:19, 51:19, 52:2
**Count** [18] - 15:20, 16:2, 16:6, 16:22, 19:4, 20:7, 21:12, 24:13, 25:1, 25:13, 29:7, 30:17, 43:3, 43:4, 43:17, 44:7, 48:4
**counts** [20] - 15:17, 20:18, 21:16, 39:11, 39:12, 44:2, 44:11, 44:13, 44:25, 45:8, 45:10, 45:11, 45:17, 45:21, 46:3, 48:25, 49:25, 50:2, 50:8, 50:15
**Counts** [12] - 15:23, 16:8, 16:13, 21:15, 32:25, 33:4, 33:7, 33:10, 43:13, 44:17, 44:20, 45:3
**couple** [3] - 43:6, 48:23, 52:18
**course** [4] - 8:10, 31:6, 32:18, 37:7
**COURT** [86] - 1:1, 3:3, 3:18, 3:25, 4:5, 4:11, 4:16, 4:18, 5:10, 5:15, 5:25, 6:10, 6:22, 7:2, 7:4, 7:11, 7:18, 7:25, 8:11, 8:14, 8:21, 9:1, 9:6, 9:9, 9:12, 9:21, 10:2, 10:6, 10:13, 10:18, 40:3, 40:8, 40:12, 40:21, 40:24, 41:1, 41:20, 41:22, 42:2, 42:10, 42:13, 42:20, 42:25, 43:9, 43:11, 43:16, 43:19, 43:23, 44:10, 44:16, 45:5, 45:15, 45:19, 46:1, 46:7, 46:16, 46:24, 47:7, 47:9, 47:16, 47:22, 47:25, 48:7, 48:11, 48:14, 48:24, 49:7, 49:14, 49:16, 49:22, 50:1, 51:16, 51:24, 52:9, 52:17, 53:8, 53:12, 53:21, 53:24, 54:2, 54:5, 54:7, 54:12, 54:21, 55:11, 55:13
**court** [1] - 39:6
**Court** [15] - 2:3, 2:4, 3:1, 3:10, 3:17, 4:10, 4:14, 42:4, 44:2, 44:8, 50:20, 51:2, 55:14, 55:21, 55:22
**Court's** [3] - 7:7, 11:14, 51:5
**COURTROOM** [8] - 4:24, 10:7, 10:11, 40:25, 42:24, 49:4, 52:6, 53:22
**courtroom** [2] - 39:18, 39:23
**craft** [3] - 17:5, 22:18, 24:16
**create** [1] - 21:25
**crime** [39] - 14:19, 16:22, 16:24, 16:25, 17:21, 18:1, 20:24, 25:1, 25:3, 25:7, 25:9, 27:8, 27:19, 29:7, 29:9, 30:17, 30:20, 32:20, 32:21, 32:23, 32:24, 33:1, 33:6, 33:8, 33:11, 33:14, 33:16, 33:18, 33:20, 34:1, 34:10, 34:11, 34:16, 37:21, 37:25, 38:2, 38:4, 38:5, 38:6
**crimes** [14] - 15:16, 17:10, 19:13, 19:16, 19:18, 19:20, 25:15, 27:3, 27:6, 28:12, 33:4, 33:10, 38:8, 38:10
**criminal** [5] - 17:13, 19:21, 24:12, 25:18, 29:12
**criminally** [3] - 34:2, 34:7, 37:12
**Crystal** [5] - 4:20, 40:24, 41:22, 41:24, 42:20
**cure** [1] - 21:9
**cutoff** [1] - 53:6

## D

**damaged** [1] - 48:5
**DATE** [1] - 55:20
**date** [7] - 24:4, 37:23, 37:25, 39:13, 39:17, 47:5
**deal** [1] - 6:14
**deceit** [3] - 17:5, 22:18, 24:16
**deceive** [3] - 21:20, 31:7, 36:20
**deceiving** [1] - 31:9
**deception** [1] - 14:25
**decide** [9] - 11:5, 13:7, 13:12, 14:17, 15:5, 31:20, 38:11, 38:14, 38:18
**deciding** [1] - 11:2
**decision** [5] - 11:8, 12:17, 13:9, 31:22, 31:23
**decision-maker** [1] - 31:23
**deductions** [1] - 12:21
**DEFENDANT** [2] - 1:17, 1:21
**defendant** [90] - 11:15, 11:16, 11:18, 11:20, 11:22, 12:8, 17:25, 18:5, 18:18, 18:21, 19:15, 19:17, 19:20, 21:1, 21:6, 21:23, 22:3, 22:5, 22:6, 22:25, 26:3, 26:7, 26:14, 26:25, 27:2, 27:5, 27:7, 27:11, 27:13, 27:15, 27:18, 27:21, 27:24, 28:1, 28:6, 28:10, 28:12, 28:23, 29:1, 29:2, 29:20, 30:1, 30:7, 30:10, 30:19, 30:22, 31:2, 31:3, 32:3, 32:12, 33:1, 33:4, 33:5, 33:8, 33:9, 33:11, 33:15, 33:20, 33:21, 33:25, 34:2, 34:3, 34:4, 34:7, 34:9, 34:10, 34:13, 34:16, 34:17, 34:21, 34:25, 35:2, 35:6, 36:11, 36:20, 36:21, 36:25, 37:1, 37:4, 38:5, 38:6, 38:7, 38:9, 38:12, 38:13, 39:8
**defendant's** [6] - 11:24, 12:1, 22:20, 22:23, 23:2, 34:15
**defendants** [25] - 3:4, 11:6, 11:10, 11:17, 15:17, 15:20, 15:23, 16:2, 16:6, 16:8, 16:12, 19:4, 19:12, 20:8, 20:19, 20:23, 24:13, 25:14, 38:3, 42:14, 43:1, 49:8, 52:10, 52:18, 54:3
**Defendants** [1] - 1:8
**defendants'** [2] - 22:7, 43:20
**defense** [15] - 5:4, 9:9, 35:8, 35:21, 36:8, 36:23, 40:17, 43:7, 46:1, 46:5, 46:6, 48:12, 49:24, 50:25, 51:7
**define** [1] - 21:2
**defined** [2] - 21:8, 28:22
**definitions** [1] - 23:7
**defraud** [38] - 15:22, 17:1, 17:3, 19:6, 19:9, 19:11, 19:14, 20:10, 20:12, 20:19, 21:7, 21:19, 21:23, 21:24, 22:5, 22:6, 22:9, 22:11, 22:16, 24:13, 24:14, 30:19, 30:23, 31:2, 31:5, 31:6, 31:15, 31:18, 31:25, 32:20, 33:3, 35:10, 35:17, 35:23, 36:4, 36:10, 36:12, 37:1
**defrauded** [1] - 21:21
**defrauding** [1] - 32:15
**delete** [5] - 44:11, 44:13, 45:6, 45:16, 48:17
**deleted** [1] - 45:4
**deliberate** [8] - 7:12, 7:23, 8:3, 34:19, 40:7, 41:14, 52:12, 52:20
**deliberately** [2] - 34:22, 35:4
**deliberation** [2] - 41:13, 55:1
**deliberations** [23] - 8:1, 8:3, 8:7, 10:25, 11:5, 15:10, 15:19, 38:17, 39:6, 41:8, 41:9, 41:14, 52:13, 52:22, 52:25, 53:1, 53:3, 53:16, 54:12, 54:15, 54:17, 54:22, 55:7
**deliver** [4] - 19:5, 19:8, 20:9, 33:2
**delivered** [3] - 20:20, 20:21, 21:2
**delivering** [1] - 31:10
**delivery** [1] - 20:11
**deny** [1] - 34:23
**deposition** [2] - 3:10, 3:12
**DEPUTY** [8] - 4:24, 10:7, 10:11, 40:25, 42:24, 49:4, 52:6, 53:22
**DerOvanesian** [1] - 1:13
**DEROVANESIAN** [10] - 3:6, 4:25, 5:11, 5:20, 6:4, 6:19, 8:13, 9:4, 9:8, 40:15
**described** [1] - 18:8
**description** [4] - 46:14, 47:18, 48:20, 48:25
**descriptions** [1] - 46:11
**designate** [3] - 49:18, 50:7, 50:14
**designed** [1] - 23:22
**detail** [1] - 15:2
**details** [5] - 17:19, 18:16, 26:2, 30:4, 32:7
**determination** [1] - 44:5
**determine** [2] - 35:1, 38:9
**devised** [1] - 30:22
**differ** [1] - 13:25
**difference** [1] - 13:3
**different** [4] - 14:15, 31:11, 39:8, 50:2
**differentiate** [1] - 43:16
**differently** [1] - 38:25
**Dimitrouleas** [1] - 2:3
**DIMITROULEAS** [1] - 1:10
**direct** [5] - 12:22, 12:24, 13:4, 22:11,

39:6
**directing** [1] - 33:23
**direction** [1] - 33:24
**directly** [3] - 13:24, 22:21, 32:24
**directs** [1] - 34:5
**disbelieve** [1] - 13:9
**discuss** [5] - 10:19, 38:20, 53:3, 54:23, 54:25
**discussed** [3] - 10:19, 53:4, 54:24
**discussing** [4] - 18:23, 26:8, 30:12, 38:22
**discussions** [1] - 11:4
**dishonest** [1] - 22:19
**dishonesty** [1] - 14:19
**disk** [1] - 4:3
**dismiss** [1] - 7:9
**disobey** [1] - 37:16
**display** [1] - 23:8
**disprove** [1] - 13:2
**disregard** [3] - 11:14, 12:16, 37:16
**distinct** [1] - 23:7
**distributed** [1] - 21:12
**distribution** [3] - 23:22, 23:23, 24:21
**distributors** [1] - 24:3
**DISTRICT** [3] - 1:1, 1:1, 1:10
**District** [4] - 2:4, 21:11, 55:22, 55:22
**DIVISION** [1] - 1:2
**documentation** [15] - 16:4, 25:4, 25:5, 25:11, 25:12, 26:19, 26:20, 26:23, 27:16, 28:3, 28:4, 28:7
**documents** [1] - 46:5
**done** [3] - 33:23, 37:9
**door** [1] - 53:22
**dosage** [1] - 24:4
**doubt** [27] - 11:7, 11:21, 11:25, 12:1, 12:2, 12:5, 12:9, 16:20, 18:2, 19:17, 20:24, 21:22, 22:3, 26:15, 27:4, 27:22, 29:22, 30:21, 33:12, 34:12, 35:2, 35:9, 35:22, 36:13, 36:25, 37:24
**down** [2] - 39:20, 51:25
**Drug** [4] - 17:2, 19:22, 20:1, 20:5
**drug** [21] - 15:25, 20:22, 21:1, 21:4, 21:8, 23:3, 23:4, 23:5, 23:17, 23:18, 23:21, 23:23, 23:25, 24:2, 24:3, 24:5, 24:6, 28:17, 28:18, 28:20, 28:21
**drugs** [24] - 15:22, 17:7, 17:8, 19:6, 19:9, 20:2, 20:6, 20:10, 20:12, 20:16, 21:12, 21:13, 24:19, 24:21, 24:23, 24:25, 33:3, 34:21, 34:23, 34:24, 35:1, 35:3, 35:7
**duration** [1] - 41:12
**during** [13] - 3:11, 10:25, 11:9, 12:17, 14:15, 15:7, 15:10, 15:18, 18:7, 32:21, 33:13, 41:8, 53:4
**duty** [1] - 11:1

**E**

**e-pharm/alert** [1] - 47:12
**easiest** [1] - 10:5
**economically** [1] - 32:4
**effective** [2] - 20:3, 24:24
**effectively** [1] - 31:16
**effort** [1] - 17:20
**eight** [1] - 15:16
**either** [8] - 3:7, 7:19, 11:10, 13:4, 22:11, 28:10, 39:9, 39:22
**electronic** [2] - 3:8, 41:7
**elements** [5] - 17:9, 20:25, 26:16, 27:10, 27:23
**eliminate** [1] - 48:25
**email** [6] - 47:11, 47:13, 47:14, 47:23, 48:1, 48:6
**emails** [1] - 47:5
**emphasize** [2] - 15:14, 35:5
**employed** [1] - 29:2
**employee** [1] - 34:5
**end** [4] - 3:13, 7:8, 41:17, 47:10
**ended** [1] - 40:23
**engaged** [1] - 18:8
**ensure** [3] - 20:2, 24:23, 24:24
**enters** [2] - 10:12, 54:6
**Entin** [1] - 55:20
**ENTIN** [2] - 2:2, 55:21
**entire** [1] - 3:14
**entirely** [3] - 14:8, 18:14, 50:16
**entirety** [1] - 24:8
**entitled** [2] - 15:14, 55:19
**equivalent** [1] - 34:20
**error** [1] - 36:17
**especially** [1] - 51:8
**Esquire** [5] - 1:13, 1:14, 1:17, 1:18, 1:21
**essential** [1] - 34:15
**essentially** [1] - 50:11
**establish** [4] - 18:24, 26:9, 30:13, 36:18
**established** [2] - 21:22, 22:3
**et** [1] - 7:10
**evening** [1] - 55:9
**event** [4] - 18:13, 18:22, 26:8, 30:11
**evidence** [35] - 3:21, 11:8, 11:16, 11:18, 12:4, 12:10, 12:11, 12:13, 12:19, 12:20, 12:22, 12:24, 13:1, 13:4, 13:5, 13:6, 14:1, 14:11, 14:13, 15:4, 15:11, 23:1, 33:21, 35:12, 35:24, 36:16, 37:1, 38:4, 38:9, 38:19, 39:3, 41:4, 48:9
**Evidence** [2] - 5:14, 43:3
**exact** [1] - 37:23
**examined** [1] - 42:17
**example** [8] - 14:3, 34:20, 46:24, 47:1, 47:2, 48:3, 48:4, 48:16
**Excel** [2] - 5:22, 40:16
**except** [3] - 3:23, 12:15, 45:2
**exception** [2] - 40:3, 40:10
**excerpt** [1] - 4:13
**exclude** [1] - 11:25
**exclusive** [1] - 32:11
**exhibit** [53] - 3:15, 3:23, 5:4, 5:6, 8:15, 8:17, 9:5, 9:12, 9:15, 40:15, 40:19, 40:22, 42:15, 42:16, 43:5, 43:8, 43:11, 43:15, 43:16, 43:20, 43:25, 44:1, 44:4, 44:6, 44:8, 44:11, 45:1, 45:6, 45:11, 46:1, 46:6, 46:17, 47:17, 48:7, 48:13, 48:20, 49:1, 49:9, 49:12, 49:17, 50:2, 50:3, 50:6, 50:12, 50:25, 51:7, 51:8, 51:17, 51:18, 51:25, 52:3
**Exhibit** [4] - 4:12, 5:8, 7:1, 47:2
**exhibits** [35] - 3:5, 3:7, 5:1, 5:2, 5:6, 5:16, 9:6, 12:12, 41:7, 43:12, 43:17, 44:1, 44:3, 44:4, 44:17, 44:19, 44:21, 45:3, 45:7, 45:16, 46:11, 46:14, 47:18, 48:8, 48:25, 49:19, 49:24, 50:4, 50:5, 50:7, 50:15, 51:2, 51:3, 51:19, 52:1
**exist** [1] - 34:18
**existed** [1] - 34:17
**exists** [1] - 3:7
**exits** [2] - 41:21, 55:12
**experience** [1] - 8:22
**explain** [8] - 7:12, 11:11, 15:25, 16:4, 16:10, 17:9, 21:5, 38:17
**explained** [1] - 23:19
**explains** [1] - 23:24
**Explorer** [1] - 6:8
**extent** [1] - 45:24
**eyes** [1] - 35:4
**eyewitness** [1] - 13:1

**F**

**facility** [2] - 27:14, 28:2
**fact** [20] - 11:19, 12:25, 13:2, 14:12, 14:18, 15:2, 21:21, 22:2, 22:14, 31:1, 31:13, 31:17, 31:19, 31:21, 34:15, 34:17, 34:18, 35:18, 36:6
**facts** [10] - 11:6, 12:18, 13:2, 18:1, 22:1, 23:1, 29:21, 30:20, 37:5, 39:2
**factual** [1] - 12:15
**failed** [2] - 35:9, 35:22
**fails** [1] - 11:21
**fair** [2] - 51:10, 51:13
**faith** [10] - 35:13, 36:1, 36:8, 36:11, 36:20, 36:23, 37:1, 37:4, 37:8, 44:6
**fallback** [1] - 44:20
**false** [19] - 14:6, 14:19, 16:3, 21:25, 23:5, 24:7, 24:9, 24:11, 25:11, 26:22, 30:23, 30:25, 31:8, 31:12, 31:16, 31:24, 32:1, 32:10, 36:21
**falsely** [6] - 14:12, 25:4, 26:18, 27:15, 28:5, 28:8
**familiar** [1] - 6:11
**family** [1] - 55:3
**far** [2] - 40:19, 49:11
**favorable** [1] - 14:5
**FDA** [8] - 15:22, 17:2, 19:11, 19:14, 24:14, 24:16, 24:18
**FDA's** [1] - 24:15
**FDCA** [6] - 20:5, 22:6, 23:7, 23:19, 24:18, 28:22
**February** [1] - 43:4
**Federal** [4] - 1:22, 19:22, 20:1, 20:5
**federal** [7] - 16:22, 16:24, 16:25, 25:1, 25:7, 29:7, 30:17
**feed** [2] - 52:21, 54:13
**felony** [1] - 14:19
**few** [4] - 13:13, 41:5, 42:7, 49:2
**figure** [1] - 43:12
**File** [1] - 6:7
**files** [3] - 5:22, 6:3, 40:16
**fill** [1] - 39:16
**final** [1] - 10:21
**financials** [1] - 47:21
**fine** [4] - 10:3, 44:24, 45:2, 45:13
**first** [17] - 8:22, 8:24, 16:12, 18:3, 21:1, 26:17, 27:7, 27:11, 27:24, 29:23, 30:22, 32:25, 33:7, 42:5, 45:3, 45:15, 48:15
**five** [4] - 5:1, 9:18, 53:23, 53:24
**Fl** [1] - 1:22
**Flores** [1] - 1:18
**FLORIDA** [1] - 1:1
**Florida** [7] - 1:4, 1:16, 1:19, 1:22, 21:17, 55:22
**follow** [3] - 10:18, 11:11, 11:12
**followed** [4] - 8:6,

17:23, 37:1, 37:7
**following** [11] - 19:23, 20:25, 26:16, 27:23, 29:21, 30:20, 42:12, 42:23, 49:6, 52:8, 54:1
**follows** [1] - 27:10
**Food** [4] - 17:2, 19:22, 20:1, 20:5
**foolishness** [1] - 35:6
**FOR** [3] - 1:13, 1:17, 1:21
**forbids** [2] - 37:15, 37:18
**foregoing** [1] - 55:17
**foreperson** [6] - 9:24, 10:1, 39:5, 39:13, 39:16
**foreseeable** [1] - 33:17
**forfeiture** [1] - 7:5
**forget** [1] - 14:22
**form** [7] - 9:19, 9:22, 39:7, 39:8, 39:15, 39:17, 40:14
**formal** [4] - 11:15, 17:17, 25:22, 29:16
**formally** [1] - 3:16
**format** [1] - 3:8
**formed** [1] - 36:14
**forms** [3] - 10:24, 40:24, 41:3
**FORT** [1] - 1:2
**Fort** [2] - 1:4, 1:22
**fourth** [3] - 18:10, 28:6, 31:3
**FPR** [2] - 2:2, 55:21
**fraud** [6] - 16:7, 16:10, 29:9, 29:25, 32:12, 33:9
**fraudulent** [11] - 30:23, 31:8, 31:12, 31:16, 32:1, 32:10, 35:19, 36:6, 36:15, 36:18, 36:22
**full** [6] - 37:4, 43:8, 43:11, 43:15, 43:16, 44:25
**fully** [1] - 38:19
**function** [1] - 22:18
**functions** [3] - 17:5, 24:15, 24:21

## G

**gain** [1] - 14:5
**general** [4] - 7:7, 18:19, 26:4, 30:8
**generic** [2] - 45:6, 46:12
**given** [5] - 15:18, 28:21, 40:4, 40:5, 51:15
**goals** [4] - 18:24, 26:9, 30:12, 32:22
**governing** [3] - 16:1, 16:4, 16:10
**Government** [48] - 3:11, 3:20, 5:2, 5:3, 8:19, 11:5, 11:11, 11:20, 14:7, 17:3, 17:15, 17:18, 17:24, 19:14, 19:16, 20:24, 22:8, 22:17, 25:20, 25:24, 26:15, 27:2, 27:4, 27:22, 29:14, 29:18, 32:7, 35:8, 35:21, 36:12, 36:24, 37:22, 37:24, 40:9, 42:15, 43:3, 43:19, 46:6, 46:22, 47:17, 48:14, 49:10, 49:24, 50:20, 50:25, 51:7, 51:8, 52:15
**government** [1] - 22:18
**GOVERNMENT** [1] - 1:13
**Government's** [6] - 4:12, 5:8, 5:13, 11:23, 11:25, 43:25
**governmental** [1] - 17:5
**graphic** [2] - 23:9, 23:12
**greater** [2] - 15:14, 28:25
**group** [1] - 45:3
**guess** [1] - 3:9
**guessed** [2] - 35:16, 36:3
**guilt** [3] - 11:16, 11:20, 12:1
**guilty** [32] - 11:7, 11:22, 11:24, 12:8, 18:1, 18:22, 19:19, 20:23, 26:7, 26:14, 27:21, 28:9, 29:20, 30:10, 30:20, 32:23, 33:1, 33:4, 33:8, 33:9, 33:20, 38:5, 38:10, 38:12, 38:13, 38:15, 39:9, 39:10, 39:11

## H

**half** [1] - 31:16
**half-truth** [1] - 31:16
**hand** [2] - 52:24, 54:19
**Hands** [1] - 54:20
**happy** [1] - 6:6
**hard** [1] - 44:10
**header** [2] - 45:10, 45:18
**headings** [1] - 46:13
**health** [2] - 19:24, 24:19
**hear** [3] - 42:4, 42:21, 52:4
**heard** [1] - 42:6
**heart** [3] - 17:22, 25:23, 29:17
**heavy** [1] - 11:23
**held** [2] - 36:14, 40:2
**help** [6] - 31:5, 44:21, 44:22, 46:19, 46:20, 48:18
**helpful** [1] - 6:8
**hereafter** [1] - 20:4
**hereby** [1] - 55:17
**hesitate** [1] - 38:22
**hesitation** [1] - 12:7
**high** [1] - 34:17
**Highway** [1] - 1:22
**HIV** [2] - 35:20, 36:7
**home** [7] - 7:14, 52:22, 52:23, 53:10, 54:16, 54:19, 55:3
**honest** [2] - 36:18, 38:24
**honestly** [2] - 36:14
**Honor** [27] - 3:6, 4:12, 4:25, 5:19, 5:20, 8:12, 8:13, 9:4, 10:15, 10:17, 42:9, 43:22, 44:14, 45:13, 46:10, 47:5, 47:19, 48:10, 49:20, 49:21, 50:9, 51:20, 52:5, 53:5, 53:18, 54:9, 54:11
**HONORABLE** [1] - 1:10
**Honorable** [1] - 2:3
**hope** [2] - 5:24, 14:5
**hour** [1] - 8:24
**human** [1] - 20:2
**hungry** [4] - 7:13, 52:13, 52:21, 54:15

## I

**ideal** [1] - 44:17
**identified** [1] - 21:16
**identities** [3] - 18:17, 26:2, 30:5
**ignorance** [1] - 40:7
**II** [12] - 15:23, 20:18, 21:15, 32:25, 33:4, 43:3, 43:13, 43:17, 44:7, 44:17, 44:20
**III** [10] - 15:23, 21:15, 32:25, 33:5, 43:4, 43:13, 43:17, 44:7, 44:17, 44:20
**illegal** [2] - 34:25, 35:3
**illegally** [1] - 34:22
**Illegitimate** [2] - 47:3, 47:23
**illegitimate** [3] - 47:9, 47:12, 48:1
**illicit** [1] - 34:23
**illness** [1] - 21:9
**immediate** [1] - 23:9
**immunity** [1] - 14:4
**impartially** [1] - 12:3
**important** [5] - 12:7, 13:8, 14:12, 15:2, 31:19
**impress** [1] - 13:14
**impression** [1] - 21:25
**impressions** [1] - 15:15
**improper** [1] - 50:20
**inaccurately** [1] - 14:23
**inappropriate** [8] - 44:2, 44:8, 47:13, 49:18, 50:6, 50:14, 51:18, 52:1
**include** [1] - 3:23
**included** [2] - 3:24, 51:22
**includes** [7] - 4:13, 12:11, 22:24, 24:20, 29:5, 31:9, 32:4
**including** [10] - 3:22, 17:1, 19:25, 25:5, 25:11, 26:19, 26:23, 27:16, 28:3, 28:7
**inconsistent** [1] - 37:2
**indefinitely** [1] - 53:7
**independent** [1] - 15:11
**indicate** [3] - 39:12, 51:18, 52:1
**indictment** [27] - 7:5, 10:23, 11:15, 15:16, 15:18, 16:17, 17:16, 17:20, 18:9, 19:4, 20:7, 20:18, 25:13, 25:21, 29:15, 29:25, 32:8, 35:11, 35:24, 36:9, 36:24, 37:21, 38:2, 38:8, 40:14, 41:3, 49:25
**indifference** [1] - 31:14
**indirectly** [1] - 22:23
**induce** [1] - 32:5
**indulgence** [1] - 4:9
**influence** [1] - 31:22
**influenced** [2] - 11:9, 15:12
**informants** [1] - 14:3
**information** [4] - 20:4, 24:1, 24:2, 55:4
**innocence** [1] - 11:17
**innocent** [3] - 11:17, 14:24, 18:14
**instance** [1] - 44:6
**instruct** [2] - 11:2, 20:14
**instructed** [1] - 4:20
**instructing** [2] - 50:14, 51:2
**instruction** [5] - 8:6, 40:6, 40:7, 40:16, 50:16
**instructions** [18] - 6:1, 6:7, 6:17, 10:22, 11:3, 11:13, 11:14, 12:16, 16:15, 40:4, 40:13, 40:18, 41:2, 41:5, 44:3, 51:5, 51:6
**insulting** [1] - 48:21
**intact** [1] - 4:14
**integrated** [1] - 23:23
**integrity** [1] - 24:22
**intended** [6] - 17:21, 21:8, 24:24, 31:7, 32:11, 36:20
**intends** [1] - 32:3
**intent** [38] - 19:6, 19:9, 20:10, 20:12, 20:19, 21:6, 21:19, 21:20, 21:23, 21:24, 21:25, 22:4, 22:5, 22:6, 22:9, 22:11, 22:16, 22:17, 23:2, 31:2, 31:15, 31:17, 31:25, 32:1, 33:3, 35:10, 35:17, 35:23, 36:4, 36:10, 36:12, 36:15, 36:18, 36:25, 37:3, 37:14, 37:17
**intentional** [2] - 14:25, 37:10
**intentionally** [3] - 32:5, 34:1, 34:9
**Intentionally** [1] - 48:8
**interest** [2] - 13:18, 39:3
**interests** [3] - 18:24, 26:9, 30:13
**interfere** [3] - 17:4, 22:17, 24:15

**interpretation** [1] - 12:18
**interrupt** [1] - 54:12
**interruptions** [3] - 41:9, 41:12
**interstate** [23] - 15:25, 17:7, 17:9, 19:5, 19:9, 20:7, 20:9, 20:11, 20:20, 20:21, 21:3, 21:10, 21:14, 21:18, 24:21, 27:14, 28:2, 30:18, 31:4, 32:10, 32:16, 32:19, 33:2
**introduce** [8] - 15:21, 17:7, 17:8, 19:5, 19:8, 20:9, 20:11, 33:1
**introduced** [6] - 3:20, 9:11, 20:19, 20:21, 21:2, 48:9
**introduction** [9] - 15:24, 19:5, 19:8, 20:6, 20:9, 20:11, 20:20, 21:3, 33:2
**involve** [1] - 45:9
**involved** [2] - 24:3, 28:25
**involving** [3] - 14:19, 25:11, 26:22
**issue** [5] - 3:9, 5:21, 12:15, 44:23
**issues** [1] - 3:7
**IT** [2] - 5:21, 5:23
**itself** [4] - 17:23, 25:24, 29:18, 32:10
**IV** [4] - 16:2, 16:13, 25:1, 25:13
**Ivlis** [1] - 1:18

## J

**Jacqueline** [1] - 1:13
**January** [1] - 43:3
**join** [1] - 51:23
**joined** [6] - 18:6, 18:20, 26:5, 27:1, 30:2, 30:9
**joins** [1] - 34:1
**JUDGE** [1] - 1:10
**judge** [3] - 38:13, 42:17, 51:21
**Judge** [15] - 4:22, 7:6, 8:18, 9:20, 10:3, 40:5, 40:20, 41:25, 45:4, 46:3, 47:10, 49:10, 49:23, 50:22, 53:19
**judges** [2] - 39:2
**judgment** [3] - 35:15, 36:2, 36:17
**juries** [1] - 7:7
**juror** [4] - 41:23, 53:2, 53:15
**jurors** [5] - 8:14, 9:18, 15:13, 38:20, 39:23
**Jury** [5] - 10:12, 41:21, 54:6, 55:12, 55:15
**JURY** [1] - 1:9
**jury** [41] - 3:15, 3:20, 3:22, 4:3, 4:15, 4:20, 4:21, 6:2, 6:3, 6:10, 7:12, 7:20, 7:21, 7:25, 8:15, 9:17, 10:14, 11:1, 11:4, 39:4, 39:15, 40:21, 41:13, 42:4, 42:6, 42:21, 43:2, 44:3, 46:12, 46:16, 46:22, 47:25, 48:18, 52:4, 52:11, 52:19, 53:21, 54:4, 54:8, 55:1, 55:11
**jury's** [2] - 50:11, 51:11
**just..** [1] - 47:15

## K

**Kalarama** [1] - 48:4
**keep** [3] - 14:20, 48:15, 54:15
**key** [1] - 7:3
**kind** [10] - 8:25, 9:2, 14:8, 17:12, 17:17, 23:15, 25:17, 25:22, 29:11, 29:16
**knocked** [1] - 53:22
**knowing** [5] - 18:16, 26:1, 30:4, 33:15, 34:13
**knowingly** [15] - 15:20, 16:2, 16:6, 18:8, 25:1, 25:3, 25:7, 25:9, 27:11, 27:15, 27:24, 29:7, 30:22, 31:25, 37:9
**knowledge** [5] - 12:25, 34:15, 34:19, 34:20, 34:23
**known** [1] - 31:24
**knows** [1] - 31:13

## L

**label** [3] - 23:7, 23:8, 23:15
**labeled** [1] - 47:2
**labeling** [21] - 20:3, 23:5, 23:8, 23:11, 23:14, 23:15, 23:18, 23:19, 24:5, 24:7, 24:9, 24:11, 24:25, 25:4, 25:11, 26:19, 26:23, 27:16, 28:3, 28:6, 28:21
**labels** [2] - 23:11, 23:15
**language** [1] - 51:22
**lapse** [1] - 14:24
**laptop** [6] - 5:15, 5:17, 5:21, 6:5, 41:23, 41:24
**larger** [2] - 5:4, 5:6
**late** [1] - 7:7
**LAUDERDALE** [1] - 1:2
**Lauderdale** [2] - 1:4, 1:22
**law** [14] - 11:2, 11:11, 11:12, 11:14, 11:16, 12:16, 16:1, 16:4, 16:10, 28:15, 37:15, 37:16, 37:18, 37:20
**lawful** [6] - 17:4, 18:4, 22:18, 24:15, 24:20, 25:17
**lawyers** [1] - 12:13
**learning** [1] - 34:22
**least** [6] - 18:8, 18:20, 22:19, 26:6, 30:9, 47:20
**leave** [1] - 32:4
**leaves** [1] - 41:13
**left** [2] - 42:2, 48:8
**legal** [1] - 13:3
**lens** [2] - 35:13, 35:25
**limited** [1] - 50:15
**line** [8] - 39:9, 39:13, 47:6, 47:10, 47:12, 47:14, 47:24, 48:6
**lines** [1] - 47:4
**list** [34] - 8:16, 9:5, 9:12, 9:15, 40:16, 40:19, 40:22, 43:2, 43:5, 43:8, 43:12, 43:15, 43:16, 43:20, 43:21, 44:1, 44:4, 44:11, 45:1, 45:6, 45:11, 46:1, 46:6, 46:17, 47:17, 48:7, 48:13, 49:1, 49:9, 49:13, 51:7, 51:9, 51:17
**lists** [10] - 43:25, 49:18, 50:2, 50:3, 50:6, 50:12, 50:25, 51:18, 52:1, 52:3
**look** [5] - 4:5, 7:1, 41:6, 46:17, 48:25
**looking** [5] - 44:9, 47:17, 47:20, 48:15, 50:19
**loss** [1] - 24:17
**lunch** [3] - 7:22, 7:23
**lying** [1] - 32:5

## M

**maintains** [2] - 35:18, 36:5
**maker** [1] - 31:23
**management** [1] - 36:17
**manner** [5] - 20:15, 26:17, 29:23, 40:4, 40:5
**Mantilla** [1] - 1:18
**marshal** [2] - 39:20, 39:21
**material** [7] - 31:1, 31:13, 31:17, 31:19, 31:21, 32:9, 37:5
**materially** [1] - 31:11
**matter** [10] - 13:11, 23:9, 23:12, 23:16, 23:19, 23:21, 23:22, 23:24, 31:22, 55:19
**matters** [1] - 12:19
**mean** [5] - 9:12, 13:6, 14:20, 44:14, 47:1
**meaning** [1] - 20:14
**meanings** [1] - 28:21
**means** [21] - 17:3, 21:10, 21:19, 21:24, 22:10, 22:17, 22:19, 23:8, 23:11, 24:15, 27:13, 28:1, 28:13, 28:20, 31:6, 31:25, 32:11, 37:9, 37:11, 37:13, 50:4
**medical** [17] - 16:3, 25:6, 25:10, 26:21, 26:22, 27:12, 27:17, 27:25, 28:5, 28:13, 28:16, 28:17, 28:20, 28:24, 29:3, 29:6
**medication** [1] - 21:16
**member** [7] - 17:13, 17:14, 25:18, 25:19, 29:12, 29:13, 33:15
**members** [10] - 11:1, 17:16, 17:17, 17:18, 25:21, 25:22, 29:15, 29:16, 39:5, 55:3
**memories** [1] - 15:15
**memory** [3] - 13:20, 14:24, 15:9
**mentioned** [1] - 41:22
**merely** [4] - 18:23, 26:8, 30:11, 34:13
**message** [1] - 39:20
**Miami** [2] - 1:16, 1:19
**might** [2] - 35:15, 36:2
**mind** [5] - 14:20, 22:21, 22:22, 22:23, 38:23
**minimize** [2] - 41:9, 41:11
**minor** [3] - 18:18, 26:4, 30:7
**minutes** [7] - 7:20, 42:7, 48:23, 49:2, 52:18, 53:23, 53:24
**misbranded** [13] - 15:21, 15:25, 17:8, 19:9, 20:6, 20:12, 20:15, 20:17, 20:22, 21:4, 23:5, 24:6, 33:2
**mislead** [14] - 19:7, 19:10, 20:10, 20:13, 20:19, 21:7, 22:2, 22:4, 22:5, 22:7, 22:9, 22:11, 22:16, 33:3
**misleading** [4] - 23:6, 24:7, 24:9, 24:11
**missing** [1] - 9:18
**misstated** [1] - 14:23
**misstatement** [2] - 15:1
**misstating** [1] - 21:25
**mistake** [3] - 14:20, 36:16, 37:10
**mistaken** [1] - 36:16
**mitigation** [1] - 21:9
**moment** [5] - 5:22, 16:1, 16:5, 16:11, 17:10
**momentarily** [2] - 20:14, 21:5
**moments** [2] - 5:24, 41:5
**money** [5] - 17:4, 24:17, 31:7, 32:3, 32:6
**morning** [6] - 7:9, 7:15, 7:16, 52:14, 54:17, 55:6
**most** [2] - 12:7, 15:8
**moved** [2] - 3:16, 5:4
**MR** [99] - 3:19, 4:2, 4:9, 4:12, 4:17, 4:22, 4:23, 5:18, 5:19, 6:16, 6:20, 7:1, 7:3, 7:6, 7:16, 7:24, 8:10, 8:12, 8:18, 8:24, 9:2, 9:10, 9:20, 9:23, 9:25, 10:3, 10:4,

10:8, 10:15, 10:16, 10:17, 40:5, 40:9, 40:10, 40:18, 41:25, 42:1, 42:9, 42:17, 42:19, 43:5, 43:10, 43:14, 43:18, 43:22, 43:24, 44:14, 44:24, 45:2, 45:9, 45:12, 45:13, 45:17, 45:21, 45:23, 46:3, 46:4, 46:10, 46:20, 47:1, 47:4, 47:8, 47:10, 47:11, 47:19, 47:24, 48:4, 48:6, 48:10, 48:12, 48:22, 49:3, 49:10, 49:15, 49:20, 49:21, 49:23, 50:9, 50:18, 50:23, 50:24, 51:1, 51:4, 51:10, 51:11, 51:13, 51:15, 51:20, 51:21, 51:23, 52:5, 53:5, 53:11, 53:18, 53:19, 53:20, 54:9, 54:10, 54:11
**MS** [10] - 3:6, 4:25, 5:11, 5:20, 6:4, 6:19, 8:13, 9:4, 9:8, 40:15
**multiple** [2] - 16:16, 16:18
**must** [43] - 11:2, 11:5, 11:8, 11:9, 11:11, 11:12, 11:13, 11:20, 11:21, 12:10, 13:5, 13:6, 14:2, 14:23, 15:9, 15:10, 15:12, 19:19, 20:24, 21:13, 21:17, 26:15, 27:22, 28:9, 28:11, 28:24, 29:1, 33:12, 34:12, 35:5, 35:12, 35:25, 36:12, 36:24, 37:17, 38:3, 38:5, 38:11, 38:15, 38:16, 38:18, 38:20, 39:16

**N**

**named** [3] - 17:16, 25:21, 29:15
**names** [3] - 18:17, 26:2, 30:5
**narrow** [1] - 51:4
**natural** [1] - 31:21
**naturally** [1] - 14:22
**nature** [4] - 22:13, 32:8, 35:1, 35:3
**NE** [1] - 1:15
**necessarily** [2] - 13:11, 46:13
**necessary** [6] - 11:6, 21:20, 22:1, 50:12, 51:6, 51:9
**necessity** [1] - 53:16
**need** [6] - 9:10, 24:6, 24:7, 24:8, 37:19, 48:18
**negligence** [1] - 35:5
**never** [2] - 38:11, 38:17
**next** [3] - 5:24, 7:14, 7:16
**nice** [1] - 55:9
**NO** [1] - 1:2
**nobody** [1] - 52:24
**none** [2] - 35:16, 36:3
**noontime** [1] - 7:21
**normal** [1] - 32:18
**normally** [2] - 8:1, 32:17
**note** [10] - 3:16, 5:1, 6:4, 6:16, 16:12, 43:2, 49:17, 51:17, 51:25, 53:9
**notes** [7] - 6:25, 15:7, 15:9, 15:10, 15:12, 15:14, 43:15
**nothing** [5] - 5:17, 42:3, 47:13, 51:2, 55:13
**nothing's** [2] - 4:7, 6:24
**notice** [1] - 47:12
**number** [6] - 5:6, 5:7, 13:10, 15:17, 24:4, 41:11
**numbers** [4] - 10:8, 42:2, 46:18, 48:20
**Numbers** [1] - 43:3
**NW** [1] - 1:19

**O**

**object** [6] - 18:12, 18:15, 24:12, 27:7, 27:18, 51:21
**objection** [15] - 40:3, 40:6, 40:9, 41:25, 42:1, 42:16, 42:18, 42:19, 46:11, 49:12, 51:23, 53:14, 53:18, 53:19, 53:20
**objections** [4] - 40:8, 40:10, 40:11, 40:12
**objects** [2] - 17:6, 20:8
**observe** [1] - 13:22
**obstruct** [1] - 22:18
**obtain** [3] - 28:16, 31:7, 32:2
**obtained** [1] - 27:11
**obviously** [3] - 6:16, 8:18, 8:24
**occasion** [3] - 18:21, 26:6, 30:9
**occurred** [1] - 37:23
**occurs** [1] - 34:20
**October** [1] - 1:5
**OF** [3] - 1:1, 1:4, 1:9
**offense** [11] - 16:5, 16:13, 16:14, 16:17, 27:10, 28:24, 28:25, 29:1, 29:21, 36:9, 37:23
**offenses** [7] - 15:24, 16:1, 16:9, 16:11, 28:11, 35:11, 35:24
**OFFICER** [3] - 41:20, 54:5, 55:11
**Official** [2] - 2:3, 55:21
**omitting** [1] - 22:1
**once** [4] - 8:2, 41:13, 53:2, 55:6
**one** [40] - 3:10, 4:25, 5:10, 5:21, 7:13, 8:18, 8:22, 9:14, 9:20, 9:23, 13:14, 16:19, 18:7, 18:8, 18:13, 18:21, 19:1, 19:18, 20:1, 22:21, 23:15, 26:6, 26:12, 27:6, 30:9, 30:15, 31:10, 33:12, 38:3, 38:5, 38:20, 39:4, 39:24, 41:23, 42:15, 43:7, 46:2, 50:13, 50:22, 52:25
**ones** [3] - 9:11, 48:17, 49:1
**open** [3] - 6:2, 6:7, 6:14
**opening** [2] - 5:22, 40:16
**operate** [1] - 41:6
**operators** [2] - 35:19, 36:7
**opinion** [4] - 12:15, 36:14, 36:15, 38:23
**opportunity** [3] - 13:21, 15:9, 46:23
**orchestrated** [2] - 35:19, 36:7
**Order** [1] - 3:1
**order** [6] - 14:6, 20:23, 24:6, 24:19, 26:14, 27:21
**ordered** [2] - 4:14, 7:22
**ordinarily** [2] - 22:20, 33:22
**organization** [1] - 29:3
**organizational** [1] - 8:25
**origin** [6] - 24:2, 25:5, 34:24, 35:1, 35:3, 35:7
**original** [2] - 3:22, 6:17
**origination** [7] - 25:5, 25:12, 26:20, 26:24, 27:17, 28:4, 28:7
**otherwise** [4] - 10:3, 23:24, 28:18, 46:22
**outcome** [1] - 13:18
**outline** [1] - 27:19
**outlined** [1] - 27:9
**outside** [3] - 21:11, 21:17, 41:10
**overruled** [3] - 40:8, 40:12, 51:24
**overt** [5] - 17:19, 17:23, 18:8, 18:10, 18:13
**own** [5] - 12:7, 12:17, 12:18, 14:5, 38:23

**P**

**package** [1] - 34:21
**page** [1] - 10:8
**Pages** [1] - 1:8
**paid** [1] - 14:3
**Panther** [1] - 53:12
**paper** [2] - 3:8, 4:18
**paralegals** [1] - 43:7
**part** [14] - 3:16, 3:21, 3:23, 13:10, 18:18, 19:21, 23:4, 23:23, 26:4, 30:7, 32:19, 34:16, 47:2, 47:20
**participant** [1] - 34:13
**participants** [1] - 47:5
**participate** [3] - 32:24, 33:6, 33:11
**participated** [2] - 30:22, 34:10
**particular** [12] - 8:16, 13:11, 13:16, 23:6, 24:10, 44:9, 48:17, 49:19, 50:7, 51:19, 52:2
**partner** [3] - 17:14, 25:19, 29:13
**partnership** [3] - 17:13, 25:18, 29:12
**password** [1] - 6:5
**PATRICIA** [2] - 2:2, 55:21
**PATRICK** [2] - 1:7, 1:17
**Patrick** [6] - 35:8, 35:9, 35:13, 35:14, 35:16, 35:18
**Pause** [1] - 52:16
**paying** [1] - 31:10
**pedigrees** [1] - 24:1
**people** [13] - 6:10, 6:12, 8:4, 14:21, 17:11, 17:16, 18:23, 25:21, 26:8, 29:15, 30:12, 41:15, 52:25
**performed** [3] - 33:21, 35:17, 36:5
**perhaps** [1] - 15:8
**permitted** [1] - 15:7
**person** [28] - 7:13, 8:2, 8:7, 12:24, 18:15, 18:25, 22:22, 26:1, 26:11, 27:5, 28:16, 28:17, 30:3, 30:14, 31:20, 33:22, 33:23, 33:25, 34:1, 34:3, 34:4, 34:8, 37:17, 37:18, 37:19, 41:13, 55:6
**person's** [2] - 22:22, 31:22
**personal** [1] - 13:18
**personally** [4] - 32:13, 33:5, 33:11, 33:21
**persons** [5] - 18:3, 25:16, 26:17, 29:10, 29:23
**ph** [1] - 48:4
**Ph** [1] - 1:19
**pharm/alert** [1] - 47:12
**phone** [1] - 42:2
**phones** [3] - 10:25, 41:16, 41:24
**physically** [1] - 23:17
**pill** [1] - 28:18
**Pinkerton** [1] - 40:6
**place** [2] - 21:11, 21:16
**placed** [1] - 6:5
**plan** [28] - 17:16, 17:19, 17:23, 17:25, 18:4, 18:6, 18:17, 18:19, 18:20, 25:21, 25:23, 25:25, 26:2, 26:4, 26:5, 26:18, 29:15, 29:17, 29:19, 29:24, 30:2, 30:5, 30:7, 30:8, 30:9, 31:6
**plan's** [1] - 26:25
**planned** [1] - 17:18
**played** [8] - 3:10, 3:11, 3:21, 4:12, 4:14, 18:18, 26:3, 30:7
**PM** [9] - 1:6, 42:22,

49:5, 52:7, 53:25, 55:15
**POGOZELSKI** [36] - 9:10, 9:25, 10:4, 10:15, 40:9, 42:1, 42:9, 43:5, 43:10, 43:14, 43:18, 43:22, 44:14, 44:24, 45:9, 45:13, 45:17, 45:23, 46:4, 47:4, 47:11, 47:19, 47:24, 48:6, 48:10, 48:12, 49:21, 50:9, 50:24, 51:4, 51:11, 51:15, 51:20, 52:5, 53:18, 54:9
**Pogozelski** [1] - 1:13
**point** [7] - 6:15, 13:11, 41:18, 42:8, 52:24, 54:14, 54:18
**policy** [1] - 7:7
**polling** [2] - 10:14, 54:8
**pops** [1] - 47:2
**portions** [1] - 5:3
**positive** [1] - 34:19
**possessed** [1] - 27:24
**possessing** [1] - 25:9
**possible** [3] - 11:24, 33:20, 39:22
**Post** [1] - 6:4
**Post-It** [1] - 6:4
**pre** [11] - 25:6, 25:10, 26:21, 26:22, 27:11, 27:17, 27:25, 28:5, 28:13, 29:3, 29:6
**pre-retail** [11] - 25:6, 25:10, 26:21, 26:22, 27:11, 27:17, 27:25, 28:5, 28:13, 29:3, 29:6
**precise** [1] - 32:8
**prejudice** [2] - 11:10, 48:17
**prejudicial** [1] - 46:25
**prepared** [1] - 39:7
**prescription** [1] - 24:23
**presence** [4] - 10:13, 10:20, 54:7, 54:24
**present** [18] - 3:4, 18:22, 26:7, 30:11, 34:11, 42:14, 43:1, 49:8, 52:10, 52:18, 54:3
**presentation** [1] - 50:21
**presented** [3] - 11:9, 35:12, 35:25
**presumes** [1] - 11:16
**pretenses** [4] - 30:24, 30:25, 31:8, 32:2
**prevention** [1] - 21:9
**previously** [1] - 5:2
**printed** [2] - 23:9, 23:12
**priority** [1] - 15:10
**probability** [1] - 34:17
**problem** [5] - 3:22, 6:12, 40:18, 43:25, 50:18
**procedure** [1] - 8:8
**proceedings** [7] - 42:12, 42:23, 49:6, 52:8, 52:16, 54:1, 55:18
**process** [1] - 26:21
**processor** [1] - 44:12
**produce** [1] - 11:18
**product** [20] - 22:10, 22:12, 22:13, 23:12, 23:14, 23:20, 23:25, 25:6, 25:10, 26:21, 26:22, 27:12, 27:18, 27:25, 28:13, 28:14, 28:17, 28:20, 29:4
**products** [6] - 16:3, 22:7, 22:14, 28:5, 28:25, 29:6
**program** [1] - 23:23
**promised** [1] - 14:4
**promises** [4] - 30:24, 31:1, 31:9, 32:2
**promptly** [1] - 39:21
**proof** [10] - 11:23, 11:25, 12:5, 13:1, 18:24, 26:9, 30:13, 34:8, 34:10
**proper** [1] - 24:25
**properly** [1] - 4:15
**property** [5] - 17:4, 24:17, 31:8, 32:3, 32:6
**propose** [3] - 9:5, 52:11, 52:19
**prosecution** [2] - 14:4, 19:21
**prosecutors** [1] - 46:13
**protect** [2] - 24:19, 24:22
**protection** [2] - 19:24, 19:25
**prove** [30] - 11:17, 11:20, 11:24, 13:2, 17:15, 17:18, 17:24, 19:15, 20:24, 21:21, 22:2, 25:20, 25:24, 26:15, 27:2, 27:22, 29:14, 29:18, 32:7, 32:9, 32:14, 33:20, 35:6, 35:9, 35:22, 36:11, 36:12, 36:24, 37:23, 37:24
**proved** [9] - 11:6, 12:8, 16:19, 18:1, 22:21, 22:23, 29:21, 30:20, 37:3
**proves** [2] - 19:17, 27:4
**provide** [3] - 6:6, 8:18, 44:3
**provided** [1] - 40:15
**provides** [1] - 24:1
**providing** [2] - 44:25, 51:6
**public** [1] - 19:24
**pump** [1] - 55:4
**punishment** [2] - 38:11, 38:13
**purchase** [1] - 28:15
**purchased** [2] - 22:13, 22:14
**purchaser** [1] - 22:11
**purchasers** [1] - 22:12
**purpose** [15] - 18:5, 18:11, 18:20, 19:1, 19:24, 26:5, 26:12, 27:1, 30:1, 30:8, 30:15, 32:8, 33:14, 37:15, 37:16
**purposely** [1] - 37:14
**purposes** [5] - 17:13, 20:1, 24:14, 25:18, 29:12
**put** [2] - 4:19, 6:6
**putting** [1] - 47:13

## Q

**quantity** [1] - 24:3
**questioned** [2] - 35:15, 36:3
**questions** [6] - 6:13, 8:22, 8:25, 13:13, 13:23, 55:8
**quickly** [2] - 9:3, 46:4

## R

**radio** [1] - 30:18
**raise** [1] - 54:19
**raised** [2] - 40:11, 54:20
**raises** [1] - 52:24
**rather** [1] - 49:1
**re** [1] - 47:6
**reach** [2] - 12:21, 38:21
**reached** [2] - 7:21, 42:3
**read** [3] - 5:25, 10:23, 22:21
**real** [2] - 12:2, 39:2
**really** [1] - 50:2
**reason** [4] - 12:3, 13:16, 14:6, 35:3
**reasonable** [26] - 11:7, 11:21, 12:1, 12:2, 12:5, 12:9, 16:20, 18:2, 19:17, 20:24, 21:22, 22:3, 26:15, 27:4, 27:22, 29:22, 30:21, 31:19, 33:12, 34:12, 35:2, 35:9, 35:22, 36:13, 36:25, 37:24
**reasonably** [3] - 33:17, 37:7, 37:25
**reasoning** [1] - 12:20
**reasons** [1] - 28:19
**received** [2] - 5:14, 37:6
**receives** [2] - 28:18, 34:21
**recess** [12] - 7:14, 42:4, 42:10, 42:21, 49:2, 52:4, 52:13, 52:22, 53:1, 53:24, 54:22, 55:14
**recesses** [1] - 7:25
**recessing** [1] - 54:16
**reckless** [1] - 31:14
**recollection** [2] - 12:18, 15:11
**reconvening** [1] - 53:17
**record** [12] - 3:3, 42:11, 42:13, 42:22, 43:1, 49:5, 49:7, 52:7, 52:9, 52:17, 53:25, 54:2
**records** [1] - 5:3
**Records** [1] - 5:14
**redact** [2] - 9:6, 49:2
**redacted** [2] - 7:5, 48:24
**reexamine** [1] - 38:23
**refer** [2] - 15:18, 20:4
**reference** [3] - 44:1, 45:17, 46:3
**referenced** [2] - 45:21, 45:24
**references** [3] - 44:13, 44:25, 45:11
**referred** [1] - 24:1
**regarding** [5] - 17:6, 19:3, 32:25, 33:7, 47:11
**regardless** [1] - 32:3
**regulate** [3] - 24:18, 24:21, 24:22
**relates** [1] - 23:25
**relating** [8] - 25:5, 25:12, 26:20, 26:24, 27:17, 28:4, 28:7, 38:4
**relied** [2] - 31:23, 37:8
**rely** [1] - 12:6
**remember** [3] - 14:22, 39:1, 54:23
**remembers** [1] - 14:21
**removing** [1] - 45:10
**renew** [1] - 40:6
**report** [1] - 37:5
**REPORTED** [1] - 2:1
**Reporter** [2] - 2:3, 55:21
**representation** [5] - 4:4, 24:9, 24:10, 31:12, 31:15
**representations** [5] - 30:24, 30:25, 31:9, 32:2, 36:21
**represented** [1] - 4:2
**request** [2] - 9:14, 9:17
**requested** [2] - 4:13, 49:11
**required** [3] - 35:10, 35:23, 36:11
**requires** [1] - 34:8
**requiring** [1] - 36:10
**resolved** [3] - 3:6, 5:23, 5:24
**respects** [1] - 36:7
**respond** [1] - 39:21
**response** [2] - 44:18, 51:4
**responsibility** [1] - 34:8
**responsible** [2] - 34:2, 34:4
**rest** [1] - 45:20
**rested** [1] - 3:13
**result** [3] - 25:3, 25:9, 29:9
**resume** [4] - 8:3, 53:3, 53:16, 55:7
**retail** [12] - 25:6, 25:10, 26:21, 26:22, 27:11, 27:17, 27:25, 28:5, 28:13, 28:14, 29:3, 29:6
**retire** [2] - 41:18, 52:24
**retrospectively** [2] - 35:15, 36:3
**return** [3] - 19:18, 28:9, 39:18
**review** [1] - 46:8

**rise** [6] - 41:20, 42:24, 49:4, 52:6, 54:5, 55:11
**room** [10] - 8:3, 8:4, 11:4, 39:4, 39:15, 41:13, 41:15, 53:2, 55:2, 55:6
**RPR** [2] - 2:2, 55:21
**rule** [1] - 37:20
**rules** [1] - 11:2

## S

**Safe** [4] - 35:14, 35:18, 36:1, 36:6
**safe** [2] - 20:3, 24:24
**safety** [1] - 24:20
**sale** [3] - 23:22, 24:3, 24:4
**satisfied** [1] - 4:14
**saw** [1] - 3:22
**scene** [4] - 18:22, 26:7, 30:11, 34:11
**scheme** [7] - 30:19, 30:23, 31:5, 31:6, 32:9, 32:14, 32:19
**seated** [2] - 42:25, 49:7
**second** [13] - 3:16, 18:5, 21:4, 26:25, 27:13, 27:18, 28:1, 30:1, 30:25, 35:16, 36:3, 47:10, 50:21
**second-guessed** [1] - 36:3
**secret** [2] - 6:25, 38:17
**Section** [2] - 27:9, 27:20
**Sections** [1] - 19:23
**SECURITY** [3] - 41:20, 54:5, 55:11
**see** [15] - 6:17, 6:19, 9:17, 9:20, 9:23, 9:24, 10:9, 10:11, 37:21, 40:21, 45:22, 47:9, 48:16, 49:1, 55:9
**seeing** [1] - 10:1
**seek** [1] - 39:3
**seem** [2] - 13:20, 50:3
**sees** [1] - 8:20
**send** [16] - 7:4, 8:20, 9:12, 9:13, 9:16, 10:4, 40:13, 41:1, 41:2, 41:3, 42:15, 46:6, 46:8, 51:17, 52:3, 53:9
**sending** [6] - 9:5, 41:4, 49:17, 50:1, 50:3, 50:6
**sense** [2] - 12:3, 12:21
**sent** [3] - 21:16, 32:17, 46:15
**separate** [8] - 15:16, 16:22, 17:6, 19:13, 25:15, 32:18, 32:20, 38:2
**separately** [1] - 38:4
**shared** [1] - 18:4
**shipped** [1] - 23:17
**shipping** [7] - 25:6, 25:12, 26:20, 26:24, 27:17, 28:4, 28:8
**show** [3] - 9:9, 46:5, 47:20
**side** [1] - 8:19
**side's** [1] - 9:15
**sidebar** [2] - 39:25, 40:23
**Sidebar** [1] - 40:2
**sides** [4] - 9:13, 51:10, 51:13
**sign** [2] - 39:13, 39:17
**signature** [2] - 9:24, 9:25
**significance** [1] - 14:25
**significant** [1] - 22:14
**similarly** [1] - 36:16
**simple** [1] - 14:20
**simply** [5] - 18:22, 26:7, 30:11, 34:11, 39:1
**single** [2] - 11:13, 24:8
**sit** [1] - 7:8
**six** [1] - 9:18
**smaller** [1] - 5:3
**smoke** [1] - 41:11
**sold** [1] - 20:2
**someone** [12] - 16:23, 16:25, 25:2, 25:8, 29:8, 30:19, 30:23, 31:7, 41:10, 52:12, 52:21
**sometime** [1] - 55:14
**somewhere** [1] - 54:25
**soon** [2] - 8:7, 53:15
**sorry** [2] - 53:5, 54:12
**SOUTHERN** [1] - 1:1
**Southern** [1] - 55:22
**speaker** [1] - 31:13
**specific** [14] - 11:6, 16:15, 21:20, 21:25, 22:9, 22:10, 22:17, 32:1, 32:11, 37:7, 37:19, 38:8, 38:10, 44:25
**specifically** [3] - 15:24, 16:9, 44:15
**specifies** [1] - 16:16
**spectator** [1] - 34:14
**start** [4] - 7:17, 8:6, 37:12
**started** [1] - 50:10
**state** [3] - 21:10, 22:20, 22:23
**State** [1] - 21:17
**statement** [6] - 14:6, 14:19, 31:12, 31:15, 31:23, 31:24
**STATES** [3] - 1:1, 1:4, 1:10
**states** [1] - 21:13
**States** [10] - 1:14, 2:4, 17:1, 17:2, 17:3, 19:22, 24:19, 27:9, 27:20, 55:22
**status** [2] - 3:5, 49:9
**statute** [1] - 16:16
**stay** [1] - 8:24
**STENOGRAPHICALLY** [1] - 2:1
**still** [1] - 5:5
**Street** [2] - 1:15, 1:19
**strength** [1] - 24:4
**strike** [1] - 14:6
**subject** [6] - 47:4, 47:5, 47:12, 47:14, 47:24, 48:6
**subsequent** [1] - 22:12
**substance** [1] - 23:3
**substantive** [13] - 15:24, 16:1, 16:5, 16:9, 16:10, 16:13, 19:13, 25:15, 27:6, 27:8, 27:19, 28:10, 28:11
**substituted** [1] - 23:4
**succeed** [1] - 36:19
**succeeded** [3] - 17:25, 25:25, 29:19
**suffer** [1] - 24:16
**sufficient** [6] - 16:20, 18:21, 19:16, 26:6, 27:3, 30:10
**suggest** [2] - 13:12, 43:14
**suggested** [1] - 51:22
**suggestion** [1] - 50:21
**summaries** [2] - 15:3, 15:6
**summary** [1] - 15:4
**supplements** [1] - 23:24
**supply** [3] - 24:23, 29:3, 29:5
**supposed** [5] - 4:7, 4:8, 4:19, 6:23, 6:24
**surrounding** [1] - 22:24
**swallows** [1] - 28:18
**sympathy** [1] - 11:10

## T

**T3s** [1] - 24:1
**table** [2] - 4:19, 4:23
**technical** [1] - 3:9
**television** [1] - 30:18
**ten** [1] - 7:20
**tend** [2] - 13:2, 14:22
**tendency** [1] - 31:21
**term** [10] - 21:2, 21:8, 23:8, 23:11, 23:14, 28:13, 28:20, 28:21, 29:5
**terms** [4] - 20:15, 21:5, 23:7, 28:22
**tested** [1] - 13:22
**testified** [1] - 14:12
**testify** [2] - 11:19, 11:20
**testifying** [2] - 13:10, 14:9
**testimony** [10] - 12:12, 12:24, 13:8, 13:25, 14:2, 14:9, 14:10, 14:15, 15:15
**textually** [1] - 23:24
**THE** [93] - 1:10, 1:13, 3:3, 3:18, 3:25, 4:5, 4:11, 4:16, 4:18, 4:24, 5:10, 5:15, 5:25, 6:10, 6:22, 7:2, 7:4, 7:11, 7:18, 7:25, 8:11, 8:14, 8:21, 9:1, 9:6, 9:9, 9:12, 9:21, 10:2, 10:6, 10:7, 10:13, 10:18, 40:3, 40:8, 40:12, 40:21, 40:24, 40:25, 41:1, 41:20, 41:22, 42:2, 42:10, 42:13, 42:20, 42:24, 42:25, 43:9, 43:11, 43:16, 43:19, 43:23, 44:10, 44:16, 45:5, 45:15, 45:19, 46:1, 46:7, 46:16, 46:24, 47:7, 47:9, 47:16, 47:22, 47:25, 48:7, 48:11, 48:14, 48:24, 49:4, 49:7, 49:14, 49:16, 49:22, 50:1, 51:16, 51:24, 52:6, 52:9, 52:17, 53:8, 53:12, 53:21, 53:24, 54:2, 54:5, 54:7, 54:12, 54:21, 55:11, 55:13
**theory** [2] - 35:8, 35:21
**therapeutic** [1] - 28:19
**thereof** [1] - 21:11
**thinking** [2] - 22:22, 47:16
**third** [6] - 18:7, 21:6, 24:12, 27:15, 28:3, 31:2
**three** [3] - 19:16, 19:19, 33:17
**tickets** [1] - 53:12
**tired** [4] - 7:13, 52:13, 52:21, 54:16
**Title** [3] - 19:22, 27:9, 27:19
**title** [1] - 45:2
**today** [1] - 7:19
**together** [3] - 17:19, 41:4, 42:7
**tomorrow** [9] - 8:2, 52:14, 52:22, 53:1, 54:17, 54:22, 54:25, 55:6, 55:9
**tonight** [1] - 53:13
**towards** [2] - 7:7, 32:22
**tracing** [1] - 23:25
**traffic** [2] - 16:3, 26:22
**trafficked** [1] - 27:25
**trafficking** [1] - 25:10
**transaction** [2] - 18:13, 32:5
**TRANSCRIPT** [1] - 1:9
**transcription** [1] - 55:18
**transmission** [1] - 32:13
**transmitted** [3] - 31:3, 31:4, 32:10
**transport** [1] - 26:21
**transported** [1] - 27:24
**transporting** [1] - 25:10
**treatment** [2] - 14:5, 21:9
**TRIAL** [1] - 1:9
**trial** [8] - 11:9, 12:17, 14:16, 15:7, 35:12, 35:25, 38:7, 55:15
**trickery** [3] - 17:5, 22:19, 24:16
**true** [2] - 13:6, 20:4
**truth** [6] - 13:15, 13:17, 14:21, 31:14, 31:16, 39:3
**truthful** [2] - 14:9, 24:25

**try** [9] - 18:3, 26:18, 29:24, 38:21, 41:9, 41:11, 43:12, 48:18, 48:19
**two** [14] - 17:11, 18:3, 19:13, 20:7, 25:15, 25:16, 26:17, 27:6, 28:11, 29:10, 29:23, 33:15, 40:10, 52:3

**U**

**ultimate** [1] - 36:19
**unanimous** [1] - 38:16
**unanimously** [1] - 16:21
**under** [6] - 19:21, 22:6, 23:18, 24:18, 28:15, 33:24
**underlying** [1] - 19:23
**understood** [1] - 48:22
**unduly** [1] - 15:12
**unimportant** [1] - 15:2
**UNITED** [3] - 1:1, 1:4, 1:10
**United** [10] - 1:14, 2:4, 17:1, 17:2, 17:3, 19:22, 24:19, 27:9, 27:20, 55:22
**unlawful** [18] - 17:12, 17:22, 18:5, 18:17, 18:19, 25:23, 26:2, 26:5, 26:18, 27:1, 29:11, 29:17, 29:24, 30:1, 30:5, 30:8, 37:3
**unless** [2] - 8:3, 34:17
**unnecessary** [1] - 23:16
**untrue** [1] - 31:13
**up** [5] - 6:2, 6:14, 15:5, 38:24, 48:16
**USB** [2] - 6:6, 6:8
**username** [1] - 6:5
**users** [1] - 22:12
**uses** [1] - 24:24

**V**

**value** [1] - 28:24
**vendor** [1] - 36:7
**vendors** [1] - 35:20
**venture** [1] - 36:19
**verdict** [18] - 7:21, 9:19, 9:21, 10:24, 19:19, 28:9, 38:6, 38:15, 38:18, 39:7, 39:8, 39:14, 39:15, 39:16, 40:14, 40:24, 41:3
**verdicts** [1] - 41:19
**version** [2] - 9:10, 10:4
**VI** [4] - 16:8, 30:17, 33:7, 33:10
**victim** [4] - 32:4, 32:5, 35:19, 36:6
**victim's** [1] - 32:2
**viewed** [3] - 18:14, 35:12, 35:25
**VII** [2] - 16:8, 30:17
**VIII** [4] - 16:8, 30:17, 33:7, 33:10
**violate** [2] - 27:8, 27:19
**violating** [1] - 37:20
**Volume** [1] - 1:7
**voluntarily** [2] - 37:10, 37:14
**voted** [1] - 39:24
**vs** [1] - 1:5

**W**

**wait** [2] - 9:17, 40:21
**waiting** [1] - 43:10
**waive** [2] - 10:14, 54:8
**wants** [5] - 7:14, 47:25, 54:14, 54:16, 54:18
**ways** [2] - 16:16, 16:18
**weight** [3] - 13:3, 15:5, 15:15
**welfare** [1] - 19:24
**whichever** [1] - 42:5
**whole** [4] - 11:13, 13:9, 23:4, 51:14
**wholesaler** [1] - 29:5
**wilful** [2] - 33:15, 34:13
**wilfully** [2] - 18:20, 27:3
**wilfulness** [4] - 35:10, 35:17, 35:23, 36:5
**willfully** [18] - 15:21, 16:3, 16:7, 18:6, 19:15, 19:17, 25:2, 25:7, 26:5, 27:1, 27:5, 29:8, 30:2, 30:9, 34:5, 37:11, 37:13, 37:19
**willfulness** [5] - 36:10, 36:11, 36:12, 36:15, 36:18
**WILLIAM** [1] - 1:10
**William** [2] - 1:17, 2:3
**willing** [1] - 12:6
**wire** [13] - 16:7, 16:9, 29:9, 29:24, 30:18, 31:4, 32:10, 32:11, 32:13, 32:16, 32:17, 32:19, 33:9
**wish** [1] - 39:19
**witness** [17] - 13:7, 13:9, 13:12, 13:14, 13:16, 13:18, 13:20, 13:21, 13:23, 14:8, 14:12, 14:14, 14:15, 14:17, 14:18, 14:20, 14:23
**witness's** [2] - 13:25, 14:2
**witnesses** [5] - 12:12, 13:10, 14:3, 14:4, 14:10
**Word** [3] - 10:4, 44:12, 46:5
**word** [5] - 16:18, 37:9, 37:11, 37:13, 47:9
**words** [7] - 17:12, 19:12, 25:13, 25:17, 29:11, 34:12, 38:16
**works** [1] - 49:21
**worse** [1] - 32:4
**wrappers** [1] - 23:13
**write** [4] - 6:9, 39:20, 49:17, 51:17
**writing** [1] - 39:22
**written** [3] - 23:8, 23:11, 46:12

**X**

**XVI** [2] - 1:7, 48:4

**Y**

**yesterday** [1] - 5:23
**yourself** [4] - 13:13, 14:11, 15:12, 38:19

**Z**

**zero** [1] - 44:22
**ZIMET** [40] - 3:19, 4:2, 4:9, 4:12, 4:22, 5:18, 6:16, 6:20, 7:1, 7:3, 7:6, 7:16, 7:24, 8:10, 8:18, 8:24, 9:2, 9:20, 9:23, 10:3, 10:8, 10:16, 40:5, 40:18, 41:25, 42:17, 43:24, 45:2, 45:12, 45:21, 46:3, 47:10, 49:10, 49:23, 50:18, 51:10, 51:13, 51:21, 53:19, 54:10
**Zimet** [5] - 1:21, 3:18, 8:9, 43:23, 49:22